UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                        SOUTHERN DIVISION

UNITED STATES OF AMERICA        Criminal No.  TDC-18-00012

        v.                      Greenbelt, Maryland

MARK T. LAMBERT,                November 14, 2019

           Defendant.          8:30 a.m.

-------------------------/

                     TRANSCRIPT OF TRIAL
          BEFORE THE HONORABLE THEODORE D. CHUANG
          UNITED STATES DISTRICT JUDGE, and a jury

APPEARANCES:

For the Government:     United States Attorney's Office
                        By: DAVID SALEM, ESQUIRE
                        6406 Ivy Lane - Suite 800
                        Greenbelt, Maryland 20770

                        U.S. Department of Justice
                        By: DEREK ETTINGER, ESQUIRE
                            VANESSA SISTI, ESQUIRE
                        1400 New York Avenue, NW
                        Washington, D.C. 20005


For the Defendant:      Pillsbury Winthrop Shaw Pittman LLP
                        By: WILLIAM SULLIVAN, JR., ESQUIRE
                            THOMAS HILL, ESQUIRE
                            FABIO LEONARDI, ESQUIRE
                            KATHERINE DANIEL, ESQUIRE
                        1200 17th Street, NW
                        Washington, D.C.  20036

Court Reporter          Lisa K. Bankins RMR FCRR RDR
                        United States District Court
                        6500 Cherrywood Lane
                        Greenbelt, Maryland 20770


Proceedings recorded by mechanical stenography,
transcript produced by notereading.

TABLE OF CONTENTS
TRIAL


MISCELLANY

Closing argument by Ms. Sisti............... 103
Closing argument by Mr. Sullivan.............130
Rebuttal argument by Mr. Salem............. 173
Jury instructions..........................25

P R O C E E D I N G S

THE COURT:  So I hope everyone had a good evening --

MR. SALEM:  As best we can, Your Honor.

THE COURT:  -- watched a little T.V. or whatever or whatever you do on the night before one of these things.  Anyways, I wanted to just check in again about the key documents that we need to use with the jury.  First, there's the jury instructions.  And we sent you last night or around 5:00 a revised version.  I went through it again last night and found some minor technical issues.  Wanted to see if anybody had any further issues with the jury instructions.

MR. SALEM:  Your Honor, I did look at this latest set, but if it's the minor technical issues, I think I went through them last night and aside from being a little disappointed we didn't get in some of the other Askinazi factors, it's acceptable.

THE COURT:  Right.  So I mean I just couldn't find -- on those things, I just really couldn't find backup for it.  I mean I think the case you gave sort of touched on it, but it really seemed more of a dicta issue.  I mean leaving aside as Mr. Sullivan said, it's not really controlling authority.  But even if it were, I wasn't clear they were making that kind of a statement and I

think you have a lot of factors to work with anyways.

The other -- I think that was really the only substantive issue.  Right?

MR. SULLIVAN:  We have no changes, Your Honor.

THE COURT:  Okay.

MR. SULLIVAN:  Thank you for the work you've put into it.

THE COURT:  Okay.  The only one that I just was not really -- which is arguably substantive was I think something fell out when I was tinkering with it the other day and I would just -- if you'll look at, I think it's page -- Instruction 55, Use of Interstate Wires.  You originally have some language in there about this does not mean the defendant must specifically have authorized others to send an email or wire funds.  The email part had dropped out and I do realize some of the counts involve emails as wires.  So I put that back in.  Everything else I think was just technical.

I did want to ask about the -- and I will tell you just beyond what you see in the instructions, as I said, the last instruction I'll save until after the closing arguments.  I have some general comments to make to the alternate jurors who we excuse at the end before they deliberate.

I did want to ask about the verdict form because

4

we haven't really talked about that for a while.  And in looking at that, I could be wrong, but -- hold on one second.  I just wanted to see -- on Questions 9 and 11, we did take out the one about the unanimity question.

And by the way on that issue, so again I should have mentioned this earlier, I went back and looked at the Sand instructions on unanimity.  I looked at all the cases that it cited.  Some of them are out of date.  Some of them don't really address the issue of conspiracy.  They deal with other questions.

And I think the Sixth Circuit pattern instruction which was referenced in there as -- it was strange.  It used it as a go by, but it actually came out the other way and said that you don't need to have absolute unanimity on the underlying object.  The Sixth Circuit instructions has some helpful commentary about a couple of Supreme Court cases that are intervening where -- which made clear that you need unanimity when you have an element.  But when it's just a means, you don't. And I think the cases we have that show that in conspiracy, the object is not or the particular object is not a separate element.  The crime is the commission of either defrauding the United States or committing an offense against the United States.  The focus here is committing an offense against the United States and so the

5

particular object is not an element.

And then similar with money laundering, the specified unlawful activity, you have to prove that there was one, but the particular type of activity isn't a sub-element as some of the cases I referenced yesterday indicate.  So I think those intervening cases help to explain why the Sand instruction exists, but the Sixth Circuit pattern instruction is more up to date and I think -- and that's why I've elected not to include that.

I would note though for the government -- last chance on this -- is although I think that's correct.  As a belts and suspenders issue, one could have that in the instructions.  And I think the -- some of these cases raise a different question which I doubt is an issue here, but they do note that if you have a special verdict with those two different objects, in addition to avoiding the legal argument we've been dealing with, you also avoid, you know, issues on sufficiency of the evidence because if you have insufficient evidence on one of the two objects, if you have a general verdict, you might have some issues in terms of discerning what actually the outcome is.  Whereas if you have a special verdict, everyone knows that if you've got one of them, you've got a conviction.

I think here as I said, the objects here are so interlinked, the facts are so intertwined.  I don't think

that's likely to be an issue here, but I'd just point it out for the government if they had any interest in that.

MR. SALEM: Thank you, Your Honor. Sometimes that last-minute reconsideration is important. But I think -- I've spoken to the fraud section and we are comfortable the way it is.

THE COURT: Okay. So then looking at the verdict form, I had two -- well, three changes as you can see on Questions 9, 10 and 11. 10 and 11 are easier. I think the questions initially have the pseudonyms, Transportation Corporation A, Shell Company C. I think those are confusing terms. So we've swapped out the actual companies at issue.

And related to that, I think you all saw yesterday that I had asked to get a non-anonymized version of the indictment. I mentioned yesterday I do plan to give them the indictment. I did add a couple of stronger words in the jury instructions about the indictment, addressing what I said yesterday about it not being evidence. But I do plan to use it and I think it's more helpful to the jury to use the one that actually has the names, Fisk, Ollins --

MR. SALEM: Wiser and Leila.

THE COURT: Exactly. And so if there's no objection, that's the version we'll use. Any concerns

with that?

MR. SULLIVAN:  No objection, Your Honor.

THE COURT:  Okay.  So then obviously in parallel, Verdict Questions 10 and 11 will refer to -- I believe this is correct -- TLI's bank accounts and Ollins is the bank account holder in Switzerland for Count Eleven.  Is that correct?

MR. SALEM:  That is correct, Your Honor.

THE COURT:  Okay.  Then the other one which I thought was more curious was Question 9.  The version that I got from the parties used the term "the defendant" instead of where I swapped out Daren Condrey.  The indictment uses the term "Daren Condrey" in terms of the what email was sent attaching the document.

As I looked at the indictment, it refers in a couple of places to that December 2011 time period.  There is an email to Mr. Lambert or from Mr. Lambert, but the one that attaches the TENEX invoice is the one to Daren Condrey.  So I think that's what was charged.  So I think that's what we need to put here.

MR. SALEM:  That is correct, Your Honor.  That is correct.

THE COURT:  Okay.  And I didn't go back and look at the underlying exhibits.  I thought the parties would just know and tell me if that's correct.

MR. SALEM:  It's correct, Your Honor.  The way you've changed it.

THE COURT:  Okay.  So I think we've got a verdict form.  What we'll do is we will make copies of the clean version of these verdict forms.  Again, one for each juror to look at, one for the foreperson to fill out.  We will have a clean version of the jury instructions with no track changes.  Also taking out all the citations.  We've already basically got that prepared.  That's what will go to the jury.  We'll also use the version of the indictment sent by the government yesterday that has all the actual names of companies and Mr. Fisk's name actually in the indictment so people understand what we're referring to.

Anything else we need to discuss before closing arguments or anything about closing arguments?

MR. SULLIVAN:  Nothing about closing arguments.  The defense hasn't formally rested in front of the jury.  I don't know if that needs to be done.  But I would like to move --

THE COURT:  We can do that.  That's not a bad idea.

MR. SULLIVAN:  I would like to move and I don't have to do this in front of the jury either.  But I would like to move Defense Exhibit 371.  We haven't heard anything from the government all night.  So I assume --

THE COURT:  This is the chart?

MR. SULLIVAN:  Yes.  So I assume they have no problem with it.

THE COURT:  I'm not going to assume that.  But I'm hopeful that we can work something out here.  So what do we have, Mr. Salem?

MR. SALEM:  So, Your Honor, I know Mr. Ettinger has looked at this more closely than I.  But I think that in the left column with all the dates sent, we don't have information on all of them.  We haven't seen the new chart.  So we're a little concerned obviously about looking at that first.  And what else are we missing?  Anything?

THE COURT:  When you say new chart, I think all we had said was we wanted to get the backup.  Although you are right.  There were some cosmetic changes that were not really cosmetic.  There were some technical changes to the headings and stuff?

MR. SALEM:  No.  We did not get the backup for the dates.  There were mistakes on the chart.  We pointed them out and they said they fixed it.  They removed at least two entries.  So that's where we are.  We haven't seen the new one.

THE COURT:  Okay.  So is there a version that has the headers that we agreed on yesterday?

MR. SULLIVAN:  Yes.  That was sent over.

THE COURT:  And then it sounds like there were some agreed-upon edits.

MR. SULLIVAN:  Which were done.

MR. SALEM:  So as I understand it, Your Honor, in the left hand column, it says Payment Date.  We don't have any backup documents for that.

THE COURT:  Can you put it on the screen for me just to take a look at?

MR. SULLIVAN:  I'm sorry.  I didn't hear what Mr. Salem said.

THE COURT:  He said they don't have backup for the dates.  Are the dates from the invoices or from the wires or what is --

MR. SULLIVAN:  Invoices.

MR. ETTINGER:  I was told that the dates were from the date the wire was sent, but we didn't have any backup from that.

THE COURT:  So again, we now have Invoice Approval.  We have TLI Voided Check Payee.  No Approval Signature Apparent, that's fine.  Payment Date is --

MR. SULLIVAN:  That's for the wires in evidence, Your Honor.  Wire request forms.

THE COURT:  Okay.  So it's not the invoice date. It's the date of the -- they may or may not be the same

date.  The date of the wire request form or the date of the verification?

MR. SULLIVAN:  Date of the verification.  When the payment was actually made.  It's the date of the wire request form which is frequently the same date.

THE COURT:  Okay.  Well, I mean I think we -- both sides have sort of focused on different documents.  I don't think that's improper.  But the wire request documents I assume, therefore, are not the same as the invoices.

MR. SULLIVAN:  Correct.

THE COURT:  So did you provide these wire request forms as backup to the government?

MR. SULLIVAN:  They're all in evidence.  We --

THE COURT:  Well, that's not what I said yesterday.  Remember I said I needed a gift-wrapped version with the --

MR. SULLIVAN:  The gift wrap included the invoice and the voided checks.

THE COURT:  But the wire request form is the first column.  Correct?

MR. SULLIVAN:  Correct.

THE COURT:  And that was not part of the gift package.

MR. SULLIVAN:  I didn't understand that to be

part of the gift package, but we can do it.

THE COURT:  Well, the gift package -- yeah.  I mean it was anything that was used as backup.  So I think that would have been necessary.

MR. SULLIVAN:  Okay.  Well, I can use as a demonstrative while we're getting the gift package together and then we'll understand that it's under submission.

But I heard nothing last night that, hey, we wanted the first column which was part of the gift package if you misunderstood the Court.  I heard no information.  And of course, the gift package -- they're all in evidence.  The government has them.

THE COURT:  I know about the in evidence, but --

MR. SULLIVAN:  All right.

THE COURT:  I mean you're right.  They have them, but again this is Rule 1006.  They should have had this two weeks ago and so I'm bending over backwards to try to help you get you this document in, partly because they have a comparable document and as I said under Rule 1006, I think not every "I" was dotted and "T" crossed in terms of how the government handled the 1006 exhibits and so I was feeling that as a matter of fairness that we should give both sides the opportunity.  That's why I came up with the gift package idea.

MR. SULLIVAN:  You're absolutely correct.

THE COURT:  Surprising that we would have -- I know gift package in this case is probably an oxymoron, but in terms of the interactions between counsel.  But so I've been trying to make that work and --

MR. SULLIVAN:  So the gift package is in process right now, the first column.

THE COURT:  Mr. Ettinger, just as a practical matter, as I said, I tried to set this up so you would not have to do any particular work given the late date.  Do you know whether those dates are accurate or not or you haven't endeavored to try to --

MR. ETTINGER:  Your Honor, last night we had most of the invoices, although not all of them, some of them were in evidence and we found them and then they did give us exhibit numbers for some of them.  We cross-checked them.  But about half the dates didn't match and some of the invoices were off and some of the signatures weren't on there.

So I sent an email explaining that we couldn't figure out what the date was supposed to represent because it wasn't the date of the invoice and it wasn't the date of the check and then the other problems and Mr. Hill responded that they would make the appropriate changes, take out a couple of entries in response and that the date

was the date of the -- the date that the wire was sent. And again I just didn't know exactly what that meant --

THE COURT:  Whether it was the verification or the request form or whathaveyou.

MR. ETTINGER:  So I have no idea if those dates are accurate.  I can tell you the other entries were not 100% accurate.  So they've been fixed now apparently, but we haven't checked that.  But I don't know about the dates.  I just don't know.

THE COURT:  Well, the other things are pretty specific in that is there a check, is it sent to TENEX, that's probably easily verifiable.  Correct?

MR. ETTINGER:  Yeah.  They were sent to TENEX --

THE COURT:  Okay.  And then the middle column, do you think that's accurate now if you put in these ones where there is no signature?

MR. ETTINGER:  We'll need to double check, but I have no reason to think that it's not.  But I think two of them -- there should be 24 entries now instead of 26.  Is that correct?  I can't tell.

MR. SULLIVAN:  That's my understanding.

MR. ETTINGER:  The two were taken out?

MR. SULLIVAN:  Yes.

THE COURT:  And so the dates, the confusion was you said some of them might have matched because maybe

coincidentally the wire request date and the check date and it turned out to be also the invoice date. But for the ones that they are not, it's presumably the wire request date, as Mr. Sullivan is saying, but you didn't have that in front of you.

MR. ETTINGER: Right.

THE COURT: And I do think it does emphasize the fact that, you know, even with you're saying they have all this backup, I mean given the multiple potential documents whether it's a wire request form, the verification form, whether it's the computerized version or the handwritten version, the invoice, the check, there's a lot of different dates. So I do think it was important for the government to get the gift package to make that more clear.

MR. ETTINGER: And I would add it took us some time to try to figure out what was going on --

THE COURT: I understand.

MR. SULLIVAN: We responded at 6:31 last evening and we'll get the backup right now. The earlier gift-wrapped I guess package that wasn't complete was given before we left court. So we appreciate the Court's accommodation. We're working very hard to fulfill our obligations in this matter.

THE COURT: Okay. So I think the way we can

handle this and again I mean I think -- I have every reason to just exclude this just on process in the sense that it's -- you know, 6:30, I'm assuming you guys aren't all going home at 6:30.  I know you are working on closing, but you've got a team that can just focus on this and even if it's sending a .PDF of the gift package, that's very doable even if it's easier than a hand delivery of certain things.

The way I will handle this -- again I don't want to prejudice Mr. Lambert for any issues that were created by just process by his team.  If you want to use this in closing, you can.  I wouldn't refer to it by exhibit number --

MR. SULLIVAN:  Correct.

THE COURT:  -- because it's not in evidence per se.  And then there are -- there will be a 15-minute break after the jury instructions for the jurors to recover and there will be -- I think what I would hope to do is to run the closings without commercial interruption after that break, all three parts of it.  Then the jury will have the case.

So if you can -- I'm told that there are two jurors missing because of heavy traffic which I can also vouch for.  So if this can be ironed out by, you know, certainly by the time before closings if the jury

instruction break is allowed for, then I may allow it at that point.  Perhaps in the ten minutes after the closing arguments.  But again the exhibits are supposed to be gift-wrapped for the jury as well and throwing in something at the last minute is very difficult.

I also don't want to prejudice the government and require them to have people running around during closing arguments.  I think particularly the trial team wants to be here and they shouldn't have to be in the back room verifying things during closing arguments.  So it is really got to be taken care of at a break and, you know, we'll see if that can be worked out.

MR. SULLIVAN:  Very much appreciate it.  Thank you, Your Honor.

MR. ETTINGER:  Your Honor, can I just ask that since we have such a short time to do the verification, that there be some easy, quick way to compare the backup to the other documents rather than just a stack of verifications that would then require us to somehow match up everything.

THE COURT:  Well, I think the way this would work if I was designing it would be to have someone come in with a stack of these wire request forms with exhibit numbers on them, that they are in evidence in chronological order, have the chart and have them say this

18

is this one, here is the date and point it to you and just have you stand there and look at it and tell them if you agree.

MR. ETTINGER:  Perfect.

THE COURT:  I mean that's what I would assume someone would do.

MR. ETTINGER:  Great.  Thank you.

MR. SULLIVAN:  Yes, Your Honor.

THE COURT:  But again you can use it as a demonstrative at a minimum and again we are doing this in a little bit unorthodox fashion in terms of the record on exhibits I will -- perhaps maybe the way I would look at this is I will provisionally admit it subject to verification.  If there is no verification, then we'll exclude it.  But the record will -- and I think we're all agreeing that even though both sides have rested that that's an outstanding issue.  You can I think when the jury first comes in formally say you rest.  The government can announce they have no rebuttal case and then we'll move to the closing arguments or actually the jury instructions.

MR. SULLIVAN:  But I won't reference an exhibit number until the process is formalized.  Correct?

THE COURT:  Right.  So you can just treat it as a demonstrative aid that you are using during the --

MR. SULLIVAN:  Thank you very much.

MR. SALEM:  Your Honor, one other issue.  So I reviewed Mr. Sullivan's opening statement yesterday.

THE COURT:  Right.

MR. SALEM:  And I noticed -- it's not a surprise.  He's talked about an embezzlement scheme.

THE COURT:  Right.

MR. SALEM:  And I think that it became important for him as part of this scheme to introduce his Exhibit 264.  And 264 is in their book.  But the Court has made a ruling that it was to be used solely for the state of mind of Rod Fisk and so --

THE COURT:  Which was 264?  Is this like an email or something?

MR. SALEM:  It's an email from Mr. Fisk to schlyapa.  It's Mikerin.  It's one of the pseudonyms for Mikerin.

THE COURT:  264.

MR. SALEM:  And it appears properly redacted as we discussed after yesterday's meeting to get some of these things fixed.  But in this instance, what the government doesn't want to have to do is stand up and object to the idea that this indicates that there was some embezzlement scheme or it indicates that Daren Condrey had learned something about an embezzlement scheme or some

other scheme because you did not admit it for that purpose.  And so I don't know how he intends to use it, but I wanted to front that for the Court now so we don't have an issue.

THE COURT:  Well, just as a reminder, I think Exhibit 264 was admitted for the limited purpose of showing that Mr. Fisk and Mr. Mikerin had on their own discussed the concept of "cake" in December 2009 without Mr. Lambert and Mr. Condrey on the chain --

MR. SALEM:  That's right.

THE COURT:  -- and just the fact that they were discussing that concept without the truth of what was happening and that would include whether there were any meetings with Mr. Condrey and Mr. Fisk or otherwise.  So I mean I think -- Mr. Sullivan, is this an issue or is this not an issue in terms of using this exhibit in any other fashion?

MR. SULLIVAN:  I actually didn't plan to use the exhibit in closing.  It is in evidence for the limited purpose.  But I will reference the government's theory as supported by this exhibit and for the purposes that you had admitted it, to suggest that "cake" was a term used exclusively between Mr. Fisk and Mr. Mikerin and that supports our contention that this scheme was a theft embezzlement scheme which I've argued from the beginning.

THE COURT:  Okay.  I don't think that's inappropriate.  I have reviewed Mr. Sullivan's slides.  I don't see any obvious evidence of that type of theory.  Although admittedly I think there was -- it was incomplete and what we were left with was -- I looked at the things that were work product.  I didn't look at exhibits that were going to be put up on the screen that had not been finalized.

MR. SULLIVAN:  I can represent to the Court that the exhibits that will be put on the screen will be exclusively testimony which we have very, very carefully transcribed --

THE COURT:  Okay.

MR. SULLIVAN:  -- in a manner that doesn't look like it's a transcript, but it is word for word.

THE COURT:  Right.  Okay.  Both sides have done that.  Right.  And I think -- I mean my understanding is we do have evidence that Mr. Fisk and Mr. Condrey met from Mr. Condrey and talked about this scheme.  Now what was actually said, all we have is Mr. Condrey's version of it.

MR. SULLIVAN:  Just to be clear, there are a couple of exhibits in addition.  I was focused on testimony.  The Ravenscroft exhibits in evidence I intend to reference and a couple of government exhibits that are emails that are in evidence that I intend to argue what

they mean and those primarily relate to the "lucky figure" issue.

THE COURT:  Okay.  Just keep in mind and it's a long list so I don't think we can go number by number, but there were a number that were admitted just like this one, 264, just to show that they were discussing a topic, not for the truth of the underlining information.  So long as you are abiding by those instructions, everything will be fine.

MR. SULLIVAN:  I don't plan to reference this and I do plan to argue and there is testimony from Mr. Condrey that he was never on a "cake."  So, yeah, I'm not going to use this, but I do have the argument.

THE COURT:  Okay.  Great.  Okay.  Anything else before we go to closings or jury instructions?

MR. SALEM:  No, Your Honor.  I think we're set.

THE COURT:  Okay.  Okay.  I think we're ready for the jury.

(Jury present.)

THE COURT:  Thank you, everyone.  Please be seated.  Ladies and gentlemen, welcome back.  I appreciate everyone's attention today.  Just again to recap where we are in the case -- actually, why don't we -- I think there was a couple of announcements from the counsel we need to make just for the record.  Mr. Sullivan?

Case 8:18-cr-00012-TDC   Document 251   Filed 07/16/21   Page 24 of 232

MR. SULLIVAN:  Good morning, Your Honor. Subject to our prior conversation, the defense would rest.

THE COURT:  Okay.

MR. SALEM:  And, Your Honor, subject to our discussion, the government has no rebuttal.

THE COURT:  Okay.  Thank you.  So as we had said yesterday, the evidence has all been presented to you. And the sequence we'll go through today is you will have jury instructions from me which will describe what the law is in the case that you'll be applying.  Then we'll take -- I'll warn you, there's a lot of material there. So after that, we'll take our break, probably a little earlier than usual.  But then what happens is by taking our morning break, you come back and then you will hear the closing arguments effectively without commercial interruption.  You will hear first from the government and then from the defense and then the government has the opportunity because they have the burden of proof for a brief rebuttal case.  That second part should be approximately two hours because there is a -- by rule, there's a one-hour limit for each side overall.  So for your convenience.  And so that's the schedule.  That should take us up to the lunchtime.  And then at that point, I'll have one last instruction just on the mechanics of your deliberations and then you will retire

24

to deliberate on the case.  So that's the morning.

So let's get started with the instructions.

Ladies and gentlemen, now that all the evidence has been presented, let me thank you for your promptness in following our schedule, for your attention throughout this case and for your patience when it has been necessary to have discussions outside of your presence.  Before the attorneys deliver their closing arguments, I will now instruct you on the law that applies in this case.  The instructions should assist you in following the arguments and will be your guide as you conduct deliberations.

It has been clear to me that up to now you have faithfully discharged your duty to listen carefully and observe each witness who testified.  I ask you to give me that same careful attention as I instruct you on the law.  You will receive a written version of these instructions to take into the jury room.  So you do not need to take notes if you do not want to.

As I mentioned at the outset of the trial, the functions of the judge and the jury are different.  During the trial, it was my duty to decide what testimony and evidence is relevant under the law for your consideration.  Now that you've heard all the evidence in this case, it is my duty as the trial judge to instruct you on the law as to the law that applies to this case.  It is your duty to

accept these instructions of law and apply them to the facts as you determine them.

You are required to follow the law as I define it for you.  If any attorney has stated or states a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  You should not be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be or ought to be, it would violate your sworn duty to base a verdict upon any other view of the law than that which I give to you.

Since you are the sole and exclusive judges of the facts, I do not have and do not mean to convey any opinion as to the facts or what your verdict should be. Anything I have said during this trial including the rulings that I have made during the trial are not a sign of any view of what your decision should be.  I have not expressed and have not intended to convey any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established or what inference or inferences should be drawn from the evidence.  If any expression of mine has seem to convey an opinion relating

to any of these matters, I instruct you to disregard it.

As members of the jury, it is your duty to pass upon and decide the factual issues in this case.  You are the sole and exclusive judges of the facts.  You consider and weigh the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

You are to perform your duty of finding the facts in this case without bias or prejudice to any party. I remind you that before you were accepted and sworn to serve as a juror, you were asked questions that related to your ability to be fair and impartial and to be free from bias and prejudice.  On the basis of those answers, you were accepted as jurors by the Court and the parties. Those answers are as binding on each of you now as they were then and will remain so until you are discharged at the conclusion of the case.

In this case, the parties are the United States government and Mark T. Lambert.  This case is important to the government because the enforcement of criminal laws is a matter of prime concern to the community.  It is also important to Mr. Lambert who is charged with serious crimes.  The fact that the prosecution is brought in the

name of the United States of America entitles the government to no greater consideration than any other party in a trial.  By the same token, the government is entitled to no less consideration.  All parties, whether the government or an individual defendant, stand as equals in this courtroom.

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.  In reaching your verdict, it would be improper for you to consider any personal feelings you may have about the defendant's race, religion, national origin, sex or age. All persons are entitled to the presumption of innocence and the government has the burden of proof as I will discuss in a moment.

It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision making process. You may not be swayed by sympathy.  You are to be guided solely by the evidence in this case and the crucial question that you must ask yourselves as you sift through the evidence is has the government proven the guilt of the defendant beyond a reasonable doubt.  It is for you alone to decide whether the government has proven that the defendant is guilty of the crimes charged solely on the basis of the evidence and subject to the law as I instruct

you.

It must be clear to you that once you let fear or prejudice or bias or sympathy interfere with your thinking, there's a risk that you will not arrive at a true and just verdict.  Again, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

You may not allow any views you may have about the conduct of the attorneys in this case to have any impact on your consideration of this case.  It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.

The attorneys also have the right and duty to ask me to make rulings of law and to request conferences at the bench out of the hearing of the jury.  You may not allow the fact that an attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury or asked the Court for a ruling on the law to affect your consideration of this case.

Your verdict must be based solely on the evidence presented in this courtroom in accordance with my instructions and so you must completely disregard any report that you have read or heard in the media or seen on television or the Internet.  It would be unfair to

consider such reports since they are not evidence and the parties have no opportunity to explain or contradict them. It would be a violation of your oath as jurors to allow yourself to be influenced in any manner by such publicity.

Now as the finders of fact, it is your role to consider whether based on the evidence in this case, the government has proven that the defendant is guilty of the crimes with which he is charged. Although the defendant has been indicted, you must remember that an indictment is only an accusation. It is not evidence. The defendant has pleaded not guilty to the second superseding indictment in this case.

As a result of the defendant's plea of not guilty, the burden is on the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant because the law never imposes upon the defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

The law presumes a defendant to be innocent of all the charges against him or her. I, therefore, instruct you that the defendant is to be presumed by you to be innocent throughout your deliberations until such time if ever that you as a jury are satisfied that the government has proven the defendant guilty beyond a reasonable doubt.

The defendant began the trial with a clean slate.  This presumption of innocence alone is sufficient to acquit the defendant unless you as jurors are unanimously convinced beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all of the evidence in this case.  If the government fails to sustain its burden on any charge as to the defendant, you must find the defendant not guilty as to that charge.

This presumption was with the defendant when the trial began, remains with him even now and will continue with him into your deliberations until such time if ever that you are convinced that the government has proven the defendant's guilt beyond a reasonable doubt.

In determining the facts, you must rely upon your own recollection of the evidence.  You may consider not only the evidence referred to by the attorneys in their arguments, but you may also consider any evidence in this case which you may believe to be material even if not referred to by the attorneys.

The evidence in this case consists of the sworn testimony of the witnesses, all exhibits received in evidence and all facts which may have been admitted by a stipulation.  Exhibits which have been marked for identification, but were not admitted may not be

considered by you as evidence.  Only those exhibits admitted may be considered as evidence.

You are to consider only the evidence presented and you may not guess or speculate as to any fact not presented as evidence.

Let me remind you what is not evidence.  The fact that there was an indictment bringing charges in this case is not evidence and you may draw no inference from that fact.  What I may have said during the trial or what I may say in these instructions is not evidence.  What the lawyers have said in their opening statements and their closing arguments is not evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.  Anything you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded.

Statements of the attorneys including their objections and their questions are not evidence.  A question put to a witness is never evidence.  It is only the answer which is evidence.  At times a lawyer may have incorporated into a question a statement which assumes certain facts to be true and asked the witness if the statement was true.  If the witness denied the truth of the statement or if the question was not answered or an

objection to the question was sustained, then you may not consider the fact to be true simply because it was contained in a lawyer's question.

Any answer that I directed you to disregard or any evidence I directed to be struck from the record is not evidence and you must dismiss it from your mind completely and entirely.  If I instructed you that certain evidence was admitted for one purpose only, you may not consider it for any other purpose.

From time to time, I have been called upon to pass upon the admissibility of certain evidence such as by ruling on objections to questions.  You should not be concerned with my rulings or the reasons for those rulings and you are not to draw any inferences from them.

In admitting evidence to which an objection has been made, I did not determine what weight should be given to such evidence nor did I pass judgment on the credibility of the evidence.  For any question to which I sustained an objection, you must not guess what the answer might have been and you must not speculate as to the reason the question was asked or the reason for the objection.  You should not speculate about the nature or effect of any discussions I had with counsel outside of your hearing or sight.

The fact that one side called more witnesses and

introduced more evidence than the other does not mean that you should find the facts in favor of the side offering the most witnesses and evidence.

You must decide which witnesses to believe and which facts are true.  To do this, you must look at all of the evidence drawing upon your own common sense and personal experience.  You do not have to accept the testimony of any witness who has not been contradicted if you find that the witness is not credible.

After examining all of the evidence, you may decide that the party calling the most witnesses has not persuaded you because you did not believe its witnesses or because you do believe the fewer witnesses called by the other side.  You should keep in mind that the burden of proof is always on the government and the defendant is not required to call any witnesses or offer any evidence since he is presumed to be innocent.

I will now discuss some specific forms of evidence that have been admitted in this case and some other issues relating to evidence not offered in this case.  A stipulation is an agreement among the parties that a certain fact is true.  You should regard such agreed facts as true.

Certain exhibits have been presented in the form of charts and summaries.  I decided to admit these charts

and summaries in place of the underlying evidence that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

Now one or more parties has presented exhibits in the forms of charts and summaries which were shown to you in order to aid you in considering the evidence.  They are no better than the testimony or the documents upon which they are based and are not themselves independent evidence.  Therefore, you are to give no greater consideration to those charts and summaries than you would to give to the evidence -- that you would give to the evidence upon which they are based.

It is for you to decide whether the charts and summaries correctly present the information contained in the testimony and in the exhibits on which they are based. You are entitled to consider the charts and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.

The government has offered evidence in the form of recordings of telephone calls.  There is however no agreement or stipulation as to the identity of the speakers on any of the recordings so that you will have to determine for yourselves the identity of the parties in each conversation based on the testimony you heard and the

evidence produced at trial.

The government was permitted to provide you documents that it prepared which contained the government's interpretation of what is said on the recordings which have been received as evidence.  Those transcripts were provided to you as an aid or guide to assist you in listening to the recordings.  However, they are not in and of themselves evidence.  You will not have the transcripts with you during your deliberations.

Therefore, when the recordings were played, I advised you to listen carefully to the recordings themselves.  You alone should make your own interpretation of the content of the recordings based on what you heard.  If you think you heard something different from what appeared on the transcript, then what you heard is controlling.

You've also heard testimony in this case regarding evidence seized by the government during the execution of search warrants.  You are instructed that it is the responsibility of the Court alone to determine the validity and legality of those search warrants.  It is up to you to decide what significance if any the evidence seized may have in this case.

You may hear argument by counsel that the government did not utilize specific investigative

techniques.  You may consider that fact in deciding whether the government has met its burden of proof because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty.  However, you are also instructed that there is no legal requirement that the government use any specific investigative techniques to prove its case.  The law does not require the prosecution to call as witnesses all persons who have been present at any time or place involved in the case or who may appear to have some knowledge of the matters at issue in this trial.  Nor does the law require the prosecution to produce as exhibits all papers and things mentioned in the evidence.  Your task as I have said is to determine whether or not on the evidence or lack of evidence the guilt of the defendant has been proven beyond a reasonable doubt.

In deciding whether or not the government has met its burden of proof, you may consider both direct evidence and circumstantial evidence.  The law makes no distinction between direct and circumstantial evidence.  Circumstantial evidence is of no more or less value than direct evidence and you may consider either or both and may give them such weight as you conclude is warranted.  The case may be proven by direct evidence alone, circumstantial evidence alone or a combination of the two.

Direct evidence is direct proof of a fact, such as testimony of an eyewitness as to what he or she saw, heard or observed.  For example, if a witness came into this courtroom and testified that she had just been outside and saw that it was raining, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. To give an example, suppose that when you came into the courthouse today, the sun was shining and it was a nice day.  Then later as you were sitting here, someone walked into the courtroom with a dripping wet umbrella and wet raincoat.  Because you cannot look outside of the courtroom and cannot see whether or not it is raining, you have no direct evidence of that fact.  But from the combination of the facts you observed about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun to rain.  That is all there is to circumstantial evidence.  Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact.

Please note that using circumstantial evidence is not a matter of guesswork or speculation.  It is a matter of making a logical inference.  In drawing inferences, you should exercise your common sense and

everyday experience.

In discussing circumstantial evidence, I have highlighted the fact that in your consideration of the evidence, you are not limited to the statements of the witnesses or the words in an exhibit.  You are not limited to what you see and hear as the witnesses testify.  You are permitted to draw from facts which you find have been proved such reasonable inferences as you find to be justified in light of your own experience.

Inferences are deductions or conclusions which you are permitted to draw, but not required to draw from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should use your common sense and everyday experience.  An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists based on the -- on the basis of another fact which you know exists.

There are times when different inferences may be drawn from the facts.  The government asks you to draw one set of inferences while the defense asks you to draw another.  It is for you and you alone to decide what inferences you will draw.  Let me remind you whether based on direct or circumstantial evidence or upon logical, reasonable inferences drawn from such evidence, you must

be satisfied of the guilt of the defendant beyond a reasonable doubt before you may convict.

You should also use your common sense and everyday experience for another important part of your consideration of the evidence, determining how believable each witness was in his or her testimony.  In order to find the facts in this case, you will need to make judgments about the testimony of the witnesses you have listened to and observed.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You watched each witness testify.  Everything a witness said or did on the witness stand counts in your determination.  You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  Among the factors you should consider are the witness' opportunity to see, hear or know the facts about which he or she testified, the witness' memory and level of recall of the events, whether the witness' recollection of the facts stands up in light of the other evidence in the case,

whether it was consistent with or contradicted by other evidence, whether the witness' testimony was consistent with other statements he or she made during testimony or at an earlier time, the witness' demeanor in testifying, any relationship the witness may have with the government or the defendant that may affect how he or she testified, any interest, financial or otherwise, that the witness may have in the outcome of the case and any bias, prejudice or hostility the witness may have for or against any party.

In summary, what you must try to do in deciding credibility is to size up a person just as you would in any important matter when you are trying to decide if a person is truthful, straightforward and accurate in his or her recollection. Always remember that you should use your common sense, your good judgment, and your own life experience.

You need not believe a witness even though the testimony is uncontradicted. You may believe all, part or none of the testimony of any witness.

I will now discuss some specific issues relating to witness testimony. You've heard evidence that witnesses may have made statements on earlier occasions that counsel argues are inconsistent with their trial testimony. If the earlier statement was made under penalty of perjury, during a trial, hearing or other court

proceeding or deposition, you may consider the earlier statement as evidence of the fact to which the witness testified on that earlier occasion.

If the earlier statement was not made under penalty of perjury during a trial, hearing or other court proceeding or deposition, the evidence of a prior inconsistent statement is not to be considered by you as evidence of the facts stated on that earlier occasion or as affirmative evidence bearing on the defendant's guilt. Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.

If you find that the witness made an earlier statement that conflicts with the witness' trial testimony, you may consider that fact in deciding how much of the witness' trial testimony if any to believe.  In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake, whether the inconsistency concerns an important fact or whether it had to do with a small detail, whether the witness had an explanation for the inconsistency and whether that explanation appealed to your common sense.

It is exclusively your duty based upon all the

evidence and your own good judgment to determine whether the prior statement was inconsistent and if so, how much if any weight to be given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

In evaluating the credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of the case.  Such an interest in the outcome creates a motive to testify falsely and may sway the witnesses to testify in a way that advances his or her own interest. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of the trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.  This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely.  It is for you to decide to what extent if at all the witness' interest has affected or colored his or her testimony.

Now in this case, I have permitted a witness to express her opinions about matters that are at issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is

43

presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, her opinions, the reasons for testifying as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.

You should not, however, accept an opinion testimony merely because I allowed the witness to testify to an opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

You've heard the testimony of law enforcement officers.  The fact that a witness may be employed by the federal or state government as a law enforcement officer does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than an ordinary witness.  At the same time it is quite legitimate for a defense counsel to try to attack the credibility of a law enforcement witness on the

grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.  It is your decision after reviewing all the evidence whether to accept the testimony of a law enforcement witness and to give that testimony whatever weight if any you find it deserves.

You've also heard from a witness who testified that he was actually involved in planning and carrying out the crimes charged in the second superseding indictment. The government argues that people who themselves take part in criminal activity may have knowledge required -- may have the knowledge required to show criminal behavior by others.

The law allows the use of accomplice testimony. Indeed it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction if the jury finds that a testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them here.  However, in your deliberations on the subject of accomplice witnesses,

you should ask yourselves whether a so-called accomplice would benefit more by lying or by telling the truth, was the witness' testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely or did he believe that his interest would be best served by testifying truthfully? If you believe that a witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie or was it one that would cause him to tell the truth?  Did this motivation color his testimony?  In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you want to give to the accomplice witness.

You've heard testimony from an accomplice witness who pleaded guilty to charges arising out of the same facts as this case.  You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that a prosecution witness pleaded guilty to similar charges. That witness' decision to plead guilty was a personal decision about his own guilt.  It may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

In this case there has been testimony from a government witness who pleaded guilty after entering into

an agreement with the government to testify.  There is evidence that the government agreed to charge the witness with only one criminal offense and thus not to prosecute him on other charges in exchange for the witness' agreement to plead guilty and testify at this trial against the defendant.  The government also promised to bring the witness' cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of plea agreement.  You in turn may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone if it convinces you of the defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than an ordinary witness.  A witness who realizes that he may be able to obtain his own freedom or receive a lighter sentence by giving testimony favorable to the prosecution has a motive to testify falsely.  Therefore, you must examine his testimony with caution and weigh it with great care.

If after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

The defendant did not testify in this case.

Under our Constitution, a defendant has no obligation to testify or to present any other evidence because it is the government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove that he is innocent.  You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against the defendant may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations in the jury room.

With these general instructions in mind, I will now turn to the charges against the defendant as contained in the second superseding indictment, which for short, I will refer to as the indictment.  During your deliberations, you will have a copy of the indictment for the limited purpose of assisting you in identifying the specific crimes charged in each count.  However, I emphasize to you that an indictment is itself is not evidence.  It merely describes the charges made against the defendant.  It is an accusation.  It may not be considered by you in any way as evidence of the guilt of the defendant.

In reaching your determination of whether the

government has proved the defendant -- that the defendant is guilty beyond a reasonable doubt, you may consider only the evidence introduced or the lack of evidence.

Now the defendant is not charged with committing any crimes other than the offenses contained in the indictment. You've heard evidence of other acts relating to a company called Westerman or Worthington and payments made by that company. That evidence was admitted solely for the limited purpose of assessing the defendant's knowledge and intent on the charged crimes. I want to emphasize to you now that you are not to consider that evidence for any other purpose and you are only to return a verdict as to the charges contained in the indictment.

Your role is to decide whether or not the government has proven beyond a reasonable doubt that Mr. Lambert is guilty of one or more of the charged crimes. You are not being asked whether any other person has been proven guilty. Your verdict should be based solely upon the evidence or lack of evidence as to Mr. Lambert in accordance with my instructions and without regard to whether the guilt of any other person has or has not been proven. You may not infer that the defendant was guilty of participating in criminal conduct merely from the fact that he associated with other people who are guilty of wrongdoing.

You may not draw any inference, favorable or unfavorable, towards the government or the defendant on trial from the fact that certain persons were not named as defendants in the indictment.  The fact that such persons are not defendants in this trial must play no part in your deliberations.  Whether a person should be named as a co-conspirator is a matter within the sole discretion of the United States Attorney and the grand jury.  Therefore, you may not consider it in any way in reaching your verdict as to the defendant on trial.

The indictment contains a total of eleven counts.  Each count charges the defendant with a different crime.  You must as a matter of law consider each count of the indictment and the defendant's involvement in that count separately and you must return a separate verdict for each count in which he is charged.

In reaching your verdict, bear in mind that guilt is personal and individual.  Your verdict of guilty or not guilty must be based solely upon the evidence about the defendant.  The case against the defendant on each count stands or falls upon the proof or lack of proof against him and your verdict as to him on any count should not control your decision as to him on any other count. No other considerations are proper.

The indictment alleges that the offenses

occurred on certain dates or at certain times.  It does not matter if that indictment charges that a specific act occurred on or about a certain date or time and the evidence shows that in fact it was on another date or time.  The law only requires substantial similarity between the dates alleged in the indictment and the date established by testimony or exhibits.

We will now consider the crimes with which the defendant is charged in the indictment.  The alleged charged crimes are charged in what is called a count.  A defendant may be charged in more than one count of the indictment.

The defendant is charged in Count One with conspiracy to violate the Foreign Corrupt Practices Act which I will refer to as FCPA and to commit wire fraud in violation of Title 18 of the United States Code, Section 871 which for short, I'll refer to these laws as -- with the shorthand, 18 USC, Section 371.

He's also charged in Counts Two through Eight with violating the FCPA in violation of 15 USC, 78-DD-2.

In Counts Nine and Ten, the defendant is charged with committing wire fraud in violation of 18 USC, Section 1343.

Finally, in Count Eleven, the defendant is charged with committing money laundering in violation of

18 USC, Section 1956(A)(2)(a).  The defendant has denied that he is guilty of these charges.  I will review those counts and the applicable elements now.

Because understanding the elements of violating the FCPA and committing wire fraud are essential to understanding what it means to enter a conspiracy to commit these crimes, I'm going to instruct you first on Counts Two through Eight charging substantive FCPA violations and Counts Nine and Ten charging substantive wire fraud violations before I turn back to Count One and instruct you on the elements of conspiracy to violate the FCPA and to commit wire fraud.  Finally, I will instruct you on the elements of money laundering as charged in Count Eleven.

Counts Two through Eight of the indictment charge the defendant with violations of the Foreign Corrupt Practices Act of 1977.  That law in relevant part says the following:  It shall be unlawful for any domestic concern or any officer, director, employee or agent of such domestic concern or any stockholder thereof acting on behalf of such domestic concern to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay or authorization of the payment of money -- of any money or offer, gift, promise to give or authorization of

the giving of anything of value to any foreign official for purposes of influencing any act or decision of such foreign official in his official capacity, inducing such foreign official to do any act in violation of the lawful duty of such official or securing any improper advantage or inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality in order to assist such domestic concern in obtaining or retaining business for or with or directing business to any person or to any person while knowing that all or a portion of such money or thing or value will be offered, given or promised directly or indirectly to any foreign official for purposes of influencing any act or decision of such foreign official, political party, official or candidate in his or her -- his or its official capacity, inducing such foreign official, political party, party official or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official or candidate or securing any improper advantage or inducing such foreign official, political party, party official or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or

instrumentality in order to assist such domestic concern in obtaining or retaining business for or with or directing business to any person.

In order for the defendant, Mark Lambert, to be found guilty of Counts Two through Eight, the crime of violating the FCPA, the government must prove each of the following elements beyond a reasonable doubt as to each particular count under consideration.

First, that the defendant, Mr. Lambert, is a domestic concern or an officer, director, employee or agent of a domestic concern or a stockholder thereof acting on behalf of such domestic concern.

Second, that the defendant acted corruptly and willfully.

Third, that the defendant made use of the mails or any means or instrumentality of interstate commerce in furtherance of conduct that violates the FCPA.

Fourth, that the defendant either paid or offered, promised or authorized the payment of money or of anything of value.

Fifth, that the payment was either to a foreign official or to any person while the defendant knew that all or a portion of the payment would be offered, given or promised directly or indirectly to a foreign official.

Sixth, that the payment was for one of four

54

purposes.  To influence any act or decision over the foreign official in his or her official capacity, to induce the foreign official to do or omit to do any act in violation of that official's lawful duty, to induce that foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality or to secure any improper advantage.

And then seventh, that the payment was made to assist the defendant in obtaining or retaining business for or with or directing business to any person.

For the FCPA counts, the first element that the government must prove beyond a reasonable doubt is that the defendant was an officer, director, employee or agent of a domestic concern or a stockholder thereof acting on behalf of such domestic concern.  A domestic concern is any individual who is a citizen, national or resident of the United States or any corporation, partnership, association, joint stock company, business trust, unincorporated organization or sole proprietorship which has its principal place of business in the United States or which is organized under the laws of a state of the United States or a territory, possession or commonwealth of the United States.

An agent is a person who by express or implicit

agreement with another person or entity called the principal undertakes to represent or to act on behalf of the principal in performing some service for the principal. Therefore, you may find that the government has met its burden for this element if you find that Mr. Lambert was a citizen, national or resident of the United States or if you find that TLI was a United States corporation and Mr. Lambert acted as an agent for TLI.

The second element that the government must prove beyond a reasonable doubt is that the defendant acted corruptly and willfully. An act is performed corruptly if it is done voluntarily and intentionally and with a bad or wrongful purpose or evil motive of accomplishing either an unlawful and/or result or a lawful end result but by some unlawful method or means.

The term corruptly in the FCPA means that the offer of payment or promise was intended to induce the foreign official to misuse his or her official position or to influence the foreign official's action in the defendant's favor.

The term "willfully" means that the defendant acted voluntarily and intentionally with the knowledge that his conduct is unlawful and with the intent to do something the law forbids; that is to say, with the purpose to disobey or to disregard the law. The

government need not prove that the defendant was aware of the specific provision of the law that he is charged with violating provided that the defendant acted with knowledge that he was doing a bad act under the general rules of law.

The third element that the government must prove beyond a reasonable doubt is that the defendant made use of the mails or any other instrumentality of interstate commerce in furtherance of an unlawful act under the FCPA.

The term "interstate commerce" means trade, commerce, transportation or communication between or among two or more states of the United States, between any foreign country and any state or between any state and any place outside of that state.  An instrumentality of interstate commerce includes a means of communication such as a telephone, email, text message, fax, or transfer of money by wire used between states or between the United States and a foreign country.  If you find that the government has proved beyond a reasonable doubt that Mr. Lambert made use of such an instrumentality in furtherance of an unlawful act under the FCPA, you may find that this element has been proven.

The fourth element that the government must prove beyond a reasonable doubt is that the defendant paid, offered, promised to pay or authorized the payment

of money or anything of value.  A thing of value can take any form, whether cash, check, wire transfer, gifts, donations, contributions or anything else.  It is not required that the defendant provide or offer the thing of value himself.  Rather a defendant who engages in bribery of a foreign official indirectly through any other person is liable under the FCPA just as if the defendant had engaged in the bribery directly.  Thus, if you find that the defendant authorized another person to pay a bribe, that authorization alone is sufficient for you to find that this element has been proved.

Furthermore, it is not required that the payment actually be made.  The promise to pay and the authorization of payment are each also prohibited by the FCPA.  It is sufficient if the defendant believed that a bribe would be paid and that he promised or authorized the bribe to be paid.

A fifth element that the government must prove beyond a reasonable doubt is that the payment, offer or promise to pay or authorization of payment was made either to a foreign official or to any person or entity while the defendant had knowledge that all or a portion of the payment would be offered, given or promised directly or indirectly to a foreign official.

Thus, the defendant does not have to pay the

foreign official directly.  It is enough that the defendant pay a third party while knowing that all or a portion of such money or thing of value will be offered, given or promised directly or indirectly to a foreign official.

For the purposes of the FCPA, a person's state of mind is knowing with respect to conduct, a circumstance or a result if such person is aware that he or she is engaging in such conduct, that such circumstance exists or that such result is substantially certain to occur or such person has a firm belief that such circumstance exists and that such result is substantially certain to occur.

Knowledge of a particular fact or circumstance is established if a person was aware of a higher probability of the existence of such circumstance unless that person actually believed that such circumstance does not exist.

So if the defendant paid money to a third party and the defendant was aware of a high probability that some or all of the money would be passed onto a foreign official, this element is satisfied.

The term "foreign official" means any officer or an employee of a foreign government or any department, agency or instrumentality thereof or any person acting in an official capacity for or on behalf of such government

or department agency or instrumentality.

The defendant has been charged with paying, offering, promising or authorizing the payment of bribes to an employee of JSC Techsnabexport also known as TENEX or it's wholly-owned subsidiary, TENAM, or any person acting in an official capacity for or on behalf of TENEX or TENAM.  Such an employee or official would be a foreign official for purposes of the FCPA if TENEX or TENAM is an instrumentality of a foreign government.  In this case, the Russian government.

An instrumentality of a foreign government is an entity controlled by the government or a foreign country that performs a function that the controlling government treats as its own.  State-owned or state-controlled companies that provide service to the public may meet this definition.

To determine if TENEX OR TENAM is controlled by the government of Russia, you may consider the following factors as they existed during the relevant time period: The Russian government's formal designation of the entity as a government-owned entity; the circumstances under which the entity was created; whether the Russian government had a majority or controlling interest in TENEX or TENAM, including whether it provides financial support such as subsidies, special tax treatment, loans or revenue

from government-mandated fees; whether the entity's key officers and directors or government officials were appointed by government officials; and whether the Russian government has the power to fire the officers or directors of the entity; the degree to which the entity's profits if any go directly into the government's treasury and the extent to which the government funds the entity if it fails to break even; TENEX and TENAM's obligations and privileges under Russian law including whether TENEX and TENAM exercise exclusive or controlling power to administer their functions; and the length of time these indicia have existed.

To determine if TENEX or TENAM performs a function the Russian government treats as its own, you may consider whether the following factors as they existed during the relevant time period:  Whether TENEX or TENAM has a monopoly over the functions it exists to carry out; whether the government subsidizes the costs associated with the entity providing services; whether the entity provides services to the public at large in the foreign country; whether the public and the government of the foreign country generally perceive the entity to be performing a government function.  These factors are not exclusive and no single factor will determine whether TENEX or TENAM is an instrumentality of the Russian

government.

You do not need to find that all of the factors listed above weigh in favor of TENEX or TENAM being an instrumentality in order to find that TENEX or TENAM is an instrumentality.  You need not find that an entity qualifies as an instrumentality merely because its parent company is an instrumentality.  If you find that TENEX or TENAM is an instrumentality, then you must find that any employee of TENEX or TENAM or anyone acting in an official capacity or on or behalf of TENEX or TENAM, even if not an employee of TENEX or TENAM is a foreign official under the FCPA.

The sixth element the government must prove beyond a reasonable doubt is that the payment was for one of four purposes.  First, to influence any act or a decision of the foreign official in his or her official capacity; second, to induce the foreign official to do or omit to do any act in violation of that official's lawful duty; third, to induce that foreign official, to use his or her influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality; or fourth, to secure any improper advantage.

If the government proves beyond a reasonable doubt that the payment was for one of these four purposes,

it has satisfied this element of the offense.

The seventh element that the government must prove beyond a reasonable doubt is that the payment was made to assist a domestic concern in obtaining or retaining business for or with or directing business to any person or company.  The payment only violates the FCPA if the result that it was intended to produce assisted or was intended to assist the payor in efforts to get or keep some business for or with any person.

It is not necessary for the government to prove that any person or company actually obtained or retained any business as a result of an unlawful offer, payment, promise or gift.  Only that the defendant intended to assist the domestic concern in obtaining or retaining business for or with any person or company.

Moreover, the FCPA's prohibition of corrupt payments to assist in obtaining or retaining business is not limited to the obtaining or renewal of contracts or other business.  But also includes a prohibition against corrupt payments that indirectly assists in obtaining business or maintaining existing business operations or that are related to the execution or performance of contracts or the carrying out of existing business.

It does not matter who suggested that a corrupt offer, payment, promise or gift be made.  The FCPA

prohibits any payment intended to influence the recipient regardless of who first suggested it.  That the offer to pay payment, promise to pay or authorization of payment may have been first suggested by the recipient is not an excuse for a defendant's decision to make a corrupt payment nor does it alter the corrupt purpose which the offer to pay payment, promise to pay or authorization of payment was made.  It is not a defense that the payment was demanded on the part of a foreign official as a price for obtaining or maintaining a contract or for otherwise continuing to do business.

Counts Nine and Ten of the indictment charge the defendant with wire fraud.  Specifically, they charge the defendant that the defendant devised a scheme to defraud TENEX by means of false representations and in furtherance of that scheme, knowingly caused interstate wires to be used.

The relevant statute on this subject is Section 1343 of Title 18 of the United States Code.  It provides that whoever having devised or intended to devise any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any

writings, signs, pictures or sounds shall be guilty of a crime.  The crime is, therefore, the use of interstate wire transmissions or electronic transmissions for fraudulent purposes.

In order to establish that the defendant is guilty of wire fraud, the government must prove each of the following elements beyond a reasonable doubt:

First, that there was a scheme or artifice to defraud or to obtain money by materially false and fraudulent pretenses, representations or promises as alleged in the indictment.

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud.

And third, that in the execution of that scheme, the defendant used or caused the use of interstate wires as specified in the indictment.

The first element that the government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud TENEX of money by means of false or fraudulent pretenses, representations or promises.  A scheme or artifice is a plan for the accomplishment of an object.

A scheme to defraud is any plan, device or

course of action to obtain money or property by means of false or fraudulent pretenses, representations or promises reasonably calculated to deceive persons of average prudence.

Fraud is a general term which embraces all the various means which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representations, suggestions or suppression of the truth or deliberate disregard of the truth.  Thus, a scheme to defraud is a plan to deprive another of money or property by trick, deceit, deception or swindle.  Here, the government must prove that there was a plan to deceive TENEX in order to deprive it of money.

The scheme to defraud is alleged to have been carried out by making false or fraudulent statements or representations.  A statement or representation is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.

A representation or statement is fraudulent if it was falsely made with the intention to deceive. Deceitful statements or half-truths or the concealment of material facts may also constitute false or fraudulent statements under the statute.

The deception need not be premised upon spoken

or written words alone.  The arrangement of the words or the circumstances in which they are used may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished is immaterial.  So here you must find that the participants in the scheme made statements to TENEX that they knew were false or deceitful at the time they were made.

The false or fraudulent representation or failure to disclose must relate to a material fact or matter.  A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision.

So if you find a particular statement a fact to have been false, you must determine whether that statement was one that a reasonable person might have considered important in making his or her decision.

The same principle applies to fraudulent half-truths or omissions of material facts.  Here, the government must prove that false or deceptive statements made to TENEX would have been an important factor in the decision to award contracts to TLI.

The representations which the government charges were made as part of the scheme to defraud are set forth in paragraphs 12 through 16 and 18 through 26 as well as

Overt Acts A through KK of Count One of the indictment.

It's not required that every misrepresentation charged in the indictment be proved.  It is sufficient if the government proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud.

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property.  However, the government is not required to prove that the defendant personally originated the scheme to defraud.  Furthermore, it is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.  Though you may consider whether it succeeded in determining whether the scheme existed.  A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

If you find that the government has sustained its burden of proof that a scheme to defraud as charged did exist, you next should consider the second element.

The second element that the government must prove beyond a reasonable doubt on wire fraud charges is

that the defendant participated in the scheme to defraud knowingly, willfully and with specific intent to defraud. A person acts knowingly if he acts intentionally and voluntarily and not because of ignorance, mistake, accident or carelessness.  A person acts willfully if he acts with the knowledge that his conduct is unlawful with the intent to do something the law forbids; that is to say with the bad purpose to disobey or to disregard the law. The defendant's conduct was not willful if it was due to negligence, inadvertence or mistake.

Intent to defraud means to act knowingly and with the specific intent to deceive for the purpose of causing some financial or property loss to another.

The question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine like any other fact question.  This question involves one's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past, he committed an act with fraudulent intent.  Such direct proof is not required. The ultimate facts of knowledge and criminal intent though subjective may be established by circumstantial evidence based upon a person's outward words, conduct and acts and

all of the surrounding circumstances revealed by the evidence and the rational or logical inferences that may be drawn from them.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of wire fraud.  A defendant, however, has no burden to establish a defense of good faith.  The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

Under the wire fraud statute, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent.  However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is defense to the fraud however inaccurate the statements may turn out to be.

In considering whether or not the defendant acted in good faith, if you find that the defendant participated in the scheme to defraud, then a belief by that defendant if such belief existed that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant

acted in good faith.

As a practical matter then, in order to prove each wire fraud charge against the defendant, the government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the scheme was calculated to deceive and nevertheless he associated himself with the alleged fraudulent scheme for the purpose of causing some loss to another.

The third and final element that the government must establish beyond a reasonable doubt as to the wire fraud charges is the use of an interstate or international wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states.  As for example, a telephone call or email between Maryland and Virginia or it must pass between the United States and a foreign country such as a telephone call or email between Maryland and Russia.

A wire communication must also include a wire transfer -- may also include a wire transfer of funds between banks in different states or between a bank in the United States and a bank in a foreign country.

The use of the wires need not itself be a fraudulent representation.  It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for the defendant to be directly or

personally involved in the wire communication as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

This element is satisfied if the evidence justifies a finding that the defendant caused the wires to be used by others.  This does not mean that the defendant must specifically have authorized others to send an email or wire funds.  When one performs an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then that person has caused the wires to be used.

Here you may find that Mr. Lambert caused the use of wires if you find that he authorized payments with the knowledge that TLI used wire transfers to make such payments in the ordinary course of its business or reasonably could foresee that the wires would be used for such payments.  For each wire fraud count, the government must establish beyond a reasonable doubt that the particular -- must establish beyond a reasonable doubt the particular use of the wire charged in the indictment.

However, the government does not have to prove that the wire was used on the exact date charged in the indictment.  It is sufficient if the evidence establishes

beyond a reasonable doubt that the wire was used on a date substantially similar to the dates charged in the indictment.

The use of the wires can be proved through circumstantial evidence.  Proof of a routine office or business practice of using interstate wire transmissions is sufficient to support a determination that a wiring occurred in a particular instance.

Next I will turn to the crime of conspiracy as charged in Count One.  The defendant is charged in Count One of the indictment with participating in a conspiracy that had two objectives in violation of Title 18 United States Code, Section 371.  The relevant statute for Count One of the indictment is Title 18, United States Code, Section 371.  It provides that if two or more persons conspire either to commit any offense against the United States or to defraud the United States or any agency thereof in any manner or for any purpose and one or more of such persons do any act to affect the object of the conspiracy, each is guilty of a crime.

Specifically, Count One charges that the defendant, Mr. Lambert, did knowingly and willfully, that is with the intent to further the objects of the conspiracy, combine, conspire, confederate and agree with Daren Condrey, Co-conspirator 1, whom you now know was Rod

Fisk and others, known and unknown, to commit offenses against the United States, specifically, to violate the FCPA by willfully making use of the mails and means of and instrumentalities of interstate commerce corruptly and in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official and to a person while knowing that all or a portion of such money and thing of value would be and had been offered given and promised to a foreign official for purposes of influencing acts and decisions of such foreign official in his or her official capacity, inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official, securing an improper advantage and inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities in order to assist defendant, Lambert, Condrey, Fisk, TLI and others in obtaining and retaining business for and with and directing business to TLI and others in violation of Title 15, United States Code, Section 78-DD-2 and to commit wire fraud by knowingly and with intent to defraud, devise and intent to devise a scheme and artifice to defraud and for

obtaining money and property by means of materially false and fraudulent pretenses, representations and promises knowing that the pretenses, representations and promises were false and fraudulent when made and did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice in violation of Title 18, United States Code, Section 1343.

As charged, the crime of conspiracy could be committed by either conspiring to violate the FCPA or by conspiring to commit wire fraud.

A conspiracy is a kind of criminal partnership or combination or agreement of two or more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws.

You may find a defendant guilty of the crime of conspiracy to violate the FCPA and to commit wire fraud even though the underlining crime which was one of the objects of the conspiracy was not actually committed. Moreover, you may find a defendant guilty of conspiracy despite the fact that he was incapable of committing the underlying crime himself.

Congress has deemed it appropriate to make conspiracy standing alone a separate crime even if the conspiracy was not successful.  This is because collective criminal activity poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of the success of a particular criminal venture.

In order to establish the offense of conspiracy, the government must prove the following elements of the offense beyond a reasonable doubt:

First, that two or more persons entered into the unlawful agreement charged in Count One of the indictment.

Second, that the defendant knowingly and willfully became a member of the conspiracy.

Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment.

And fourth, that the overt act which you find to have been committed was committed to further some objective of the conspiracy.

The first element which the government must prove beyond a reasonable doubt is that two or more persons entered the unlawful agreement charged in the indictment.  In order for the government to satisfy this element, you need not find that the alleged members of the

conspiracy met together and entered into any express or formal agreement.  Similarly, you need not find that the alleged conspirators stated in words or writing what the scheme was, its object or purpose or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.

What the government must prove is that there was a mutual understanding either spoken or unspoken between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof.  However, since conspiracy is by its very nature characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In the context of conspiracy cases, actions often speak louder than words.  You, therefore, may in determining whether an agreement existed here consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

The second element that the government must prove beyond a reasonable doubt is that the defendant

knowingly, willfully and voluntarily became a member of a conspiracy.  If you are satisfied that the conspiracy charged in Count One of the indictment existed, you must next ask yourself who the members of the conspiracy were.

In deciding if the defendant was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objectives as an associate or worker?  In order for the defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome.  While proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan.  The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It's important to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements and the reasonable inferences which may be drawn from them.  A person acts knowingly if he acts intentionally and voluntarily and not because of ignorance, mistake, accident or carelessness.

As I said earlier, a person acts willfully if he acts with the knowledge that his conduct is unlawful and with the intent to do something the law forbids; that is to say with the bad purpose to disobey or to disregard the law.  The defendant's conduct was not willful if it was due to negligence, inadvertence or mistake.

The defendant's knowledge is a matter of inference from the facts proved.  To knowingly become a member of the conspiracy, the defendant need not have known the identities of each and every member nor need he have been apprised of all of their activities.

Moreover, the defendant need not have been fully informed as to all of the details or the scope of the conspiracy in order to justify an inference of knowledge on his part.  Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives. The extent of the defendant's participation has no bearing on the issue of the defendant's guilt.  A conspirator's

liability is not measured by the extent or duration of his participation.  Each member may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles; while others play minor parts in the scheme.  An equal role is not what the law requires.  In fact even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

Thus, the defendant may be convicted of conspiracy without full knowledge of all of the conspiracy's details if he joined the conspiracy with an understanding of the unlawful nature thereof and knowingly joined in the plan on at least one occasion even though he may not have participated before, might not participate again and played only a minor role.  However, a defendant's mere presence at the scene of an alleged crime does not by itself make him a member of the conspiracy.  Similarly, association with one or more members of the conspiracy does not automatically make the defendant a member.

A person may know or be friendly with a criminal without being a criminal himself.  Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.

Finally, mere knowledge or acquiescence without

participation in the unlawful plan is not sufficient.  The fact that the acts of the defendant without knowledge happen to further the purposes or objectives of the conspiracy does not make the defendant a member of a conspiracy.  More is required under the law.  What is necessary is that the defendant participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, before you may find the defendant guilty of conspiracy, the government must have proved beyond a reasonable doubt that the defendant with an understanding of the unlawful character of the conspiracy intentionally engaged, advised or assisted in it for the purpose of furthering either a violation of the FCPA or wire fraud. Only if you find that the defendant understood the aims of the conspiracy -- that the aims of the conspiracy were unlawful and then adopted and intentionally acted to further those unlawful aims can you find that he was a knowing and voluntary participant in the unlawful agreement.

The third element which the government must prove beyond a reasonable doubt is that at least one member of the conspiracy knowingly committed at least one of the overt acts charged in the indictment in furtherance

of the unlawful scheme.  In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the indictment be proven.  Similarly, you need not find that the defendant in this case committed the overt act.  It is sufficient for the government to show that one of the other conspirators knowingly committed an overt act in furtherance of the conspiracy since such an act becomes in the eyes of the law the act of all of the members of the conspiracy.

You're further instructed that the overt act need not have been committed at precisely the time alleged in the indictment.  It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated.

Finally, you must find that either the agreement was formed or that an overt act was committed anywhere in Maryland.

The fourth and final element which the government must prove beyond a reasonable doubt is that the overt act was committed for the purpose of carrying out the unlawful agreement.

In order for the government to satisfy this element, it must prove beyond a reasonable doubt that at least one overt act was knowingly and willfully done by at least one conspirator in furtherance of some object or

purpose of the conspiracy as charged in the indictment.

The overt act standing alone may be an innocent lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.  You are therefore instructed that the overt act does not have to be an act which in and of itself is criminal or constitutes an objective of the conspiracy.

Now I have admitted into evidence against the defendant the acts and statements of other persons because the government has asserted that these acts and statements were committed by persons who were also confederates or co-conspirators of the defendant on trial.  The reasoning for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy.  Conspiracy is often referred to as a partnership in crime.  Thus as in other types of partnerships when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy which are done in furtherance of the common

purpose of the conspiracy are deemed under law to be the acts of all of the members and all of the members are responsible for such acts, declarations, statements and omissions.

If you find beyond a reasonable doubt that the defendant was a member of the conspiracy charged in the indictment, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy may be considered against the defendant.  This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence and in furtherance of the unlawful scheme.

If the acts were done or the statements made by someone whom you do not find to have been a member of conspiracy or if they were not done or said in furtherance of the conspiracy, they may not be considered by you as evidence against the defendant.

Also evidence of an alleged co-conspirator's statement to the authorities about his own conduct may not be considered or discussed by you in any way with respect

to the defendant on trial here.

Last charge.  In Count Eleven, the defendant is charged with the crime of money laundering, specifically unlawfully transporting funds to or from the United States with the intent to promote the carrying on of specified unlawful activity in violation of Title 18 United States Code, Section 1956(A)(2)(a).

Here, the indictment charges Mr. Lambert with knowingly transferring and attempting to transfer $25,774 via wire transfer from TLI's bank account in Maryland to an Ollins Development, Inc. bank account in Switzerland with the intent to promote violations of the Foreign Corrupt Practices Act and the wire fraud statute.

Title 18 United States Code, Section 1956(A)(2)(a) provides that whoever transports, transmits or transfers or attempts to transport, transmit or transfer funds from a place in the United States to or through a place outside the United States or to a place in the United States from and through a place outside the United States with the intent to promote the carrying out of specified unlawful activity is guilty of a crime.

In order to prove the crime of money laundering, the government must prove beyond a reasonable doubt, each of the following elements:  First, that the defendant transported funds to a place outside the United States

from or through a place inside the United States; and, second, that the defendant did so with the intent to promote the carrying on of a specified unlawful activity.

The first element which the government must prove beyond a reasonable doubt is that the defendant transported funds from or through a place in the United States to a place outside of the United States.  The term funds refers to money in any form which can be converted into currency including a wire transfer.  Transportation is not a word which requires definition.  You should apply its ordinary everyday meaning.

The government need not prove that the defendant physically carried the funds in order to prove that he is responsible for transporting them.  All that is required is proof that Mr. Lambert caused the funds to be transported.  To satisfy this element, the government must also prove that the funds were transported from or through some place in the United States to a place outside the United States such as Switzerland.

The second element which the government must prove beyond a reasonable doubt is that the defendant acted with intent to promote the carrying on of specified unlawful activity, mainly a violation of the FCPA or the wire fraud statute.  To act intentionally means to act deliberately and purposefully, not by mistake or accident

with the purpose of promoting, facilitating or assisting the carrying out of a violation of the FCPA or the wire fraud statute.

The term "specified unlawful activity" means any one of a variety of -- any one of a variety of offenses listed in the statute.  In this case, the government has alleged that the funds in question were used to promote a violation of the FCPA or the wire fraud statute.  I instruct you that as a matter of law, a violation of the FCPA or the wire fraud statute falls within that definition and is therefore a specified unlawful activity.

However, it is for you to determine whether the funds transferred were used to promote the unlawful activity.  If you find that Mr. Lambert acted with the intention or deliberate purpose of promoting facilitating or assisting in a violation of the FCPA or the wire fraud statute, then the second element is satisfied.  So in order to find this element satisfied, you must find that Mr. Lambert authorized the wire transfer in question and that he did so with the deliberate intention of carrying out a violation of the FCPA or the wire fraud statute.

The indictment charges the defendant with aiding and abetting the FCPA violations as set forth in Counts Two through Eight and aiding and abetting money laundering as set forth in Count Eleven.  The aiding and abetting

statute, Section 2(a) of Title 18 of the United States Code provides that whoever commits an offense against the United States or aids or abets or counsels, commands or induces or procures its commission is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged.  A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find the defendant guilty of the offenses charged in Counts Two through Eight or Count Eleven if you find that the government has proven beyond a reasonable doubt that another person actually committed the offense with which the defendant is charged and that the defendant aided or abetted that person in the commission of the offense.

The first requirement is that you find that another person has committed the crime charged.  No one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime and that he participate in the crime by doing some act to help make the crime succeed.  To establish that a defendant knowingly associated himself with the FCPA violations charged in Counts Two through Eight, the government must establish that the FCPA violations occurred and that the defendant willfully aided and abetted others to commit those charged acts.  That is, the government must show that the defendant knew that another had committed FCPA violations and knowing that what he was doing was unlawful, aided and abetted that person in committing those FCPA violations.

For the money laundering charge in Count Eleven, the government must establish that the defendant caused the financial transaction with the intent to promote the carrying on of an FCPA or wire fraud violation.

To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about the crime.  That is the government must show that the defendant authorized the wire transfer in question with the knowledge that the payment was made in furtherance of

an FCPA or wire fraud violation.

Participation in a crime is willful if done voluntarily and intentionally and with the specific intent to do something which the law forbids or with the specific intent to fail to do something that the law requires to be done meaning with a bad purpose either to disobey or to disregard the law.

The mere presence of a defendant where a crime is being committed even coupled with knowledge by the defendant that a crime is being committed or merely associating with others who are committing a crime is not sufficient to establish aiding and abetting.  One who has no knowledge that a crime is being committed or is about to be committed, but inadvertently does something that aids in the commission of that crime is not an aider and abettor.  An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture. Therefore, even if the defendant assisted in making the payments or offers of payment that the government alleges violated the FCPA, he is not an aider or abettor if he believed those payments were lawful and did not authorize or offer them with the intent of violating the FCPA.

To determine whether a defendant aided or abetted the commission of the crime with which he is

charged, ask yourself these questions. Did he participate in the crime charged as something he wished to bring about? Did he knowingly associate himself with the criminal venture? Did he seek by his actions to make the criminal venture succeed? If he did, then the defendant is an aider and abettor and therefore, guilty of the offense.

If on the other hand, your answer to any one of these questions is no, then the defendant is not an aider and abettor and you must find him not guilty unless you find that based on my prior instructions, he is guilty of having committed the crime itself.

There's another method by which you may evaluate the possible guilt of the defendant for the FCPA violations charged in Counts Two through Eight, the wire fraud charged in Counts Nine and Ten and the money laundering charged in Count Eleven even if you do not find that the government has satisfied its burden with respect to each element of those crimes. If you find beyond a reasonable doubt that the defendant was a member of the conspiracy charged in Count One of the indictment and thus guilty on the conspiracy count, then you may also but are not required to find him guilty of the FCPA violations charged in Counts Two through Eight, the wire fraud counts charged in Counts Nine and Ten and the money laundering

charge in Count Eleven, provided that you find beyond a reasonable doubt each of the following elements:

First, that the crime charged in the substantive count was committed.

Second, that the person or persons you find actually committed the crime were members of the conspiracy you found to have existed.

Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators.

Fourth, that the defendant was a member of that conspiracy at the time the substantive crime was committed.

And fifth, that the defendant could have reasonably foreseen that the substantive crime might be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt as to any of these substantive offenses, then you may find the defendant guilty of that offense even if you find that he did not personally participate in the acts constituting that crime or did not have actual knowledge of it.

The reason for this rule is that a co-conspirator who commits a crime pursuant to a conspiracy is deemed to be the agent of the other

conspirators.  Therefore, all the co-conspirators must bear criminal responsibility for the commission of the crimes committed by its members.

If, however, you are not satisfied as to the existence of any of these five elements as to a particular FCPA or wire fraud count, then you may not find the defendant guilty of that crime unless the government proves beyond a reasonable doubt that the defendant personally committed the FCPA wire fraud or money laundering offense or aided and abetted the commission of the particular FCPA wire fraud or money laundering -- I'm sorry.  Let me try that again.  If you are not satisfied as to the existence of any of these five elements as to a particular FCPA wire fraud or money laundering count, then you may not find the defendant guilty of that crime unless the government proves beyond a reasonable doubt that the defendant personally committed the FCPA wire fraud or money laundering offense or aided and abetted the commission of a particular FCPA or money laundering offense.  Wire fraud is not charged under the aiding and abetting statute.

Finally, the question of possible punishment of the defendant is of no concern to the jury and should not in any sense enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the

judge.  Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt solely upon the basis of such evidence.

Under your oath as jurors, you cannot allow consideration of the punishment which may be imposed upon the defendant if he is convicted to influence your verdict in any way or in any sense to enter into your deliberations.

That concludes the jury instructions with the exception of a final instruction I will give you at the -- after the closing arguments which will just give you instructions on the deliberation process and how you may proceed through deliberations.

So as I said, I think that was sufficient to get us to the point where we should take a break.  We will have a 15-minute break while the parties set up for the closing arguments.

When you come back again, you will hear the -- all the closing arguments without commercial interruption. Then you will have the case to deliberate upon.

Again even though you've heard the evidence and you've heard the instructions, you haven't heard the arguments and you are not formally deliberating so don't discuss the case among yourselves or do any outside

research and we'll see you in 15 minutes.  Thank you very much.

(Jury excused.)

THE COURT:  Thank you.  Please be seated.  Is there anything -- any technical issues to sort out?  I think, Ms. Sisti, there was an issue about computers. Have you worked it all out?

MS. SISTI:  I believe so, Your Honor.  And I'm going to check during the break.

MR. SALEM:  Your Honor, maybe my fault for this, but I think it would have been better and more appropriate to have finished off Instruction 57.  In that last sentence, it says the charge of the crime of conspiracy could be committed by either conspiring to violate the FCPA or by conspiring to commit wire fraud and I think it should finish off with or both.  I don't think you have to re-give the instruction if it appears in the written form, but that would be more consistent with all the case law.

THE COURT:  I'm sorry.  57?

MR. SALEM:  57.  It's the very last sentence on page -- well, my version is 69.  I'm working from last night's --

THE COURT:  What's the heading on the instruction again?

MR. SALEM:  It's Count One, conspiracy charges.

THE COURT:  I have it as 57.  I see.  You want to add "or both"?

MR. SALEM:  Or both.  Yes, Your Honor.

THE COURT:  I think that's accurate.  Any issues with that, Mr. Sullivan?

MR. SULLIVAN:  No issues with that.  I have an independent matter.  No.

THE COURT:  Okay.  So we'll add that to the written version.

MR. SALEM:  Thank you, Your Honor.

THE COURT:  Your issue, Mr. Sullivan?

MR. SULLIVAN:  Yes.  As I think we've developed before, we understand that under Fourth Circuit jurisprudence, the reasonable doubt instruction is disfavored.  Just to complete my record, I would request it in any event and in addition, I would request guidance from the Court in connection with my ability to argue what reasonable doubt means.

THE COURT:  Okay.  I understand the issue.  It comes up quite frequently.  You're correct.  The Fourth Circuit disfavors any specific definition of reasonable doubt and on that basis I will deny the motion.  But I understand you want to preserve that argument.

In terms of -- I think because of that, as I generally stated regarding the jury instructions more

generally, other than quoting the jury instructions directly and not leaving anything out, I really ask both parties not to try to interpret or further characterize or describe what any particular instruction means.

And so again giving a sort of paraphrase, shorthand, colloquial definition of reasonable doubt I think would be improper because as I've said, I can't give any further guidance on that and so I don't think it's appropriate to try to further define it in any way for the jury, just as I would say for any part of any of the instructions.

MR. SULLIVAN:  All right.  I just wanted to complete the record on that point.  Thank you.

THE COURT:  Okay.  Anything else?

MR. SALEM:  Nothing else, Your Honor.

THE COURT:  Okay.  So we're going to try to scramble.  I always do this.  I noticed a few typos.  So we will try to correct those for the written version including the issue that Mr. Salem raised and we're going to get those materials together for the jury and we'll see you in 15 minutes.

MR. SALEM:  Thank you, Your Honor.

MR. SULLIVAN:  Judge, I just want to note that we have a representative here with the documents that is ready to engage with the government.

THE COURT:  Okay.  Well, maybe either here at the counsel table or the back room, someone take a quick look.  And if you want to report on that before we call the jury in, you can let me know.

MR. SULLIVAN:  Thank you.

(Recess.)

THE COURT:  Before we bring the jury back, is there anything to discuss regarding your exhibit?

MR. SULLIVAN:  Yes.  We have reached an accommodation.  I would like to move Government's Exhibit 1006.  I'm grateful to the government for reviewing it during the break.  That's my understanding.

THE COURT:  Yeah.  It's just exhibit.  Not Government's exhibit I assume.

MR. SULLIVAN:  And, you know, it's my years in the --

THE COURT:  I know.  Well, I try to avoid that.

MR. SULLIVAN:  And I apologize to Mr. Lambert. No.  Defense Exhibit, this is going to be 371 I believe.

THE COURT:  Okay.  And so whether you had objections or not, we are okay with it now under the way I've described how to handle this?

MR. SULLIVAN:  Yes, Your Honor.

THE COURT:  Okay.  So we will have Exhibit 371 in evidence.  So that would be a slight adjustment to what

I think is the final exhibit list.  Let me just make sure.

Okay.  So 371 is in evidence as of today.

THE CLERK:  I will need a copy for the notebook.

MR. SULLIVAN:  Absolutely.

THE COURT:  Okay.

MR. SULLIVAN:  One more question in terms of guidance.

THE COURT:  Yes.

MR. SULLIVAN:  In terms of my preparation, Your Honor, I understand my delivery is timed at about 106 and I have removed some things.  I'd like to understand the Court's practice in connection with coming up on an hour. I don't expect to go over.  I may not even go over.  But I would just like to understand how rigorously the Court enforces that rule, particularly if I believe I'm going to be right around that and I, of course, only have one opportunity before the jury.

THE COURT:  Well, I mean the local rule says it's one hour.  I don't think I've ever had a situation where everyone knew that that we actually ran over.  We had one case where there was two defense counsel for two different defendants and we gave them a combined whatever, hour and a half and the first person used up three quarters of it and the second person was freaking out. But they ended up getting within it and that would have

been a different question.  But since there's only one defense attorney, you have total control over the hour.

MR. SULLIVAN:  Right.  And I'm very close.  You know, how this works.  Sometimes there may be a flourish that I go off script.  But I think I am going to be very close.  And so I would just beg the Court's indulgence. If I can guarantee no more than an hour and 10, 15 minutes, which I can --

THE COURT:  An hour and 10 is a lot more than an hour.  I mean again we're going to bump up against lunch here.  I've tried to keep the government to their full hour.  I will keep them in the same way.  I mean I'm not sure what to say other than that I set that rule and I expect it to be followed.  And I don't know.  I mean has the government got any problems with the one hour on your side?

MR. SALEM:  No, Your Honor.  I think that you've asked me to do that before and we've done it and I think one hour is appropriate.  So if he runs over by 30 seconds or a minute, that I don't think I'd have an objection if you offer the government 30 seconds or a minute for I guess rebuttal.  But then we get into this --

THE COURT:  I mean do you want -- we can do this like an appeals court.  Do you want like a two-minute warning or something or --

MR. SULLIVAN:  I've got my watch.  I think I'll be okay.  Just if it's a short time over an hour as I'm winding down or winding up at the very end, I would just beg the Court's indulgence.  I don't expect it to be more than an hour and seven or eight minutes.

THE COURT:  Again I mean that's a lot more than like you're wrapping up.  Seven or eight minutes is a long time.  Like if you wanted a warning, I would give you a warning.  If you didn't, I would tell you when the hour is up and say your time is up.  Now does anyone actually physically drag you off?  No.  But the jury knows you're over time.  And if it got more than 30 seconds past that, I would probably remind you again that your time is up.  So however you want to handle that.

MR. SULLIVAN:  I wouldn't mind a gentle reminder, Your Honor.

THE COURT:  Like within what, a minute or two or --

MR. SULLIVAN:  No.  Maybe five minutes.

THE COURT:  When there is five minutes left?

MR. SULLIVAN:  Yeah.

THE COURT:  Okay.  We can do that.

MR. SULLIVAN:  Okay.  Hold on one second.

THE COURT:  Okay.  I think we're ready for the jury.  Right?

MR. SALEM:  Your Honor, just to be on the safe said, if you wouldn't mind giving me about a two-minute warning just so --

THE COURT:  You're doing rebuttal?

MR. SALEM:  Yes.

THE COURT:  Ms. Sisti has this totally cold. She doesn't need any help.  Is that what you are saying?

MR. SALEM:  What I understand, Your Honor --

THE COURT:  Although I guess she can like use up your time.  So I guess that's part of it.

MR. SALEM:  That's right.

THE COURT:  Okay.

MR. SALEM:  Thank you, Your Honor.

THE COURT:  We can do that.  We'll call the jury in then.  Thank you.

(Jury present.)

THE COURT:  Thank you, everyone.  Please be seated.  As I had stated, we are now going to move to the closing arguments.  As you heard, just as we do with the opening statements, the government because they have the burden of proof goes first and then they at the end they will have a brief opportunity for rebuttal.  Everyone will get equal time though.  And I think we're ready to begin.

I will remind you again closing arguments are not evidence.  But you obviously may consider the

arguments and how to look at or consider the evidence.  So on behalf of the government, I believe it's Ms. Sisti.

MS. SISTI:  Thank you, Your Honor.  May it please the Court.

THE COURT:  Yes.

MS. SISTI:  Lies, corruption, greed.  At the start of this trial, my colleague, Mr. Ettinger, told you that this case was about the defendant's lies, corruption and greed.  And during the course of this trial, you've seen evidence of that.

We have also seen that this case is also about something else.  Choices.  The defendant's choice to lie, his choice to be corrupt, his choice to be greedy.  The defendant made that choice when he first decided to join Rod Fisk and Daren Condrey in paying bribes to Russian official, Vadim Mikerin.  He made that choice every time he calculated that bribe to bake into that quote to TENEX. Every time he sent off TENEX that inflated quote to cover the bribe.  The defendant made that choice every time he wired money to an offshore account for Vadim Mikerin.  The defendant made the choice to commit crimes over and over and over again.  Choices have consequences.  And the time has come to hold this defendant accountable for the choices that he made.

Let me give you an overview of what I'm going to

do today.  First, I'm going to provide an overview of the scheme of this case.  Second, I'll briefly summarize the charges.  And third, I'll discuss how the evidence proved those charges beyond a reasonable doubt.

So let's start with the scheme.  Over the past three weeks, you've heard details about this bribery scheme.  Who did it, how they did it, and why.  So what was the scheme that you learned about?  At its core, this is a bribery scheme, plain and simple.  The defendant and his partners in crime, Daren Condrey and Rod Fisk paid bribes to Russian official, Vadim Mikerin, in exchange for lucrative contracts for their business, Transportation Logistics International or TLI as you've heard it called.

TLI was in the business of transporting nuclear materials as part of the HEU-LEU agreement between Russia and the United States.  But TLI did not obtain that business honestly.  As you've heard over the last three weeks, the defendant, Rod Fisk and Daren Condrey cheated.  They paid off a Russian official to skip the line, avoid any competition and get the business.

You also heard how the defendant and his partners in crime funded the bribe payments by defrauding TENEX, their customer, by hiding these bribe amounts in the invoices that they are sending to TENEX.  In other words, they stole money from TENEX to cover the cost of

the bribe to Mikerin.  And you heard how the defendant together with Condrey and Fisk funneled and laundered those bribe payments to Mikerin through offshore companies.

Mikerin directed the defendant, Condrey and Fisk to send his bribe money, his "lucky figures" to accounts in the name of offshore companies, not to an account with his name.  You heard about these companies.  Wiser, Ollins, Leila.  These companies that Mikerin used to hide his bribe money, they weren't in Russia.  They were in the Seychelles, in the British Virgin Islands, in the United Kingdom.  And these bank accounts for these companies, they weren't located in Russia either.  They were in Latvia, in Switzerland, in Cyprus.  That is where the defendant, Condrey and Fisk wired over $1.5 million just like Mikerin told them to.

Daren Condrey sat up in that witness chair for over three days.  He told you point blank that he committed crimes and he told you what those crimes were. He admitted to you that he paid bribes to Mikerin to win business for TLI.  He admitted to you that he defrauded TENEX, his customer, by baking in those bribe amounts to the invoices that TLI sent TENEX.  And he admitted to you that he did it all with that man right there, the defendant, Mark Lambert.

Now that I've discussed the scheme, I want to give you a brief overview of the charges in the indictment.  Count One is conspiracy to violate the Foreign Corrupt Practices Act and to commit wire fraud. That's the agreement as you heard the judge instruct you on, the agreement between the defendant and his co-conspirators to engage in the bribery scheme and to defraud TENEX.  Counts Two through Eight are the actual FCPA violations.  Each one of these counts corresponds to one of the bribe payments from TLI's bank account to the overseas accounts for Mikerin.

Counts Nine and Ten are the actual wire fraud violations.  The defendant is charged with wire fraud for defrauding TENEX.  One of these wires is an email sent from TLI to Mikerin with a fake invoice and the other wire is a payment from TENEX to TLI with that secret 7% bribe baked in.

Count Eleven is the money laundering count. That count is for a transfer of bribe money from TLI in Maryland to an overseas account in Switzerland.  It was for the purpose of promoting the scheme.

Now that you know the charges, let's discuss how the evidence proves those charges beyond a reasonable doubt.  I'm going to start with the FCPA violations because the defendant didn't just agree to violate the

FCPA here, he actually violated it.

As I've mentioned, each FCPA count, Counts Two through Eight that you see on that slide, corresponds to one of the payments from TLI to Mikerin. Now you've seen over the course of this trial evidence of each of those bribe payments that were sent from TLI's bank accounts, Sandy Spring Bank in Maryland, to the overseas accounts in Latvia and in Switzerland.

There are seven elements to the FCPA and you just heard the judge instruct you on those elements. It's the judge's instructions that you are to rely on when determining whether or not we've proven our burden beyond a reasonable doubt.

I'm going to submit to you, ladies and gentlemen, that there is no question that there's a bribery scheme here. Daren Condrey, who pled guilty in this case, told you all about that bribery scheme in detail and there's no question that money was sent to offshore accounts for Mikerin. And you know that Mikerin was a foreign official. He was an official with TENEX and TENAM which as you heard are part of the Russian government. You heard the judge instruct you that a foreign official is any employee of a government instrumentality or someone acting in an official capacity on behalf of that instrumentality. You heard the judge

instruct you that a government instrumentality is an entity controlled by the government that performs a government function.  That is why we presented evidence on TENEX and TENAM from government expert, Ann Harrington.  She told you that TENEX and TENAM are government instrumentalities.

You heard a lot of evidence from her on how TENEX and TENAM are both controlled by the Russian government.  Ms. Harrington told you that TENEX and TENAM are 100% controlled by the Russian government.  She said that the Russian government would never let uranium out of government control ever and that's because uranium is Russia's national strategic asset.

You also heard a lot of evidence from Ms. Harrington about how TENEX and TENAM are both performing a government function and that makes sense because we're talking about the down blending of Russia's nuclear weapons.

TENEX and TENAM handled the sale of Russia's national strategic asset, uranium.  Of course, that's a government function.  So since TENEX and TENAM are both controlled by the government and perform a government function, TENEX and TENAM are instrumentalities.  And since Mikerin is an employee of instrumentalities, TENEX and TENAM, and because he worked in an official capacity

on behalf of TENEX, he is a foreign official.

There's also no question that the purpose of these payments was that so Mikerin would use his influence to help TLI win TENEX contracts.  You heard and saw the evidence of this.  You heard Daren Condrey tell you that they were paying Mikerin to use his influence to get these TENEX contracts, these lucrative TENEX contracts.  You heard the purpose was to secure improper advantages and to help induce Mikerin to take acts to help them, acts on their behalf to help them get the business.  Now Mikerin didn't actually have to do anything to help them.  You heard the judge instruct you that the FCPA only requires that the purpose of the payments be to secure an improper advantage.  But in this case you also saw the evidence that he did in fact help them.  That's how TLI won these contracts.  And that's what Mr. Condrey told you that the purpose of the payments was, to get contracts, to get addendums, to get business advantages in exchange for these bribes.

Mikerin even helped TLI get sole source contracts so that TLI would get the business without even going out for bid.  In other words, no competition.

You also know here that the defendant is a domestic concern.  Domestic concern is just a legal word for U.S. citizen or U.S. resident.  And in this case the

parties have stipulated that the defendant is a U.S. citizen.

Now if you look at the remaining counts, Two through Four, those can really be answered by one question. Did the defendant corruptly and willfully participate in the bribery scheme?

So let's look at that question. How do you know that the defendant corruptly and willfully participated in the bribery scheme? That he knew what he was doing was unlawful? We don't have to prove that he knew the specific statute that he was violating, just that what he was doing, that he knew it was generally unlawful. Well, you saw a lot of evidence of the defendant's corrupt and willful acts. You heard how the defendant was vice president and then after Fisk left, he was the co-president and co-managing partner along with Condrey. The defendant and Condrey ran the company together. They ran the scheme together and they profited together.

You heard Daren Condrey tell you all about the bribery scheme. Mr. Condrey told you how he, the defendant and Rod Fisk met to discuss how they were going to hide the scheme from the rest of the office. He said they wanted to make it invisible. Daren Condrey told you how they used words like commission and remuneration to hide the scheme, to hide it from the TLI employees in the

office, to hide it from the auditors, to hide it from anyone else that might see those books.

He told you how he, the defendant and Rod Fisk used TENEX invoices, fake TENEX invoices so that they could pay the bribe to Vadim without being detected.  He told you how they didn't want to raise any suspicion.  He told you how "lucky figures" was code for the bribe to Vadim.  And he told you it would have been impossible to continue this scheme after Rod Fisk left without the defendant agreeing to it.

But Daren Condrey didn't tell you anything that you didn't already know from the documents.  Let's walk through how the defendant calculated and concealed the bribes.

You saw the defendant's own handwriting over and over and over again where he was calculating the amount of the bribe on those cost spreadsheets to come up with a quote for TENEX.  Every time he fraudulently added in that 7% to cover the bribes to Mikerin.  And he and Condrey called it commission or remuneration to hide it from the rest of the office.

You learned how they first used the term "commission," but they thought that that might raise suspicion since TLI didn't pay commissions to anyone.  So then they started using the word "remuneration," a term

used in the Japanese contracts to make it look legitimate. They wanted it to look normal to anyone who was going to see these files.

In addition to seeing the defendant's bribe calculations, you saw the quote forms that the defendant created and sent to TENEX where he baked in that extra 7%, but never included a line item for commission or remuneration. Nowhere in that quote form did the defendant tell TENEX that it would be paying extra money to cover the cost of these bribes to Mikerin. He even goes so far as to tell TENEX he's trying to minimize costs, minimize costs by adding in those bribes.

And, of course, the defendant didn't want to pay for these bribes out of his own pocket. So he fraudulently made TENEX foot the bill for them. You also saw the TENEX contracts that the defendant signed. None of them had a remuneration clause. You saw how he carefully checked the numbers and the contract language. He knew what he was doing was wrong. He knew that it was unlawful. That's why he was hiding it from TENEX.

You also saw the invoices that TLI sent to TENEX to bill them for moving the uranium. None of these invoices mentioned commission or remuneration or bribe that was baked into this.

You saw those long master remuneration

112

spreadsheets that Daren Condrey made and you saw Daren Condrey's notes to the defendant on them, the defendant who checked them.  And you saw Condrey and the defendant email these spreadsheets to each other back and forth. You saw the fake TENEX invoices for fake services not in the contracts.  The defendant and Condrey used these to help disguise the bribe payment.  You heard how they used these invoices to conceal the scheme from any TLI employee or any auditor who might be looking at the files.

You saw how the defendant used fake invoices that had wiring instructions to companies like Wiser, Leila, and Ollins, companies that did no business with TLI and that had no connection to TENEX.  And again these companies, they weren't in Russia.  They were in the Seychelles, in England and the British Virgin Islands. And these companies didn't have bank accounts in Russia. They had bank accounts in Switzerland and Cyprus and Latvia.  The money was never sent to TENEX's account in Moscow, Russia.

You heard the defendant's voice sending those wires off exactly where Vadim Mikerin told him to.  And you saw those transaction journals showing the defendant using his token to send those wires out.  But that's not all.

You know that the defendant acted corruptly and

113

willfully thanks to Marvin Jodel.  Who is Marvin Jodel?  Well, we know from the evidence there is no Marvin Jodel.  It was a fake name and a bogus email account used by Vadim Mikerin to communicate with the defendant and with Condrey and with Fisk about the bribes.

You saw Exhibit 45.  "No rush, Mark.  I will send you information which might be a subject for discussion later today from the alternative E-address."  Mikerin tells the defendant that he'll email him from an alternative email address.  And then you saw Exhibit 59, another email from the same day where you saw Mikerin email the defendant from a Gmail account with the fake name, Marvin Jodel.  And it's just the two of them here.  No Daren.  Just the defendant and Marvin Jodel.

You heard Agent Bowers tell you what the defendant said when he was confronted by the FBI about this MarviJodel@gmail.com email address.  The defendant admitted he knew Mikerin used that account when he was doing something at work that he was not supposed to do.  Those are the defendant's own words admitting that that Marvi Jodel email account was used when Mikerin needed something to hide something.  His own words.

You saw in Exhibit 68 how Mikerin and the defendant used code words to discuss the bribes.  "Lucky figures", L.F."  Code words and fake names.  Code words

that the defendant knew about.  The defendant knew about these because he was in the fold.  Of course, he was in on the scheme.  Think about all the email examples that are in evidence that show you that.

Let's look at another one of those.  Exhibit 66.1.  Look at the subject line of this email.  "News and Lucky Figure."  And look who is talking.  Marvin Jodel, Vadim Mikerin emails the defendant and Daren Condrey.  Marvin Jodel who is really Vadim says "good Friday, gents, please tell me what lucky figure will be and when we should start our process."  Look what's happening here.  The official getting bribes, Mikerin, is talking to his "gents," Daren Condrey and the defendant and he's talking about our process.  Not Daren's process.  Not my process.  Our process.  Mikerin is telling you in his own words who is involved in this bribery scheme.

And Condrey replies to his partners, Mikerin and the defendant, "we can talk about lucky figure when you get settled in."  Mikerin responds that he tried to call them.  And then Condrey says "you can call Mark at the office because he's fully informed and we can finalize how you want to proceed."  Daren Condrey is telling Mikerin call Mark, he's fully informed.  The defendant is fully informed because he's in on this scheme.  And that makes sense.  He's the co-owner, the co-president, the

co-managing partner. TENEX is TLI's most important client. Their biggest client. TENEX sent TLI over $32 million. Of course, the defendant is fully informed.

Mikerin responds again, "hello, gents, just advise if you might release funds before year end, subject to our agreement in all subjects." Whose agreement? Our. The defendant, Condrey and Mikerin's. And what agreement? The defendant's agreement to pay Mikerin bribes. And then the defendant replies, "we plan on making the payment by year end once we confirm the amount."

The defendant didn't just get this email, he responded. And he didn't say what the heck is this all about. No. The defendant tells Mikerin that we, we plan to pay the bribes, the lucky figures by year end once we confirm the amount. We. The defendant and his partner, Daren Condrey. The defendant tells you in his own words who his partners are in this scheme and he tells you that he is involved.

And then Mikerin replies, "thanks, Mark, I'll explain my suggestions to you later today." Mikerin says to talk to Mark about the suggestions since the defendant is fully informed.

And then Mikerin responds again, "Mark, Daren, hello." He says "lucky figure, Leila." Mikerin says he'll send Mark and Daren an invoice so that Mark and

Daren can send the money to Leila.  And Mikerin says that "we will re-establish lucky figures for Q-1, 2012." Mikerin is talking to his partners, Mark and Daren.  Not Daren.  Mark and Daren.

The defendant is emailing with Mikerin on a fake account talking about "lucky figures" and offshore accounts and Condrey tells Mikerin you can talk to Lambert, he is fully informed.

Mikerin and Condrey aren't tiptoeing around the defendant.  They are talking knowingly about the scheme with him.  The defendant is right in the middle of this and they are keeping him fully informed.

The defendant knows what's going on.  There is no legitimate explanation for the term "lucky figures." It's simply a code word for bribe.

Over and over again, the defendant emails with Mikerin on this fake email account the fake name.  And the defendant does this because he is in on the scheme.

You also learned about the defendant's participation in this scheme from his co-conspirators. You saw Exhibit 85.  That note that was right on the top of Vadim Mikerin's desk.  You saw that the note said 7% starting from Q-4, 2011.  That same 7% bribe amount.  You saw that the note said "Invoice for Q-3, 2011, when is the payment?"  And it says "Invoice on behalf of TENEX or

Leila."  That same offshore account in Latvia.  Leila.

You saw the password, Leila 2968.  And you know that's a password because you saw Exhibit 132 where Mikerin sends Condrey the password in an email, Leila 2968.  And you saw Exhibit 34.3 where Daren Condrey wrote it down.  And you saw what it said in the note about Mark.  To send to Daren and Mark from my address inquiry for the spreadsheet with the password and request a new invoice form.  And then it says "lucky figure."

The note doesn't say Daren.  It says Daren and Mark.  That's whose name is on the note on Mikerin's desk.  The defendant's name.  Why?  Because the defendant and Daren Condrey are partners in crime and they were both paying these bribes.

You also saw co-conspirators, Rod Fisk and Mikerin talk about how they were doing this scheme with Mark.  You saw Exhibit 46 where at Mikerin asks Fisk what's going to happen when Fisk leaves TLI.  Fisk is leaving TLI and Mikerin obviously does not want those bribe payments to stop.  So Mikerin sends Fisk to go talk to the defendant and Daren Condrey and to confirm that they are going to keep paying those bribes.  Mikerin says "Daren and Mark, new company policy or not, our cake situation and full understanding between them and me." Them and me.  The understanding between Mikerin, Daren

Condrey and Mark Lambert. Three partners. Mikerin doesn't say Daren. He says to ask Daren and Mark about the "cake," the bribes because Daren and Mark were both in on this agreement to pay the bribes.

And then you saw Exhibit 50 where Rod Fisk assures Mikerin that those bribes are going to keep coming. Fisk tells Mikerin he did talk to Daren Condrey and Mark Lambert. He talked to them and they confirmed that they are going to keep paying those bribes. He says "I met with TLI principals last week and confirmed the cake process on a quarterly basis; all is well." Fisk didn't say Daren. He said he talked to the TLI principles, Daren and Mark, because they both agreed to the "cake," the bribe process.

You learned about the defendant's participation in the scheme through these conversations between his co-conspirators. But you also learned about the defendant's participation in this scheme from the defendant himself. You saw the defendant's own conversations. You saw conversations between the defendant and Daren Condrey where they discussed the bribes.

You saw Exhibit 69. The defendant and Condrey here are discussing they have an issue with TENEX and Condrey says we need to talk to Vadim about this because

119

Boris wasn't helping them. The defendant responds to his partner, Condrey, and says in his own words, "I never thought Boris was our friend, which is strange given the situation with Vadim and his lucky numbers." The defendant in his own words uses the term "lucky numbers." Condrey told you that this was a bribery scheme and the defendant right here in his own words is telling you that it's a bribery scheme. He is saying it's strange they are having trouble with TENEX with Boris Fomin given the "lucky numbers," given the bribe, given the 1.5 million that they are paying to Mikerin. It's strange unless Fomin doesn't know about the bribes.

You learned about how the defendant and Daren Condrey had conversation after conversation about who else knew about these bribes. And this is the context in which that came up. TLI lost a contract. Boris Fomin gave a contract to one of their competitors and the defendant and Daren Condrey were mad. They're mad because they are paying Vadim to make sure that didn't happen. They are paying Vadim to win contracts, not to lose contracts. They are paying Vadim for his action and his influence and they wanted to get what they are paying for. So the defendant and Condrey wanted to know who at TENEX knew about these bribes. They wanted to know if Fomin knew about the bribes so that they could push back next time

Fomin gave the contract to someone else or next time Fomin gave them a hard time about how high their quote was.

If the defendant and Condrey could figure out who else knew about these bribes, they'd have more leverage with TENEX. So who suggested that they figure out if Boris knew about the bribe? The defendant. Look at Exhibit 76. Exhibit 76 is a text or an I-chat conversation between the defendant and Condrey. Look at what they say to each other in their private chat when no one else is around, where there's no TLI employees, no auditors looking at it, it's just the two of them in their private chat and look at what they're saying. The defendant says "we need to figure out if Boris and Ludmilla know about L.F." The defendant in his own words uses the term, "L.F." The defendant wants to figure out who at TENEX knows about these bribes so they can push back on Boris Fomin next time he doesn't give them a contract. There is no question of what is going on here. Look at this chat. Look at the defendant's words. There's no question that this is corrupt and that the defendant is right in the middle of it. He's telling Condrey, his partner in crime, what we need to figure out.

This is not a conversation about remuneration. The defendant isn't saying we need to figure out if Boris knows about remuneration. That makes no sense. If it was

remuneration, everyone would know about it.  He's saying that they need to figure out if Boris knows about the bribes.  That makes sense because that's what they are talking about.  The bribes were a closely-held secret that only a few people knew about.

Condrey told you that he and the defendant had conversation after conversation about the bribes, the "lucky figures," the "L.F." that they were paying to Mikerin.  And this chat shows you that that was 100% true.  You just saw how the defendant participated in that bribery scheme.  The defendant's own words shows you that he did.

We also learned that these weren't the only fraudulent payments that the defendant participated in.  I want to talk to you for a minute about Westerman.  Now you heard the judge instruct you that you can't consider the Westerman scheme as direct evidence.  But that's not why we showed it to you.  The judge told you you can consider that evidence of the defendant's intent and his knowledge and plan.  That's why we showed this to you.  Because at the very same time that the defendant was sending payments to Vadim Mikerin, to these offshore accounts, these lucky figures, he was helping another company to do the exact same thing, Westerman.

Vadim Mikerin told the defendant and Condrey

that he needed their help.  He needed their help to get his "lucky figures" from another company, Westerman.  So what did the defendant do?  The defendant and Condrey created a fake consulting contract to justify these payments from Westerman so he could send Mikerin his "lucky figures."  The defendant was not only sending Mikerin money from TLI.  He helped another company do the same thing and he created a fake contract to cover it up.

You saw the notes that Condrey sent to the defendant about the fake consulting agreement and how "lucky figures" would be sent to Leila, that same account where the defendant sends his bribe payments to Mikerin.  And you saw the email between Condrey and the defendant where they discussed the 7% cut that they are going to get for sending off this fraudulent money.

Ladies and gentlemen, we have proven beyond a reasonable doubt that the defendant participated in this bribery scheme, that he acted corruptly and willfully in doing so.

I just want to spend one more minute on participation because you heard the judge instruct you about aiding and abetting.  You heard the judge tell you that to be guilty of a crime, the defendant doesn't actually need to commit every element himself.  He needs to willfully join in the scheme and he has to engage in

some affirmative conduct, some overt act to bring about this scheme and I just walked through how he did that here.  And that's true for the use of interstate commerce.

For Counts Two to Four, you heard the defendant's voice as he authorized those wires with his password.  And for Counts Five to Seven, you saw those online authorizations, those transaction journals where the defendant used his token to send off those wires.  And then for the last count, for Eight, you have Condrey's online wire approval confirmation for that count.  If you look at Exhibits 1.2-A through -G in the evidence, you'll see evidence for each one of those wires.

And keep in mind that the defendant didn't actually need to send these wires himself.  He did not need to be directly or personally involved.  He didn't need to be the requester, the verifier, the authorizer or the initiator.  As long as he aided and abetted those wires, that's enough to meet the elements.  Here though, the defendant did more than aid and abet these wires.  He actually caused them.

So again we've gone through all the elements that we needed to prove to show that the defendant violated the FCPA and we have proved those elements beyond a reasonable doubt.

So next, let's go through Counts Nine and Ten,

the wire fraud counts and talk about how the evidence has proved the elements of that offense.  First, we must prove that there was a scheme or artifice to defraud TENEX of money by means of false or fraudulent pretenses, representations or promises.  Second, we must prove that the defendant participated in the scheme to defraud knowingly, willfully and with the specific intent to defraud.  And third, finally, we must prove the use of an interstate or international wire communication in furtherance of that scheme.  So this really boils down to did the defendant participate in a scheme to defraud TENEX of money and did he knowingly cause a wire transfer in furtherance of that scheme.

So let's talk about the first two elements.  Did the defendant participate in a scheme to defraud TENEX, his customer?  Now we've already walked through a lot of the evidence for the scheme to defraud because it's also evidence of the bribery scheme.  It was how the defendant was paying for these bribes without taking money out of his own pockets.  He was baking in the cost of those bribes to those quotes that he was sending TENEX.  He was hiding the truth from TENEX and inflating those bills to cover the amount of the bribes.  He wanted to keep all the profit for himself without spending a dime on those bribes.

So let's talk about the third element.  Did the defendant cause a wire transfer in furtherance of that scheme?  You'll see that the first wire is an email Mikerin sends to Condrey attaching one of those fake invoices.  This email is Exhibit 67.2 and the invoice is Exhibit 67.3.  We proved that the defendant was in on the scheme and as a part of it, he caused Mikerin to send fake invoices to him and Daren Condrey in order to carry out the scheme.  We proved that the defendant caused this email to be sent.

You'll see that the second wire is a payment from TENEX to TLI.  It's got that secret 7% bribe baked into it.  And this payment you can find at Exhibit 1.2-H. It's the Sandy Spring bank account record.  Again, we've proved that the defendant is in on this scheme and as a part of it, he secretly overcharged TENEX to cover the amount of the bribe.  And the defendant caused TENEX to send payments to TLI with that extra 7% baked into it.  We proved that the defendant caused this payment to be sent.

And again the defendant doesn't need to send the wire himself or send the email for the payment himself. You heard the judge instruct you that the defendant doesn't have to be directly or personally involved in the wire communication as long as the wire communication is reasonably foreseeable in the execution of the scheme.

126

We've proved beyond a reasonable doubt that the defendant committed wire fraud.

Next, I'll go over the conspiracy count. I just walked through how the defendant actually violated the FCPA and actually committed wire fraud. But he also agreed with others to do it and that agreement in and of itself is a crime. Here, you know that the defendant agreed with others, Daren Condrey and Rod Fisk. And even if the defendant and his co-conspirators were not successful in committing their crimes, the agreement is still a crime as long as there is one overt act done in furtherance of it. And here you saw a lot of overt acts, all the emails, the payments, the calls, the invoices. Those are all overt acts.

You are going to have a list of the overt acts with you in the jury room. They start at page 9 of the second superseding indictment which you'll have. And you'll also have all of the exhibits, each document proving each of these overt acts is in evidence. And again although you only need to find that one overt act was done, the evidence is going to show you that the defendant committed all of them.

Now you only need to find that the defendant agreed to commit one of the crimes, either the FCPA or the wire fraud. But here we proved beyond a reasonable doubt

that he agreed to commit both.

Lastly, I'll go over Count Eleven, the money laundering count. The elements for this count are that the defendant transported funds from inside the U.S. to outside the U.S and that he, two, that he did so with the intent to promote the carrying on of a specified unlawful activity. And here in this case, there are two specified unlawful activities, a violation of the FCPA and wire fraud. So.

For the first element, we need to prove that the defendant caused money to move from inside the U.S. to outside the U.S. You can look at Exhibit 1.2-D for this. We proved that the defendant caused a bribe payment to go from Sandy Spring Bank in Maryland, TLI's account, to the offshore account in Switzerland for Mikerin. And remember as long as the defendant aided and abetted this wire, that's enough to meet the element of offense. Here though, the defendant did more than just aid and abet this wire. He actually caused it.

For the second element, we need to prove that the defendant caused this payment to be made to promote the bribery scheme or the fraud scheme. Here, it promoted both. We proved that the defendant caused this bribe payment to be made to Mikerin in exchange for Mikerin's help in getting contracts. And we showed that the

defendant secretly made TENEX its customer to foot the bill for it so not a single cent would come out of the defendant's profit.  Look at the fake TENEX invoice on Exhibit 72.  The wire transfer was made to pay a bribe that's connected to this invoice.  We proved that the defendant committed money laundering beyond a reasonable doubt.

The evidence proves beyond a reasonable doubt that the defendant committed each and every one of these crimes.  You've seen the evidence that the defendant paid over $1.5 million to offshore accounts for Mikerin.  And he paid those bribes to win contracts from TENEX, his company, in order to ship nuclear materials back and forth from the United States and Russia.  TLI received almost $32 million from TENEX.

You've also seen that the defendant defrauded TENEX so that the money for those bribe payments didn't come out of his own pockets.  And you've seen evidence that the defendant funneled and laundered those bribe payments through these secret offshore accounts.  All evidence of the defendant's lies, corruption and greed.  Evidence of the defendant's choices.  His choice to lie.  His choice to be corrupt.  His choice to be greedy.  His choice to break the law and bribe a Russian foreign official to get business.

Now that you've seen and heard all the evidence in this case, we ask you to return the only verdict that is consistent with that evidence and that is that the defendant, Mark Lambert, is guilty on all counts.

THE COURT:  Thank you, Ms. Sisti.

So next, we'll hear from Mr. Sullivan on behalf of Mr. Lambert.  You can treat this as a witness change if you want to stand up and stretch while the defense is setting up.

MR. SULLIVAN:  Good afternoon, ladies and gentlemen of the jury.  I don't have to introduce myself to you, but I will.  I will because I'm proud to say it again.  I'm proud to say that I represent Mark Lambert and, as you know, I've been working diligently in this courtroom before you for three weeks to unwind this wrongfully charged case.

I want you to think about something because I didn't hear it in the government's closing argument and I listened very carefully.  I didn't hear one word about something that I know you were waiting to hear about. When the government concluded its case in chief, they undoubtedly left you with the impression -- they certainly wanted to -- that Mr. Condrey, Mr. Fisk, Mr. Mikerin and allegedly, my client, Mr. Lambert, began a conspiracy in 2007.  And they presented Mr. Condrey in a suit and tie,

who arrogantly ascended that witness stand and sat there and told you repeatedly that this started in 2007, all the while knowing that he pleaded guilty before this Court and represented under oath that he began to conspire in 2004. He knew it when he took the stand. The government knew it when he took the stand. The government didn't do anything about it. I did.

What did I do in cross-examination? Isn't it true you pleaded guilty, claiming this scheme, alleged scheme started in 2004? Didn't you testify on Monday that it started in 2007? Both cannot be true. And Mr. Condrey said one is inaccurate. He didn't even tell the truth then.

The evidence has shown that a scheme developed and was presented in 2009. That's when Rod Fisk was forced out and needed an income stream, an income stream that he started in 2002 as you heard from Mr. Ravenscroft.

Ladies and gentlemen, you have a man before you who admitted lying under oath on that witness stand. He is the only evidence against Mark Lambert's intent. He is the only direct evidence in terms of testimony against Mark Lambert. You cannot trust Mr. Condrey. You can't convict Mark Lambert on the basis of a man who committed untruthful statements under oath and admitted that he testified falsely under oath. You can't discharge your

obligations as jurors to find anything about what went on in the mind of Mark Lambert based on a man who took the stand and admitted I told a false statement under oath. He knew it when he took the stand.  The government didn't do anything about it.  They knew it when he took the stand.  They didn't bring it out in his direct.  And, ladies and gentlemen, five minutes ago, the government stood up here and didn't even talk about it.

And before I forget because I know you remember it, what also did you learn about Mr. Condrey?  What also did you learn about the first time he decided to step into the offices of the FBI?  When did that happen, ladies and gentlemen?  That happened days after his wife's case was dismissed.  Remember that?  Remember that at the search warrant, Mr. Lambert wasn't arrested.  Mr. Lambert wasn't the subject of the investigation as testified by Agent Bowers.  But as soon as the Condreys who were both arrested understood that dynamic, they needed to put a plan in place and you can assess Mr. Condrey's motive for purposes of providing false testimony against Mr. Lambert and, you know, it was false because he pled guilty to 2004 and said that's correct.  So 2007, false.  He admitted it. He's the only one against Mr. Lambert and you know he has a reason to curry favor with the government.  He has a motive to enhance his position as soon as he learned that

Mark Lambert wasn't arrested.

Ladies and gentlemen, you understand that what the government presented is simply misleading.  The government fed you a misleading narrative.  We all know now that the criminal scheme really began in 2002 when Mr. Fisk came to TLI's president, Mr. Ravenscroft, and Mr. Fisk told Mr. Ravenscroft that he and Mr. Mikerin had agreed that TLI would pay a 5% commission to TENEX, similar to the legitimate remuneration programs that had been in place with the Japanese customers.

Not only have you heard Mr. Ravenscroft testify about this, you've seen his documents.  Defense Exhibits 240.3, 36.4 and 36.5.  So the criminal conspiracy involving Mr. Fisk and Mr. Mikerin did not begin in 2007 as the government and Mr. Condrey would have you believe.  It began five years earlier in 2002.

And let me draw your attention to something else.  Mr. Condrey was asked repeatedly by me whether he was aware of any remuneration program at TLI before 2007.  Absolutely not is what he said.  Mr. Ravenscroft comes in here without a motive, without fear of favor with regard to any party in this case and told you something exactly opposite.

Ladies and gentlemen, this case is riddled with reasonable doubt.  The government needs to sustain its

133

proof on each and after every element of each and every offense beyond a reasonable doubt.  I submit to you that an individual who represents the only link between Mr. Lambert and the conspiracy, the individual who represents the only fabricated evidence as to Mr. Lambert's intent is a person who admitted lying under oath.  That in and of itself is reasonable doubt.  Mr. Condrey is reasonable doubt in a suit and tie.  Mr. Condrey equals reasonable doubt.  Mr. Condrey is the personification of reasonable doubt.  However, you want to describe it, you can't rely on him to convict Mr. Lambert.

Now certainly, the government could have called Mr. Ravenscroft to testify, but that would have been inconsistent with Mr. Condrey's testimony that the conspiracy began in 2007.  The government had available to it the same exhibits that we just looked at and which would have shown that TLI began to pay commissions since 2002.  But that didn't happen in the government's case. That happened in the defense case.  And why?  Because having the criminal conspiracy begin in 2002 is inconsistent with the star witness cooperator, Mr. Condrey, as I've explained.

Why does this all matter, ladies and gentlemen? Because this was really a conspiracy.  There were crimes committed here because the crimes were committed by

134

different people.  And the crimes that were committed are different from the crimes that are charged here.

This was really a theft and embezzlement scheme. This was a scheme perpetrated by Mr. Fisk and Mr. Mikerin, who capitalized upon and exploited the longstanding legitimate process of effectuating remuneration for certain international customers and clients. Understanding that that happened, Mr. Fisk and Mr. Mikerin, starting with Mr. Ravenscroft who didn't know anything wrong was happening, misdirected funds that TLI personnel believed were properly to be sent back to its customers under the remuneration program except they diverted that well-intentioned money.  They kept it for themselves and they continued to keep it for themselves.

Recall that nine years later, weeks before Mr. Fisk enters the hospital and dies, Professor Payne, Mr. Fisk's widow, hears that the same Vadim Mikerin at dinner tell Mr. Fisk, trying to bolster Rod, saying we have a future together, we plan to make lots of money.  We'll have business deals.  That money-making operation, those business deals began way back in 2002 when Rod Fisk and Vadim Mikerin came up with the phony commission plan as a way to steal money from TLI.  That's why the government wanted to misdirect you into thinking that Mr. Condrey was telling the truth when he said a bribery conspiracy began

135

in 2007. In truth, this is a theft and embezzlement conspiracy that Mr. Fisk and Mr. Mikerin began in 2002 and continued through 2009. Why did Mr. Condrey plead guilty to bribery? Because Mr. Fisk misled him into believing that that's what was really happening.

Remember my opening statement. Mr. Fisk had some choices. What was he going to tell Mr. Condrey? I'm stealing from you, you need to keep signing the invoices. That's not going to work. What about saying you want to join our plan and we can have our cake together? Mr. Condrey didn't know anything about cake. Mr. Lambert didn't know anything about cake. Mr. Condrey testified he never saw a cake email. The evidence here is that neither Mr Lambert nor Mr. Condrey were ever on any cake emails. What does cake mean? Cake means the private theft embezzlement scheme that was ongoing between Mr. Mikerin and Mr. Fisk and they carried it all the way up to 2002. But when Mr. Fisk was getting pushed out, he needed to continue it because he wasn't there anymore. He needed to go to Daren and have Daren start signing the invoices.

Defense Exhibit 371 will show you that the time that Mr. Fisk gets pushed out is the time that Daren Condrey starts signing the invoices to effectuate the remuneration. He thinks it's bribery. It's not. Vadim Mikerin had no stroke within TENEX. He had no influence

within TENEX.  He could do nothing to effectuate TENEX contracts and that's what the evidence showed.

Now with the benefit of knowing what the evidence has shown is the real criminal conspiracy, let me return to what I said to you when I stood before you at the beginning of this trial.  I told you that this case was about two arrests, three lies, a dead man, a wife whom you heard from and those things which led Mark Lambert to be sitting next to me for the past three weeks at counsel table in this trial.

Now as you know, the evidence has shown that two people were arrested and those people are the Condreys, Daren and Mrs. Condrey.  The evidence has shown that the person who told two of those lies, Rod Fisk, is long dead.  The evidence has also confirmed that these lies that were told effectuated the scheme that Mr. Fisk and Mr. Mikerin first put into place and profited from for many years.

First lie came about when Mr. Fisk approached Mr. Ravenscroft and said that we want to establish on behalf of TENEX the same type of remuneration program that is so favored, so consistent, so longstanding with the Japanese clients, even though that was just a means for Mr. Fisk and Mr. Mikerin to allow themselves to misdirect, misappropriate and steal money from TLI.

Second lie occurred when Mr. Fisk about to be

137

ousted from TLI told Mr. Condrey that TLI had to pay bribes to Mr. Mikerin to obtain TENEX contracts.  I'll develop this a little later.

But if you are Mr. Condrey and I'll take it for granted that even though he said he pled guilty to something in 2004.  But if you are Mr. Condrey in 2009 when Rod Fisk was getting pushed out and Rod Fisk comes to you and says, hey, by the way, we need to start paying bribe money.  Now is that something you want to step back and think about, ladies and gentlemen?  Is that something you want to carefully reflect about?  We're talking about a major federal criminal conspiracy.  We're talking about decades in jail.  And Mr. Condrey's unbelievable testimony because he's a guy who's lied under oath and admitted that to you, his testimony on this whole thing was just sort of matter of fact, matter of fact, run of the mill, every day.  Yeah, it happened.  I don't have any specifics on it.  This is the same man who testified that numerous advantages were in place for TLI.  TLI was the best in the business.  TLI had the only Nuclear Regulatory Commission, Department of Energy license to export.  They were the best game in town.  They were the only game in town.  Now knowing all of that, are you going to willfully step into a criminal conspiracy just because Rod Fisk says so?  Does that make sense?  You are allowed to use your common

sense.  You're allowed to use your best judgment.  You are allowed to use your life experience.  And on behalf of Mr. Lambert, I'm asking you to do all three.  This case makes no sense.

The evidence has shown that the third lie came about when Mr. Condrey and to protect his wife from criminal prosecution and to take care of their only son and to seek leniency for himself told the government just days after the prosecutors had dropped all charges against his wife that he knew, that Mr. Lambert knew that remuneration were in fact bribes to Mr. Mikerin.  He needed to do that.  Remember -- I'll come back to this -- what did he say about what he needed to do to help himself?  You remember I developed on cross-examination he was interviewed by the outside law firm conducting an internal investigation into TLI.

I'm going to read some transcript excerpts later.  I've going to enjoy doing that because in one of those transcript excerpts Mr. Condrey tells me that he lied repeatedly to the law firm.  I asked him how many times. 25?  Many, many times.  Why?  I needed to save my job.  I needed to save my job so I lied repeatedly.  He took the stand here.  He needs to save his wife, his life, his son and himself from prison, knowing when he took that stand, knowing that he earlier represented under oath

something dramatically different than what he testified to under oath here.  You can't rely on that to convict an innocent man, ladies and gentlemen.

So after that third lie came about as I just referenced, Mr. Condrey took the stand in this trial knowing that he made different representations under oath about when this conspiracy began.  He made continuing false statements under oath as the evidence shows when in front of you he falsely accused his one-time friend, Mark Lambert.  But as I said before and as I think you understand, this is not surprising in light of the situation Mr. Condrey was in when he and his wife were arrested and Mark Lambert was not.

Ladies and gentlemen, I referenced the time that Mr. Lambert testified about how Rod Fisk came to him and I ask you to use your best judgment.  I'm going to repeat it again very briefly.  He had no details about the conversation or meeting and simply gave a vague and uncertain statement to Mr. Fisk discussed bribing government officials.  In an undefined offhand way, out of the clear blue, that's how he remembered joining a criminal conspiracy.  Now was it in 2007 or 2004?  He's under oath both times.  Did he ever join a criminal conspiracy during those dates?  The defense submits the evidence shows no.  It was in 2009 with Rod Fisk telling

him you need to pay Vadim despite all the evidence that TLI was the best in the business while Vadim Mikerin, Rod Fisk hoodwinked him.  You know, Mr. Condrey never testifies that he took a moment's pause or wanted to discuss this issue with anybody.  He said it just happened like that.  It's almost as if he's used to committing criminal conspiracies or other criminal acts because it's no big deal, just as he walked up here and said 2007, knowing he earlier said 2004.  I want you to think about that.  A person's complete inability to remember any details about such a critical life-changing event renders what little he has to say about it completely unreliable.

Ladies and gentlemen, I want to run through some witness testimony with you.  I'm going to start with Agent Bowers.  What did he tell you, ladies and gentlemen? Lambert was not a subject of the FBI investigation into TLI.  Lambert was not under arrest during the search of TLI.  Lambert cooperated with the search warrant, directed the FBI the sources of information and allowed the FBI access to employee email accounts.  I want you to think about that as you evaluate whether those are the acts of a man concerned, worried, having something to hide, knowing he's guilty.  Those are the acts of a man who is surprised at a search warrant in his own company and wants to help because he doesn't know what's going on.  Those are the

acts of a man consistent with no culpable mental state, ladies and gentlemen.

I want to direct you to some testimony. Slide Number 1. Mr. Sullivan questioning Agent Bowers. And what are the methods you used to secure cooperation for Mr. Lambert was to suggest to him or let him know that he wasn't under scrutiny or he wasn't a person of interest to you. Right? We informed Mr. Lambert that he was not a subject of the investigation. That we were not going to arrest him.

Mr. Lambert is not the subject of the investigation. Mr. Lambert becomes the subject of the investigation days after Mrs. Condrey's charges are dropped because Mr. Condrey walks into the FBI office. That's when he is then a subject of the investigation because Mr. Condrey needs something to offer.

Let's talk about Anne Harrington. She was qualified as a nuclear non-proliferation expert, not a nuclear transportation expert. I think you might remember I actually thanked her for her good work in stemming the tide of nuclear proliferating warheads or weapons of mass destruction and that is good work, but it doesn't have anything to do with this case.

She testified that some of the nuclear transport industry viewed TENAM as the commercial entity of TENEX.

That Megatons to Megawatts, that program specifically contemplated the participation of private commercial entities.  Most importantly, she had no direct knowledge of how Mikerin was hired and promoted at TENEX.  She had no personal knowledge as to how either TENAM or TENEX conducts their nuclear business operations, never interacted with anyone at ROSATOM as to whether TENEX is allowed to contract with customers on its own without government control.

I asked her a couple of questions I'd like to direct your attention to.  Slide 2.  Now going back to a question Mr. Salem asked you, you acknowledged that you've had no conversations with ROSATOM about the government's level of control of that entity.  Right?  I'm going back to my memory index here.  Specifically that question, no.

Slide Number 3.  Okay.  Now Ms. Harrington, your only direct knowledge is of ROSATOM's relationship with the Russian government, not TENEX or TENAM's.  Correct?  Correct.  And you don't have any personal experience relating to how TENEX and TENAM officials are selected or hired.  Right?  Personal experience, no.  And you have no direct knowledge of how Vadim Mikerin was hired or promoted at TENEX or TENAM.  Correct?  Correct.

Her information is, the defense submits, limited.  Limited on government organization and control.

You can evaluate that as you might using your own good judgment and your own world experience.

Now Ms. Lichtenberg testified on behalf of the government and she is with TLI.  She's currently with TLI now.  What did she have to say for you, ladies and gentlemen?  Mr. Lambert was responsible for regulatory compliance.  Mr. Condrey was responsible for sales, marketing and business development.  Vadim Mikerin had no role.  The auditors never voiced any complaints about the remuneration payments to TENEX.  She was aware of a TLI customer named Bentway based in the U.K.  Directed payments to a bank in Latvia.  Lack of information from Mr. Condrey was a problem for her in her operations role.  Mr. Condrey maintained all of the TENEX files.  Lambert pushed Condrey to give Ms. Lichtenberg more information about TENEX.  In the year-end review, Lichtenberg complained about lack of access to the TENEX contracts and Mr. Lambert sought the transparency as she testified.

I have one selection from her testimony on Slide 4.  Didn't you voice concerns that you did not have enough oversight on the TENEX contracts because Daren Condrey refused to delegate TENEX work?  We discussed the fact that I needed more information to perform my job efficiently.  Isn't it true, Ms. Lichtenberg, that in fact it was Mark Lambert who pushed Mr. Condrey to give you

more documents, more responsibility, more information about TENEX?

Think about that.  Mr. Condrey steps up here, testifies about a conspiracy in 2007 knowing he has earlier testified about a conspiracy in 2004. Ms. Lichtenberg who has no axe to grind, no motive here other than to tell the truth says that Mark Lambert was responsible for trying to get more transparency relating to the TENEX contracts.  That Mark Lambert wanted to get Wendy's eyes on the TENEX contracts.  That TENEX information wasn't even limited to contracts.  Is that the type of thing someone who had any reason to be concerned about improprieties or alleged bribes, is that something that someone like Mark Lambert would do?  Get into those files.  You can go see them, Ms. Lichtenberg.  That doesn't make sense.

Now we had two representatives from the bank, Cia Partis and Jessica Johnson of Sandy Spring.  What information did we develop there?  Carol Condrey is Sandy Spring's main point of contact.  Carol Condrey fills out the wire request forms including putting the name of the requester on the form she fills out.  You can infer there, ladies and gentlemen, because there is no evidence or testimony that she specifically approached the individual whose name she placed on the form that she did it

potentially without that individual's knowledge. I'm not saying that's inappropriate on her part, but that's a fact that you can find and rely on. Creation of a wire simply means the making of a request upon the bank for a transfer. Verify simply means corroborating that the request was made and that the amount is true. Neither had any information about the internal authorization process at TLI.

Let's go to Slide 5. My questioning Ms. Johnson. All right. And the create simply means request. Right? You are creating the wire. You're inputting the wire for purposes of requesting the bank to do the wire. Right? I'm not sure I understand your question. Well, the customer is creating a wire, but it's consistent with the old version of making the request for a wire. Right? Right. All right. And then another person would have to verify that wire which means that they have to confirm that the wire request and the amounts are correct. Right? Yes. Now you testified a few minutes ago on direct that you know how the wires are initially approved by your clients internally is not something that you are aware of. Right? Right.

So she doesn't know anything about the internal process of the initial approval. That's where the authorization comes from, ladies and gentlemen. The

government would have you believe that Mark Lambert somehow not knowing anything about why these wires are actually going out because Daren Condrey does and Daren Condrey didn't share any information with him. You can't rely on Daren Condrey saying that because he lied under oath and he admitted lying under oath. You can't use that against the state of mind of Mark Lambert.

So the person who authorized the wire and the person who allowed the wire to go out and the person who allowed the wire to go across interstate lines and the person who effectuated the wire for purposes of the mischarged FCPA case is Daren Condrey. As he testified, I authorized the wires. I was the only one.

Who testified next? We spent a lot of time on this gentleman, Mr. Condrey. Slide 26. Mr. Condrey is the sole witness regarding knowledge, intent, joining the conspiracy and understanding the bribery plan against Mr. Lambert. The only witness with any direct evidence. He's lied under oath. He's admitted lying under oath and he's admitted that he has a motive, protecting himself, his wife, his family. His wife's case was dismissed days before he walked into the FBI.

He admitted false statements under oath. He admitted false statements to the outside law firm to save his job. He began cooperating with the government days

after his wife's criminal charges were dismissed.  He's the only witness who attempts to connect Mr. Lambert. He's impeached by other witnesses.

Denied keeping TENEX contracts in a locked drawer.  That's disputed by Lichtenberg and Rosso.  Denied knowing anything about remuneration payments to TENEX before 2007.  That's contradicted by Ravenscroft and Condrey's own plea proceeding under oath, 2004.  Denied there's a middleman in the TENEX and TLI relationship. Ravenscroft differs.

Let's run through some slides.  Number 7.  And the government questioning Mr. Condrey.  Who would approve the payments to Mr. Mikerin for a bribe?  I would.  Only you?  I don't remember anyone else approving them.

It's to your benefit, I asked, to appear today and cooperate against Mr. Lambert who wasn't arrested when you were.  Correct?  I'm not sure how it's to my benefit. I signed a cooperation agreement.  I will serve time in prison.  But less time in prison than if you didn't cooperate.  Right?  Yes.  That's what you're hoping for. Right?  I am hoping for less time in prison.

Slide 9.  You never defined with any degree of particularity or specificity what Mr. Mikerin or McCarron as you call him did at TENEX to obtain contracts for TLI. Right?  He was to influence TENEX so we were given

contracts. It's a pretty general term, isn't it, Mr. Condrey? Yes. Who did he meet with that you know of personally that he explained to you? Anyone? Not aware of anybody he met with. Yeah. When did he meet with anyone, Mr. Condrey, at any time that you have for us? Meet with anyone at TENEX or meet with anyone in general? At TENEX for purposes of facilitating contracts. I do not have that information. Were there any meetings between Mr. Mikerin and anyone at TENEX to facilitate your obtaining contracts, Mr. Condrey? I do not know.

Let's go to Slide 11. More questioning on cross. Let's establish where we are so far. No specific interactions or undertakings by Vadim Mikerin to influence contracts. You had the sole source license for shipment of those contracts. Right? We had the export license for that material. And you can't detail one thing Vadim Mikerin did to facilitate contracts for TLI. Right? That he specifically did, no. Again, they were the best in town. They had the license.

Slide 12. You told the FBI that you thought Vadim Mikerin directed remuneration to offshore accounts as a TENEX representative. Do you remember that? He was. He was a TENEX representative.

Slide 4. And over time, as you testified earlier today, Mr. Fomin ultimately came to resist TLI's

149

quoted rates.  Right?  Yes.  And Boris Fomin could do that because Vadim Mikerin meant nothing to him.  Isn't that right?  I don't know what Mr. Mikerin meant to Fomin.  I don't know how to answer that question.

Slide 15.  Isn't it fair for me to say that the best case scenario for you and your wife were to have both of your cases dismissed by the U.S. government.  Right?  That would be the best case at the time.  Not achieving that, it might be second best to have one of your cases dismissed. Right?  Yes.  And that's what happened.  Isn't that right?  That's what happened.

Slide 16.  Over the course of two to three hours, how many times did you lie?  Again I don't remember the number of questions, but I was not answering questions honestly.  Was it 25?  Again, sir, I did not remember the number of questions, but it was frequently.

That's testimony under oath that he lied frequently to the outside law firm.  We have his testimony under oath that saying he began a conspiracy in 2007 and saying he did so in 2004.  Both times under oath is his admission of false statements under oath.  I called him reasonable doubt in a suit.  You can, too.  That's all you need.  You don't need anything else.  That's reasonable doubt.  A man who comes in here, lies under oath, admits lying under oath and implicates Mr. Lambert.  You can do

that in five minutes.

Number 17.  Just like you could have told the truth to the law firm lawyers who wanted the truth on that day, too.  Right?  They were seeking the truth?  Yes, sir.  And you didn't give it to them.  Isn't that right?  No, sir.  I was trying to save my job and my life at the time.

Think about that and draw your world experience into play.  At that point it's his job.  Jobs are important.  Make no mistake.  But I want you to compare a job and the need to preserve a job with years in jail, taking care of your wife, making sure that her case is dismissed.  Doing what you need to do to save yourself from prison time as opposed to holding a job.  He said he would lie to save his job.  You don't think he would lie to save his life, his wife, his family and himself when he knew Mark Lambert was not arrested and he and his wife were?  And he swore under oath it started in 2004 and he comes up here and says 2007.  And the government doesn't bring it out on their direct examination.  I do on cross.  And the government's closing didn't even talk about it today.  Mr. Salem will have some words for it on rebuttal I'm sure because I'm spending so much time on it.  You can think about how that dynamic unfolds when you evaluate the facts in this case, ladies and gentlemen, and I encourage you to do so.

Slide 19.  We talked a little bit about that export license.  Right?  Do you remember that?  Yes, sir.  Isn't it true that the export license was obtained from the NRC, the Nuclear Regulatory Commission through the Department of Energy.  Right?  Yes.  That would be the process.  And it ran through the duration of the government program to ship uranium.  Correct?  The export material from U.S. to Russia.  Right.

Slide 20.  Now it's also true that some of the competing transport companies were actually owned by some TENEX competitors.  Right?  Yes.  That's true.  So it was certainly not of interest to TENEX to line its competitors' pockets by hiring competitors to ship the uranium.  Right?  It would not be their advantage.

And in fact, Slide 21.  TLI did bring a lot to the table for purposes of being able to win that project.  Right?  Yes.  We included a lot of additional services to the bid since it was a firm fixed contract for which our competition apparently didn't.

Slide 22.  Now it's also true that some of the competing transport companies were actually owned by some TENEX competitors.  Right?  Yes, that's true.

Another reference to lining of the pockets that we saw in an earlier slide.

Slide 23.  Now there came a time even after you

established that good relationship with TENEX that Mr. Mikerin on behalf of TENEX would contact TLI and request that TLI justify to TENEX why TLI was the most qualified to maintain TENEX contracts.  Right?  Yes.  There are emails from Mr. Mikerin?  Yes.  And he would call TLI and ask for documents justifying why TLI was the best.  Right?  Yes.  Mr. Mikerin would do that.  Yes.  And you and Rod Fisk and later even Mr. Lambert worked together to create documents to provide to TENEX with each of you writing a particular part to justify why the required expertise was necessary.  That sounds right?  Yes.

Looks like a lot of work undertaken by TLI to justify its ability to maintain and to pursue new contracts.  A lot of work there.  False alleged bribery scheme would not entail that kind of work now, would it, ladies and gentlemen?  A theft or embezzlement scheme would entail that kind of work, wouldn't it, because a theft embezzlement scheme would have nothing to do with TLI needing to justify its expertise.  Right?  Theft and embezzlement has nothing to do with getting contracts. Mr. Mikerin had no influence.  Mr. Condrey never did any due diligence, never stopped to figure out what kind of lie Mr. Fisk was telling him.  He just bought it.  And then comes in here and misrepresents what happened to you.

You are never on any emails where Mr. Fisk --

I'm on Slide 24.  I'm sorry.  You are never on any emails where Mr. Fisk and Mr. Mikerin and you, just the three, reference the word "cake."  Correct?  I don't remember being on any emails with Mr. Fisk and Mr. Mikerin referencing cake.

You know already the answer to that question. You know that "cake" was the private code word used by Mr. Fisk and Mr. Mikerin to talk about their theft scheme, their embezzlement scheme.  They didn't want Lambert. They didn't want even Condrey to know anything about what was really going on.

So you're saying that not only do you not -- on Slide 25 -- not only do you not know about Rod Fisk approaching Mr. Ravenscroft.  Right?  I was not aware of that.  And that you are not aware of the file folders referencing TENEX remuneration existed in the offices of TLI prior to 2007.  Right?  I'm not aware of that.

Ladies and gentlemen, I ask you, I ask you on behalf of Mr. Lambert to use your life experience, your intelligence, your sound judgment, your reasonableness and you compare Mr. Condrey to Mr. Ravenscroft.  I want you to balance them out in terms of who is telling the truth, who is making sense.  I think that decision is easy.  But it's your decision and we're happy you have it.  But there's no contest between the truthfulness of Mr. Condrey and the

truthfulness of Mr. Ravenscroft on this point or any other.

Let's go to 26. On that very point, isn't it true that you testified a few minutes ago that you knew of no TENEX remuneration program prior to 2007? I don't remember a TENEX remuneration program being in place before then. My memory is starting in 2007.

My memory is starting in 2007, four years before he gave that testimony. In 2015, he pled guilty under oath to 2004. That's what he said. 2007. That's it. That's my memory. 2004. Court document in evidence. And Mr. Ravenscroft. Well, we had this operation going in 2002. What's Mr. Ravenscroft's motive for not coming in here and tell you the truth. What's Mr. Condrey's motive to come in here not only to not tell you the truth, but not even reference, not even try to explain anything about his plea testimony from 2015 where he said 2004? Who opened that up? The defense. That wasn't proffered by him on his own on direct.

Slide 27. When people needed access to those contracts, they came to you, to your office. Right? Yes. Then you wouldn't say that they would have had independent access to those contracts without going through you first. Right? Right. They could go into my office and get them out of the drawers. I didn't necessarily have to be

there.  But if I was there, they would ask.  They weren't locked is what I meant to say.  But they were in a drawer with a lock and key.  Right?  They were in a drawer with a lock and key.

I want you to remember Mr. Rosso as you review that testimony.  What motive does Mr. Rosso have, former CFO, he was very clear, under lock and key.  That's what he said.

I want to go to Slide 28.  You are under oath in 2015.  Right?  Yes.  You are under oath on Monday.  Right?  Yes.  Now both of your representations under oath can't be true.  Right, Mr. Condrey?  I don't know how to answer that question.  How about a truthful answer?

He ultimately did say one is inaccurate.  The evidence here submits that both are inaccurate.  2009 when Fisk, punched out of his job, needed an income stream, went and sold a false bribery plan to Mr. Condrey.

29.  So my question stands, both of your representations under oath cannot be true.  Right?  One is inaccurate.  Yes.

There it is.  I said it before.  I'll say it again.  That's all you need in this case.  That's all you need.  The only evidence against Mr. Lambert that's direct and testimonial about his state of mind, about his joining this conspiracy, about his understanding of what was

really happening comes from Mr. Condrey who's got a motive to protect his wife, his life, his family and who now has represented that he's told untruths under oath.  Someone who's told untruths under oath cannot be trusted.  They cannot be relied upon.  They cannot be credited.  They cannot be used to convict another man.

Let's go to Agent Butcher.  No personal knowledge of any fact in this case.  Cannot identify the handwriting on Exhibit 85.  Did not know the purpose of Exhibit 85.  Cannot testify as to the origins of Exhibit 85 and most importantly cannot say that Lambert ever saw or received Exhibit 85.

It was a note found in Mr. Mikerin's office.  Numerous different types of handwriting.  There's no direct or specific evidence that Mr. Mikerin even wrote that.  There's no evidence as to whose handwriting was on that note.  There was a Russian translation.  But that gives you no information about what it means in this case.  And most importantly, it gives you no information about what it means with regard to Mark Lambert in this case.  There's nothing in that note that says Mark Lambert knew of the note, saw the note, understood the contents of the note or that in any way he is implicated by the note.  It was found in Mr. Mikerin's office.  The evidence here is that Mr. Mikerin conspired with Mr. Fisk to steal Mark

Lambert's money. And unknown to Mr. Condrey, who doesn't have the ability to stop and think because he didn't testify to you that he did anything about being invited to a criminal conspiracy other than to say okay, sounds good. Does that make sense? Who does that? He got stolen from, too, technically.

Let's talk about Mr. Kolodjeski. Never traced any funds out of the foreign bank accounts. Could not establish Mr. Mikerin as a beneficial owner of any accounts. Never inquired or interviewed anyone at Sandy Spring Bank, ladies and gentlemen. Never interviewed anyone at TLI. Most importantly, didn't stop to think or investigate who signed the invoices at TLI.

We will show you in a few minutes Defense Exhibit 371. Now you remember Mr. Kolodjeski stood here, I stood here, the charts were in here. You had a good look at them. I got to ask a couple of questions after he took the witness stand and the charts traced money in, money out, names, very pretty, very sophisticated. There is one thing on those charts that was the most -- it is the most important thing for you to know and it wasn't on those charts and he didn't testify to it because he didn't look at it. He didn't care about it apparently. Talked about a case that's very important for you to decide who authorized wire payments. Didn't even look at who

authorized the wire payments.  Didn't even talk to anybody at TLI as to who to authorize the wire payments.

Here's a column that he omitted intentionally or otherwise from his charts.  Right here.  371.  Defense exhibit.  Payment date.  It was a wire request.  Invoice approval.  Mr. Condrey as he testified, invoice check, payee TENEX.  Remember who talked about the checks internally at TLI?  Mr. Rosso.  I want you to look at the date.  See up above Rodney Fisk, Daren Condrey.  See the date, 12-3-2009.  That's when the real scheme started.  That's when Mr. Fisk being pushed out went to Mr. Condrey and said you got to start paying bribes to Vadim.  Untruthful, of course.  But that's how he had to cover a continued income stream.  He couldn't say I'm stealing from you, bud, you want in?  That wouldn't have worked out too well.

Slide 31 is some quick testimony.  So you did not review and obtain information that a supporting invoice served as the foundation for these payments.  Correct?  The payments to Wiser, Leila and Ollins.  That is correct.  No, I didn't see any TENEX invoices relating to payments to Wiser, Ollins and Leila.

Next witness is Mr. Ravenscroft.  I've talked about him.  He testified about the establishment of a TENEX remuneration program.

Michael Rosso is Slide 30.  He testified as the former CFO at TLI.  He was aware of the remuneration payments at TENEX as a legitimate program.  He helped craft an internal TLI bid document identifying remuneration as a customer commission.  Mr. Condrey handled the spreadsheets exclusively.

I want to go to Slide 35.  Did Mark Lambert ever assist you in accounting for remuneration at TENEX?  No.

Slide 37.  And were all the remuneration payments for each of these companies treated in the same way on the general ledger?  Yes.  Did Mr. Lambert ever discuss with you how the remuneration payments were tracked on the general ledger?  No.  Who in your view was responsible for handling how the payments TENEX remuneration internally were approved in bulk?  The invoices came into Carol.  Carol would discuss the invoices with Daren and handle.  Whenever the wire transfer was requested to be sent, she would sit down with Daren and get the wire done.  He had to approve it.  He had to review the invoices attached to it and substantiated the amount charged.

I want to go to 39 quickly.  Mr. Rosso, could you have reviewed those TENEX remuneration spreadsheets on your own?  No.  They were shown to me and then taken back and filed away in his file cabinet.  Whose file cabinet?

Daren's.

40.  It was a locking cabinet?  Yes.  And he did lock it.  Did you see Mr. Condrey lock the cabinet?  Yes.

Slide 44.  And who authorized or approved the payment of the invoice internally at TLI in the first instance?  Daren.

I want to move ahead to Professor Deborah Payne.  Slide 31.  Fisk's widow.  Fisk and Mr. Mikerin had a close relationship.  Understood that Mikerin has interested in pursuing lucrative business ventures with Fisk.  Heard Mikerin explain that he and Fisk were destined to make a lot of money together.  Found coded emails only between Fisk and Mikerin.  His last days, Fisk told his wife Mikerin would be seeking to recover from her an envelope that he kept in his home at the FBI's request, that envelope was transferred by her.

Ladies and gentlemen, you saw Professor Payne.  She identified herself as a PhD in drama, theater.  Now you may have found her a little dramatic.  That's understandable.  But she was truthful.  She was truthful.  It was painful for her to testify.

MR. SALEM:  Objection, Your Honor.  It's the jury's decision.

THE COURT:  Overruled.

MR. SULLIVAN:  Let's talk a little bit about the

coded emails.  The government makes much of the "L.F." for coded emails because that's literally at this point all they have.  You can't rely on Mr. Condrey as I've repeatedly said because he's lied under oath, that he has been proven to be inconsistent by the testimony of other witnesses from whom you have heard.  Many, many and I want you to look at them carefully at those "L.F." or "lucky figure" referenced emails were on either official TLI emails, they were, they were on official TENEX emails.  Many of them were.

If that's the case, ladies and gentlemen, someone who would be using a reference to "L.F." on a TENEX email like Mr. Mikerin wouldn't have cause to be concerned about someone who might have seen it.  Same goes with TLI.  In fact every email that the government has that relates to Mr. Lambert or Mr. Condrey was on a TLI email.  They have one text which I'll get to in a minute, but they're on TLI emails.  Nothing to hide.  Mr. Mikerin uses TENEX emails.  Nothing to hide.  Except on his part, he was hiding the theft embezzlement scheme, although he communicated with Mr. Condrey that you need to pay Mr. Mikerin to cover his theft embezzlement scheme.

Let's go to Exhibit 12.4, page 2.  Government's Exhibit 12.4.  All we have here is Mark Lambert's note that we make next to nothing, but it helps out TENEX.

Helping out TENEX is what Mr. Lambert is talking about doing.

Let's go to Exhibit 73.  The only reference to "L.F." in this email is at the very end of the email chain.  Email that Vadim Mikerin originally sent to Daren Condrey's official TLI email account, not Mr. Lambert. It's forwarded to Mr. Lambert.  It's a TENAM USA email account.

And 75.  Mr. Lambert uses his official TLI email account referencing an agreement between Mr. Mikerin and Mr. Condrey.  He merely replies to Mr. Mikerin to let him know that Mr. Condrey is not there.  He doesn't respond to Mikerin's request to a reference to "L.F."  The exchange is on Mikerin's TENEX email.  He would think that if this was a super secret problem that Mr. Mikerin was talking about, why would he use the TENEX email.  Mr. Lambert believed this was commissions, remuneration.

Exhibit 48.  We have another official TLI account and he specifically notes, Mr. Lambert does, how he values TLI's relationship with TENEX, not Mr. Mikerin.

Now the government pointed out Government Exhibit 69 to you.  Again on official emails between the interlocutor, between the counter parties.  Mr. Lambert does not even use the words "lucky figure."  He says "lucky number."  Not the sort of mistake someone would

make if he was clued in as to what was really going on. Of course, he wasn't clued in at all with regard to any alleged bribery scheme and he wasn't clued in at all with regard to the true conspiracy theft scheme.

I want to go to Exhibit 76. The government referenced that as well as the text. Mr. Condrey is the first person to use "L.F." at the beginning of the exchange. Mr. Lambert uses the word "L.F." only in response. And he questions as to who at TENEX understood remuneration, not whether it was something that, you know, he wasn't aware or was unsure. He wanted to know who he could deal with at TENEX for this remuneration. Why? Because the whole subject here is demurrage. The whole idea was to split the demurrage fee between TENEX and TLI. So who's aware of the commission so that they only take half the commission this time? That's what that email means.

I want to quickly move to elements of offenses. I'd like to go over how the evidence you have seen and heard relates to the law that Judge Chuang will instruct you about as he has done before our argument and as he will do again after. He will tell you that to convict Mr. Lambert of any offense, you must find beyond a reasonable doubt each and every element of such offense. Here, the government has simply failed to produce sufficient

evidence for any count of any offense.  The government has not been able to establish Mr. Lambert's state of mind.  Why?  Because they have no evidence of Mr. Lambert's state of mind except for Mr. Condrey and he can't be trusted or relied upon.

Let's talk about the Foreign Corrupt Practices Act.  The government must prove beyond a reasonable doubt that Mr. Lambert acted willfully and corruptly.  What the government has actually showed you is nothing that would suggest that Mr. Lambert acted with the intent to induce a foreign official to misuse his position.

You've seen one email referencing to TLI obtaining a contract from TENEX without the need to go to tender.  As you have seen, TLI was already the most qualified company for TENEX to hire, had the only export license provided by the Nuclear Regulatory Commission and the Department of Energy and had to demonstrate his qualifications time and time again as Mr. Condrey testified.  Not that I'm suggesting you should believe Mr. Condrey.  But when Mr. Condrey's testimony is inconsistent with the theory of this case, you can look at that.

Even that email refers to a detailed internal document prepared to assess qualifications.  I've earlier referenced that there is no evidence that Mr. Lambert or

Mr. Condrey were anywhere near any emails relating to "cake." I've explained "lucky figure" to you in the past few minutes. The "cake" was the embezzled funds. Cake was what Mr. Mikerin and Mr. Fisk were taking out of TLI under the false rubric of a bribery scheme explained by Mr. Fisk to Mr. Condrey who simply accepted it.

The evidence showed that Carol Condrey whose charges were dismissed also was aware of code words and even Mr. Mikerin's use of the Marvin Jodel email. What has the government failed to show you in this regard? No evidence of any specific act Mr. Mikerin took to assist TLI in obtaining contracts. What does the evidence show about Mr. Lambert's state of mind understanding that anything about Mr. Lambert's state of mind that's referenced by Mr. Condrey is not credible and not believable because he admitted lying under oath which you can take to the bank as reasonable doubt?

You heard Wendy Lichtenberg say that Mr. Condrey kept her in the dark and that the only person who wanted to shine a flashlight there was Mark Lambert. That's inconsistent with a co-conspirator having knowledge. You need to ask yourself if he was concerned to the extent Mr. Condrey testified he was, why would he allow open access to the contracts for someone who had nothing to do with any scheme? Mr. Lambert wishes he could have known about

the theft and embezzlement, but he didn't.

You heard Mr. Condrey acknowledge at the end of 2009, TLI's parent wanted Rod Fisk out.  And who was it that pushed Mr. Fisk out?  Mark Lambert.  Mark Lambert didn't trust Mr. Fisk.  Why would a person engaged in a conspiracy to corruptly induce a foreign official to misuse his position push out the man with the longest and the strongest and the most definitive relationship with Mr. Mikerin?  That was Mr. Fisk.  Push Fisk out.  He's my co-conspirator.  Makes no sense.  2007.  2004.  Makes no sense.

THE COURT:  Mr. Sullivan, you had asked for a five-minute warning.  You're at five minutes.

MR. SULLIVAN:  The government must also prove that Mr. Lambert offered, promised or authorized payment of money.  All the government has shown you is that Mr. Lambert's name was written onto the wire request by Carol Condrey.  Only thing Mr. Lambert really may have created through that having his name written elsewhere, all he did was verify which means corroborate which means verify that a request was made.  He didn't have information as to the reason for the request.  What is missing?  Proof beyond a reasonable doubt.  There's no evidence that he believed that any of these wire payments were fraudulent, false, made to induce, made to pursue a scheme or artifice, made

to pursue Mr. Mikerin for bribes.  Mr. Lambert did not authorize the invoices.

The government must prove beyond a reasonable doubt that the payments at issue were made to induce a foreign official to use his influence.  What did Mr. Condrey say?  What did Mr. Condrey say that he thought he was getting influence?  Influence is in the statute.  Influence is in the FCPA.  He didn't even use his own words there.  All you have on that is Mr. Condrey.  All you have is Mr. Condrey saying that he interacted with Mr. Lambert.  You can't trust him.  You can't rely on him.  He lied under oath twice.  He himself, Mr. Condrey, said he was unaware, unaware of anything that Mr. Mikerin did.

Wire fraud.  To convict Mr. Lambert of wire fraud, the government must show that he knowingly participated in a scheme that was calculated to deceive TENEX.  What has the evidence shown?  All the government has shown is that TLI did not include the amounts of TENEX remuneration in their quotes.  The government has introduced no evidence about any affirmative misrepresentations made to TENEX.  The government has not introduced any evidence about who at TENEX reviewed TLI's quotes or how they may have scrutinized or relied on those quotes, no evidence about TENEX's decision making process or what they would have considered to have been material.

Not one witness from TENEX has been here.  Not one witness from TENAM has been here.  Where is TENAM?  TENAM is in Bethesda, Maryland.  Wouldn't it have been helpful for a TENAM witness to come in and say how they were duped?  No evidence from the victim here, alleged victim at all.

The government must also prove that Mr. Lambert willfully participated in a scheme to defraud.  All that the government's evidence aside from Mr. Condrey does is to show that Mark Lambert was heavily involved in the logistics and operations aspect of the business, that he helped to estimate the actual cost.  Nothing in that documentation suggests that he prepared quotes or the underlying cost information with any specific intent of defrauding TENEX understanding and operating under idea that since 2002 a legitimate rebate program was in place.

Conspiracy.  The government must prove beyond a reasonable doubt that there is an agreement.  The only information that Mark Lambert entered into any agreement comes from Mr. Condrey, that he met with Mr. Fisk in 2007, decided to make payments after being lied to by Mr. Fisk and Mikerin.  I've been through this before.  He doesn't even recall the specifics of the meeting.  He said 2007 at some point.  2005, 2006.  He said 2007 under oath.  He said 2004 under oath.  No direct evidence exists, therefore, that Mr. Lambert ever agreed to enter this

alleged conspiracy.

Money laundering, ladies and gentlemen.  To convict Mr. Lambert of money laundering, the government must prove beyond a reasonable doubt that he caused funds to be transported outside the United States and that he did so with an illicit intent, an intent to promote a violation.  There is no evidence that Mr. Lambert was involved with Mr. Condrey and that by simply verifying these wires, he had any understanding or appreciation that they were undertaken for any illicit person.  Again a connector to the conspiracy, the only thing you have are some "L.F.'s" that I've already discussed with you that certainly does not prove beyond a reasonable doubt that Mr. Lambert was involved in any illicit activity.  And Mr. Condrey who is here because he has a motive, is here because he needs to protect himself, his life and his wife and has admitted to you that he lied under oath, who came up and testified to 2007, didn't direct you to 2004.

So where does that leave us?  The government has not given you the full story here.  They have provided you with a skewed set of facts to match their narrative, but they have not given you all of the information.  They called one TLI witness and it fell to the defense to bring in Norman Ravenscroft and Michael Rosso.  The government did not call a single witness from TENEX or TENAM who

170

could have given you first hand information about how they reviewed those bids.

The government's own forensic accountant didn't even look at TLI's internal documents.  The government's chart which shows a full picture of the conspiracy omits the most important fact.  Who at TLI did the authorization?  The government barely mentioned Rod Fisk, the man who actually started this scheme with Vadim Mikerin in 2002.

THE COURT:  Mr. Sullivan, your time is up.  You can sum up though.

MR. SULLIVAN:  Ladies and gentlemen, as I've said before, the real story here is an embezzlement theft scheme undertaken by Fisk and Mikerin.  Now I'm going to conclude in just a few remarks.  When you were first seated in this jury box, Judge Chuang outlined for you the principles of our democratic process and how our criminal justice system works and why it has been so enduring for so long and a primary focus on that process is the jury system.  Jurors like you, people who come from the community and who are obligated to take their time and spend their time to find facts so that our society may move forward in a civil and orderly way.

I want to say this, ladies and gentlemen, Mr. Lambert personally selected each and every one of you.

For weeks and weeks leading up to this trial, I have been entrusted with the legal best interest of Mr. Lambert and now I turn him over to you and I do so willingly because as I said, he has selected you.  He knows you value your oath.  He knows you will take your oath seriously.  He knows that you know the difference between someone who values their oath and someone who doesn't.  And the only man who stands, the only thing who stands between Mark Lambert and the front door is Mr. Condrey and he violated his oath repeatedly.

I turn him over to you now so that you may decide facts.  And I ask you and I know that you will decide those facts without fear, without favor, without sympathy and without prejudice and you will do your best to find out what happened here and understand the facts in this case.  Maintaining your oath as a bulwark and as a rock solid foundation for our wonderful, civic, operating and just criminal process.  And if you do that, which I know you will, the only verdict you can return that the evidence compels and that justice requires is that the government has failed to prove beyond a reasonable doubt any count in its indictment because the government has to rely on Daren Condrey and he didn't tell the truth.  Thank you.

THE COURT:  Thank you, Mr. Sullivan.  Again as

we're setting up for the brief rebuttal though, you can stand up and stretch if you would like.

Mr. Salem, I'm adding two minutes to your time if you need it because the defense went over.

MR. SALEM:  Good afternoon, ladies and gentlemen.  For three weeks, almost three weeks, you've been subjected to a narrative of distortion, confusion and misdirection and it's all about the defendant's case because in the end, as Mr. Sullivan just said, if we don't have Condrey, we don't have anything.  That's wrong because you've heard other information in this case. You've seen other information in this case.  You've seen Mark Lambert's own words on emails, on I-chats and you can tell from that alone what he's done in this case.

So although he stands there or stood there and told you that the government relied only on Daren Condrey, that's not true.  And I want to tell you that his defense appears to be that if you don't believe Daren Condrey, there's no case.  There's no evidence of guilt except the defendant's own words, but you shouldn't believe them because they're on company emails except when the defendant is engaged in I-chats that weren't and it makes no sense and that's the distortion and distraction and misdirection of this case from the defendant's standpoint.

And I want to talk to you about this for one

minute.  You have instructions from Judge Chuang about conspiracy and about co-conspirator's liability and aiding and abetting.  This chart offered here to show you what? 25, apparently 25 invoices.  Not once does Mark Lambert appear on this invoice.  Any invoice.  And you know what? Listen to Judge Chuang's instructions.  Go back and read them.  It doesn't matter one wit that Mark Lambert's name doesn't appear on this because if there's a conspiracy -- and I submit you know that -- and Mark Lambert's in it, then the fact that somebody else does it is just as if Mark Lambert did it.

If there's a conspiracy -- and I submit to you you will find one -- if and with respect to wire fraud, Mark Lambert has aided and abetted the instruction that Judge Chuang read to you.  Aided and abetted.  I'm sorry. Not with respect to wire fraud.  If he's caused a wire to be sent, if he's caused it, then he's guilty as if he did it himself.

And so in the end, this chart means nothing because Mark Lambert doesn't have to be on this.  Mark Lambert doesn't have to be on the emails.  Mark Lambert doesn't have to be on the I-chat.  He is, but it's not important because if he's on something that convinces you that he's part of the conspiracy, that's sufficient because once he's part of the conspiracy and the acts

foreseeable to him are done by others, then he's as guilty as if he did it himself. And that's what you should understand in this case. And this chart is part of the misdirection and the distractions and the confusion raised in this case.

Now let me talk for a few minutes about the dates because I know Mr. Sullivan made such a big deal. I want to say first thing, you are the deciders of the facts. Mr. Sullivan is not the judge here of the facts. You are. Exactly what Daren Condrey said and why he said it, that's up to you. But suffice to say the following with respect to the dates. They don't mean a thing. Not to say they don't mean a thing. They mean something. You need to know that the conspiracy existed between 2007 and 2014. It might have started in 2004, might have started in 2002. But the fact of the matter is for purposes of this case, you need to know that there was a conspiracy between 2007 and 2014 involving that man over there, Mark Lambert. That's what's important. The dates as to when it began, they're not that important. Right? Because if it happened before, it doesn't matter. You need to focus on what happened between 2007 and 2014. And the evidence in this case shows that between 2007 and 2014, that man was involved with Daren Condrey and Rod Fisk, at least until he passed away, to commit violation of the Foreign

Corrupt Practices Act, wire fraud and money laundering as well as conspiracy in dealing with Vadim Mikerin.

And so I tell you those dates also as being not important because in the end, when you look at the document, the document that's in evidence, it says beginning in or about. All right. There's no need for certainty. And what you heard Daren Condrey say was his memory was that it's 2007. Okay. If his memory is a little off, that doesn't make him a liar. He stands there and calls Daren Condrey a liar. That's your decision, number one, and, number two, the dates are unimportant. What you need to focus on is was there a conspiracy. Were there acts that Mark Lambert did with Daren Condrey and Rod Fisk to gain this advantage by paying bribes to Vadim Mikerin beginning in 2007 and continuing to 2014? And just because he's on the stand and he's I submit to you may be nervous, whatever the story is and he doesn't remember the exact date, that doesn't make it important.

And finally, he gave you dates between 2004 and 2007. Mr. Sullivan says, well, it began in 2009. That's his conclusion. The bottom line is you've seen evidence here between -- beginning in 2007. And so there are dates between 2004 and 2007. That's in the middle of the decade of 2000. He's here testifying in 2019. And so if he doesn't remember exactly when it began, okay. That

doesn't make him again a liar.  It suggests to you that if he can't remember that the date was 2004, '5, '6 or '7, that somehow he's lied about everything he's told you.  That's what they want you to believe.  That there was no conspiracy.  That Daren Condrey did nothing with Mark Lambert.  That Daren Condrey pled guilty to a charge of conspiracy to violate the Foreign Corrupt Practices Act and wire fraud for no reason because he was lying all along.  And that's just not what the evidence shows.

So the dates quite honestly are not that important.  They are important only for you to know that beginning in or about 2007, that this defendant was involved with Daren Condrey and others in committing the violations that are charged in this case.

Daren Condrey when -- I think, ladies and gentlemen, you know, you are the finders of the fact.  You have to assess credibility.  And I ask you to think about how Daren Condrey was on the stand for the three days almost that he testified.  All that time, all the answers he gave I submit to you were consistent.  I submit to you that he told in a matter of fact way exactly what was going on because it was going on.  You assess his credibility.  Forget about the dates.  Think more about what the acts were.

And when you think of Daren Condrey and you're

concerning yourself with his credibility, match them up to all Ms. Sisti went through on her closing argument, all the emails that involved Mark Lambert on them talking about "lucky figures" and "cake."  Well, I guess he doesn't talk about cake.  But "lucky figures," "L.F." and writing to and from the Marvin Jodel account.  Those are the things that matter.  And in the end, of course, they show that he was involved between 2007 and 2014.

Now this scheme so you know I think so I remind you, this scheme was a coverup.  And as much as it's a bribe scheme and as much as there's wire fraud and money laundering, it was a coverup.  It was designed to make these payments so that nobody who was looking at it would really know.  And that's why it's so important to understand how when the conspirators talked to each other, right, they don't use the same terms that were used in the documents.

That remuneration is the word I guess everybody wants to hear.  Remuneration is on all the forms. Remuneration is on the spreadsheets.  Right?  Anything that may become knowable to the auditors, to Daher, to other people at TLI, remuneration is on there.  It's only when there are communications among the conspirators that they talk about these code words and those code words are part of the coverup.  "Lucky figures," "L.F." and the

right circumstances, "cake" and then you know about Marvin Jodel.  Right?

And, Mr. Ettinger, if you'd put up the Marvin Jodel email, please?

If you'd take a look at that, ladies and gentlemen, this gives you a flavor for what was going on with Mark Lambert and Daren Condrey, right, and the "lucky figures" that are mentioned there.  And the Marvin Jodel account.  Could we see that?  Right?  Marvin Jodel.  So this gives you an idea of how they were attempting to cover up this scheme by using these code words and making it otherwise look normal so that people would not know. So they thought it would be remuneration and you heard remuneration as part of the Japanese contracts.  It was a great way to ensure that this scheme would be hidden from everybody else.  It's a great way for the TLI principals that you saw in the emails.  It's a great way for Mark being totally informed to use the same "lucky figures" and "L.F." code words.

And so what that it's "lucky numbers" on one occasion?  So what that he uses "lucky numbers" instead of "lucky figures?"  Did he call it remuneration?  No.  It's just another word for the same bribe scheme that they were covering up at the time.

And there should be no question in your mind

that Mark Lambert was involved in that.  He used those terms.  Those terms are written to him and they're all essentially about him and Daren Condrey and Rod Fisk and Vadim Mikerin.

Now let me talk briefly about Ann Harrington because Mr. Sullivan had said essentially Ann Harrington was irrelevant.  But she was here for the purpose of telling you that ROSATOM, which by the way used to be the ministry of atomic energy in the Soviet Union before that.  You heard that.  ROSATOM which is 100% owner of TENEX, which is 100% owner of TENAM, that somehow that testimony is irrelevant to this case and that's just not true.  Her experience, her 30 years of dealing in the industry and nuclear proliferation is what this case is all about after all.  It's the down blending of Russian nuclear material for the sale to the United States.  And her experience and her involvement in that area put her in a unique perspective to tell you that there was an interlocking relationship between the Russian government, the former ministry of atomic energy, TENEX and TENAM, they were all part of the Russian government.

And, you know what?  In many ways, Ann Harrington is irrelevant as Mr. Sullivan said.  And do you know why?  Because if you didn't have her, you could use your common sense and everyday experience just like Judge

Chuang told you and conclude that since this is the sale of uranium down blended from Russian nuclear weapons and their arsenal in Russia, that it would only make sense to everyone that the Russian government would control that. But you had Ann Harrington tell you that as well and her opinions based on her experience are an important part for you to assess when you determine whether or not Vadim Mikerin was acting for and on behalf of a instrumentality of the Russian government.

I will tell you this. I will tell you that the fact that Mr. Sullivan yells at the defendant and that he yells at you doesn't diminish the truth in this case. The truth is the evidence you have seen, all the emails, all the testimony, and the interlocking relationship between the things that were told and learned about.

And let me talk briefly about people like Wendy Lichtenberg and Mike Rosso because they were here. That's right. They have no dog in the fight, per se. They were here as TLI employees. They were here to tell you essentially what they know. And what did Wendy Lichtenberg say? Number one --

THE COURT: Two minutes, Mr. Salem. You asked for that.

MR. SALEM: Thank you, Your Honor.

She didn't know about remuneration. Okay.

That's fine.  She's in the shipping department.  But she didn't know about "L.F." or those terms either.

Number two, Mike Rosso.  He also didn't know about those terms.  And you heard unequivocally from him that if he had heard those terms, he'd be suspicious, there'd be a problem because the coverup was that man with Daren Condrey and Rod Fisk and Vadim Mikerin making it look like it was a legitimate thing.  You know when you go back there and you look at the contracts, you have Japanese contracts, you can see that remuneration is included in them.  You have a feed contract.  I think there's one with lots of addenda.  You can see remuneration is not in there at all.  Not one word about it because in the end, it was a scheme.  It was a bribe scheme to make sure that Vadim Mikerin got paid.

And these offshore accounts as far as TENEX getting the money or exactly what they were for, let me just say this.  Right?  You can go back there and look at the documents.  You will find that TENEX wires money into TLI which is performing these services for it and ultimately, the money comes from TENEX of Moscow and there should be banks in the records that you can look at which are Moscow banks.  The money goes out to these locations that Ms. Sisti talked about in Cyprus, Latvia and Switzerland which are companies -- banks registered in

other countries at the direction of Vadim Mikerin and I ask you to use your common sense and everyday experience to figure out that when it went there, it wasn't going back to TENEX.  TENEX wasn't getting that money.  It was for the benefit of Vadim Mikerin and maybe others.

And the last thing I'd like to do is do the I-chat.  Just quickly if you can put that up.  In that, ladies and gentlemen, you will see what there is is a secret conversation.  Not a secret conversation.  It's a conversation with Mark Lambert and -- between Mark Lambert and Daren Condrey.  But you'll see where it says want to know about -- want to know if Boris would really know about "L.F."  Well, they are sharing a secret, aren't they?  Because they're talking about something that they know about, the two of them know about, but others don't.  And all along the existence of this conspiracy, that's what it's been about.  Two people talking in code words about what others don't know.

And when he says that, want to know if they want to know about "L.F.," again that word is being used and there's actually no mention of demurrage.  That's just silly.  You should reject that and determine that they're talking about that because their interest is if they are paying off a bribe, they can't understand and Boris getting part of it, Mr. Fomin, they can't understand why

there would be any problem in keeping up these contracts because all along, it's not remuneration.  It's bribes.  All along, it's not about demurrage.  It's bribes.

THE COURT:  Mr. Salem, if you can sum up?  I think your time is up.

MR. SALEM:  All right.  I will do that, Your Honor.

So the last thing I think I want to say about this, ladies and gentlemen, is that when you look at the I-chat -- actually, when you look at Exhibit 85, which is that form that was found on Vadim Mikerin's desk at TENAM, you have kind of a road map to everything that's happened here.  When you see Leila, when you see the 7%, you see the quarterly payments, the dollar signs, you see Daren and Mark, you see lucky figures.  Everything is on there that tells you that this involved all of them.  We don't know if Mikerin wrote this, but I think there's an instruction the judge has given you about inference and you can draw the inference that Mikerin wrote that or Mikerin took that down or Mikerin needed it because in the end, that's the group that was involved in this.

And the only thing missing from that particular email that's important to you is Marvi Jodel and you've seen Marvi Jodel writing to Mark Lambert, copying Mark Lambert, talking about "L.F.," talking about "lucky

figures" and that's what this case is about.

And so in the end, we ask you based on all the evidence you've seen, based on all the evidence you've heard including Daren Condrey, that you return the only verdict that is just in this case is a verdict of guilty on all counts. Thank you.

THE COURT: Thank you very much, Mr. Salem.

So, ladies and gentlemen, again we're holding you late for lunch. I understand that. We will do our best to get you to lunch as soon as possible. There is, as I said, one last instruction, important instruction I need to give you to set you up for your deliberations.

Members of the jury, thank you for your attention today during my instructions on the law and the attorneys' closing arguments. We've now reached the time for you to begin your deliberations on this case. My warnings not to discuss the case among yourselves will no longer apply once you begin your deliberations. At that time, it will be your job to discuss the case and reach a verdict.

However, my preliminary instruction that you are not to discuss this case with family members, friends, co-workers, the media or anyone else and that you are not to do any independent research about this still applies during your deliberations.

Specifically during your deliberations, you should not discuss the case with or provide any information about the case to anyone.  This includes discussing the case in person, in writing, by phone or by any electronic means, by text messaging, email, Facebook, LinkedIn, Twitter, blogging, Internet chat room or website.  You may not talk to anyone on the phone or in person, correspond with anyone or communicate by electronic means about this case with anyone except with your fellows and then only while you're in the jury room.

If you are asked or approached in any way about your jury service or anything about this case, you should respond that you have been ordered by the judge not to discuss the matter and you should report the contact to the Court, to me, as soon as possible.

You should not try to access any information about this case or do research on any issue that arose during the trial from any outside source including dictionaries, reference books or anything on the Internet. Information that you may find on the Internet or in a printed reference might be incorrect or incomplete.  And in our court system, it is important that you not be influenced by anyone or anything outside this courtroom. Your sworn duty is to decide this case solely and wholly on the evidence that was presented to you in this

courtroom.

Now when you retire to the jury room, your first order of business will be to select one member of the jury to serve as your foreperson.  The foreperson will sign all communications with the Court including the verdict form and be your spokesperson here in court.

If you need to communicate with me during your deliberations, such communication must be made in writing in a note signed by your foreperson or by one or more members of the jury.

You should give the note to the bailiff who is the security officer who will be sitting outside the jury room.  I will respond to any notes as promptly as possible either in writing or by having you return to the courtroom so I can speak with you in person.  I usually must consult with the attorneys before responding and because that may take some time, you should continue to deliberate as you await a response.

No member of the jury should ever attempt to communicate with me by any means other than a signed writing and I will never communicate with any member of the jury on any subject touching on the merits of this case other than in writing or orally here in court -- in open court.

You are never to reveal to any person and must

not include in any note to me how the jury stands numerically or otherwise until after you have reached a unanimous verdict.

You will note from the oath about to be taken by the bailiff that he, too, as well as all other persons are forbidden to communicate in any way or manner with any members of the jury on any subject touching on the merits of the case.

And as I explained earlier, the government must prove each of the essential elements of the charged crimes beyond a reasonable doubt.  Your function during deliberations is to weigh the evidence in the case and determine whether or not the defendant is guilty solely on the base of such evidence.  If the government succeeds in meeting its burden, your verdict should be guilty.  If it fails, it should be not guilty.  To report a verdict, it must be unanimous.  Each of you as a jury is entitled to your opinion.  You should, however, exchange views with your fellow jurors.  That is the very purpose of jury deliberations, to discuss and consider the evidence, to listen to the arguments of fellow jurors and to present your individual views.

In reaching a unanimous verdict, it is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so

without violence to individual judgment.

Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you are convinced that it is erroneous. But if after carefully considering all the evidence and the arguments of your fellow jurors, you have a conscientious view that differs from the others, do not surrender your honest conviction solely because of the opinion of your fellow jurors because you are outnumbered or for the mere purpose of returning a verdict.

Your final vote must represent your conscientious conviction as to how the issue should be decided. Your verdict whether guilty or not guilty must be unanimous reflecting the considered judgment of each and every one of you.

You will return your verdict by marking answers to the written questions in the verdict form which will be provided to you. Each answer is to be marked in the space provided after each question. It is your duty to answer each of the questions in accordance with the evidence in this case. Please follow the instructions on the verdict form carefully and the foreperson should mark the answers

and sign and date the verdict form.

When you reach a unanimous verdict, send a note to me through the bailiff stating that you have reached a verdict without stating the verdict itself.  Do not send the verdict form.  When asked to do so, you should then return to the courtroom and have your foreperson bring the verdict form with him or her.

So that completes the formal jury instructions.  Before we call the bailiff up here, I should -- well, there is one last piece of business which I never find particularly pleasant, but is necessary.

A deliberating jury in a case, in a criminal case in federal court consist of 12 jurors.  There are as you know 14 of you here.  We've had 14 because it's a good practice to have alternate jurors in the event that during the trial, one or more jurors can no longer sit on the jury.  So at this time, I'm going to tell our last two jurors, Jurors Number 13 and 14 in the back row closest to the door, that you are the designated alternates.  So you will not join in the deliberations that are about to begin.

Let me say two things to our alternates.  First, your service is not yet complete.  In the event that during deliberations, a juror for whatever reason cannot continue with the deliberations, we will call you off the

bench, so to speak, and send you in to substitute for that juror. Now if that happens, you will not join in the middle of the deliberations. The rules require that the jury start the deliberations all over again so that the new deliberating juror is not at a disadvantage.

So as of now, you are free to leave the courthouse and go back to your regular life, but please leave your contact information with the courtroom clerk so that we can reach you if we do need to call you back for deliberations.

Also because there remains the possibility that you may be pressed into service in deliberations, you must continue to follow my previous instructions that you not discuss the case with any other juror in the case, that you not discuss it with anyone else in person or electronically, that you not read anything about the case and that you not conduct any research about the case. You should leave any notes you may have with the courtroom clerk so they will be here for you if you are called back into service. Once a verdict has been returned, the courtroom clerk will contact you to inform you of the verdict and then to remove those restrictions.

The second thing I want to say to our alternate jurors is thank you. Assuming that this is the end of your jury service, I know that some alternates are

disappointed, others relieved that they do not participate in the deliberations.  But your service throughout this trial has been a crucial part of our ability to fulfill the Constitution's guarantee of a trial by a jury and to ensure that our system of justice remains in the hands of the people.  So before you leave, if you don't mind waiting and it might just take a couple of minutes, I'd like to personally thank each of you for your service on this case.

The last thing I just want to talk about is scheduling.  Now I know it's getting late.  The reason why we run the deliberations or the closing arguments together is just to make sure that the lunch break doesn't make you forget what's been happening.  So you will get to lunch very soon.

But I don't anticipate talking to you again today or if your deliberations continue past today not necessarily at the beginning and the end of the day.  Our procedures here are that once you start your deliberations, you get to decide specifically at what time you are going to leave.  My general suggestion and guidance would be to try to stick to the schedule we've had up to this point which is basically 9 to 5.  If you are about to leave or if you are planning to leave at 5 or perhaps a little bit earlier if you choose to do so as a

group, please send me a note just stating what time you would like to leave and we will just acknowledge that and if there's any issues with that, I'll send back a note referring to that.

So as I said, the instructions about not deliberating, not doing research, not discussing with other jurors applies.  As soon as the jurors start to leave the jury room at the end of the day as you are walking out to the parking lot or as you are coming in the next morning, do not discuss the case among yourselves until the foreperson reconvenes all the deliberations when all 12 jurors are present and so that would be the procedure at the end of any day and the beginning of the next day.  And so I will not call you in here to say good-bye to you for the day or to welcome you in the morning.  That is the standing instruction to send a note when you are leaving and also to send a note when you've arrived just for the record so we know that you are all here and beginning your deliberations.  So with that, we will now release you to lunch.  I will first ask the bailiff to come forward to take the oath and he will escort you out.

THE CLERK:  Please raise your right hand.

(Courtroom deputy sworn.)

THE CLERK:  Please state your first and last

name for the record.

COURT SECURITY OFFICER:  Gary Robinson.

THE CLERK:  And spell your last name, please.

COURT SECURITY OFFICER:  R-O-B-I-N-S-O-N.

THE CLERK:  Thank you, sir.

THE COURT:  Thank you, Mr. Bailiff.  You may take the jury out.

(Jury excused.)

THE COURT:  Thank you, everyone.  Please be seated.  The clerk is out with the jury, but I understand there's a couple of loose ends on the exhibits.  She wanted to clarify that any of the CD recordings, that each disc only has the recording in evidence, that they're not combined or that there's nothing else on those.  Has that been confirmed?

MR. SALEM:  As far as we are concerned, yes.  And we went over these exhibits yesterday and one CD which I think 1.4 through 1.6 has those three recordings on it and that's it.

THE COURT:  Okay.  And then, Mr. Sullivan, I think I saw someone hand up Exhibit 371.  Is that correct?

MR. SULLIVAN:  That's my understanding, Your Honor.

THE COURT:  I would just ask you to wait until the clerk returns and just confirm that the exhibits are

in order because those will be provided to the jury, the exhibits along with the jury instructions, the indictment and the verdict form.

I believe we still need to also get contact information for counsel.  As I said loosely we would like to have you five minutes away in the event there's a question and I believe that's it.

At the end of the day, as you heard, I'm not going to call them back into the courtroom.  We will let you know if the jury is leaving so you are off duty at that point.  We also tell you the next day if and when they arrive and again just stay in touch with the clerk with any questions.

MR. SALEM:  Your Honor, what's the usual?  Is it 9:30 to 5 for them --

THE COURT:  Well, I told them 9.  I mean again if they were to say they want to come in later, I will let you know if that's what they have in mind, but that's the general approach.

Okay.  Well, we'll see you the next time, whether it's a question or a verdict.  Thank you very much.

MR. SALEM:  Thank you, Your Honor.

(Proceedings concluded.)

CERTIFICATE OF REPORTER


I, Lisa K. Bankins, an Official Court Reporter for the United States District Court for the District of Maryland, do hereby certify that I reported, by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the trial in the case of the United States of America versus Mark T. Lambert, Criminal Action Number TDC-18-00012, in said court on the 14th day of November, 2019.

I further certify that the foregoing 195 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, together with the backup tape of said proceedings to the best of my ability.

In witness whereof, I have hereto subscribed my name, this 16th day of November, 2019.


Lisa K. Bankins

Lisa K. Bankins
Official Court Reporter

COURT SECURITY OFFICER: [2]
194/2 194/4
**MR. ETTINGER: [11]**    11/16
14/13 15/5 15/13 15/17 15/22
16/6 16/16 18/15 19/4 19/7
**MR. SALEM: [38]**    3/4 3/14
7/3 7/23 8/8 8/21 9/1 10/7
10/19 11/5 20/2 20/5 20/8
20/15 20/19 21/10 23/16 24/4
95/10 95/20 95/25 96/3 96/10
97/15 97/22 100/17 102/1
102/5 102/8 102/11 102/13
161/22 173/5 181/24 184/6
194/16 195/14 195/23
**MR. SULLIVAN: [58]**    4/4 4/6
8/2 9/16 9/22 10/2 11/1 11/4
11/10 11/15 11/22 12/3 12/11
12/14 12/18 12/22 12/25 13/5
13/15 14/1 14/6 15/21 15/23
16/19 17/14 18/13 19/8 19/22
20/1 21/18 22/9 22/14 22/21
23/10 24/1 96/6 96/12 97/12
97/23 98/5 98/9 98/15 98/18
98/23 99/4 99/6 99/9 100/3
101/1 101/15 101/19 101/21
101/23 130/10 161/25 167/14
171/12 194/22
**MS. SISTI: [3]**    95/8 103/3
103/6
**THE CLERK: [5]**    99/3 193/23
193/25 194/3 194/5
**THE COURT: [104]**    3/2 3/5
3/19 4/5 4/8 7/7 7/24 8/3
8/9 8/23 9/3 9/20 10/1 10/4
10/14 10/24 11/2 11/8 11/12
11/19 11/24 12/6 12/12 12/15
12/20 12/23 13/2 13/14 13/16
14/2 14/8 15/3 15/10 15/14
15/24 16/7 16/18 16/25 17/15
18/21 19/5 19/9 19/24 20/4
20/7 20/13 20/18 21/5 21/11
22/1 22/13 22/16 23/3 23/14
23/17 23/20 24/3 24/6 95/4
95/19 95/23 96/1 96/4 96/8
96/11 96/19 97/14 97/16 98/1
98/7 98/13 98/17 98/20 98/24
99/5 99/8 99/18 100/9 100/23
101/6 101/17 101/20 101/22
101/24 102/4 102/6 102/9
102/12 102/14 102/17 103/5
130/5 161/24 167/12 171/10
172/25 181/22 184/4 185/7
194/6 194/9 194/20 194/24
195/16

**$**
**$1.5 [2]**   105/15 129/11
**$1.5 million [2]**   105/15
129/11
**$25,774 [1]**   85/9
**$32 [2]**   116/3 129/15
**$32 million [2]**   116/3 129/15

**'**
**'5 [1]**   177/2
**'6 [1]**   177/2
**'7 [1]**   177/2

**−**
**-G [1]**   124/11

**.**
**.PDF [1]**   17/6

**0**
**00012 [2]**   1/3 196/9

**1**
**1 [2]**   1/12 129/11
**1.2-D [1]**   128/12
**1.2-H [1]**   126/13
**1.4 [1]**   194/18
**1.5 million [1]**   120/10
**1.6 [1]**   194/18
**10 [5]**   7/9 7/9 8/4 100/7
100/9
**100 [5]**   15/7 108/10 122/9
180/10 180/11
**1006 [4]**   13/17 13/21 13/22
98/11
**103 [1]**   2/4
**106 [1]**   99/10
**11 [5]**   5/3 7/9 7/9 8/4
149/11
**12 [4]**   67/25 149/20 190/13
193/12
**12-3-2009 [1]**   159/10
**12.4 [2]**   162/23 162/24
**1200 [1]**   1/19
**13 [1]**   190/18
**132 [1]**   118/3
**1343 [3]**   51/23 64/19 75/9
**14 [4]**   1/5 190/14 190/14
190/18
**1400 [1]**   1/15
**14th [1]**   196/9
**15 [6]**   51/20 74/23 95/1
97/21 100/7 150/5
**15-minute [2]**   17/16 94/17
**16 [2]**   67/25 150/12
**16th [1]**   196/16
**17 [1]**   151/2
**173 [1]**   2/5
**17th [1]**   1/19
**18 [12]**   51/16 51/18 51/22
52/1 64/19 67/25 73/12 73/14
75/8 85/6 85/14 88/1
**19 [1]**   152/1
**195 [1]**   196/11
**1956 [3]**   52/1 85/7 85/15
**1977 [1]**   52/17

**2**
**20 [1]**   152/9
**2000 [1]**   176/24
**20005 [1]**   1/15
**2002 [12]**   131/17 133/5
133/16 134/18 134/20 135/21
136/2 136/17 155/13 169/15
171/9 175/16
**20036 [1]**   1/20
**2004 [20]**   131/4 131/10
132/21 138/6 140/22 141/9
145/5 148/8 150/20 151/17
155/10 155/11 155/17 167/10
169/24 170/18 175/15 176/19
176/23 177/2
**2005 [1]**   169/23
**2006 [1]**   169/23
**2007 [35]**   130/25 131/2
131/11 132/22 133/14 133/19
134/15 136/1 140/22 141/8
145/4 148/7 150/19 151/18
154/17 155/5 155/7 155/8
155/10 167/10 169/19 169/22
169/23 170/18 175/14 175/18
175/22 175/23 176/8 176/15
176/20 176/22 176/23 177/12
178/8
**2009 [9]**   21/8 131/15 136/3
138/6 140/25 156/15 159/10
167/3 176/20
**2011 [3]**   8/16 117/23 117/24
**2012 [1]**   117/2
**2014 [6]**   175/15 175/18
175/22 175/23 176/15 178/8

**2015 [3]**   155/9 155/17 156/10
**2019 [4]**   1/5 176/24 196/10
196/16
**20770 [2]**   1/12 1/22
**21 [1]**   152/15
**22 [1]**   152/20
**23 [1]**   152/25
**24 [2]**   15/19 154/1
**240.3 [1]**   133/13
**25 [5]**   139/21 150/15 154/13
174/4 174/4
**26 [4]**   15/19 67/25 147/15
155/3
**264 [6]**   20/10 20/10 20/13
20/18 21/6 23/6
**27 [1]**   155/20
**28 [1]**   156/9
**29 [1]**   156/18
**2968 [2]**   118/2 118/5

**3**
**30 [5]**   100/19 100/21 101/12
160/1 180/13
**31 [2]**   159/17 161/8
**34.3 [1]**   118/5
**35 [1]**   160/7
**36.4 [1]**   133/13
**36.5 [1]**   133/13
**37 [1]**   160/9
**371 [11]**   9/24 51/18 73/13
73/15 98/19 98/24 99/2
136/21 158/15 159/4 194/21
**39 [1]**   160/22

**4**
**40 [1]**   161/2
**44 [1]**   161/4
**45 [1]**   114/6
**46 [1]**   118/17
**48 [1]**   163/18

**5**
**50 [1]**   119/5
**55 [1]**   4/12
**57 [4]**   95/12 95/19 95/20
96/1
**59 [1]**   114/10
**5:00 [1]**   3/10

**6**
**6406 [1]**   1/12
**6500 [1]**   1/22
**66.1 [1]**   115/6
**67.2 [1]**   126/5
**67.3 [1]**   126/6
**68 [1]**   114/23
**69 [3]**   95/21 119/23 163/22
**6:30 [2]**   17/3 17/4
**6:31 [1]**   16/19

**7**
**72 [1]**   129/4
**73 [1]**   163/3
**75 [1]**   163/9
**76 [3]**   121/7 121/7 164/5
**78-DD-2 [2]**   51/20 74/23

**8**
**800 [1]**   1/12
**85 [6]**   117/21 157/9 157/10
157/11 157/12 184/10
**871 [1]**   51/17
**8:30 [1]**   1/6

**9**
**9:30 [1]**   195/15

**A**
**a.m [1]**   1/6

**A**

abet [3] 88/12 88/17 88/25
abets [2] 88/3 88/9
abetted [11] 88/17 88/25
89/9 89/13 90/25 93/10 93/18
124/17 128/16 174/14 174/15
abetting [9] 87/23 87/24
87/25 88/6 88/21 90/12 93/21
123/22 174/3
abettor [5] 90/16 90/16
90/21 91/6 91/10
abiding [1] 23/8
ability [6] 27/14 96/17
153/13 158/2 192/3 196/14
able [3] 47/17 152/16 165/2
about [225]
above [2] 62/3 159/9
absence [1] 84/11
absolute [1] 5/15
absolutely [3] 14/1 99/4
133/20
accept [7] 26/1 34/7 43/16
44/13 45/4 47/10 47/23
acceptable [1] 3/18
accepted [3] 27/12 27/16
166/6
access [6] 141/20 144/17
155/20 155/23 166/23 186/16
accident [3] 69/5 79/7 86/25
accommodation [2] 16/23
98/10
accomplice [6] 45/14 45/19
45/25 46/1 46/13 46/14
accomplices [1] 45/16
accomplish [4] 75/15 77/10
77/22 83/20
accomplished [2] 67/4 77/6
accomplishing [1] 56/14
accomplishment [2] 65/23
81/9
accordance [3] 29/22 49/20
189/23
Accordingly [2] 83/23 88/12
account [26] 8/6 43/7 85/10
85/11 103/20 105/7 106/10
106/20 113/18 114/3 114/12
114/18 114/21 117/6 117/17
118/1 123/11 126/14 128/14
128/15 163/6 163/8 163/10
163/19 178/6 179/9
accountable [1] 103/23
accountant [1] 171/3
accounting [1] 160/8
accounts [18] 8/5 105/6
105/12 106/11 107/6 107/7
107/19 113/16 113/17 117/7
122/22 129/11 129/20 141/20
149/21 158/8 158/10 182/16
accurate [6] 14/11 15/6 15/7
15/15 41/13 96/4
accusation [2] 30/10 48/22
accused [2] 72/4 140/9
achieving [1] 150/8
acknowledge [2] 167/2 193/2
acknowledged [1] 143/12
acquiescence [1] 80/25
acquit [1] 31/3
across [1] 147/10
act [55] 51/2 51/14 52/17
53/2 53/4 53/8 53/15 53/19
53/25 55/1 55/3 55/7 56/2
56/11 57/4 57/9 57/21 62/15
62/18 62/21 69/11 69/21 72/9
73/19 76/18 77/10 77/22 80/6
82/5 82/7 82/8 82/9 82/10
82/16 82/20 82/24 83/2 83/3
83/4 83/7 83/7 85/13 86/24
86/24 89/4 89/22 90/17 106/4
124/1 127/11 127/20 165/7

166/11 176/1 177/7
acted [15] 54/13 56/8 56/11
56/22 57/3 69/14 70/21 71/1
81/18 86/22 87/14 113/25
123/18 165/8 165/10
acting [8] 52/20 54/12 55/15
59/24 60/6 62/9 107/24 181/8
action [4] 56/19 66/1 120/21
196/9
actions [3] 77/17 77/20 91/4
activities [2] 79/18 128/8
activity [13] 6/3 6/4 45/11
76/4 85/6 85/21 86/3 86/23
87/4 87/11 87/14 128/7
170/14
acts [47] 49/6 68/1 69/3
69/3 69/5 69/6 69/25 74/12
74/14 74/18 76/16 79/3 79/5
79/5 79/8 79/9 80/3 81/2
81/25 82/3 83/11 83/12 83/23
84/2 84/3 84/7 84/10 84/14
84/15 84/18 88/21 89/10
92/21 109/9 109/9 110/14
127/12 127/14 127/15 127/19
141/7 141/21 141/23 142/1
174/25 176/13 177/24
actual [7] 7/13 9/11 75/17
92/22 106/8 106/12 169/11
actually [37] 5/13 6/21 7/21
9/12 12/4 19/20 21/18 22/20
23/23 45/8 58/13 59/16 63/11
68/15 68/16 72/12 75/22
88/15 92/6 99/20 101/10
107/1 109/11 123/24 124/14
124/20 127/4 127/5 128/19
142/20 147/3 152/10 152/21
165/9 171/8 183/21 184/10
add [4] 7/17 16/16 96/2 96/8
added [1] 111/18
addenda [1] 182/12
addendums [1] 109/18
adding [2] 112/12 173/3
addition [5] 6/16 22/22 68/7
96/16 112/4
additional [1] 152/17
address [5] 5/9 114/8 114/10
114/17 118/7
addressing [1] 7/19
adduced [1] 196/7
adjustment [1] 98/25
administer [1] 61/11
admissibility [2] 29/18
33/11
admissible [1] 29/13
admission [1] 150/21
admit [3] 19/13 21/1 34/25
admits [1] 150/24
admitted [27] 21/6 21/22
23/5 31/23 31/25 32/2 33/8
34/19 49/8 83/10 105/20
105/21 105/23 114/18 131/19
131/24 132/3 132/22 134/6
138/14 147/6 147/19 147/20
147/23 147/24 166/16 170/17
admittedly [1] 22/4
admitting [2] 33/15 114/20
adopted [1] 81/18
advances [1] 43/11
advantage [9] 53/5 53/21
55/8 62/23 66/7 74/15 109/14
152/14 176/14
advantages [3] 109/8 109/18
138/19
adverse [1] 48/8
advise [1] 116/5
advised [2] 36/11 81/14
affect [8] 29/20 41/6 53/8
53/24 55/6 62/21 73/19 74/18
affected [1] 43/19

affirmative [4] 42/9 89/21
124/1 168/20
after [31] 4/21 17/17 17/19
18/2 20/20 24/12 31/5 34/10
45/3 46/25 47/22 94/12
110/15 111/9 120/14 122/7
132/13 134/1 139/9 140/4
142/13 148/1 152/25 158/17
164/22 169/20 180/14 188/2
189/3 189/7 189/22
afternoon [2] 130/10 173/5
again [52] 3/7 3/11 5/5 9/5
11/19 13/17 15/2 17/1 17/9
18/3 19/9 19/10 23/22 29/5
80/14 93/12 94/19 94/22
95/24 97/5 100/10 101/6
101/13 102/24 103/22 111/16
113/13 116/4 116/23 117/16
124/21 126/14 126/20 127/20
130/13 140/17 149/18 150/13
150/15 156/22 163/22 164/22
165/18 170/10 172/25 177/1
183/20 185/8 191/4 192/16
195/12 195/16
against [31] 5/24 5/25 30/20
41/9 46/22 47/6 48/9 48/11
48/14 48/21 50/20 50/22
63/19 71/3 73/16 74/2 83/10
83/15 84/10 84/22 88/2
100/10 131/20 131/21 132/20
132/23 139/9 147/7 147/17
148/16 156/23
age [1] 28/11
agencies [2] 74/17 74/19
agency [3] 59/24 60/1 73/17
agent [12] 52/19 54/11 55/14
55/25 56/8 83/21 92/25
114/15 132/16 141/14 142/4
157/7
ago [5] 13/18 78/19 132/7
146/20 155/4
agree [3] 19/3 73/24 106/25
agreed [11] 10/25 11/3 34/23
47/2 119/13 127/6 127/8
127/24 128/1 133/8 169/25
agreed-upon [1] 11/3
agreeing [2] 19/16 111/10
agreement [34] 34/21 35/22
47/1 47/5 47/10 47/15 56/1
75/14 76/12 76/23 77/2 77/12
77/19 78/22 78/25 81/21
82/15 82/21 104/15 106/5
106/6 116/6 116/6 116/7
116/8 119/4 123/10 127/6
127/10 148/18 163/10 169/17
169/18 188/25
ahead [1] 161/7
aid [6] 19/25 35/7 36/6 89/1
124/19 128/18
aided [11] 88/17 88/25 89/9
89/13 90/24 93/10 93/18
124/17 128/16 174/14 174/15
aider [5] 90/15 90/16 90/21
91/6 91/9
aiding [11] 81/8 83/5 87/22
87/24 87/25 88/6 88/21 90/12
93/20 123/22 174/2
aids [3] 88/3 88/9 90/15
aims [5] 78/24 80/23 81/16
81/17 81/19
all [142] 5/7 7/14 9/8 9/11
9/25 10/9 10/10 10/14 12/14
13/12 13/15 14/14 16/8 17/4
17/20 19/15 22/20 24/7 25/3
25/23 28/4 28/12 30/20 31/6
31/22 31/23 34/5 34/10 37/3
37/8 37/12 38/18 40/12 40/18
41/18 42/25 43/4 43/19 44/7
44/11 45/3 46/11 53/12 54/23

## A

**all..** [198] 62/2 66/5 68/19 70/1 74/9 77/20 79/18 79/20 79/23 80/9 82/2 82/9 84/2 84/2 86/14 92/17 93/1 94/20 95/7 95/18 97/12 105/24 107/17 110/19 113/24 115/3 116/6 116/12 119/11 124/21 125/23 127/13 127/14 127/18 127/22 129/20 130/1 130/4 131/2 133/4 134/23 136/17 138/23 139/3 139/9 141/1 144/14 146/10 146/16 150/22 156/22 156/22 160/9 162/2 162/24 164/2 164/3 167/16 167/19 168/9 168/9 168/17 169/5 169/7 170/22 173/8 176/6 177/8 177/19 177/19 178/2 178/2 178/19 180/2 180/14 180/15 180/20 181/13 181/13 182/13 183/16 184/2 184/3 184/6 184/16 185/2 185/3 185/6 187/4 188/5 189/8 191/4 193/11 193/12 193/18

**alleged [22]** 51/6 51/9 65/11 66/15 68/5 68/6 68/10 71/7 72/3 76/25 77/3 80/15 82/3 82/11 84/23 87/7 131/9 145/13 153/14 164/3 169/5 170/1

**allegedly [1]** 130/24

**alleges [2]** 50/25 90/20

**allow [8]** 18/1 28/15 29/8 29/17 30/3 94/5 137/23 166/23

**allowed [9]** 18/1 44/14 138/25 139/1 139/2 141/19 143/8 147/9 147/10

**allowing [1]** 83/15

**allows [1]** 45/14

**almost [5]** 69/19 129/14 141/6 173/6 177/19

**alone [14]** 26/7 28/22 31/2 36/12 36/20 37/24 37/25 39/22 47/12 58/10 67/1 76/2 83/2 173/14

**along [6]** 110/16 177/9 183/16 184/2 184/3 195/2

**already [6]** 9/9 111/12 125/16 154/6 165/14 170/12

**also [59]** 6/17 9/8 9/10 16/2 17/23 18/6 27/23 29/14 31/18 36/17 37/5 40/3 45/7 45/19 47/6 51/19 58/14 60/4 63/19 66/23 71/18 71/19 77/14 83/13 84/8 84/23 86/17 91/22 103/11 103/11 104/21 108/14 109/2 109/14 109/23 112/15 112/21 117/19 118/15 119/17 122/13 125/17 127/5 127/18 129/16 132/10 132/10 137/15 152/9 152/20 166/8 167/14 169/6 176/3 182/3 191/11 193/17 195/4 195/11

**alter [1]** 64/6

**alternate [3]** 4/23 190/15 191/23

**alternates [3]** 190/19 190/22 191/25

**alternative [2]** 114/8 114/10

**although [10]** 6/11 10/15 14/14 22/4 30/8 32/12 102/9 127/20 162/20 173/15

**always [3]** 34/15 41/14 97/17

**am [2]** 100/5 148/21

**ambit [1]** 80/7

**AMERICA [3]** 1/3 28/1 196/8

**among [8]** 34/21 40/20 57/11

**amount [9]** 70/13 111/16 116/10 116/15 117/23 125/23 126/17 146/6 160/21

**amounts [4]** 104/23 105/22 146/18 168/18

**analyzing [1]** 35/18

**Ann [5]** 108/4 180/5 180/6 180/22 181/5

**Ann Harrington [1]** 108/4

**Anne [1]** 142/17

**announce [1]** 19/19

**announcements [1]** 23/24

**anonymized [1]** 7/15

**another [29]** 39/17 39/22 40/4 51/4 56/1 58/9 66/8 66/11 68/11 69/13 71/8 88/9 88/15 88/20 88/22 89/1 89/11 91/13 114/11 115/5 122/23 123/2 123/7 146/16 152/23 157/6 163/18 179/23 188/24

**answer [10]** 32/21 33/4 33/19 91/8 150/4 154/6 156/12 156/13 189/21 189/22

**answered [2]** 32/25 110/4

**answering [1]** 150/14

**answers [5]** 27/15 27/17 177/19 189/19 189/25

**anticipate [1]** 192/16

**any [239]**

**anybody [4]** 3/12 141/5 149/4 159/1

**anymore [1]** 136/19

**anyone [21]** 62/9 101/10 111/2 111/24 112/2 143/7 148/14 149/3 149/5 149/6 149/6 149/9 158/10 158/12 185/23 186/3 186/7 186/8 186/9 186/23 191/15

**anything [41]** 9/14 9/15 9/25 10/13 13/3 23/14 26/18 32/15 53/1 54/20 58/1 58/3 74/8 95/5 97/2 97/14 98/8 109/11 111/11 131/6 132/1 132/5 135/10 136/11 136/12 142/23 146/23 147/2 148/6 150/23 154/10 155/16 158/3 166/14 168/13 173/10 178/20 186/12 186/19 186/23 191/16

**anyways [2]** 3/7 4/1

**anywhere [2]** 82/16 166/1

**apologize [1]** 98/18

**Apparent [1]** 11/21

**apparently [5]** 15/7 83/3 152/19 158/23 174/4

**appealed [1]** 42/23

**appeals [1]** 100/24

**appear [4]** 37/10 148/15 174/5 174/8

**appearance [1]** 67/3

**APPEARANCES [1]** 1/10

**appeared [1]** 36/15

**appears [3]** 20/19 95/17 173/18

**applicable [1]** 52/3

**applies [5]** 25/9 25/25 67/18 185/24 193/7

**apply [4]** 26/1 44/8 86/10 185/18

**applying [1]** 24/10

**appointed [1]** 61/3

**appreciate [3]** 16/22 18/13 23/21

**appreciation [1]** 170/9

**apprised [1]** 79/18

**approach [1]** 195/19

**approached [3]** 137/18 145/24 186/11

**approaching [1]** 154/14

**appropriate [5]** 14/24 76/1 95/7 99/3 100/13

**approval [5]** 11/20 11/20 124/10 146/24 159/6

**approve [2]** 148/12 160/19

**approved [3]** 146/21 160/15 161/4

**approving [1]** 148/14

**approximately [1]** 24/20

**are [215]**

**area [1]** 180/17

**aren't [3]** 17/3 117/9 183/13

**arguably [1]** 4/9

**argue [3]** 22/25 23/11 96/17

**argued [1]** 21/25

**argues [2]** 41/23 45/10

**argument [10]** 2/4 2/5 2/5 6/17 23/13 36/24 96/23 130/18 164/21 178/2

**arguments [25]** 4/22 9/15 9/15 9/16 18/3 18/8 18/10 19/20 24/15 25/8 25/10 31/18 32/12 32/13 94/12 94/18 94/20 94/24 102/19 102/24 103/1 185/15 188/21 189/8 192/12

**arising [1]** 46/15

**arose [1]** 186/17

**around [5]** 3/10 18/7 99/16 117/9 121/10

**arrangement [1]** 67/1

**arrest [2]** 141/17 142/10

**arrested [7]** 132/15 132/18 133/1 137/12 140/13 148/16 151/16

**arrests [1]** 137/7

**arrive [2]** 29/4 195/12

**arrived [1]** 193/18

**arrogantly [1]** 131/1

**arsenal [1]** 181/3

**artifice [9]** 64/21 65/8 65/13 65/21 65/23 74/25 75/8 125/3 167/25

**as [293]**

**ascended [1]** 131/1

**aside [3]** 3/16 3/23 169/8

**ask [25]** 4/19 4/25 18/15 25/14 28/20 29/15 46/1 78/4 91/1 97/2 119/2 130/2 140/16 153/6 154/18 154/18 156/1 158/17 166/22 172/12 177/17 183/2 185/2 193/20 194/24

**asked [17]** 7/15 27/13 29/18 29/19 32/23 33/21 49/17 100/18 133/18 139/20 143/10 143/12 148/15 167/12 181/22 186/11 190/5

**Askinazi [1]** 3/18

**asking [1]** 139/3

**asks [3]** 39/20 39/21 118/17

**aspect [1]** 169/10

**assembled [1]** 80/22

**asserted [1]** 83/12

**assess [5]** 132/19 165/24 177/17 177/22 181/7

**assessing [1]** 49/9

**asset [2]** 108/13 108/20

**assist [14]** 25/10 36/7 44/2 53/9 54/1 55/10 63/4 63/8 63/14 63/17 71/24 74/20 160/8 166/11

**assistance [1]** 35/18

**assisted [3]** 63/7 81/14 90/19

**assisting [4]** 48/18 83/5 87/1 87/16

**assists [1]** 63/20

**associate [3]** 78/10 89/3

**A**

assoc...

associated **[4]**  49/24 61/18 71/6 89/6
associating **[1]**  90/11
association **[2]**  55/19 80/17
assume **[6]**  9/25 10/2 10/4 12/9 19/5 98/14
assumes **[1]**  32/22
assuming **[2]**  17/3 191/24
assures **[1]**  119/6
atomic **[2]**  180/9 180/20
attach **[1]**  48/7
attached **[1]**  160/20
attaches **[1]**  8/18
attaching **[2]**  8/14 126/4
attack **[1]**  44/25
attempt **[1]**  187/19
attempting **[2]**  85/9 179/10
attempts **[2]**  85/16 148/2
attention **[7]**  23/22 25/5 25/15 47/7 133/17 143/11 185/14
attorney **[6]**  26/4 29/11 29/13 29/17 50/8 100/2
Attorney's **[1]**  1/11
attorneys **[7]**  25/8 29/9 29/14 31/17 31/20 32/18 187/16
attorneys' **[1]**  185/15
auditor **[1]**  113/9
auditors **[4]**  111/1 121/11 144/9 178/21
authorities **[1]**  84/24
authority **[1]**  3/24
authorization **[12]**  52/24 52/25 58/10 58/14 58/20 64/3 64/7 74/6 74/7 146/7 146/25 171/7
authorizations **[1]**  124/7
authorize **[3]**  90/22 159/2 168/2
authorized **[16]**  4/14 54/19 57/25 58/9 58/16 72/8 72/15 87/19 89/24 124/5 147/8 147/13 158/25 159/1 161/4 167/15
authorizer **[1]**  124/16
authorizing **[1]**  60/3
automatically **[1]**  80/18
available **[2]**  69/19 134/15
Avenue **[1]**  1/15
average **[1]**  66/3
avoid **[4]**  6/17 35/2 98/17 104/19
avoiding **[1]**  6/16
await **[1]**  187/18
award **[1]**  67/22
aware **[15]**  57/1 59/8 59/14 59/19 133/19 144/10 146/22 149/3 154/14 154/15 154/17 160/2 164/11 164/15 166/8
awareness **[1]**  78/24
away **[3]**  160/25 175/25 195/6
axe **[1]**  145/6

**B**

back **[31]**  4/17 5/6 8/23 18/9 23/21 24/14 52/10 94/19 98/2 98/7 113/4 120/25 121/17 129/13 135/11 135/21 138/9 139/12 143/11 143/14 160/24 174/6 182/9 182/18 183/4 190/18 191/7 191/9 191/19 193/3 195/9
backup **[12]**  3/21 10/15 10/19 11/7 11/12 11/18 12/13 13/3 16/9 16/20 18/17 196/14
backwards **[1]**  13/18

bad **[6]**  9/20 56/13 57/4 69/8 79/11 90/6
bailiff **[6]**  187/11 188/5 190/3 190/9 193/21 194/6
bake **[1]**  103/17
baked **[5]**  106/17 112/6 112/24 126/12 126/18
baking **[2]**  105/22 125/20
balance **[1]**  154/22
bank **[21]**  8/5 8/6 71/20 71/21 85/10 85/11 105/12 106/10 107/6 107/7 113/16 113/17 126/14 128/14 144/12 145/17 146/4 146/12 158/8 158/11 166/17
Bankins **[4]**  1/21 196/3 196/19 196/20
banks **[4]**  71/20 182/22 182/23 182/25
barely **[1]**  171/7
base **[2]**  26/13 188/14
based **[21]**  28/7 29/5 29/21 30/6 35/9 35/13 35/16 35/25 36/13 39/17 39/23 42/25 49/18 50/19 69/25 91/11 132/2 144/11 181/6 185/2 185/3
basic **[1]**  78/24
basically **[2]**  9/9 192/23
basis **[8]**  27/15 28/25 39/17 47/12 94/3 96/22 119/11 131/23
be **[238]**
bear **[4]**  43/14 47/14 50/17 93/2
bearing **[2]**  42/9 79/24
became **[3]**  20/8 76/14 78/1
because **[111]**  4/25 6/18 13/19 14/21 15/25 17/15 17/23 21/1 24/18 24/20 27/22 30/16 33/2 34/12 34/13 37/2 38/13 44/14 46/3 48/2 48/10 52/4 62/6 69/4 76/3 79/6 83/11 96/24 97/7 102/20 106/25 108/12 108/17 108/25 115/2 115/21 115/24 117/18 118/3 118/12 119/3 119/13 119/25 120/18 122/3 122/20 123/21 125/17 130/12 130/17 132/9 132/21 134/19 134/24 134/25 136/4 136/19 138/14 138/24 139/18 141/7 141/25 142/14 142/16 144/21 145/23 147/3 147/5 150/2 151/22 153/17 158/2 158/22 162/2 162/4 164/13 165/3 166/16 170/15 170/16 172/3 172/22 173/4 173/9 173/11 173/21 174/8 174/20 174/23 174/25 175/7 175/20 176/4 176/16 177/8 177/22 180/6 180/24 181/17 182/6 182/14 183/14 183/23 184/2 184/20 187/16 189/11 189/12 190/14 191/11 195/1
become **[2]**  79/15 178/21
becomes **[3]**  82/8 83/20 142/12
been **[65]**  6/17 13/4 14/5 15/7 22/7 24/7 25/4 25/6 25/12 30/9 31/23 31/24 33/10 33/16 33/20 34/8 34/19 34/24 36/5 37/9 37/15 38/4 39/7 39/12 46/24 49/17 49/21 57/22 58/11 60/2 64/4 66/15 67/15 67/21 74/10 76/19 77/12 78/20 79/18 79/19 82/11 84/9 84/19 95/11 100/1 111/8 130/14 133/10 134/13

162/5 165/2 168/25 169/1 169/2 169/3 169/21 171/18 172/7 173/7 183/17 186/13 191/20 192/3 192/14 194/15
before **[43]**  1/8 3/6 4/23 9/14 16/22 17/25 23/15 25/7 27/12 40/2 42/11 52/10 78/19 80/13 81/10 84/13 96/13 98/3 98/7 99/17 100/18 116/5 130/15 131/3 131/18 132/9 133/19 135/15 137/5 140/10 147/22 148/7 155/7 155/8 156/21 164/21 169/21 171/13 175/21 180/9 187/16 190/9 192/6
beg **[2]**  100/6 101/4
began **[17]**  31/1 31/11 130/24 131/4 133/5 133/16 134/15 134/17 135/21 135/25 136/2 140/7 147/25 150/19 175/20 176/20 176/25
begin **[6]**  102/23 133/14 134/20 185/16 185/18 190/21
beginning **[10]**  21/25 137/6 164/7 176/6 176/15 176/22 177/12 192/18 193/13 193/19
begun **[1]**  38/18
behalf **[19]**  52/21 54/12 55/16 56/2 59/25 60/6 62/10 103/2 107/25 109/1 109/10 117/25 130/6 137/20 139/2 144/3 153/2 154/19 181/8
behavior **[1]**  45/12
being **[19]**  3/16 7/19 49/17 62/3 80/21 90/9 90/10 90/13 90/17 111/5 152/16 154/4 155/6 158/3 159/11 169/20 176/3 179/18 183/20
belief **[5]**  26/22 59/11 70/16 70/22 70/23
believable **[2]**  40/5 166/16
believe **[26]**  8/5 31/19 34/4 34/12 34/13 41/17 41/18 42/12 42/17 43/4 44/9 45/22 46/5 46/7 95/8 98/19 99/15 103/2 133/15 147/1 165/19 173/18 173/20 177/4 195/4 195/7
believed **[7]**  46/4 58/15 59/16 90/22 135/11 163/17 167/23
believes **[1]**  29/13
believing **[1]**  136/4
belts **[1]**  6/12
bench **[2]**  29/16 191/1
bending **[1]**  13/18
beneficial **[1]**  158/9
benefit **[6]**  43/8 46/2 137/3 148/15 148/17 183/5
Bentway **[1]**  144/11
best **[16]**  3/4 46/6 138/19 138/22 139/1 140/16 141/2 149/18 150/6 150/8 150/9 153/6 172/2 172/14 185/10 196/14
Bethesda **[1]**  169/3
better **[2]**  35/8 95/11
between **[46]**  14/4 21/23 37/20 51/6 57/11 57/12 57/13 57/17 57/17 71/13 71/15 71/15 71/17 71/20 71/20 77/8 104/15 106/6 118/24 118/25 119/16 119/20 121/8 123/13 134/3 136/16 149/8 154/25 161/12 163/10 163/22 163/23 164/14 172/6 172/8 175/14 175/18 175/22 175/23 176/19 176/22 176/23 178/8 180/19 181/14 183/10

**B**

**beyond [54]** 30/5
30/24 31/4 31/14 37/16 40/1
45/17 47/13 48/3 49/2 49/15
54/7 55/13 56/10 57/7 57/19
57/24 58/19 62/14 62/24 63/3
65/7 65/20 68/4 68/25 70/10
71/4 71/10 72/20 72/21 73/1
76/10 76/22 77/25 81/11
81/23 82/13 82/19 82/23 84/5
85/23 86/5 86/21 88/15 91/19
92/1 92/18 93/8 93/16 94/3
104/4 106/23 107/12 123/16
124/23 127/1 127/25 129/6
129/8 134/2 164/23 165/7
167/22 168/3 169/16 170/4
170/13 172/21 188/11
**bias [4]** 27/11 27/15 29/3
41/8
**bid [3]** 109/22 152/18 160/4
**bids [1]** 171/2
**big [2]** 141/8 175/7
**biggest [1]** 116/2
**bill [3]** 112/15 112/22 129/2
**bills [1]** 125/22
**binding [1]** 27/17
**bit [4]** 19/11 152/1 161/25
192/25
**blank [1]** 105/18
**blended [1]** 181/2
**blending [2]** 108/17 180/15
**blogging [1]** 186/6
**blue [1]** 140/21
**bogus [1]** 114/3
**boils [1]** 125/10
**bolster [1]** 135/18
**book [1]** 20/10
**books [2]** 111/2 186/19
**Boris [12]** 120/1 120/3 120/9
120/16 121/6 121/13 121/17
121/24 122/2 150/1 183/12
183/24
**both [26]** 12/7 13/24 19/16
22/16 37/18 37/22 95/16 96/2
96/3 97/2 108/8 108/15
108/21 118/13 119/3 119/13
128/1 128/23 131/11 132/17
140/23 150/6 150/20 156/11
156/15 156/18
**bottom [1]** 176/21
**bought [1]** 153/23
**Bowers [4]** 114/15 132/17
141/15 142/4
**box [1]** 171/16
**break [13]** 17/16 17/20 18/1
18/11 24/12 24/14 61/8 94/16
94/17 95/9 98/12 129/24
192/13
**bribe [43]** 58/9 58/16 58/17
103/17 103/19 104/22 104/23
105/1 105/3 105/6 105/10
105/22 106/10 106/16 106/19
107/6 111/5 111/7 111/17
112/4 112/23 113/7 117/15
117/23 118/20 119/14 120/10
121/6 123/12 126/12 126/17
128/13 128/23 129/4 129/17
129/19 129/24 138/9 148/13
178/11 179/23 182/14 183/24
**bribery [25]** 58/5 58/8 104/6
104/9 106/7 107/16 107/17
110/6 110/9 110/20 115/16
120/6 120/8 122/11 123/18
125/18 128/22 135/25 136/4
136/24 147/17 153/14 156/17
164/3 166/5
**bribes [44]** 60/3 103/15
104/11 105/20 109/19 111/14
111/19 112/10 112/12 112/14

**bribing [1]** 140/19
**brief [4]** 24/19 102/22 106/2
173/1
**briefly [4]** 104/2 140/17
180/5 181/16
**bring [10]** 47/7 90/18 91/2
98/7 124/1 132/6 151/19
152/15 170/23 190/6
**bringing [2]** 32/7 89/22
**British [2]** 105/11 113/15
**brought [1]** 27/25
**bud [1]** 159/15
**bulk [1]** 160/15
**bulwark [1]** 172/16
**bump [1]** 100/10
**burden [19]** 24/18 28/13
30/14 30/15 30/17 31/7 34/14
37/2 37/18 48/3 48/4 56/5
68/22 70/7 70/8 91/18 102/21
107/12 188/15
**business [45]** 53/10 53/11
54/2 54/3 55/10 55/11 55/19
55/21 63/5 63/5 63/9 63/12
63/15 63/17 63/19 63/21
63/21 63/23 64/11 72/11
72/17 73/6 74/21 74/22 78/10
104/12 104/14 104/17 104/20
105/21 109/10 109/18 109/21
113/12 129/25 135/20 135/21
138/20 141/2 143/6 144/8
161/10 169/10 187/3 190/10
**Butcher [1]** 157/7
**bye [1]** 193/15

**C**

**cabinet [4]** 160/25 160/25
161/2 161/3
**cake [23]** 21/8 21/22 23/12
118/23 119/3 119/11 119/14
136/10 136/11 136/12 136/13
136/14 136/15 136/15 154/3
154/5 154/7 166/2 166/3
166/3 178/4 178/5 179/1
**calculated [5]** 66/3 71/6
103/17 111/13 168/16
**calculating [1]** 111/16
**calculations [1]** 112/5
**call [18]** 34/16 37/8 71/14
71/17 98/3 102/14 115/19
115/20 115/23 148/24 153/5
170/25 179/22 190/9 190/25
191/9 193/14 195/9
**called [13]** 33/10 33/25
34/13 46/1 49/7 51/10 56/1
104/13 111/20 134/12 150/21
170/23 191/19
**calling [2]** 30/17 34/11
**calls [3]** 35/21 127/13
176/10
**came [16]** 5/13 13/24 38/3
38/9 120/16 133/6 135/22
137/18 139/5 140/4 140/15
149/25 152/25 155/21 160/16
170/17
**can [75]** 3/4 7/8 9/20 10/5
11/8 13/1 13/5 15/6 16/25
17/5 17/12 17/22 17/23 17/24
18/12 18/15 19/9 19/17 19/19
19/24 22/9 23/4 44/2 58/1
66/6 72/11 73/4 78/20 81/19

86/8 88/21 98/4 100/7 100/8
100/23 101/22 102/9 102/14
110/4 115/18 115/20 115/21
117/1 117/7 121/16 122/18
126/13 128/12 130/7 132/19
136/10 144/1 145/15 145/22
146/3 150/22 150/25 151/22
165/21 166/17 171/11 172/19
173/1 173/13 182/10 182/12
182/18 182/22 183/7 184/4
184/19 187/15 188/25 190/16
191/9
**can't [18]** 15/20 97/7 122/16
131/22 131/25 134/10 140/2
147/4 147/6 149/16 156/11
162/3 165/4 168/11 168/11
177/2 183/24 183/25
**candidate [4]** 53/16 53/18
53/21 53/23
**cannot [14]** 38/13 38/14 94/5
131/11 131/22 156/19 157/4
157/5 157/5 157/6 157/8
157/10 157/11 190/24
**capacity [11]** 53/3 53/17
55/2 59/25 60/6 62/10 62/17
74/13 107/24 108/25 196/6
**capitalized [1]** 135/5
**care [7]** 18/11 43/16 45/21
47/21 139/7 151/11 158/23
**careful [2]** 25/15 31/5
**carefully [10]** 22/11 25/13
36/11 40/12 112/18 130/19
138/11 162/7 189/8 189/25
**carelessness [2]** 69/5 79/7
**Carol [6]** 145/19 145/20
160/16 160/16 166/17 167/17
**carried [4]** 66/16 70/15
86/13 136/17
**carry [2]** 61/17 126/8
**carrying [14]** 45/8 63/23
71/24 82/20 83/5 83/21 85/5
85/20 86/3 86/22 87/2 87/20
89/18 128/6
**case [138]** 3/21 14/3 17/21
19/19 23/23 24/10 24/19 25/1
25/6 25/9 25/23 25/25 27/3
27/11 27/19 27/20 27/21
28/19 29/7 29/9 29/10 29/11
29/20 30/6 30/12 30/17 31/6
31/19 31/21 32/8 32/16 34/19
34/21 36/17 36/23 37/7 37/10
37/24 40/7 40/25 41/8 43/9
43/17 43/21 44/12 44/17 45/3
45/19 46/16 46/24 47/16
47/25 50/20 60/9 68/20 69/19
77/15 82/5 87/6 94/1 94/21
94/25 95/18 99/21 103/8
103/11 104/2 107/17 109/14
109/25 128/7 130/2 130/16
130/21 132/13 133/22 133/24
134/18 134/19 137/6 139/3
142/23 147/12 147/21 150/6
150/8 151/11 151/24 156/22
157/8 157/18 157/20 158/24
162/11 165/21 172/16 173/8
173/11 173/12 173/14 173/19
173/24 175/3 175/5 175/17
175/23 177/14 180/12 180/14
181/12 185/1 185/5 185/16
185/17 185/19 185/22 186/2
186/3 186/4 186/9 186/12
186/17 186/24 187/23 188/8
188/12 189/2 189/4 189/24
190/12 190/13 191/14 191/14
191/16 191/17 192/9 193/10
196/7
**cases [9]** 5/7 5/17 5/20 6/5
6/6 6/13 77/17 150/7 150/9
**cash [1]** 58/2

# C

cause [6] 125/12 126/2 162/13
caused [20] 64/16 65/17 72/6
72/13 72/14 86/15 89/16
124/20 126/7 126/9 126/17
126/19 128/11 128/13 128/19
128/21 128/23 170/4 174/16
174/17
causes [1] 64/23
causing [3] 66/19 69/13 71/8
caution [2] 45/21 47/21
CD [2] 194/12 194/17
cent [1] 129/2
certain [13] 17/8 32/23 33/7
33/11 34/22 34/24 50/3 51/1
51/1 51/3 59/10 59/12 135/7
certainly [5] 17/25 130/22
134/12 152/12 170/13
certainty [1] 176/7
CERTIFICATE [1] 195/25
certify [2] 196/5 196/11
CFO [2] 156/7 160/2
chain [2] 21/9 163/5
chair [1] 105/17
chance [1] 6/11
change [2] 130/7 189/6
changed [1] 9/2
changes [6] 4/4 7/8 9/8
10/16 10/17 14/24
changing [1] 141/11
character [2] 81/13 83/4
characterize [1] 97/3
characterized [1] 77/14
charge [13] 31/7 31/9 47/2
52/16 64/12 64/13 70/6 71/3
85/2 89/15 92/1 95/13 177/6
charged [63] 8/19 27/24
28/17 28/24 30/8 45/9 48/19
49/4 49/10 49/16 50/16 51/9
51/10 51/10 51/11 51/13
51/19 51/21 51/25 52/13 57/2
60/2 68/3 68/22 70/4 72/22
72/24 73/2 73/10 73/10 75/10
76/12 76/16 76/23 77/22 78/3
78/17 81/25 83/1 84/6 85/3
88/9 88/13 88/16 88/20 89/7
89/10 91/1 91/2 91/15 91/16
91/17 91/21 91/24 91/25 92/3
93/20 106/13 130/16 135/2
160/21 177/14 188/10
charges [27] 30/20 32/7
46/15 46/19 47/4 48/14 48/21
49/13 50/12 51/2 52/2 67/23
68/25 71/11 73/21 85/8 87/22
95/25 104/3 104/4 106/2
106/22 106/23 139/9 142/13
148/1 166/8
charging [2] 52/8 52/9
chart [9] 10/1 10/11 10/14
10/20 18/25 171/5 174/3
174/19 175/3
charts [12] 34/25 34/25 35/3
35/6 35/11 35/14 35/17
158/16 158/18 158/20 158/22
159/4
chat [9] 121/7 121/9 121/12
121/19 122/9 174/22 183/7
184/10 186/6
chats [2] 173/13 173/22
cheated [1] 104/18
check [10] 3/7 11/20 14/23
15/11 15/17 16/1 16/12 58/2
95/9 159/6
checked [4] 14/17 15/8
112/18 113/3
checks [2] 12/19 159/7
Cherrywood [1] 1/22
chief [1] 130/21

choice [11] 103/12 103/13
103/13 103/14 103/16 103/19
103/21 129/22 129/25 129/25
129/24
choices [5] 103/12 103/22
103/24 129/22 136/7
choose [1] 192/25
chronological [1] 18/25
CHUANG [6] 1/8 164/20 171/16
174/1 174/15 181/1
Chuang's [1] 174/6
Cia [1] 145/18
Circuit [5] 5/11 5/16 6/8
96/13 96/21
circumstance [6] 59/7 59/9
59/11 59/13 59/15 59/16
circumstances [7] 40/13
60/21 67/2 68/20 70/1 77/15
179/1
circumstantial [12] 37/19
37/20 37/21 37/25 38/7 38/19
38/22 39/2 39/13 39/24 69/24
73/5
citations [1] 9/8
cited [1] 5/8
citizen [4] 55/17 56/6
109/25 110/2
civic [1] 172/17
civil [1] 171/23
claiming [1] 131/9
clarify [1] 194/12
clause [1] 112/17
clean [3] 9/5 9/7 31/1
clear [8] 3/25 5/18 16/15
22/21 25/12 29/2 140/21
156/7
clerk [6] 191/8 191/19
191/21 194/10 194/25 195/12
client [3] 116/2 116/2
130/24
clients [3] 135/7 137/22
146/21
close [3] 100/3 100/6 161/8
closely [2] 10/8 122/4
closely-held [1] 122/4
closest [1] 190/18
closing [26] 2/4 2/5 4/22
9/14 9/15 9/16 17/5 17/12
18/2 18/8 18/10 19/20 21/19
24/15 25/8 32/12 94/12 94/18
94/20 102/19 102/24 130/18
151/20 178/2 185/15 192/12
closings [3] 17/19 17/25
23/15
clued [3] 164/1 164/2 164/3
co [22] 50/7 73/25 83/14
84/14 84/23 92/16 92/24 93/1
106/7 110/16 110/16 115/25
115/25 116/1 117/20 118/15
119/17 127/9 166/21 167/10
174/2 185/23
co-conspirator [6] 50/7
73/25 84/14 92/24 166/21
167/10
co-conspirator's [2] 84/23
174/2
co-conspirators [8] 83/14
92/16 93/1 106/7 117/20
118/15 119/17 127/9
co-managing [2] 110/16 116/1
co-owner [1] 115/25
co-president [2] 110/16
115/25
co-workers [1] 185/23
code [21] 51/16 64/19 73/13
73/14 74/23 75/9 85/7 85/14
88/2 111/7 114/24 114/25
114/25 117/15 154/7 166/8
178/24 178/24 179/11 179/19

183/17
coded [3] 161/12 162/1 162/2
coincidentally [1] 16/1
cold [1] 102/6
colleague [1] 103/7
collective [1] 76/3
colloquial [1] 97/6
color [1] 46/10
colored [2] 43/20 45/1
column [7] 10/9 11/6 12/21
13/10 14/7 15/14 159/3
combination [3] 37/25 38/16
75/14
combine [1] 73/24
combined [2] 99/22 194/14
come [13] 18/22 24/14 94/19
103/23 111/17 129/2 129/18
139/12 155/15 169/4 171/20
193/21 195/17
comes [11] 19/18 96/20
133/20 138/7 146/25 150/24
151/18 153/24 157/1 169/19
182/21
comfortable [1] 7/6
coming [4] 99/12 119/7
155/13 193/9
commands [1] 88/3
commentary [1] 5/16
comments [1] 4/22
commerce [10] 52/22 54/16
57/9 57/10 57/11 57/15 64/25
74/4 75/6 124/3
commercial [5] 17/19 24/15
94/20 142/25 143/2
commission [23] 5/22 88/4
88/18 88/25 89/20 90/15
90/25 93/2 93/10 93/19
110/24 111/20 111/23 112/7
112/23 133/8 135/22 138/20
152/4 160/5 164/15 164/16
165/16
commissions [3] 111/24
134/17 163/17
commit [18] 51/15 52/7 52/12
73/16 74/1 74/23 75/12 75/20
88/9 89/1 89/9 95/15 103/21
106/4 123/24 127/24 128/1
175/25
commits [2] 88/2 92/24
committed [45] 69/21 75/11
75/22 76/16 76/19 76/19
81/24 82/5 82/7 82/11 82/16
82/20 83/13 88/8 88/11 88/16
88/20 88/22 88/24 89/11 90/9
90/10 90/13 90/14 90/17
91/12 92/4 92/6 92/8 92/13
92/16 93/3 93/9 93/17 95/14
105/19 127/2 127/5 127/22
129/6 129/9 131/23 134/25
134/25 135/1
committing [12] 5/23 5/25
49/4 51/22 51/25 52/5 75/24
89/13 90/11 127/10 141/6
177/13
common [14] 34/6 38/25 39/14
40/3 41/15 42/24 44/16 77/21
80/23 83/25 92/9 138/25
180/25 183/2
commonwealth [1] 55/23
communicate [6] 114/4 186/8
187/7 187/20 187/21 188/6
communicated [1] 162/21
communication [13] 57/11
57/15 64/25 71/12 71/13
71/18 72/1 72/2 75/6 125/9
126/24 126/24 187/8
communications [2] 178/23
187/5
community [2] 27/23 171/21

**C**

**companies [16]**   60/15 105/4 105/7 105/8 105/9 105/12 113/11 113/12 113/14 113/16 152/10 152/21 160/10 182/25

**company [17]**   7/11 49/7 49/8 55/19 62/7 63/6 63/11 63/15 110/17 118/23 122/23 123/2 123/7 129/13 141/24 165/15 173/21

**comparable [1]**   13/20

**compare [3]**   18/17 151/9 154/21

**compels [1]**   172/20

**competing [2]**   152/10 152/21

**competition [3]**   104/20 109/22 152/19

**competitors [4]**   120/17 152/11 152/13 152/22

**competitors' [1]**   152/13

**complained [1]**   144/17

**complaints [1]**   144/9

**complete [6]**   16/21 70/6 96/15 97/13 141/10 190/23

**completely [3]**   29/23 33/7 141/12

**completes [1]**   190/8

**compliance [1]**   144/7

**computerized [1]**   16/11

**computers [1]**   95/6

**conceal [1]**   113/8

**concealed [1]**   111/13

**concealment [1]**   66/22

**concept [2]**   21/8 21/12

**concern [18]**   27/23 52/19 52/20 52/21 53/10 54/1 54/10 54/11 54/12 55/15 55/16 55/16 63/4 63/14 67/11 93/23 109/24 109/24

**concerned [8]**   10/11 26/10 33/13 141/22 145/12 162/14 166/22 194/16

**concerning [1]**   178/1

**concerns [3]**   7/25 42/20 144/20

**conclude [5]**   37/23 38/8 39/16 171/15 181/1

**concluded [2]**   130/21 195/24

**concludes [1]**   94/10

**conclusion [2]**   27/19 176/21

**conclusions [2]**   39/10 46/17

**Condrey [174]**   8/12 8/13 8/19 20/24 21/9 21/14 22/18 22/19 23/12 73/25 74/20 103/15 104/10 104/18 105/2 105/5 105/15 105/17 107/16 109/5 109/16 110/16 110/17 110/19 110/20 110/23 111/11 111/19 113/1 113/3 113/6 114/4 115/8 115/13 115/17 115/20 115/22 116/7 116/16 117/7 117/9 118/4 118/5 118/13 118/21 119/1 119/7 119/21 119/23 119/25 120/2 120/6 120/14 120/18 120/23 121/3 121/8 121/22 122/6 122/25 123/3 123/9 123/13 126/4 126/8 127/8 130/23 130/25 131/11 131/22 132/10 133/15 133/18 134/7 134/8 134/9 134/22 135/24 136/3 136/7 136/11 136/12 136/14 136/23 137/13 138/1 138/4 138/6 139/6 139/19 140/5 140/12 141/3 142/14 142/16 144/7 144/13 144/14 144/15 144/21 144/25 145/3 145/19 145/20 147/3 147/4 147/5 147/12

**Condrey's [11]**   22/20 113/2 124/9 132/19 134/14 138/13 142/13 148/8 155/14 163/6 165/20

**Condreys [2]**   132/17 137/12

**conduct [20]**   25/11 29/9 49/23 54/17 56/23 59/7 59/9 69/6 69/9 69/25 71/5 76/5 77/16 79/9 79/12 80/22 84/24 89/21 124/1 191/17

**conducting [1]**   139/15

**conducts [1]**   143/6

**confederate [1]**   73/24

**confederates [1]**   83/13

**conference [1]**   29/18

**conferences [1]**   29/15

**confirm [5]**   116/10 116/15 118/21 146/18 194/25

**confirmation [1]**   124/10

**confirmed [4]**   119/8 119/10 137/15 194/15

**conflicts [2]**   27/6 42/15

**confronted [1]**   114/16

**confusing [1]**   7/12

**confusion [3]**   15/24 173/7 175/4

**Congress [1]**   76/1

**connect [1]**   148/2

**connected [1]**   129/5

**connection [3]**   96/17 99/12 113/13

**connector [1]**   170/11

**conscientious [2]**   189/9 189/15

**consequences [1]**   103/22

**consequent [1]**   70/9

**consider [40]**   26/8 27/4 28/10 30/1 30/6 31/16 31/18 32/3 33/2 33/9 35/3 35/17 37/1 37/18 37/22 40/21 42/1 42/16 42/18 44/6 48/11 49/2 49/11 50/9 50/13 51/8 60/18 61/15 68/17 68/23 77/19 78/6 78/16 84/13 88/24 102/25 103/1 122/16 122/18 188/20

**consideration [14]**   25/22 28/2 28/4 29/10 29/20 31/6 32/13 35/11 39/3 40/5 44/22 54/8 94/6 189/3

**considerations [3]**   44/8 45/23 50/24

**considered [10]**   32/1 32/2 42/7 48/23 67/16 84/9 84/21 84/25 168/25 189/17

**considering [4]**   35/7 43/13 70/20 189/8

**consist [1]**   190/13

**consistent [8]**   41/1 41/2 95/18 130/3 137/21 142/1 146/15 177/20

**consists [1]**   31/21

**conspiracies [1]**   141/7

**conspiracy [111]**   5/9 5/21 51/14 52/6 52/11 73/9 73/11 73/20 73/24 75/10 75/13 75/16 75/20 75/22 75/23 76/2 76/3 76/8 76/14 76/15 76/20 77/1 77/13 77/17 78/2 78/2 78/4 78/6 78/7 78/12 78/17 78/23 79/2 79/16 79/21 80/7 80/9 80/10 80/16 80/18 80/24 81/4 81/5 81/8 81/11 81/13 81/17 81/17 81/24 82/8 82/9 83/1 83/9 83/17 83/17 83/19 83/22 83/25 84/1 84/6 84/8 84/9 84/20 84/21 91/21 91/22 92/7 92/12 92/25 95/13 95/25 106/3 127/3 130/24 133/13 134/4 134/15 134/20 134/24 135/25 136/2 137/4 138/12 138/24 140/7 140/22 140/24 145/4 145/5 147/17 150/19 156/25 158/4 164/4 167/6 169/16 170/1 170/11 171/5 174/2 174/8 174/12 174/24 174/25 175/14 175/17 176/2 176/12 177/5 177/7 183/16

**conspiracy's [2]**   79/23 80/10

**conspirator [8]**   50/7 73/25 78/20 82/25 84/14 92/24 166/21 167/10

**conspirator's [3]**   79/25 84/23 174/2

**conspiratorial [1]**   83/6

**conspirators [16]**   77/3 80/4 82/6 83/14 83/21 92/10 92/16 93/1 93/1 106/7 117/20 118/15 119/17 127/9 178/15 178/23

**conspire [3]**   73/16 73/24 131/4

**conspired [1]**   157/25

**conspiring [4]**   75/11 75/12 95/14 95/15

**constitute [2]**   66/23 196/12

**constitutes [1]**   83/8

**constituting [1]**   92/21

**Constitution [1]**   48/1

**Constitution's [1]**   192/4

**consult [2]**   187/15 188/24

**consulting [2]**   123/4 123/10

**contact [6]**   145/20 153/2 186/14 191/8 191/21 195/4

**contained [6]**   33/3 35/15 36/3 48/14 49/5 49/13

**contains [1]**   50/11

**contemplated [2]**   68/10 143/2

**content [1]**   36/13

**contention [1]**   21/24

**contents [2]**   2/1 157/22

**contest [1]**   154/25

**context [2]**   77/17 120/15

**continue [7]**   31/11 111/9 136/19 187/17 190/25 191/13 192/17

**continued [3]**   135/14 136/3 159/14

**continuing [3]**   64/11 140/7 176/15

**contract [12]**   64/10 112/18 120/16 120/17 121/1 121/18 123/4 123/8 143/8 152/18 165/13 182/11

**contracts [43]**   63/18 63/23 67/22 104/12 109/4 109/7 109/7 109/16 109/17 109/21 112/1 112/16 113/6 120/20 120/20 128/25 129/12 137/2 138/2 144/17 144/21 145/9 145/10 145/11 148/4 148/24 149/1 149/7 149/10 149/14

**C**

contract [13]   148/25 149/4
149/17 153/4 153/14 153/20
155/21 155/23 166/12 166/24
179/14 182/9 182/10 184/1
contradict [1]   30/2
contradicted [4]   34/8 41/1
42/13 148/7
contributions [1]   58/3
control [7]   50/23 100/2
108/12 143/9 143/14 143/25
181/4
controlled [7]   60/12 60/14
60/17 108/2 108/8 108/10
108/22
controlling [5]   3/24 36/16
60/13 60/23 61/10
convenience [1]   24/22
conversation [12]   24/2 35/25
120/14 120/14 121/8 121/23
122/7 122/7 140/18 183/9
183/9 183/10
conversations [4]   119/16
119/20 119/20 143/13
converted [1]   86/8
convey [4]   26/16 26/21 26/25
67/2
convict [9]   40/2 47/11
131/23 134/11 140/2 157/6
164/22 168/14 170/3
convicted [3]   80/8 88/21
94/7
conviction [4]   6/23 45/16
189/11 189/15
convinced [4]   31/4 31/13
82/12 189/7
convinces [2]   47/12 174/23
cooperate [3]   77/9 148/16
148/20
cooperated [1]   141/18
cooperating [1]   147/25
cooperation [3]   47/7 142/5
148/18
cooperator [1]   134/21
copies [1]   9/4
copy [2]   48/17 99/3
copying [1]   184/24
core [1]   104/8
corporation [3]   7/11 55/18
56/8
correct [30]   6/11 8/5 8/7
8/8 8/21 8/22 8/25 9/1 12/11
12/21 12/22 14/1 15/12 15/20
17/14 19/23 96/20 97/18
132/22 143/18 143/19 143/23
143/23 146/19 148/17 152/7
154/3 159/20 159/21 194/21
correctly [1]   35/15
correspond [1]   186/8
corresponds [2]   106/9 107/3
corroborate [1]   167/20
corroborating [1]   146/5
corrupt [16]   51/14 52/17
63/16 63/20 63/24 64/5 64/6
85/13 103/13 106/4 110/13
121/20 129/23 165/6 176/1
177/7
corruption [3]   103/6 103/8
129/21
corruptly [12]   52/23 54/13
56/11 56/12 56/16 74/4 110/5
110/8 113/25 123/18 165/8
167/6
cosmetic [2]   10/16 10/17
cost [6]   104/25 111/17
112/10 125/20 169/11 169/13
costs [3]   61/18 112/12
112/12
could [23]   5/2 6/12 69/20

72/18 75/10 92/14 95/14
111/5 120/25 121/3 123/5
134/17 137/11 150/1 151/20
155/24 158/8 160/22 164/12
166/25 171/1 179/9 180/24
couldn't [4]   3/19 3/20 14/20
159/14
counsel [10]   14/4 23/24
33/23 36/24 41/23 44/24 98/2
99/21 137/9 195/5
counsels [1]   88/3
count [49]   8/6 48/19 50/12
50/13 50/15 50/16 50/21
50/22 50/23 51/10 51/11
51/13 51/24 52/10 52/14 54/8
68/1 72/19 73/10 73/10 73/13
73/21 76/12 78/3 85/2 87/25
88/14 89/15 91/17 91/21
91/22 92/1 92/4 93/6 93/14
95/25 106/3 106/18 106/18
106/19 107/2 124/9 124/10
127/3 128/2 128/3 128/3
165/1 172/22
counter [1]   163/23
countries [1]   183/1
country [7]   57/13 57/18
60/12 61/21 61/22 71/16
71/21
counts [31]   4/16 40/17 50/12
51/19 51/21 52/3 52/8 52/9
52/15 54/5 55/12 64/12 87/23
88/13 89/7 91/15 91/16 91/24
91/24 91/25 106/8 106/9
106/12 107/2 110/3 124/4
124/6 124/25 125/1 130/4
185/6
couple [11]   5/17 7/17 8/16
14/25 22/22 22/24 23/24
143/10 158/17 192/7 194/11
coupled [1]   90/9
course [17]   13/12 66/1 72/11
72/17 77/11 99/16 103/9
107/5 108/20 112/13 115/2
116/3 150/12 159/13 164/2
178/7 189/5
court [32]   1/1 1/21 1/21
5/17 13/11 16/22 20/10 21/3
22/9 27/16 29/19 36/20 41/25
42/5 47/8 96/17 99/14 100/24
103/4 131/3 155/11 186/15
186/22 187/5 187/6 187/23
187/24 190/13 196/3 196/4
196/9 196/20
Court's [4]   16/22 99/12
100/6 101/4
courthouse [2]   38/10 191/7
courtroom [16]   28/6 29/22
32/16 38/4 38/12 38/14
130/15 186/23 187/1 187/14
190/6 191/8 191/18 191/21
193/24 195/9
courts [1]   45/15
cover [10]   103/18 104/25
111/19 112/10 123/8 125/23
126/16 159/13 162/22 179/11
covering [1]   179/24
coverup [4]   178/10 178/12
178/25 182/6
craft [1]   160/4
create [2]   146/10 153/8
created [6]   17/10 60/22
112/6 123/4 123/8 167/18
creates [1]   43/9
creating [2]   146/11 146/14
Creation [1]   146/3
credence [1]   46/12
credibility [11]   27/5 33/18
40/10 41/11 43/6 43/15 44/25
45/24 177/17 177/23 178/1

credible [2]   34/9 166/15
credited [1]   157/5
crime [38]   3/22 50/13 54/5
65/2 65/2 70/4 73/9 73/20
75/10 75/15 75/19 75/21
75/25 76/2 80/15 83/16 83/18
85/3 85/21 85/22 88/8 88/20
88/22 88/23 88/25 89/2 89/3
89/4 89/5 89/20 89/23 90/2
90/8 90/10 90/11 90/13 90/15
90/16 90/25 91/2 91/12 92/3
92/6 92/8 92/12 92/15 92/21
92/24 93/7 93/15 95/13
104/10 104/22 118/13 121/22
123/23 127/7 127/11
crimes [25]   27/25 28/16
28/24 30/8 45/9 48/19 49/5
49/10 49/16 51/8 51/10 52/7
91/19 93/3 103/21 105/19
105/19 127/10 127/24 129/10
134/24 134/25 135/1 135/2
188/10
criminal [36]   1/3 27/22
30/17 45/11 45/12 47/3 49/23
69/23 75/13 76/4 76/6 80/20
80/21 83/8 88/21 90/18 91/4
91/5 93/2 133/5 133/13
134/20 137/4 138/12 138/24
139/7 140/22 140/23 141/7
141/7 148/1 158/4 171/17
172/18 190/12 196/8
critical [1]   141/11
cross [5]   14/17 131/8 139/14
149/12 151/19
cross-checked [1]   14/17
cross-examination [2]   131/8
139/14
crossed [1]   13/21
crucial [2]   28/19 192/3
culpable [1]   142/1
curious [1]   8/10
currency [1]   86/9
currently [1]   144/4
curry [1]   132/24
customer [7]   104/23 105/22
125/16 129/1 144/11 146/14
160/5
customers [4]   133/10 135/7
135/12 143/8
cut [1]   123/14
Cyprus [3]   105/14 113/17
182/24

**D**

D.C [2]   1/15 1/20
Daher [1]   178/21
DANIEL [1]   1/19
Daren [80]   8/12 8/13 8/18
20/24 73/25 103/15 104/10
104/18 105/17 107/16 109/5
110/19 110/23 111/11 113/1
113/1 114/14 115/8 115/13
115/22 116/16 116/23 116/25
117/1 117/3 117/4 117/4
118/5 118/7 118/10 118/10
118/13 118/21 118/23 118/25
119/2 119/2 119/3 119/7
119/12 119/13 119/21 120/13
120/18 126/8 127/8 136/20
136/20 136/22 137/13 144/21
147/3 147/3 147/5 147/12
159/9 160/17 160/19 161/6
163/5 172/23 173/16 173/18
175/10 175/24 176/7 176/10
176/13 177/5 177/6 177/13
177/15 177/18 177/25 179/7
180/3 182/7 183/11 184/14
185/4
Daren's [2]   115/14 161/1

**D**

**dark [3]**   143/18

**date [36]**   5/8 6/8 11/6 11/17
11/21 11/24 11/25 12/1 12/1
12/1 12/3 12/4 12/5 14/10
14/21 14/22 14/22 14/25 15/1
15/1 16/1 16/1 16/2 16/4
19/1 51/3 51/4 51/6 72/24
73/1 159/5 159/9 159/10
176/18 177/2 190/1

**dates [24]**   10/9 10/20 11/13
11/13 11/16 14/11 14/17 15/5
15/9 15/24 16/13 51/1 51/6
73/2 140/24 175/7 175/12
175/19 176/3 176/11 176/19
176/22 177/10 177/23

**DAVID [1]**   1/11

**day [14]**   4/11 38/11 114/11
138/17 151/4 192/18 193/8
193/13 193/14 193/15 195/8
195/11 196/9 196/16

**days [8]**   105/18 132/13 139/9
142/13 147/21 147/25 161/13
177/18

**DD [2]**   51/20 74/23

**dead [2]**   137/7 137/14

**deal [4]**   5/10 141/8 164/12
175/7

**dealing [3]**   6/17 176/2
180/13

**deals [2]**   135/20 135/21

**Deborah [1]**   161/7

**decade [1]**   176/23

**decades [1]**   138/13

**deceit [1]**   66/11

**deceitful [2]**   66/22 67/7

**deceive [6]**   66/3 66/13 66/21
69/12 71/6 168/16

**December [2]**   8/16 21/8

**December 2011 [1]**   8/16

**deception [3]**   66/11 66/25
67/3

**deceptive [3]**   67/3 67/20
70/14

**decide [22]**   25/21 27/3 27/8
28/23 34/4 34/11 35/4 36/22
39/22 40/14 41/12 42/12
43/18 45/22 47/22 49/14
158/24 172/12 172/13 186/24
189/2 192/20

**decided [5]**   34/25 103/14
132/11 169/20 189/16

**deciders [1]**   175/8

**deciding [9]**   37/1 37/4 37/17
41/10 42/16 44/8 46/11 78/5
84/14

**decision [25]**   26/20 28/17
39/16 44/4 45/3 46/20 46/21
50/23 53/2 53/8 53/15 53/25
55/1 55/7 62/16 62/22 64/5
67/13 67/17 67/22 154/23
154/24 161/23 168/24 176/10

**decisions [2]**   74/12 74/18

**declarations [2]**   83/24 84/3

**deductions [1]**   39/10

**deemed [4]**   76/1 78/11 84/1
92/25

**defendant [309]**

**defendant's [42]**   28/11 30/13
31/5 31/14 42/9 47/13 49/9
50/14 56/20 64/5 69/9 79/1
79/12 79/14 79/24 79/25
80/15 84/11 84/15 103/8
103/12 110/13 111/15 112/4
113/20 114/20 116/8 117/19
118/12 119/15 119/18 119/19
121/19 122/11 122/19 124/5
129/3 129/21 129/22 173/8
173/20 173/24

**defendants [3]**   50/4 50/5
99/22

**defense [25]**   9/17 9/24 24/2
24/17 39/21 44/24 64/8 70/6
70/8 70/17 98/19 99/21 100/2
130/8 133/12 134/19 136/21
140/24 143/24 155/18 158/14
159/4 170/23 173/4 173/17

**define [2]**   26/3 97/9

**defined [1]**   148/22

**definition [5]**   60/16 86/10
87/11 96/21 97/6

**definitive [1]**   167/8

**defraud [35]**   64/14 64/21
65/9 65/14 65/15 65/21 65/25
66/10 66/15 67/24 68/6 68/9
68/13 68/18 68/22 69/1 69/2
69/11 69/15 70/5 70/22 71/13
71/24 72/3 73/17 74/24 74/25
106/8 125/3 125/6 125/8
125/11 125/15 125/17 169/7

**defrauded [2]**   105/21 129/16

**defrauding [4]**   5/23 104/22
106/14 169/14

**degree [2]**   61/5 148/22

**delegate [1]**   144/22

**deliberate [9]**   4/24 25/1
26/9 66/9 87/15 87/20 94/21
187/17 188/24

**deliberately [1]**   86/25

**deliberating [4]**   94/24
190/12 191/5 193/6

**deliberation [1]**   94/13

**deliberations [34]**   24/25
25/11 30/22 31/12 36/9 45/25
48/12 48/17 50/6 93/24 94/9
94/14 185/12 185/16 185/18
185/25 186/1 187/8 188/12
188/20 189/5 190/20 190/24
190/25 191/3 191/4 191/10
191/12 192/2 192/12 192/17
192/20 193/11 193/19

**deliver [1]**   25/8

**delivery [2]**   17/8 99/10

**demanded [1]**   64/9

**demeanor [1]**   41/4

**democratic [1]**   171/17

**demonstrate [1]**   165/17

**demonstrative [3]**   13/6 19/10
19/25

**demurrage [4]**   164/13 164/14
183/21 184/3

**denied [5]**   32/24 52/1 148/4
148/5 148/8

**deny [1]**   96/22

**department [7]**   1/13 59/23
60/1 138/21 152/5 165/17
182/1

**deposition [2]**   42/1 42/6

**deprive [2]**   66/10 66/13

**depriving [1]**   68/10

**deputy [1]**   193/24

**DEREK [1]**   1/14

**describe [3]**   24/9 97/4
134/10

**described [1]**   98/22

**describes [1]**   48/21

**deserves [3]**   44/11 45/6
47/24

**deserving [1]**   44/22

**design [1]**   77/21

**designated [1]**   190/19

**designation [1]**   60/20

**designed [1]**   178/12

**designing [1]**   18/22

**desk [3]**   117/22 118/11
184/11

**despite [2]**   75/24 141/1

**destined [1]**   161/11

**destruction [1]**   142/22

**detail [4]**   42/22 77/4 107/18
149/16

**detailed [1]**   165/23

**details [5]**   79/20 80/10
104/6 140/17 141/11

**detected [1]**   111/5

**determination [5]**   40/18
42/18 44/16 48/25 73/7

**determine [19]**   26/2 27/5
33/16 35/24 36/20 37/14 43/1
60/17 61/13 61/24 67/15
69/16 84/15 87/12 90/24 94/2
181/7 183/22 188/13

**determined [1]**   27/8

**determining [8]**   31/15 40/5
40/19 43/4 68/17 77/19 78/16
107/12

**develop [2]**   138/3 145/19

**developed [4]**   28/8 96/12
131/14 139/14

**development [2]**   85/11 144/8

**device [1]**   65/25

**devise [4]**   64/20 66/6 74/24
74/25

**devised [3]**   64/14 64/20
70/15

**dicta [1]**   3/22

**dictionaries [1]**   186/19

**did [100]**   3/14 4/19 4/25 5/4
7/17 10/19 12/12 14/15 21/1
33/16 33/17 34/12 36/25
40/17 46/5 46/10 47/25 48/8
48/10 68/23 73/22 75/4 78/8
86/2 87/20 90/22 91/1 91/3
91/4 91/5 92/20 92/21 104/7
104/7 104/16 105/24 109/15
110/5 112/8 113/12 119/7
122/12 123/3 124/2 124/14
124/19 125/11 125/12 125/14
126/1 128/5 128/18 131/7
131/8 132/10 132/11 132/12
133/14 136/3 139/13 140/23
141/15 144/5 144/20 145/19
145/25 148/24 149/2 149/4
149/17 149/18 150/13 150/15
150/20 152/15 153/21 156/14
157/9 158/3 159/17 160/7
160/11 161/2 161/3 167/19
168/1 168/5 168/6 168/13
168/18 170/6 170/25 171/6
174/11 174/17 175/2 176/13
177/5 179/22 181/20

**didn't [66]**   3/17 8/23 11/10
11/17 12/25 14/17 15/2 16/4
21/18 22/6 101/9 106/25
109/11 111/6 111/11 111/12
111/24 112/13 113/16 116/11
116/12 119/12 120/19 124/13
124/15 129/17 130/18 130/19
131/6 131/10 131/12 132/4
132/6 132/8 134/18 135/9
136/11 136/12 144/20 147/4
148/19 151/5 151/20 152/19
154/9 154/10 155/25 158/2
158/12 158/22 158/22 158/23
158/25 159/1 159/21 167/1
167/5 167/21 168/8 170/18
171/3 172/23 180/24 181/25
182/2 182/3

**dies [1]**   135/16

**difference [1]**   172/6

**different [19]**   6/14 6/16
12/7 16/13 25/20 26/5 36/14
39/19 47/16 50/12 71/20 80/3
99/22 100/1 135/1 135/2
140/1 140/6 157/14

**differs [2]**   148/10 189/10

**difficult [1]**   18/5

**D**

**diligence** [1]  130/13
**diligently** [1]  130/14
**dime** [1]  125/24
**diminish** [1]  181/12
**dinner** [1]  135/17
**direct** [30]   37/18 37/20
 37/22 37/24 38/1 38/1 38/5
 38/15 39/12 39/24 68/19
 69/18 69/22 77/13 122/17
 131/21 132/6 142/3 143/3
 143/11 143/17 143/22 146/20
 147/18 151/19 155/19 156/23
 157/15 169/24 170/18
**directed** [6]   33/4 33/5 105/5
 141/18 144/11 149/21
**directing** [5]   53/11 54/3
 55/11 63/5 74/22
**direction** [1]   183/1
**directly** [11]   53/13 54/24
 58/8 58/23 59/1 59/4 61/6
 71/25 97/2 124/15 126/23
**director** [3]   52/19 54/10
 55/14
**directors** [2]   61/2 61/4
**disadvantage** [1]   191/5
**disappointed** [2]   3/17 192/1
**disc** [1]   194/13
**discerning** [1]   6/21
**discharge** [1]   131/25
**discharged** [2]   25/13 27/18
**disclose** [1]   67/9
**discretion** [1]   50/7
**discuss** [22]   9/14 28/14
 34/18 41/20 94/25 98/8 104/3
 106/22 110/21 114/24 141/5
 160/12 160/16 185/17 185/19
 185/22 186/2 186/14 188/20
 191/14 191/15 193/10
**discussed** [10]   20/20 21/8
 80/23 84/25 106/1 119/21
 123/14 140/19 144/22 170/12
**discussing** [6]   21/12 23/6
 39/2 119/24 186/4 193/6
**discussion** [2]   24/5 114/8
**discussions** [2]   25/7 33/23
**disfavored** [1]   96/15
**disfavors** [1]   96/21
**disguise** [1]   113/7
**dismiss** [1]   33/6
**dismissed** [7]   132/14 147/21
 148/1 150/7 150/10 151/12
 166/8
**disobey** [5]   56/25 69/8 77/12
 79/11 90/6
**disputed** [2]   39/16 148/5
**disregard** [9]   27/1 29/23
 33/4 56/25 66/9 69/8 77/12
 79/11 90/7
**disregarded** [1]   32/17
**distinct** [2]   75/17 80/3
**distinction** [1]   37/20
**distortion** [2]   173/7 173/23
**distraction** [1]   173/23
**distractions** [1]   175/4
**DISTRICT** [6]   1/1 1/1 1/9
 1/21 196/4 196/4
**diverted** [1]   135/13
**DIVISION** [1]   1/2
**do** [117]   3/6 4/16 6/15 7/16
 7/20 9/4 9/20 9/23 10/6 13/1
 14/10 14/10 15/15 16/7 16/13
 17/18 18/16 19/6 20/22 22/18
 23/11 23/13 25/17 25/18
 26/16 26/16 34/5 34/7 34/13
 41/10 42/21 53/4 53/19 53/19
 55/3 55/3 56/23 62/2 62/17
 62/18 64/11 69/7 70/13 73/19
 74/13 74/14 79/10 83/16

84/19 88/23 90/4 90/5 91/17
 94/25 97/17 100/18 100/23
 100/25 100/24 101/22 102/14
 102/19 104/1 109/11 110/7
 114/19 122/23 123/3 123/7
 127/6 131/6 131/8 132/5
 137/1 139/3 139/12 139/13
 142/23 145/14 146/13 149/7
 149/10 149/22 150/1 150/25
 151/12 151/19 151/25 152/2
 153/7 153/18 153/20 154/12
 154/13 164/22 166/24 172/3
 172/14 172/18 180/23 183/6
 183/6 184/6 185/9 185/24
 186/17 188/25 189/3 189/5
 189/10 190/4 190/5 191/9
 192/1 192/25 193/10 196/5
**doable** [1]   17/7
**document** [9]   8/14 13/19
 13/20 127/18 155/11 160/4
 165/24 176/5 176/5
**documentation** [1]   169/12
**documents** [17]   3/8 11/7 12/7
 12/9 16/9 18/18 35/8 36/3
 97/24 111/12 133/12 145/1
 153/6 153/9 171/4 178/17
 182/19
**does** [38]   4/13 16/7 34/1
 37/7 37/11 44/21 51/1 58/25
 59/16 63/24 64/6 70/25 72/7
 72/23 80/16 80/18 80/23 81/4
 83/7 90/14 101/10 117/18
 118/19 134/23 136/15 138/24
 147/3 156/6 158/5 158/5
 163/19 163/24 166/12 169/8
 170/13 170/19 174/4 174/10
**doesn't** [33]   20/22 22/14
 102/7 118/10 119/2 120/12
 121/17 123/23 126/20 126/23
 141/25 142/22 145/16 146/23
 151/18 158/1 163/12 169/21
 172/7 174/7 174/8 174/20
 174/21 174/22 175/21 176/9
 176/17 176/18 176/25 177/1
 178/5 181/12 192/13
**dog** [1]   181/18
**doing** [15]   19/10 57/4 89/4
 89/12 102/4 110/9 110/12
 112/19 114/19 118/16 123/19
 139/18 151/12 163/2 193/6
**dollar** [1]   184/14
**domestic** [15]   52/18 52/20
 52/21 53/9 54/1 54/10 54/11
 54/12 55/15 55/16 55/16 63/4
 63/14 109/24 109/24
**don't** [53]   5/9 5/14 5/19
 6/25 9/18 9/22 10/9 11/6
 11/12 12/8 15/8 15/9 17/9
 18/6 21/2 21/3 22/1 22/3
 23/4 23/10 23/23 94/24 95/16
 97/8 99/13 99/19 100/14
 100/20 101/4 110/10 130/11
 138/17 143/19 148/14 150/3
 150/4 150/13 150/23 151/14
 154/3 155/5 156/12 173/9
 173/10 173/18 175/12 175/13
 178/16 183/15 183/18 184/16
 192/6 192/16
**donations** [1]   58/3
**done** [20]   9/18 11/4 22/16
 56/12 70/13 82/24 83/25 84/7
 84/11 84/18 84/20 90/2 90/6
 100/18 127/11 127/21 160/19
 164/21 173/14 175/1
**door** [2]   172/9 190/19
**dotted** [1]   13/21
**double** [1]   15/17
**doubt** [83]   6/14 28/22 30/15
 30/25 31/4 31/14 37/16 40/2

45/18 47/13 48/4 49/2 49/15
 54/7 55/13 56/10 57/7 57/19
 57/24 58/19 62/19 62/25 63/3
 65/7 65/20 68/4 68/25 70/10
 71/4 71/10 72/20 72/21 73/1
 76/10 76/22 77/25 81/12
 81/23 82/13 82/19 82/23 84/5
 85/23 86/5 86/21 88/15 91/20
 92/2 92/18 93/8 93/16 94/3
 96/14 96/18 96/22 97/6 104/4
 106/24 107/13 123/17 124/24
 127/1 127/25 129/7 129/8
 133/25 134/2 134/7 134/8
 134/9 134/10 150/22 150/24
 164/24 165/7 166/17 167/23
 168/4 169/17 170/4 170/13
 172/21 188/11
**down** [8]   101/3 108/17 118/6
 125/10 160/18 180/15 181/2
 184/20
**drag** [1]   101/11
**drama** [1]   161/18
**dramatic** [1]   161/19
**dramatically** [1]   140/1
**draw** [17]   27/7 27/8 32/8
 32/14 33/14 39/7 39/11 39/11
 39/20 39/21 39/23 46/17 50/1
 80/7 133/17 151/7 184/19
**drawer** [3]   148/5 156/2 156/3
**drawers** [1]   155/25
**drawing** [3]   34/6 38/24 39/13
**drawn** [6]   26/24 39/20 39/25
 48/9 70/3 79/4
**dripping** [1]   38/12
**dropped** [3]   4/16 139/9
 142/14
**due** [3]   69/9 79/13 153/22
**duped** [1]   169/4
**duration** [2]   80/1 152/6
**during** [29]   18/7 18/10 19/25
 25/20 26/18 26/19 32/9 36/9
 36/18 41/3 41/25 42/5 48/16
 60/19 61/16 84/16 95/9 98/12
 103/9 140/24 141/17 185/14
 185/25 186/1 186/18 187/7
 188/11 190/15 190/24
**duty** [21]   25/13 25/21 25/24
 25/25 26/13 27/2 27/10 29/10
 29/14 30/17 42/25 53/5 53/19
 55/4 62/19 74/14 93/25
 186/24 188/23 189/22 195/10
**dynamic** [2]   132/18 151/23

**E**

**E-address** [1]   114/8
**each** [56]   9/5 24/21 25/14
 27/17 29/11 35/25 40/6 40/10
 40/12 40/13 40/15 40/16
 48/19 50/12 50/13 50/16
 50/20 54/6 54/7 58/14 65/6
 71/3 72/19 73/20 77/9 79/17
 80/2 83/20 85/23 91/19 92/2
 106/9 107/2 107/5 113/4
 121/9 124/12 127/18 127/19
 129/9 134/1 134/1 153/9
 160/10 164/24 171/25 178/15
 188/10 188/17 189/2 189/17
 189/21 189/22 189/23 192/8
 194/12
**earlier** [21]   5/6 16/20 24/13
 41/4 41/22 41/24 42/1 42/3
 42/4 42/8 42/14 79/8 133/16
 139/25 141/9 145/5 149/25
 152/24 165/24 188/9 192/25
**easier** [2]   7/9 17/7
**easily** [1]   15/12
**easy** [2]   18/17 154/23
**edits** [1]   11/3
**effect** [1]   33/23

**E**

effect [...] <sub>Case 8:18-cr-00012-TDC</sub>

effectuate [2]   136/23 137/1
effectuated [2]   137/16 147/11
effectuating [1]   135/6
efficiently [1]   144/24
efforts [1]   63/8
eight [14]   51/19 52/8 52/15 54/5 87/24 88/13 89/7 91/15 91/24 101/5 101/7 106/8 107/3 124/9
either [22]   5/23 9/23 37/22 39/12 54/18 54/21 56/14 58/20 73/16 75/11 77/8 81/15 82/15 90/6 95/14 98/1 105/13 127/24 143/5 162/8 182/2 187/14
elected [1]   6/9
electronic [3]   65/3 186/5 186/9
electronically [1]   191/16
element [42]   5/19 5/22 6/1 6/5 55/12 56/5 56/9 57/6 57/22 57/23 58/11 58/18 59/21 62/13 63/1 63/2 65/19 68/23 68/24 70/4 71/9 72/5 76/21 76/25 77/24 81/22 82/2 82/18 82/23 86/4 86/16 86/20 87/17 87/18 91/19 123/24 126/1 128/10 128/17 128/20 134/1 164/24
elements [22]   52/3 52/4 52/11 52/13 54/7 65/7 76/9 85/24 92/2 92/17 93/5 93/13 107/9 107/10 124/18 124/21 124/23 125/2 125/14 128/3 164/18 188/10
eleven [12]   8/7 50/11 51/24 52/14 85/2 87/25 88/14 89/15 91/17 92/1 106/18 128/2
else [21]   4/17 9/14 10/12 23/14 58/3 97/14 97/15 103/12 111/2 120/14 121/1 121/4 121/10 133/18 148/14 150/23 174/10 179/16 185/23 191/15 194/14
elsewhere [1]   167/19
email [50]   4/15 4/15 8/14 8/17 14/20 20/14 20/15 57/16 71/14 71/17 72/8 106/14 113/4 114/3 114/9 114/10 114/11 114/12 114/17 114/21 115/3 115/6 116/11 117/17 118/4 123/13 126/3 126/5 126/10 126/21 136/13 141/20 162/13 162/15 162/17 163/4 163/4 163/5 163/6 163/7 163/9 163/14 163/16 164/16 165/12 165/23 166/9 179/4 184/23 186/5
emailing [1]   117/5
emails [26]   4/17 22/25 115/8 117/16 127/13 136/14 153/5 153/25 154/1 154/4 161/12 162/1 162/2 162/8 162/9 162/9 162/18 162/19 163/22 166/1 173/13 173/21 174/21 178/3 179/17 181/13
embezzled [1]   166/3
embezzlement [15]   20/6 20/24 20/25 21/25 135/3 136/1 136/16 153/16 153/18 153/20 154/9 162/20 162/22 167/1 171/13
embraces [1]   66/5
emphasize [3]   16/7 48/20 49/11
employed [1]   44/19

employee [12]   52/19 54/10 55/14 59/23 60/4 60/7 62/9 62/11 107/23 108/24 113/8 141/20
employees [3]   110/25 121/10 181/19
encourage [1]   151/24
end [23]   4/23 56/15 83/20 101/3 102/21 116/5 116/10 116/14 144/16 163/4 167/2 173/9 174/19 176/4 178/7 182/14 184/21 185/2 191/24 192/18 193/8 193/13 195/8
endeavored [1]   14/12
ended [1]   99/25
ends [2]   81/9 194/11
enduring [1]   171/18
energy [5]   138/21 152/5 165/17 180/9 180/20
enforcement [5]   27/22 44/18 44/20 44/25 45/5
enforces [1]   99/15
engage [3]   97/25 106/7 123/25
engaged [5]   58/8 81/14 89/21 167/5 173/22
engages [1]   58/5
engaging [1]   59/9
England [1]   113/15
enhance [1]   132/25
enjoy [1]   139/18
enough [5]   45/16 59/1 124/18 128/17 144/20
ensure [2]   179/15 192/5
entail [2]   153/15 153/17
enter [6]   47/9 52/6 83/19 93/24 94/8 169/25
entered [5]   47/15 76/11 76/23 77/1 169/18
entering [1]   46/25
enters [1]   135/16
entire [1]   48/5
entirely [2]   32/17 33/7
entities [1]   143/3
entitled [4]   28/4 28/12 35/17 188/17
entitles [1]   28/1
entity [15]   56/1 58/21 60/12 60/20 60/21 60/22 61/5 61/7 61/19 61/19 61/22 62/5 108/2 142/25 143/14
entity's [2]   61/1 61/5
entries [4]   10/22 14/25 15/6 15/19
entrusted [1]   172/2
envelope [2]   161/14 161/16
equal [2]   80/5 102/23
equally [1]   28/15
equals [2]   28/5 134/8
erroneous [1]   189/7
escort [1]   193/22
ESQUIRE [7]   1/11 1/14 1/14 1/17 1/18 1/18 1/19
essential [4]   52/5 70/4 78/14 188/10
essentially [3]   180/3 180/6 181/20
establish [19]   65/5 68/9 70/8 71/4 71/10 72/20 72/21 76/8 80/24 89/5 89/8 89/16 89/19 90/12 117/2 137/19 149/12 158/9 165/2
established [10]   26/23 38/20 39/12 51/7 59/14 68/19 69/24 77/13 79/2 153/1
establishes [2]   45/17 72/25
establishment [1]   159/24
estimate [1]   169/11
ETTINGER [5]   1/14 10/7 14/8

103/7 179/3
evaluate [4]   91/13 141/21 144/24 151/23
evaluating [2]   43/6 43/15
even [47]   3/24 16/8 17/6 17/7 19/16 31/11 31/19 41/17 61/8 62/10 70/11 72/12 75/21 76/2 80/6 80/12 84/10 90/9 90/19 91/17 92/20 94/22 99/13 109/20 109/21 112/10 127/8 131/12 132/8 137/22 138/5 145/11 151/20 152/25 153/8 154/10 155/16 155/16 157/15 158/25 159/1 163/24 165/23 166/9 168/8 169/22 171/4
evening [2]   3/3 16/19
event [5]   96/16 141/11 190/15 190/23 195/6
events [1]   40/24
ever [11]   30/23 31/12 99/19 108/12 136/14 140/23 157/11 160/7 160/11 169/25 187/19
every [20]   13/21 17/1 43/17 68/2 77/4 79/17 83/20 103/16 103/18 103/19 111/18 123/24 129/9 134/1 134/1 138/16 162/15 164/24 171/25 189/18
everybody [2]   178/18 179/16
everyday [7]   39/1 39/14 40/4 40/20 86/11 180/25 183/2
everyone [9]   3/2 6/22 23/20 99/20 102/17 102/22 122/1 181/4 194/9
everyone's [1]   23/22
everything [8]   4/17 18/20 23/8 40/16 70/24 177/3 184/12 184/15
evidence [235]
evil [1]   56/13
exact [3]   72/24 122/23 176/18
exactly [8]   7/24 15/2 113/21 133/22 175/10 176/25 177/21 182/17
examination [3]   131/8 139/14 151/19
examine [2]   47/20 189/6
examining [1]   34/10
example [3]   38/3 38/9 71/14
examples [1]   115/3
except [6]   135/12 162/19 165/4 173/19 173/21 186/9
exception [1]   94/11
excerpts [2]   139/17 139/19
exchange [7]   47/4 104/11 109/18 128/24 163/13 164/8 188/18
exclude [2]   17/2 19/15
exclusive [4]   26/15 27/4 61/10 61/24
exclusively [6]   21/23 22/11 29/6 42/25 93/25 160/6
excuse [2]   4/23 64/5
excused [2]   95/3 194/8
executing [1]   75/7
execution [5]   36/19 63/22 65/16 72/3 126/25
exercise [2]   38/25 61/10
exhibit [50]   9/24 14/16 17/12 18/23 19/22 20/9 21/6 21/16 21/19 21/21 39/5 98/8 98/10 98/13 98/14 98/19 98/24 99/1 114/6 114/10 114/23 115/5 117/21 118/3 118/5 118/17 119/5 119/23 121/7 121/7 126/5 126/6 126/13 128/12 129/4 136/21 157/9 157/10 157/10 157/12

**E**

**exhibit [18]**   162/23 162/24 163/3 163/18 163/22 164/5 184/10 194/21
**exhibits [25]**   8/24 13/22 18/3 19/12 22/6 22/10 22/22 22/23 22/24 31/22 31/24 32/1 34/24 35/5 35/16 37/12 51/7 124/11 127/18 133/12 134/16 194/11 194/17 194/25 195/2
**exist [5]**   38/8 59/17 68/23 92/10 92/17
**existed [11]**   60/19 61/12 61/15 68/18 70/23 77/19 77/21 78/3 92/7 154/16 175/14
**existence [8]**   38/20 59/15 77/11 77/15 84/16 93/5 93/13 183/16
**existing [2]**   63/21 63/23
**exists [7]**   6/7 39/17 39/18 59/9 59/11 61/17 169/24
**expect [3]**   99/13 100/14 101/4
**expected [1]**   67/11
**experience [19]**   34/7 38/20 39/1 39/9 39/14 40/4 41/16 43/25 139/2 143/19 143/21 144/2 151/7 154/19 180/13 180/16 180/25 181/6 183/2
**experienced [1]**   44/2
**expert [3]**   108/4 142/18 142/19
**expertise [2]**   153/10 153/19
**explain [5]**   6/7 30/2 116/20 155/16 161/11
**explained [5]**   134/22 149/3 166/2 166/5 188/9
**explaining [1]**   14/20
**explanation [3]**   42/22 42/23 117/14
**exploited [1]**   135/5
**export [6]**   138/21 149/15 152/2 152/3 152/7 165/15
**express [3]**   43/22 55/25 77/1
**expressed [1]**   26/21
**expression [1]**   26/25
**extent [5]**   43/19 61/7 79/24 80/1 166/22
**extra [3]**   112/6 112/9 126/18
**eyes [2]**   82/8 145/10
**eyewitness [1]**   38/2

**F**

**FABIO [1]**   1/18
**fabricated [1]**   134/5
**Facebook [1]**   186/5
**facilitate [2]**   149/9 149/17
**facilitating [3]**   87/1 87/15 149/7
**fact [56]**   16/8 21/11 27/25 29/17 30/5 32/4 32/7 32/9 33/2 33/25 34/22 37/1 38/1 38/15 38/21 39/3 39/17 39/17 42/2 42/16 42/21 44/19 46/18 48/8 49/23 50/3 50/4 51/4 59/13 67/9 67/10 67/14 68/8 69/16 69/16 75/24 78/5 80/6 80/22 81/2 109/15 138/16 138/16 139/11 144/22 144/24 146/2 152/15 157/8 162/15 171/6 174/10 175/16 177/16 177/21 181/11
**factor [4]**   43/14 61/24 67/21 78/15
**factors [7]**   3/18 4/1 40/21 60/19 61/15 61/23 62/2
**facts [43]**   6/25 26/2 26/16 26/17 26/23 27/4 27/8 27/11

31/15 31/23 32/14 32/23 34/2 34/5 34/23 38/7 38/8 38/16 38/20 39/12 39/20 40/4 40/22 40/24 42/8 44/4 44/17 46/16 66/23 67/19 68/20 69/23 70/13 79/15 151/24 170/21 171/22 172/12 172/13 172/15 175/9 175/9
**factual [1]**   27/3
**fail [1]**   90/5
**failed [3]**   164/25 166/10 172/21
**fails [3]**   31/7 61/8 188/16
**failure [1]**   67/9
**fair [2]**   27/14 150/5
**fairness [1]**   13/23
**faith [6]**   70/5 70/8 70/10 70/16 70/21 71/1
**faithfully [1]**   25/13
**fake [17]**   106/15 111/4 113/5 113/5 113/10 114/3 114/12 114/25 117/5 117/17 117/17 123/4 123/8 123/10 126/4 126/7 129/3
**falls [2]**   50/21 87/10
**false [32]**   42/19 64/15 64/22 65/9 65/21 66/2 66/8 66/16 66/17 66/23 67/3 67/6 67/8 67/15 67/20 68/8 70/11 75/1 75/4 125/4 132/3 132/20 132/21 132/22 140/8 147/23 147/24 150/21 153/14 156/17 166/5 167/24
**falsely [7]**   43/10 43/18 46/5 47/20 66/21 131/25 140/9
**family [4]**   147/21 151/15 157/2 185/22
**far [4]**   112/11 149/12 182/16 194/16
**fashion [2]**   19/11 21/17
**fault [1]**   95/10
**favor [6]**   34/2 56/20 62/3 132/24 133/21 172/13
**favorable [3]**   46/4 47/19 50/1
**favored [1]**   137/21
**fax [1]**   57/16
**FBI [8]**   114/16 132/12 141/16 141/19 141/19 142/14 147/22 149/20
**FBI's [1]**   161/15
**FCPA [58]**   51/15 51/20 52/5 52/8 52/12 54/6 54/17 55/12 56/16 57/9 57/21 58/7 58/15 59/6 60/8 62/12 63/6 63/25 74/3 75/11 75/20 81/15 86/23 87/2 87/8 87/10 87/16 87/21 87/23 89/6 89/8 89/11 89/14 89/18 90/1 90/21 90/23 91/14 91/23 93/6 93/9 93/11 93/14 93/17 93/19 95/15 106/9 106/24 107/1 107/2 107/9 109/12 124/23 127/5 127/24 128/8 147/12 168/8
**FCPA's [1]**   63/16
**FCRR [1]**   1/21
**fear [3]**   29/2 133/21 172/13
**fed [1]**   133/4
**federal [6]**   44/20 45/15 75/16 75/18 138/12 190/13
**fee [1]**   164/14
**feed [1]**   182/11
**feeling [1]**   13/23
**feelings [2]**   28/10 28/16
**fees [1]**   61/1
**fell [2]**   4/10 170/23
**fellow [5]**   188/19 188/21 189/4 189/9 189/11
**fellows [1]**   186/10

**few [8]**   97/17 122/5 146/19 155/4 158/14 166/3 171/15 175/6
**fewer [1]**   34/13
**field [1]**   44/2
**fifth [3]**   54/21 58/18 92/14
**fight [1]**   181/18
**figure [20]**   14/21 16/17 23/1 115/7 115/10 115/18 116/24 118/9 121/3 121/5 121/13 121/15 121/22 121/24 122/2 153/22 162/8 163/24 166/2 183/3
**figures [20]**   105/6 111/7 114/25 116/14 117/2 117/6 117/14 122/8 122/23 123/2 123/6 123/11 178/4 178/5 178/25 179/8 179/18 179/22 184/15 185/1
**file [3]**   154/15 160/25 160/25
**filed [1]**   160/25
**files [4]**   112/3 113/9 144/14 145/15
**fill [1]**   9/6
**fills [2]**   145/20 145/22
**final [5]**   71/9 82/18 94/11 99/1 189/14
**finalize [1]**   115/21
**finalized [1]**   22/8
**finally [7]**   51/24 52/12 80/25 82/15 93/22 125/8 176/19
**financial [5]**   41/7 60/24 69/13 78/13 89/17
**find [80]**   3/20 3/20 31/8 34/2 34/9 35/18 39/7 39/8 40/7 42/14 43/12 44/11 45/6 47/24 56/4 56/5 56/7 57/18 57/21 58/8 58/10 62/2 62/4 62/5 62/7 62/8 67/5 67/14 68/21 70/21 70/25 72/14 72/15 75/19 75/23 76/18 76/25 77/2 77/11 77/20 78/14 78/21 81/10 81/16 81/19 82/4 82/15 84/5 84/19 87/14 87/18 87/18 88/12 88/14 88/19 88/23 91/10 91/11 91/17 91/19 91/23 92/1 92/5 92/17 92/19 92/20 93/6 93/15 126/13 127/20 127/23 132/1 146/3 164/23 171/22 172/15 174/13 182/19 186/20 190/10
**finders [2]**   30/5 177/16
**finding [2]**   27/10 72/6
**finds [1]**   45/17
**fine [3]**   11/21 23/9 182/1
**finish [1]**   95/16
**finished [1]**   95/12
**fire [1]**   61/4
**firm [7]**   59/11 139/15 139/20 147/24 150/18 151/3 152/18
**first [46]**   3/9 10/12 12/21 13/10 14/7 19/18 24/16 52/7 54/9 55/12 62/15 64/2 64/4 65/8 65/19 76/11 76/21 78/21 84/15 85/24 86/4 88/19 88/23 92/3 99/23 102/21 103/14 104/1 111/22 125/2 125/14 126/3 128/10 132/11 137/17 137/18 155/23 161/5 164/7 171/1 171/15 175/8 187/2 190/22 193/20 193/25
**Fisk [88]**   7/22 20/12 20/15 21/7 21/14 21/23 22/18 74/1 74/20 103/15 104/10 104/18 105/2 105/5 105/15 110/15 110/21 111/3 111/9 114/5 118/15 118/17 118/18 118/18

**F**

Fisk [64]   119/7 119/11 127/8 130/23
131/15 133/6 133/7 133/14
135/4 135/8 135/16 135/18
135/21 136/2 136/4 136/6
136/17 136/18 136/22 137/14
137/16 137/18 137/23 137/25
138/7 138/7 138/24 140/15
140/19 140/25 141/3 153/8
153/23 153/25 154/2 154/4
154/8 154/13 156/16 157/25
159/9 159/11 161/8 161/10
161/11 161/13 161/13 166/4
166/6 167/3 167/4 167/5
167/9 167/9 169/19 169/20
171/7 171/14 175/24 176/14
180/3 182/7
**Fisk's [3]**   9/12 135/17 161/8
**five [12]**   92/17 93/5 93/13
101/19 101/20 124/6 132/7
133/16 151/1 167/13 167/13
195/6
**five-minute [1]**   167/13
**fixed [4]**   10/21 15/7 20/21
152/18
**flashlight [1]**   166/20
**flavor [1]**   179/6
**flourish [1]**   100/4
**focus [5]**   5/24 17/5 171/19
175/21 176/12
**focused [2]**   12/7 22/22
**fold [1]**   115/2
**folders [1]**   154/15
**follow [5]**   26/3 26/6 72/10
189/24 191/13
**followed [1]**   100/14
**following [11]**   25/5 25/10
52/18 54/7 60/18 61/15 65/7
76/9 85/24 92/2 175/11
**follows [1]**   70/5
**Fomin [11]**   120/9 120/12
120/16 120/24 121/1 121/1
121/17 149/25 150/1 150/3
183/25
**foot [2]**   112/15 129/1
**forbidden [1]**   188/6
**forbids [4]**   56/24 69/7 79/10
90/4
**forced [1]**   131/16
**foregoing [1]**   196/11
**foreign [65]**   51/14 52/16
53/1 53/3 53/4 53/6 53/7
53/14 53/15 53/17 53/20
53/22 53/24 54/21 54/24 55/2
55/3 55/5 55/5 56/18 56/19
57/13 57/18 58/6 58/21 58/24
59/1 59/4 59/20 59/22 59/23
60/7 60/9 60/11 60/12 61/20
61/22 62/11 62/16 62/17
62/19 62/20 64/9 64/25 71/16
71/21 74/8 74/11 74/12 74/13
74/16 74/17 85/12 106/4
107/20 107/23 109/1 129/24
158/8 165/6 165/11 167/6
168/5 175/25 177/7
**forensic [1]**   171/3
**foreperson [7]**   9/6 187/4
187/4 187/9 189/25 190/6
193/11
**foresee [1]**   72/18
**foreseeable [4]**   72/2 83/23
126/25 175/1
**foreseen [2]**   72/12 92/15
**forget [3]**   132/9 177/23
192/14
**form [26]**   4/25 7/8 9/4 12/1
12/5 12/20 15/4 16/10 16/10
34/24 35/20 58/2 86/8 95/17

112/8 118/9 145/22 145/25
184/11 187/5 189/20 189/25
190/1 190/5 190/7 195/3
**formal [3]**   60/20 77/2 190/8
**formalized [1]**   19/23
**formally [3]**   9/17 19/18
94/24
**formed [1]**   82/16
**former [3]**   156/6 160/2
180/19
**forms [9]**   9/5 11/23 12/13
18/23 34/18 35/6 112/5
145/21 178/19
**forth [5]**   67/24 87/23 87/25
113/4 129/13
**forward [2]**   171/23 193/21
**forwarded [1]**   163/7
**found [12]**   3/11 14/15 54/5
78/20 84/8 92/7 92/9 157/13
157/24 161/12 161/19 184/11
**foundation [2]**   159/19 172/17
**four [6]**   54/25 62/15 62/25
110/4 124/4 155/8
**fourth [8]**   54/18 57/23 62/22
76/18 82/18 92/11 96/13
96/20
**fraud [55]**   7/5 51/15 51/22
52/5 52/10 52/12 64/13 65/6
66/5 68/25 70/7 70/11 70/13
70/18 71/3 71/11 72/19 74/24
75/12 75/20 81/15 85/13
86/24 87/3 87/8 87/10 87/16
87/21 89/18 90/1 91/16 91/24
93/6 93/9 93/11 93/14 93/17
93/20 95/15 106/4 106/12
106/13 125/1 127/2 127/5
127/25 128/9 128/22 168/14
168/15 174/13 174/16 176/1
177/8 178/11
**fraudulent [25]**   64/22 65/4
65/10 65/14 65/22 66/2 66/16
66/20 66/23 67/8 67/18 68/8
69/18 69/22 70/9 70/13 70/15
71/7 71/23 75/2 75/4 122/14
123/15 125/4 167/24
**fraudulently [2]**   111/18
112/15
**freaking [1]**   99/24
**free [2]**   27/14 191/6
**freedom [1]**   47/17
**frequently [5]**   12/5 83/3
96/20 150/16 150/18
**Friday [1]**   115/9
**friend [2]**   120/3 140/9
**friendly [1]**   80/20
**friends [1]**   185/22
**front [6]**   9/17 9/23 16/5
21/3 140/9 172/9
**fulfill [2]**   16/23 192/3
**full [5]**   80/9 100/11 118/24
170/20 171/5
**fully [8]**   79/19 115/21
115/23 115/23 116/3 116/22
117/8 117/12
**function [9]**   60/13 61/14
61/23 94/1 108/3 108/16
108/21 108/23 188/11
**functions [3]**   25/20 61/11
61/17
**funded [1]**   104/22
**funds [20]**   4/15 61/7 71/19
72/9 85/4 85/17 85/25 86/6
86/8 86/13 86/15 86/17 87/7
87/13 116/5 128/4 135/10
158/8 166/3 170/4
**funneled [2]**   105/2 129/19
**further [11]**   3/12 71/23
73/23 76/19 81/3 81/19 82/10
97/3 97/8 97/9 196/11

**furtherance [20]**   52/23 54/17
57/9 57/20 64/15 68/6 71/12
74/5 81/25 82/22 82/25 83/25
84/8 84/17 84/20 89/25
125/10 125/13 126/2 127/12
**furthering [2]**   78/9 81/15
**Furthermore [3]**   58/12 68/13
79/22
**future [1]**   135/19

**G**

**gain [4]**   46/8 66/7 68/15
176/14
**game [2]**   138/22 138/22
**Gary [1]**   194/2
**gave [9]**   3/21 99/22 120/16
121/1 121/2 140/18 155/9
176/19 177/20
**general [12]**   4/22 6/20 45/23
48/13 57/4 66/5 149/1 149/6
160/11 160/13 192/21 195/19
**generally [4]**   61/22 96/25
97/1 110/12
**gentle [1]**   101/15
**gentleman [1]**   147/15
**gentlemen [35]**   23/21 25/3
107/15 123/16 130/11 131/18
132/7 132/13 133/2 133/24
134/23 138/10 140/3 140/14
141/13 141/15 142/2 144/6
145/23 146/25 151/24 153/16
154/18 158/11 161/17 162/11
170/2 171/12 171/24 173/6
177/16 179/6 183/8 184/9
185/8
**gents [3]**   115/9 115/13 116/4
**get [38]**   3/17 7/15 10/15
10/19 13/19 16/14 16/20
20/20 25/2 63/8 94/15 97/20
100/22 102/23 104/20 109/6
109/10 109/17 109/17 109/18
109/20 109/21 115/19 116/11
120/22 123/1 123/14 129/25
145/8 145/9 145/14 155/24
160/19 162/17 185/10 192/14
192/20 195/4
**gets [1]**   136/22
**getting [12]**   13/6 99/25
115/12 128/25 136/18 138/7
153/20 168/7 182/17 183/4
183/25 192/11
**gift [19]**   12/16 12/18 12/23
13/1 13/2 13/6 13/10 13/12
13/25 14/3 14/6 16/14 16/21
17/6 18/4 52/25 63/13 63/25
74/6
**gift-wrapped [3]**   12/16 16/21
18/4
**gifts [1]**   58/2
**give [30]**   7/17 13/24 14/16
25/14 26/14 32/12 35/10
35/12 35/12 37/23 38/9 44/10
45/5 46/12 47/23 52/25 74/7
94/11 94/12 95/17 97/7 101/8
103/25 106/2 121/17 144/15
144/25 151/5 185/12 187/11
**given [21]**   14/10 16/9 16/22
33/16 43/3 45/23 53/13 54/23
58/23 59/4 69/21 74/10 120/3
120/9 120/10 120/10 148/25
170/20 170/22 171/1 184/18
**gives [4]**   157/18 157/19
179/6 179/10
**giving [5]**   47/18 53/1 74/7
97/5 102/2
**Gmail [1]**   114/12
**gmail.com [1]**   114/17
**go [36]**   5/13 8/23 9/9 23/4
23/15 24/8 61/6 99/13 99/13

**G**

**go...** [25]
124/25 127/3 128/2 128/13
136/20 145/15 146/9 147/9
147/10 149/11 155/3 155/24
156/9 157/7 160/7 160/22
162/23 163/3 164/5 164/19
165/13 174/6 182/8 182/18
191/7
**goes [4]** 102/21 112/11
162/14 182/23
**going [54]** 10/4 16/17 17/4
22/7 23/13 52/7 95/9 97/16
97/19 98/19 99/15 100/5
100/10 102/18 103/25 104/1
106/24 107/14 109/22 110/21
112/2 117/13 118/18 118/22
119/6 119/9 121/18 123/14
127/15 127/21 136/7 136/9
138/23 139/17 139/18 140/16
141/14 141/25 142/9 143/11
143/14 147/3 154/11 155/12
155/23 164/1 171/14 177/22
177/22 179/6 183/3 190/17
192/21 195/9
**gone [1]** 124/21
**good [21]** 3/2 24/1 41/15
43/1 70/5 70/8 70/10 70/15
70/21 71/1 115/9 130/10
142/20 142/22 144/1 153/1
158/4 158/16 173/5 190/14
193/15
**good-bye [1]** 193/15
**got [16]** 6/23 6/23 8/11 9/3
9/9 17/5 18/11 100/15 101/1
101/12 126/12 157/1 158/5
158/17 159/12 182/15
**government [216]**
**government's [15]** 21/20 36/4
48/3 60/20 61/6 98/10 98/14
130/18 134/18 143/13 151/20
162/23 169/8 171/3 171/4
**government-mandated [1]** 61/1
**government-owned [1]** 60/21
**grand [1]** 50/8
**granted [1]** 138/5
**grateful [1]** 98/11
**great [8]** 19/7 23/14 43/16
45/21 47/21 179/15 179/16
179/17
**greater [4]** 28/2 35/10 44/22
76/4
**greed [3]** 103/6 103/9 129/21
**greedy [2]** 103/13 129/23
**Greenbelt [3]** 1/4 1/12 1/22
**grind [1]** 145/6
**grounds [1]** 45/1
**group [2]** 184/21 193/1
**guarantee [2]** 100/7 192/4
**guess [9]** 16/21 32/4 33/19
39/15 100/22 102/9 102/10
178/4 178/18
**guesswork [1]** 38/23
**guidance [4]** 96/16 97/8 99/7
192/22
**guide [2]** 25/11 36/6
**guided [1]** 28/18
**guilt [18]** 28/21 30/14 31/5
31/14 37/15 40/1 42/9 45/17
46/18 46/21 47/13 48/23
49/21 50/18 79/25 84/15
91/14 173/19
**guilty [59]** 28/24 30/7 30/11
30/14 30/24 31/8 37/5 46/15
46/19 46/20 46/25 47/5 48/3
49/2 49/16 49/18 49/22 49/24
50/18 50/19 52/2 54/5 65/1
65/6 73/20 75/19 75/23 81/10
85/21 88/10 88/12 91/6 91/10
91/11 91/22 91/23 92/19 93/7
93/15 94/2 107/16 123/23
130/4 131/3 131/9 132/21
136/3 138/5 141/23 155/9
174/17 175/1 177/6 185/5
188/13 188/15 188/16 189/16
189/16
**guy [1]** 138/14
**guys [1]** 17/3

**H**

**had [76]** 3/2 3/12 4/15 7/2
7/8 7/15 10/15 13/17 14/13
20/24 21/7 21/22 22/7 24/6
33/23 38/4 38/18 42/21 42/22
58/7 58/22 60/23 73/12 74/10
78/12 78/15 89/11 98/20
99/19 99/21 102/18 112/17
113/11 113/13 113/17 120/14
122/6 133/7 133/9 134/15
136/6 136/25 136/25 138/1
138/20 139/9 140/17 143/3
143/4 143/13 144/8 145/12
145/17 146/6 149/14 149/15
149/19 153/21 155/12 155/22
158/16 159/13 160/19 160/20
161/8 165/15 165/17 166/24
167/12 170/9 180/6 181/5
182/5 190/14 192/23 196/6
**half [5]** 14/17 66/22 67/19
99/23 164/16
**half-truths [2]** 66/22 67/19
**hand [6]** 11/6 17/7 91/8
171/1 193/23 194/21
**handle [5]** 17/1 17/9 98/22
101/14 160/17
**handled [3]** 13/22 108/19
160/6
**handling [1]** 160/14
**hands [1]** 192/5
**handwriting [4]** 111/15 157/9
157/14 157/16
**handwritten [1]** 16/11
**happen [5]** 81/3 118/18
120/19 132/12 134/18
**happened [12]** 132/13 134/19
135/8 138/17 141/5 150/10
150/11 153/24 172/15 175/21
175/22 184/12
**happening [6]** 21/13 115/11
135/10 136/5 157/1 192/14
**happens [2]** 24/13 191/2
**happy [1]** 154/24
**hard [2]** 16/23 121/2
**harmless [1]** 83/4
**Harrington [9]** 108/4 108/9
108/15 142/17 143/16 180/5
180/6 180/23 181/5
**has [116]** 5/16 7/21 9/11
10/8 10/25 13/13 20/10 24/5
24/7 24/17 25/4 25/6 25/12
26/4 26/25 28/13 28/21 28/23
30/7 30/9 30/11 30/24 31/13
33/15 34/8 34/11 35/5 35/20
37/2 37/15 37/17 43/17 43/19
43/24 46/24 47/15 47/15
47/19 48/1 49/1 49/15 49/17
49/21 49/21 52/1 55/21 56/5
57/19 57/22 58/11 59/11 60/2
61/4 61/17 63/1 68/21 70/7
72/13 76/1 77/12 79/24 83/12
83/16 87/6 88/14 88/20 90/12
91/18 100/14 102/6 103/23
123/25 125/1 131/14 132/23
132/24 137/4 137/11 137/13
137/15 139/5 141/12 145/4
145/6 147/20 153/20 157/2
161/9 162/4 162/15 164/21
164/25 165/1 165/9 166/10
167/16 168/17 168/18 168/19
168/21 169/1 169/2 170/15
170/17 170/17 171/18 172/4
172/21 172/22 174/14 184/18
191/20 192/3 194/13 194/14
194/18
**hasn't [1]** 9/17
**have [257]**
**haven't [7]** 5/1 9/24 10/10
10/22 14/12 15/8 94/23
**having [8]** 64/20 91/12 120/9
134/20 141/22 166/21 167/19
187/14
**he [357]**
**he'd [1]** 182/5
**he'll [2]** 114/9 116/25
**he's [36]** 20/6 51/19 112/11
115/13 115/21 115/23 115/24
115/25 121/21 122/1 132/23
138/14 140/22 141/6 141/23
147/18 147/19 147/19 148/1
148/3 157/3 162/4 167/9
173/14 174/16 174/17 174/17
174/23 174/24 174/25 175/1
176/16 176/16 176/24 177/3
177/3
**headers [1]** 10/25
**heading [1]** 95/23
**headings [1]** 10/18
**hear [12]** 11/10 24/14 24/16
36/24 39/6 40/22 94/19 130/6
130/18 130/19 130/20 178/19
**heard [65]** 9/24 13/9 13/11
25/23 29/24 32/15 35/25
36/13 36/14 36/15 36/17 38/3
41/21 44/18 45/7 46/14 49/6
94/22 94/23 94/23 102/19
104/6 104/13 104/17 104/21
105/1 105/8 106/5 107/10
107/21 107/22 107/25 108/7
108/14 109/4 109/5 109/8
109/12 110/14 110/19 113/7
113/20 114/15 122/16 123/21
123/22 124/4 126/22 130/1
131/17 133/11 137/8 161/10
162/6 164/20 166/18 167/2
173/11 176/7 179/13 180/10
182/4 182/5 185/4 195/8
**hearing [5]** 29/16 29/19
33/24 41/25 42/5
**hears [1]** 135/17
**heavily [1]** 169/9
**heavy [1]** 17/23
**heck [1]** 116/12
**held [1]** 122/4
**hello [2]** 116/4 116/24
**help [17]** 6/6 13/19 40/14
89/4 102/7 109/4 109/9 109/9
109/10 109/11 109/15 113/7
123/1 123/1 128/25 139/13
141/24
**helped [4]** 109/20 123/7
160/3 169/11
**helpful [3]** 5/16 7/21 169/3
**helping [4]** 42/11 120/1
122/23 163/1
**helps [1]** 162/25
**her [44]** 30/20 40/6 40/11
41/14 43/11 43/15 43/20
43/22 44/6 44/21 45/1 53/16
55/2 56/18 62/16 62/20 67/17
74/12 74/16 108/7 142/20
142/20 143/10 143/24 144/13
144/13 144/19 146/2 151/11
161/14 161/16 161/19 161/21
166/19 178/2 180/12 180/13
180/16 180/17 180/17 180/24
181/5 181/6 190/7
**her a [1]** 161/19

**H**

here **[88]** 6/24 7/1 8/20 10/5 18/9 19/1 38/11 45/24 46/23 66/12 67/5 67/19 72/14 77/19 85/1 85/8 97/24 98/1 100/11 107/1 107/16 109/23 114/13 115/11 119/24 120/7 121/18 124/3 124/18 127/7 127/12 127/25 128/7 128/17 128/22 132/8 133/21 134/25 135/2 136/13 139/23 140/2 141/8 143/15 145/3 145/6 150/24 151/18 153/24 155/14 155/15 156/15 157/24 158/15 158/16 158/16 159/4 162/24 164/13 164/24 169/1 169/2 169/5 170/15 170/15 170/20 171/13 172/15 174/3 175/9 176/22 176/24 180/7 181/17 181/19 181/19 184/13 187/6 187/23 190/9 190/14 191/19 192/19 193/14 193/19
Here's **[1]** 159/3
hereby **[1]** 196/5
hereto **[1]** 196/15
herself **[1]** 161/18
hesitate **[1]** 189/5
HEU **[1]** 104/15
HEU-LEU **[1]** 104/15
hey **[2]** 13/9 138/8
hidden **[1]** 179/15
hide **[11]** 105/9 110/22 110/25 110/25 111/1 111/1 111/20 114/22 141/22 162/18 162/19
hiding **[4]** 104/23 112/20 125/22 162/20
high **[2]** 59/19 121/2
higher **[1]** 59/14
highlighted **[1]** 39/3
HILL **[2]** 1/18 14/23
him **[46]** 20/9 30/20 31/11 31/12 46/8 46/9 47/4 50/22 50/22 50/23 80/16 91/10 91/23 113/21 114/9 117/11 117/12 126/8 134/11 136/4 139/20 140/15 141/1 141/3 142/6 142/6 142/10 147/4 148/24 150/2 150/21 153/23 155/19 159/24 163/11 168/11 168/11 172/3 172/11 175/1 176/9 177/1 180/2 180/3 182/4 190/7
himself **[25]** 42/13 58/5 71/7 75/25 80/21 88/8 88/11 89/3 89/6 91/3 119/19 123/24 124/14 125/24 126/21 126/21 139/8 139/14 139/24 147/20 151/15 168/12 170/16 174/18 175/2
hire **[1]** 165/15
hired **[3]** 143/4 143/21 143/22
hiring **[1]** 152/13
his **[146]** 17/11 20/9 40/6 40/10 41/13 43/11 43/15 43/20 44/21 45/1 46/5 46/10 46/21 47/17 47/20 47/22 53/3 53/6 53/16 53/17 53/23 55/2 55/5 56/18 56/23 62/16 62/19 67/17 69/6 71/5 74/12 74/16 79/3 79/9 79/22 80/1 84/12 84/24 91/4 92/16 103/13 103/13 104/10 104/21 105/6 105/6 105/8 105/10 105/22 106/6 109/3 109/6 112/14 113/23 114/22 115/12 115/15 115/17 116/15 116/16 116/17

117/3 117/20 119/16 120/1 120/2 120/4 120/5 120/7 120/21 120/21 121/14 121/22 122/19 123/2 123/5 123/12 124/5 124/8 125/16 125/20 127/9 129/12 129/18 129/22 129/23 129/23 129/23 132/6 132/13 132/25 133/12 138/15 139/6 139/10 139/23 139/23 139/24 140/9 140/12 141/24 147/20 147/21 147/21 147/25 148/1 150/18 150/20 151/8 151/14 151/15 151/15 151/15 151/16 155/17 155/19 156/16 156/24 156/24 156/25 157/2 157/2 157/2 159/4 160/25 161/13 161/13 161/15 162/19 162/22 163/9 165/11 165/17 167/7 167/19 168/5 168/8 170/16 170/16 172/10 173/17 176/7 176/8 176/21 177/22 178/1
hold **[3]** 5/2 101/23 103/23
holder **[1]** 8/6
holding **[2]** 151/13 185/8
home **[2]** 17/4 161/15
honest **[2]** 70/16 189/10
honestly **[3]** 104/17 150/15 177/10
Honor **[39]** 3/4 3/14 4/4 7/3 8/2 8/8 8/21 9/1 10/7 11/5 11/23 14/13 18/14 18/15 19/8 20/2 23/16 24/1 24/4 95/8 95/10 96/3 96/10 97/15 97/22 98/23 99/10 100/17 101/16 102/1 102/8 102/13 103/3 161/22 181/24 184/7 194/23 195/14 195/23
HONORABLE **[1]** 1/8
hoodwinked **[1]** 141/3
hope **[2]** 3/2 17/18
hoped **[1]** 46/4
hopeful **[1]** 10/5
hopes **[1]** 46/7
hoping **[2]** 148/20 148/21
hospital **[1]** 135/16
hostility **[1]** 41/9
hour **[14]** 24/21 99/12 99/19 99/23 100/2 100/7 100/9 100/10 100/12 100/15 100/19 101/2 101/5 101/9
hours **[2]** 24/20 150/13
how **[72]** 13/22 21/2 40/5 41/6 42/16 43/2 45/22 94/13 98/22 99/14 100/4 103/1 104/3 104/7 104/21 105/1 106/22 108/7 108/15 109/15 110/7 110/14 110/20 110/21 110/24 111/3 111/6 111/7 111/13 111/22 112/17 113/7 113/10 114/23 115/21 118/16 120/13 121/2 122/10 123/10 124/2 125/1 125/18 127/4 139/20 140/15 140/21 143/4 143/5 143/20 143/22 146/20 148/17 150/4 150/13 151/23 156/12 156/13 159/13 160/12 160/14 163/19 164/19 168/23 169/4 171/1 171/17 177/18 178/15 179/10 188/1 189/15
however **[24]** 35/21 36/7 37/5 44/13 45/19 45/24 47/14 48/19 68/11 70/7 70/14 70/18 71/23 72/23 77/13 80/14 83/3 84/13 87/12 93/4 101/14 134/10 185/21 188/18
human **[1]** 66/6

**I**

I'd **[7]** 7/1 99/11 100/20

143/10 164/19 183/6 192/7
I'll **[16]** 4/21 24/11 24/24 51/17 96/2 101/1 104/2 104/3 116/19 127/3 128/2 138/2 138/4 139/12 156/21 162/17 193/3
I'm **[44]** 10/4 10/5 11/10 13/18 17/3 17/22 23/12 52/7 93/11 95/8 95/19 95/21 98/11 99/15 100/3 100/12 101/2 103/25 104/1 106/24 107/14 130/12 130/13 136/7 139/3 139/17 140/16 141/14 143/14 146/1 146/13 148/17 151/22 151/22 154/1 154/1 154/17 159/14 165/19 171/14 173/3 174/15 190/17 195/8
I've **[21]** 6/9 7/5 14/5 21/25 97/7 98/22 99/19 100/11 101/1 106/1 107/2 130/14 134/22 139/18 159/23 162/3 165/24 166/2 169/21 170/12 171/12
I-chat **[4]** 121/7 174/22 183/7 184/10
I-chats **[2]** 173/13 173/22
idea **[7]** 9/21 13/25 15/5 20/23 164/14 169/14 179/10
identification **[1]** 31/25
identified **[1]** 161/18
identify **[1]** 157/8
identifying **[2]** 48/18 160/4
identities **[1]** 79/17
identity **[2]** 35/22 35/24
ignorance **[2]** 69/4 79/6
illicit **[3]** 170/6 170/10 170/14
immaterial **[1]** 67/4
impact **[1]** 29/10
impartial **[3]** 27/14 31/5 189/3
impeached **[1]** 148/3
implicated **[1]** 157/23
implicates **[1]** 150/25
implicit **[1]** 55/25
importance **[3]** 40/10 40/15 40/20
important **[28]** 7/4 16/13 20/8 27/21 27/24 40/4 41/12 42/21 67/17 67/21 79/1 116/1 151/9 158/21 158/24 171/6 174/23 175/19 175/20 176/4 176/18 177/11 177/11 178/14 181/6 184/23 185/11 186/22
importantly **[4]** 143/3 157/11 157/19 158/12
imposed **[1]** 94/6
imposes **[1]** 30/16
imposing **[1]** 93/25
impossible **[1]** 111/8
impression **[1]** 130/22
improper **[11]** 12/8 28/9 28/15 53/5 53/21 55/8 62/23 74/15 97/7 109/8 109/13
improprieties **[1]** 145/13
inability **[1]** 141/10
inaccurate **[5]** 70/18 131/12 156/14 156/15 156/20
inadvertence **[2]** 69/10 79/13
inadvertently **[1]** 90/14
inappropriate **[2]** 22/2 146/2
Inc **[1]** 85/11
incapable **[1]** 75/24
include **[6]** 6/9 21/13 71/18 71/19 168/18 188/1
included **[4]** 12/18 112/7 152/17 182/11
includes **[3]** 57/15 63/19 186/3

**I**

including [9]   59/22 60/21
60/24 61/9 86/9 97/19 145/21
185/4 186/18 187/5
**income [4]**   131/16 131/16
156/16 159/14
**incomplete [2]**   22/4 186/21
**inconsistency [2]**   42/20
42/23
**inconsistent [10]**   41/23 42/7
42/10 43/2 43/3 134/14
134/21 162/5 165/21 166/21
**inconvenience [1]**   35/3
**incorporated [1]**   32/22
**incorrect [1]**   186/21
**increases [1]**   76/5
**Indeed [1]**   45/15
**independent [7]**   35/9 44/4
75/16 79/3 96/7 155/22
185/24
**index [1]**   143/15
**indicate [1]**   6/6
**indicates [2]**   20/23 20/24
**indicia [1]**   61/12
**indicted [1]**   30/9
**indictment [53]**   7/16 7/17
7/18 8/13 8/15 9/10 9/13
30/9 30/12 32/7 45/9 48/15
48/16 48/17 48/20 49/6 49/13
50/4 50/11 50/14 50/25 51/2
51/6 51/9 51/12 52/15 64/12
65/11 65/18 68/1 68/3 72/22
72/25 73/3 73/11 73/14 76/12
76/17 76/24 78/3 78/18 81/25
82/3 82/12 83/1 84/7 85/8
87/22 91/21 106/3 127/17
172/22 195/2
**indirectly [6]**   53/14 54/24
58/6 58/24 59/4 63/20
**individual [10]**   28/5 50/18
55/17 66/7 76/5 134/3 134/4
145/24 188/22 189/1
**individual's [1]**   146/1
**induce [10]**   55/3 55/4 56/17
62/17 62/19 109/9 165/10
167/6 167/25 168/4
**induces [1]**   88/4
**inducing [6]**   53/3 53/6 53/17
53/22 74/13 74/15
**indulgence [2]**   100/6 101/4
**industry [2]**   142/25 180/13
**infer [6]**   38/8 38/17 38/20
49/22 77/15 145/22
**inference [10]**   26/23 32/8
38/24 39/15 48/9 50/1 79/15
79/21 184/18 184/19
**inferences [15]**   26/24 27/7
32/14 33/14 38/25 39/8 39/10
39/13 39/19 39/21 39/23
39/25 46/17 70/2 79/4
**inflated [1]**   103/18
**inflating [1]**   125/22
**influence [27]**   53/6 53/8
53/23 53/25 55/1 55/5 55/7
56/19 62/15 62/20 62/21 64/1
74/16 74/18 93/24 94/7 109/3
109/6 120/21 136/25 148/25
149/13 153/21 168/5 168/7
168/7 168/8
**influenced [2]**   30/4 186/23
**influencing [3]**   53/2 53/15
74/11
**inform [1]**   191/21
**information [31]**   10/10 13/11
23/7 35/15 114/7 141/19
143/24 144/12 144/15 144/23
145/1 145/11 145/19 146/7
147/4 149/8 157/18 157/19
159/18 167/21 169/13 169/18

170/22 171/1 173/11 173/12
186/3 186/16 186/20 191/8
193/12
**informed [10]**   79/20 115/21
115/23 115/24 116/3 116/22
117/8 117/12 142/8 179/18
**ingenuity [1]**   66/6
**initial [1]**   146/24
**initially [2]**   7/10 146/21
**initiator [1]**   124/17
**innocence [2]**   28/12 31/2
**innocent [8]**   30/19 30/22
34/17 42/20 48/7 83/2 83/3
140/3
**inputting [1]**   146/12
**inquired [1]**   158/10
**inquiry [1]**   118/7
**inside [3]**   86/1 128/4 128/11
**instance [3]**   20/21 73/8
161/6
**instead [3]**   8/12 15/19
179/21
**instruct [19]**   25/9 25/15
25/24 27/1 28/25 30/21 52/7
52/11 52/12 87/9 106/5
107/10 107/22 108/1 109/12
122/16 123/21 126/22 164/20
**instructed [6]**   33/7 36/19
37/5 46/16 82/10 83/6
**instruction [20]**   4/12 4/21
5/12 6/7 6/8 18/1 24/24 26/7
94/11 95/12 95/17 95/24
96/14 97/4 174/14 184/18
185/11 185/11 185/21 193/16
**instructions [41]**   3/9 3/13
4/20 5/7 5/16 6/13 7/18 9/7
17/17 19/21 23/8 23/15 24/9
25/2 25/10 25/16 26/1 26/6
26/6 26/8 29/23 32/10 48/13
49/20 91/11 94/10 94/13
94/23 96/25 97/1 97/11
107/11 113/11 174/1 174/6
185/14 189/24 190/8 191/13
193/5 195/2
instructions.................
..........25 [1]   2/6
**instrumentalities [6]**   74/4
74/17 74/19 108/6 108/23
108/24
**instrumentality [27]**   52/22
53/7 53/9 53/24 54/1 54/16
55/6 55/8 57/8 57/14 57/20
59/24 60/1 60/9 60/11 61/25
62/4 62/5 62/6 62/7 62/8
62/21 62/22 107/24 107/25
108/1 181/8
**insufficient [1]**   6/19
**intelligence [1]**   154/20
**intend [2]**   22/23 22/25
**intended [10]**   26/21 56/17
63/7 63/8 63/13 64/1 64/20
68/16 72/12 90/17
**intends [1]**   21/2
**intent [37]**   49/10 56/23
65/15 69/2 69/7 69/11 69/12
69/15 69/18 69/22 69/23 70/5
70/9 70/14 73/23 74/24 74/25
79/10 85/5 85/12 85/20 86/2
86/22 89/17 90/3 90/5 90/23
122/19 125/7 128/6 131/20
134/5 147/16 165/10 169/13
170/6 170/6
**intention [5]**   66/21 78/9
81/8 87/15 87/20
**intentionally [9]**   56/12
56/22 69/3 79/5 81/13 81/18
86/24 90/3 159/3
**intentioned [1]**   135/13
**interacted [2]**   143/7 168/10

**interactions [2]**   14/4 149/13
**interest [17]**   7/2 41/7 43/9
43/19 43/19 45/17 45/2
46/6 47/15 60/23 78/13 78/15
142/7 152/12 172/2 183/23
**interested [1]**   161/9
**interests [1]**   80/23
**interfere [2]**   28/17 29/3
**interlinked [1]**   6/25
**interlocking [2]**   180/18
181/14
**interlocutor [1]**   163/23
**internal [6]**   139/16 146/7
146/23 160/4 165/23 171/4
**internally [4]**   146/21 159/8
160/15 161/5
**international [4]**   71/11
104/13 125/9 135/7
**Internet [4]**   29/25 186/6
186/19 186/20
**interpret [1]**   97/3
**interpretation [2]**   36/4
36/12
**interruption [3]**   17/19 24/16
94/20
**interstate [17]**   4/12 52/22
54/16 57/8 57/10 57/15 64/16
64/25 65/2 65/17 71/11 73/6
74/4 75/6 124/3 125/9 147/10
**intertwined [1]**   6/25
**intervening [2]**   5/17 6/6
**interviewed [3]**   139/15
158/10 158/11
**introduce [2]**   20/9 130/11
**introduced [4]**   34/1 49/3
168/20 168/22
**investigate [1]**   158/13
**investigation [7]**   132/16
139/16 141/16 142/9 142/12
142/13 142/15
**investigative [2]**   36/25 37/7
**invisible [1]**   110/23
**invited [1]**   158/3
**invoice [21]**   8/18 11/19
11/24 12/19 14/22 16/2 16/12
106/15 116/25 117/24 117/25
118/8 126/5 129/3 129/5
159/5 159/6 159/19 161/5
174/5 174/5
**invoices [27]**   11/13 11/15
12/10 14/14 14/18 104/24
105/23 111/4 111/4 112/21
112/23 113/5 113/8 113/10
126/5 126/8 127/13 136/8
136/20 136/23 158/13 159/21
160/16 160/17 160/20 168/2
174/4
**involve [1]**   4/16
**involved [18]**   37/10 45/8
72/1 77/16 115/16 116/18
124/15 126/23 169/9 170/8
170/14 175/24 177/13 178/3
178/8 180/1 184/16 184/21
**involvement [2]**   50/14 180/17
**involves [1]**   69/17
**involving [2]**   133/14 175/18
**ironed [1]**   17/24
**irrelevant [3]**   180/7 180/12
180/23
**is [545]**
**Islands [2]**   105/11 113/15
**isn't [11]**   6/4 121/24 131/8
144/24 149/1 150/2 150/5
150/10 151/5 152/3 155/3
**issue [27]**   3/22 4/3 5/5 5/9
6/12 6/14 7/1 7/13 19/17
20/2 21/4 21/15 21/16 23/2
37/11 43/22 79/25 84/14 95/6
96/11 96/19 97/19 119/24

**I**

**issue [4]**   184/6 186/2
186/17 189/15
**issues [13]**   3/12 3/12 3/15
6/18 6/20 17/10 27/3 34/20
41/20 95/5 96/4 96/6 193/3
**it [374]**
**it's [81]**   3/15 3/18 3/23
4/11 5/19 7/20 9/1 11/24
11/25 12/4 13/7 15/18 16/3
16/10 16/11 17/3 17/6 17/7
17/15 20/5 20/15 20/16 20/16
22/15 23/3 60/5 68/2 79/1
95/20 95/25 97/8 98/13 98/15
99/19 101/2 103/2 107/10
114/13 117/15 120/8 120/8
120/11 121/11 125/17 126/12
126/14 136/24 136/24 141/6
141/7 146/14 148/15 148/17
149/1 151/8 152/9 152/20
154/23 161/22 163/7 163/7
173/8 174/22 176/8 178/10
178/14 178/22 179/16 179/17
179/20 179/22 180/15 183/9
183/17 184/2 184/2 184/3
184/3 190/14 192/11 195/21
**item [1]**   112/7
**its [38]**   31/7 34/12 37/2
37/7 37/18 53/17 53/23 55/21
56/5 60/14 61/14 62/6 65/14
68/22 72/17 77/4 77/5 77/14
77/15 78/8 78/9 78/12 83/4
86/11 88/4 91/18 93/3 104/8
129/1 130/21 133/25 135/11
143/8 152/12 153/13 153/19
172/22 188/15
**itself [9]**   45/16 48/20 71/22
80/16 83/8 91/12 127/7 134/7
190/4
**Ivy [1]**   1/12

**J**

**jail [2]**   138/13 151/10
**Japanese [5]**   112/1 133/10
137/22 179/14 182/10
**Jessica [1]**   145/18
**job [12]**   139/22 139/22
144/23 147/25 151/6 151/8
151/10 151/10 151/13 151/14
156/16 185/19
**Jobs [1]**   151/8
**Jodel [16]**   114/1 114/1 114/2
114/13 114/14 114/21 115/7
115/9 166/9 178/6 179/2
179/4 179/8 179/9 184/23
184/24
**Johnson [2]**   145/18 146/10
**join [7]**   75/14 103/14 123/25
136/10 140/23 190/20 191/2
**joined [6]**   78/7 78/21 78/23
79/23 80/10 80/12
**joining [3]**   140/21 147/16
156/24
**joint [1]**   55/19
**journals [2]**   113/22 124/7
**JR [1]**   1/17
**JSC [1]**   60/4
**judge [24]**   1/9 25/20 25/24
94/1 97/23 106/5 107/10
107/22 107/25 109/12 122/16
122/18 123/21 123/22 126/22
164/20 171/16 174/1 174/6
174/15 175/9 180/25 184/18
186/13
**judge's [1]**   107/11
**judges [3]**   26/15 27/4 40/9
**judgment [10]**   33/17 41/15
43/1 44/16 139/1 140/16
144/2 154/20 189/1 189/17

**judgments [2]**   40/8 40/11
**jurisprudence [1]**   96/14
**juror [6]**   9/6 27/7 190/24
191/2 191/5 191/14
**jurors [24]**   4/23 17/17 17/23
27/16 30/3 31/3 94/5 132/1
171/20 188/19 188/21 188/24
189/4 189/9 189/12 190/13
190/15 190/16 190/18 190/18
191/24 193/7 193/7 193/12
**jury [75]**   1/9 2/6 3/8 3/9
3/13 7/18 7/21 9/7 9/10 9/17
9/23 17/17 17/20 17/25 18/4
19/18 19/20 23/15 23/18
23/19 24/9 25/17 25/20 26/9
27/2 29/16 29/19 30/23 45/17
48/12 50/8 93/23 94/10 95/3
96/25 97/1 97/10 97/20 98/4
98/7 99/17 101/11 101/25
102/14 102/16 127/16 130/11
171/16 171/19 185/13 186/10
186/12 187/2 187/3 187/10
187/12 187/19 187/22 188/1
188/7 188/17 188/19 190/8
190/12 190/17 191/4 191/25
192/4 193/8 194/7 194/8
194/10 195/1 195/2 195/10
**jury's [1]**   161/23
**just [99]**   3/7 3/19 3/20 4/8
4/11 4/18 4/20 5/3 5/19 7/1
8/25 11/9 14/8 15/2 15/9
17/2 17/2 17/5 17/11 18/15
18/18 19/1 19/24 21/5 21/11
22/21 23/3 23/5 23/6 23/22
23/25 24/24 29/5 38/4 41/11
58/7 88/10 94/12 96/15 97/10
97/12 97/23 98/13 99/1 99/14
100/6 101/2 101/3 102/1
102/3 102/19 105/15 106/25
107/10 109/24 110/11 114/13
114/14 116/4 116/11 121/11
122/10 123/20 124/2 127/3
128/18 134/16 137/22 138/15
138/24 139/8 140/4 141/5
141/8 151/2 153/23 154/2
171/15 172/18 173/9 174/10
176/16 177/9 179/23 180/12
180/25 182/18 183/7 183/21
185/5 192/7 192/10 192/13
193/1 193/2 193/18 194/24
194/25 195/12
**justice [4]**   1/13 171/18
172/20 192/5
**justified [1]**   39/9
**justifies [1]**   72/6
**justify [6]**   79/21 123/4
153/3 153/10 153/13 153/19
**justifying [1]**   153/6

**K**

**KATHERINE [1]**   1/19
**keep [12]**   23/3 34/14 63/8
100/11 100/12 118/22 119/6
119/9 124/13 125/23 135/14
136/8
**keeping [3]**   117/12 148/4
184/1
**kept [3]**   135/13 161/15
166/19
**key [6]**   3/8 61/1 78/22 156/3
156/4 156/7
**kind [8]**   3/25 46/17 47/10
75/13 153/15 153/17 153/22
184/12
**Kingdom [1]**   105/12
**KK [1]**   68/1
**knew [28]**   54/22 67/6 71/5
89/11 99/20 110/9 110/10
110/12 112/19 112/19 114/18

115/1 115/1 120/15 120/23
120/24 121/4 121/6 122/5
131/5 131/17 132/4 132/5
139/10 139/10 151/16 155/4
157/21
**know [105]**   6/18 8/25 9/18
10/7 13/14 14/3 14/11 15/2
15/8 15/9 16/8 17/3 17/4
17/24 18/11 21/2 39/18 40/22
73/25 80/20 90/16 98/4 98/15
98/17 100/4 100/14 106/22
107/19 109/23 110/7 111/12
113/25 114/2 118/2 120/12
120/23 120/24 121/14 122/1
127/7 130/14 130/20 132/9
132/21 132/23 133/4 135/9
136/11 136/12 137/11 141/3
141/25 142/6 146/20 146/23
149/2 149/10 150/3 150/4
154/6 154/7 154/10 154/13
156/12 157/9 158/21 163/12
164/10 164/11 172/6 172/12
172/19 174/5 174/9 175/7
175/14 175/17 177/11 177/16
178/9 178/14 179/1 179/12
180/22 180/24 181/20 181/25
182/2 182/3 182/8 183/12
183/12 183/12 183/15 183/15
183/18 183/19 183/20 184/17
190/14 191/25 192/11 193/18
195/10 195/18
**knowable [1]**   178/21
**knowing [18]**   53/12 59/2 59/7
74/9 75/3 81/20 89/12 131/3
137/3 138/23 139/24 139/25
140/6 141/9 141/22 145/4
147/2 148/6
**knowingly [28]**   64/16 65/12
69/2 69/3 69/11 69/15 73/22
74/24 75/4 76/13 76/16 78/1
78/7 78/21 79/5 79/15 80/11
81/24 82/7 82/24 85/9 89/2
89/6 91/3 117/10 125/7
125/12 168/15
**knowledge [37]**   37/11 43/24
45/11 45/12 49/10 56/22 57/3
58/22 59/13 65/14 69/6 69/18
69/23 72/9 72/16 78/8 79/9
79/14 79/21 80/9 80/25 81/2
81/7 84/12 89/25 90/9 90/13
92/22 122/19 143/3 143/5
143/17 143/22 146/1 147/16
157/8 166/21
**knowledgeable [1]**   44/2
**known [5]**   60/4 66/18 74/1
79/17 166/25
**knows [9]**   6/22 101/11 117/13
121/16 121/25 122/2 172/4
172/5 172/6
**Kolodjeski [2]**   158/7 158/15

**L**

**L.F [18]**   114/25 121/14
121/15 122/8 162/1 162/7
162/12 163/4 163/13 164/7
164/8 178/5 178/25 179/19
182/2 183/13 183/20 184/25
**L.F.'s [1]**   170/12
**lack [10]**   28/8 29/6 37/4
37/15 49/3 49/19 50/21 70/10
144/12 144/17
**ladies [35]**   23/21 25/3
107/14 123/16 130/10 131/18
132/7 132/12 133/2 133/24
134/23 138/10 140/3 140/14
141/13 141/15 142/2 144/5
145/23 146/25 151/24 153/16
154/18 158/11 161/17 162/11
170/2 171/12 171/24 173/5

**L**

**ladies [3]** 183/8 184/9 185/8

**LAMBERT [127]** 1/5 8/17 8/17 17/10 21/9 27/21 27/24 49/16 49/19 54/4 54/9 56/6 56/8 57/20 72/14 73/22 74/20 85/8 86/15 87/14 87/19 98/18 105/25 117/8 119/1 119/8 130/4 130/7 130/13 130/24 131/22 131/23 132/2 132/15 132/15 132/20 132/23 133/1 134/4 134/11 136/11 136/14 137/8 139/3 139/10 140/10 140/13 140/15 141/16 141/17 141/18 142/6 142/8 142/11 142/12 144/6 144/14 144/18 144/25 145/7 145/9 145/14 147/1 147/7 147/18 148/2 148/16 150/25 151/16 153/8 154/9 154/19 156/23 157/11 157/20 157/21 160/7 160/11 162/16 163/1 163/6 163/7 163/9 163/16 163/19 163/23 164/8 164/23 165/8 165/10 165/25 166/20 166/25 167/4 167/4 167/15 167/18 168/1 168/11 168/14 169/6 169/9 169/18 169/25 170/3 170/7 170/14 171/25 172/2 172/9 174/4 174/11 174/14 174/20 174/21 174/21 175/19 176/13 177/6 178/3 179/7 180/1 183/10 183/10 184/24 184/25 196/8

**Lambert's [12]** 131/20 134/5 158/1 162/24 165/2 165/3 166/13 166/14 167/17 173/13 174/7 174/9

**Lane [2]** 1/12 1/22

**language [2]** 4/13 112/18

**large [1]** 61/20

**last [27]** 3/10 3/11 3/16 4/21 6/10 7/4 13/9 14/13 16/19 18/5 24/24 85/2 95/12 95/20 95/21 104/17 119/10 124/9 161/13 183/6 184/8 185/11 190/10 190/17 192/10 193/25 194/3

**last-minute [1]** 7/4

**Lastly [1]** 128/2

**late [3]** 14/10 185/9 192/11

**later [8]** 38/11 114/8 116/20 135/15 138/3 139/18 153/8 195/17

**latest [1]** 3/15

**Latvia [6]** 105/14 107/8 113/18 118/1 144/12 182/24

**laundered [2]** 105/2 129/19

**laundering [21]** 6/2 51/25 52/13 85/3 85/22 87/24 89/15 91/17 91/25 93/10 93/11 93/14 93/18 93/19 106/18 128/3 129/6 170/2 170/3 176/1 178/12

**law [56]** 24/9 25/9 25/15 25/22 25/24 25/25 26/1 26/3 26/8 26/12 26/14 28/25 29/15 29/20 30/16 30/19 37/7 37/12 37/19 44/18 44/20 44/25 45/4 45/14 45/15 50/13 51/5 52/17 56/24 56/25 57/2 57/5 61/9 69/7 69/8 75/16 77/12 79/10 79/12 80/6 81/5 82/9 84/1 87/9 90/4 90/5 90/7 95/18 129/24 139/15 139/20 147/24 150/18 151/3 164/20 185/14

**lawful [8]** 53/4 53/19 55/4 56/14 62/18 74/14 83/3 90/22

**laws [4]** 27/22 51/17 55/22 75/18

**lawyer [1]** 32/21

**lawyer's [1]** 33/3

**lawyers [2]** 32/11 151/3

**leading [1]** 172/1

**learn [2]** 132/10 132/11

**learned [10]** 20/25 104/8 111/22 117/19 119/15 119/17 120/13 122/13 132/25 181/15

**least [10]** 10/22 76/16 78/24 80/12 81/7 81/23 81/24 82/24 82/25 175/24

**leave [10]** 170/19 191/6 191/8 191/18 192/6 192/21 192/24 192/24 193/2 193/8

**leaves [1]** 118/18

**leaving [5]** 3/23 97/2 118/19 193/17 195/10

**led [1]** 137/8

**ledger [2]** 160/11 160/13

**left [8]** 10/9 11/6 16/22 22/5 101/20 110/15 111/9 130/22

**legal [5]** 6/17 26/4 37/6 109/24 172/2

**legality [1]** 36/21

**legitimate [8]** 44/24 112/1 117/14 133/9 135/6 160/3 169/15 182/8

**Leila [13]** 7/23 105/9 113/12 116/24 117/1 118/1 118/1 118/2 118/4 123/11 159/20 159/22 184/13

**length [1]** 61/11

**leniency [1]** 139/8

**LEONARDI [1]** 1/18

**less [5]** 28/4 37/21 44/22 148/19 148/21

**lesser [1]** 44/23

**let [20]** 25/4 29/2 32/6 39/23 93/12 98/4 99/1 103/25 108/11 133/17 137/4 142/6 163/11 175/6 180/5 181/16 182/17 190/22 195/9 195/17

**let's [21]** 25/2 104/5 106/22 110/7 111/12 115/5 124/25 125/14 126/1 142/17 146/9 148/11 149/11 149/12 155/3 157/7 158/7 161/25 162/23 163/3 165/6

**LEU [1]** 104/15

**level [2]** 40/23 143/14

**leverage [1]** 121/5

**liability [2]** 80/1 174/2

**liable [1]** 58/7

**liar [3]** 176/9 176/10 177/1

**license [7]** 138/21 149/14 149/15 149/19 152/2 152/3 165/16

**Lichtenberg [10]** 144/3 144/15 144/16 144/24 145/6 145/15 148/5 166/18 181/17 181/21

**lie [11]** 46/9 103/12 129/22 137/18 137/25 139/5 140/4 150/13 151/14 151/14 153/23

**lied [11]** 138/14 139/20 139/22 147/5 147/19 150/17 162/4 168/12 169/20 170/17 177/3

**lies [7]** 103/6 103/8 129/21 137/7 137/14 137/15 150/24

**life [11]** 40/20 41/15 139/2 139/23 141/11 151/6 151/15 154/19 157/2 170/16 191/7

**life-changing [1]** 141/11

**light [4]** 39/9 40/25 44/11 140/11

**lighter [1]** 47/18

**like [36]** 9/18 9/22 9/24 11/2 20/13 22/15 23/5 69/16 98/10 99/11 99/14 100/24 100/24 101/7 101/8 101/17 102/9 105/16 110/24 113/11 141/6 143/10 145/14 151/2 153/12 162/13 164/19 171/20 173/2 180/25 181/16 182/8 183/6 192/8 193/2 195/5

**likelihood [1]** 76/6

**likely [1]** 7/1

**limit [1]** 24/21

**limited [11]** 21/6 21/19 39/4 39/5 42/11 48/18 49/9 63/18 143/25 143/25 145/11

**line [5]** 104/19 112/7 115/6 152/12 176/21

**lines [1]** 147/10

**lining [1]** 152/23

**link [1]** 134/3

**LinkedIn [1]** 186/6

**Lisa [4]** 1/21 196/3 196/19 196/20

**list [3]** 23/4 99/1 127/15

**listed [2]** 62/3 87/6

**listen [4]** 25/13 36/11 174/6 188/21

**listened [2]** 40/9 130/19

**listening [1]** 36/7

**literally [1]** 162/2

**little [12]** 3/5 3/17 10/11 19/11 24/12 138/3 141/12 152/1 161/19 161/25 176/9 192/25

**LLP [1]** 1/17

**loans [1]** 60/25

**local [1]** 99/18

**located [1]** 105/13

**locations [1]** 182/23

**lock [5]** 156/3 156/4 156/7 161/3 161/3

**locked [2]** 148/4 156/2

**locking [1]** 161/2

**logical [4]** 38/24 39/16 39/24 70/2

**logistics [2]** 104/13 169/10

**long [11]** 23/4 23/7 72/1 101/7 112/25 124/17 126/24 127/11 128/16 137/14 171/19

**longer [2]** 185/18 190/16

**longest [1]** 167/7

**longstanding [2]** 135/5 137/21

**look [47]** 3/14 4/11 8/23 9/6 11/9 19/2 19/12 22/6 22/14 34/5 37/3 38/13 46/11 98/3 103/1 110/3 110/7 112/1 112/2 115/5 115/6 115/7 115/11 121/6 121/8 121/12 121/19 121/19 124/11 128/12 129/3 158/17 158/23 158/25 159/8 162/7 165/21 171/4 176/4 179/5 179/12 182/8 182/9 182/18 182/22 184/9 184/10

**looked [6]** 5/6 5/7 8/15 10/8 22/5 134/16

**looking [6]** 5/2 7/7 10/12 113/9 121/11 178/13

**Looks [1]** 153/12

**loose [1]** 194/11

**loosely [1]** 195/5

**lose [2]** 70/24 120/20

**loss [3]** 68/16 69/13 71/8

**lost [1]** 120/16

**lot [17]** 4/1 16/12 24/11 100/9 101/6 108/7 108/14 110/13 125/16 127/12 147/14

**L**

lot... [68] 151/25 153/7
153/12 153/14 161/12 193/9
lots [2] 135/19 182/12
louder [1] 77/18
lucky [35] 23/1 105/6 111/7
114/24 115/7 115/10 115/18
116/14 116/24 117/2 117/6
117/14 118/9 120/4 120/5
120/10 122/8 122/22 123/2
123/6 123/11 162/7 163/24
163/25 166/2 178/4 178/5
178/25 179/7 179/18 179/20
179/21 179/22 184/15 184/25
lucrative [3] 104/12 109/7
161/10
Ludmilla [1] 121/14
lunch [6] 100/10 185/9
185/10 192/13 192/14 193/20
lunchtime [1] 24/23
lying [8] 46/2 131/19 134/6
147/6 147/19 150/25 166/16
177/8

**M**

machine [2] 196/5 196/13
mad [2] 120/18 120/18
made [60] 5/18 12/4 20/10
26/19 33/16 41/3 41/22 41/24
42/4 42/14 42/19 46/3 48/21
49/8 54/15 55/9 57/7 57/20
58/13 58/20 63/4 63/25 64/8
66/18 66/19 66/21 67/6 67/7
67/21 67/24 68/6 70/17 75/4
84/7 84/11 84/16 84/18 89/25
103/14 103/16 103/19 103/21
103/24 112/15 113/1 128/21
128/24 129/1 129/4 140/6
140/7 146/6 167/21 167/25
167/25 167/25 168/4 168/21
175/7 187/8
mails [4] 52/21 54/15 57/8
74/3
main [1] 145/20
mainly [1] 86/23
maintain [2] 153/4 153/13
maintained [1] 144/14
maintaining [3] 63/21 64/10
172/16
major [2] 80/4 138/12
majority [1] 60/23
make [39] 4/22 9/4 14/5
14/24 16/14 23/25 29/15
36/12 40/7 52/21 64/5 72/16
76/1 80/16 80/18 81/4 89/4
91/4 99/1 110/23 112/1
120/19 135/19 138/25 145/16
151/9 158/5 161/11 162/25
164/1 169/20 176/9 176/18
177/1 178/12 181/3 182/15
192/13 192/13
makes [10] 37/19 108/16
115/24 121/25 122/3 139/3
162/1 167/10 167/10 173/22
making [21] 3/25 28/17 32/13
38/24 40/11 42/18 66/16
66/19 67/13 67/17 74/3 90/19
116/9 135/20 146/4 146/15
151/11 154/23 168/24 179/11
182/7
man [18] 105/24 131/18
131/23 132/2 137/7 138/18
140/3 141/22 141/23 142/1
150/24 157/6 167/7 171/8
172/8 175/18 175/23 182/6
managing [2] 110/16 116/1
mandated [1] 61/1
manner [5] 22/14 30/4 67/4
73/18 188/6

**many [9]** 137/17 139/20
139/21 139/21 150/13 162/6
162/6 162/16 180/22 181/13
map [1] 184/12
mark [75] 1/5 27/21 54/4
105/25 114/6 115/20 115/23
116/19 116/21 116/23 116/25
116/25 117/3 117/4 118/6
118/7 118/11 118/17 118/23
119/1 119/2 119/3 119/8
119/13 130/4 130/13 131/20
131/22 131/23 132/2 133/1
137/8 140/9 140/13 144/25
145/7 145/9 145/14 147/1
147/7 151/16 157/20 157/21
157/25 160/7 162/24 166/20
167/4 167/4 169/9 169/18
172/8 173/13 174/4 174/7
174/9 174/11 174/14 174/20
174/20 174/21 175/18 176/13
177/5 178/3 179/7 179/17
180/1 183/10 183/10 184/15
184/24 184/24 189/25 196/8
marked [2] 31/24 189/21
marketing [1] 144/8
marking [1] 189/19
Marvi [3] 114/21 184/23
184/24
MarviJodel [1] 114/17
Marvin [13] 114/1 114/1
114/2 114/13 114/14 115/7
115/9 166/9 178/6 179/1
179/3 179/8 179/9
MARYLAND [13] 1/1 1/4 1/12
1/22 71/15 71/17 82/17 85/10
106/20 107/7 128/14 169/3
196/5
mass [1] 142/21
master [1] 112/25
match [4] 14/17 18/19 170/21
178/1
matched [1] 15/25
material [13] 24/11 31/19
66/23 67/9 67/10 67/19 68/5
68/8 70/12 149/16 152/8
168/25 180/15
materially [2] 65/9 75/1
materials [3] 97/20 104/15
129/13
matter [26] 13/23 14/9 16/24
27/23 38/23 38/24 40/14
41/12 50/7 50/13 51/2 63/24
67/10 71/2 79/14 87/9 96/7
134/23 138/16 138/16 174/7
175/16 175/21 177/21 178/7
186/14
matters [5] 27/1 37/11 40/19
43/22 43/24
may [133] 11/25 11/25 18/1
26/11 26/12 27/6 28/10 28/18
29/8 29/8 29/16 31/16 31/18
31/19 31/23 31/25 32/2 32/4
32/8 32/9 32/10 32/12 32/15
32/21 33/1 33/8 34/10 36/23
36/24 37/1 37/10 37/18 37/22
37/23 37/24 38/8 39/19 40/2
40/14 41/5 41/6 41/7 41/9
41/18 41/22 42/1 42/16 42/18
43/8 43/10 43/13 43/23 44/5
44/9 44/19 45/1 45/11 45/11
45/16 46/21 47/10 47/17
47/23 48/7 48/9 48/10 48/22
49/2 49/22 50/1 50/9 51/11
56/4 57/21 60/15 60/18 61/14
64/4 66/23 67/2 68/17 68/19
69/24 70/2 70/14 70/18 71/19
72/14 75/19 75/23 77/11
77/14 77/18 78/16 79/4 80/2
80/3 80/6 80/8 80/13 80/20

80/22 81/10 83/2 84/9 84/13
84/21 84/24 88/12 91/13
91/22 92/11 93/9 93/15 94/6
94/13 99/13 100/4 102/25
103/3 161/19 167/18 168/23
171/22 172/11 176/17 178/21
186/7 186/20 187/16 191/12
191/18 194/6
maybe [6] 15/25 19/12 95/10
98/1 101/19 183/5
McCarron [1] 148/23
me [36] 8/25 11/8 24/9 25/4
25/12 25/14 29/15 32/6 39/23
93/12 98/4 99/1 100/18 102/2
103/25 115/10 118/24 118/25
133/17 133/18 137/4 137/9
139/19 150/5 160/24 175/6
180/5 181/16 182/17 186/15
187/7 187/20 188/1 190/3
190/22 193/1
mean [28] 3/19 3/21 3/23
4/14 12/6 13/3 13/16 16/9
17/1 19/5 21/15 22/17 23/1
26/16 34/1 44/21 72/7 99/18
100/10 100/12 100/14 100/23
101/6 136/15 175/12 175/13
175/13 195/16
meaning [2] 86/11 90/6
means [41] 5/19 52/6 52/22
54/16 56/15 56/16 56/21
57/10 57/15 59/22 64/15
64/22 64/24 65/21 66/1 66/6
69/11 74/3 75/1 75/5 77/5
86/24 87/4 96/18 97/4 125/4
136/15 137/22 146/4 146/5
146/10 146/17 157/18 157/20
164/17 167/20 167/20 174/19
186/5 186/9 187/20
meant [4] 15/2 150/2 150/3
156/2
measured [1] 80/1
mechanical [1] 1/24
mechanics [1] 24/25
media [2] 29/24 185/23
meet [7] 60/15 124/18 128/17
149/2 149/4 149/6 149/6
meeting [4] 20/20 140/18
169/22 188/15
meetings [2] 21/14 149/8
Megatons [1] 143/1
Megawatts [1] 143/1
member [20] 76/14 78/1 78/6
78/17 79/16 79/17 80/2 80/16
80/19 81/4 81/24 83/20 83/24
84/6 84/19 91/20 92/11 187/3
187/19 187/21
members [15] 27/2 76/15
76/25 78/4 80/17 82/9 84/2
84/2 84/9 92/6 93/3 185/13
185/22 187/10 188/7
membership [1] 80/24
memory [7] 40/23 143/15
155/7 155/8 155/11 176/8
176/8
mental [1] 142/1
mention [1] 183/21
mentioned [9] 5/6 7/16 25/19
37/13 78/19 107/2 112/23
171/7 179/8
mere [5] 80/15 80/21 80/25
90/8 189/12
merely [6] 44/14 48/21 49/23
62/6 90/10 163/11
merits [2] 187/22 188/7
message [1] 57/16
messaging [1] 186/5
met [9] 22/18 37/2 37/18
56/5 77/1 110/21 119/10
149/4 169/19

**M**

method [3]  18/15 90/18 91/12
methods [1]  142/5
Michael [2]  160/1 170/24
middle [5]  15/14 117/11
 121/21 176/23 191/3
middleman [1]  148/9
might [20]  6/20 15/25 28/16
 33/20 67/16 80/13 92/15
 111/2 111/23 113/9 114/7
 116/5 142/19 144/1 150/9
 162/14 175/15 175/15 186/21
 192/7
Mike [2]  181/17 182/3
Mikerin [143]  20/16 20/17
 21/7 21/23 103/16 103/20
 104/11 105/1 105/3 105/5
 105/9 105/16 105/20 106/11
 106/15 107/4 107/19 107/19
 108/24 109/3 109/6 109/9
 109/10 109/20 111/19 112/10
 113/21 114/4 114/9 114/11
 114/18 114/21 114/23 115/8
 115/12 115/15 115/17 115/19
 115/22 116/4 116/8 116/13
 116/19 116/20 116/23 116/24
 117/1 117/3 117/5 117/7
 117/9 117/17 118/4 118/16
 118/17 118/19 118/20 118/22
 118/25 119/1 119/6 119/7
 120/11 122/9 122/22 122/25
 123/5 123/7 123/12 126/4
 126/7 128/15 128/24 129/11
 130/23 133/7 133/14 135/4
 135/9 135/17 135/22 136/2
 136/16 136/25 137/16 137/23
 138/2 139/11 141/2 143/4
 143/22 144/8 148/13 148/23
 149/9 149/13 149/17 149/21
 150/2 150/3 153/2 153/5
 153/7 153/21 154/2 154/4
 154/8 157/15 157/25 158/9
 161/8 161/9 161/11 161/13
 161/14 162/13 162/18 162/22
 163/5 163/10 163/11 163/15
 163/20 166/4 166/11 167/9
 168/1 168/13 169/21 171/9
 171/14 176/2 176/15 180/4
 181/8 182/7 182/15 183/1
 183/5 184/17 184/19 184/20
 184/20
Mikerin's [10]  116/7 117/22
 118/11 128/24 157/13 157/24
 163/13 163/14 166/9 184/11
mill [1]  138/16
million [5]  105/15 116/3
 120/10 129/11 129/15
mind [24]  20/11 23/3 32/13
 33/6 34/14 43/14 47/14 48/13
 50/17 59/7 69/17 101/15
 102/2 124/13 132/2 147/7
 156/24 165/2 165/4 166/13
 166/14 179/25 192/6 195/18
mine [1]  26/25
minimize [2]  112/11 112/12
minimum [1]  19/10
ministry [2]  180/9 180/20
minor [4]  3/11 3/15 80/5
 80/14
minute [14]  7/4 17/16 18/5
 94/17 100/20 100/21 100/24
 101/17 102/2 122/15 123/20
 162/17 167/13 174/1
minutes [20]  18/2 95/1 97/21
 100/8 101/5 101/7 101/19
 101/20 132/7 146/20 151/1
 155/4 158/14 166/3 167/13
 173/3 175/6 181/22 192/7
 195/6

misappropriate [1]  137/24
MISCELLANY [1]  2/3
mischarged [1]  147/12
misdirect [2]  135/24 137/23
misdirected [1]  135/10
misdirection [3]  173/8
 173/24 175/4
misleading [3]  70/14 133/3
 133/4
misled [1]  136/4
misrepresentation [1]  68/2
misrepresentations [2]  68/5
 168/21
misrepresents [1]  153/24
missing [4]  10/12 17/23
 167/22 184/22
mistake [8]  42/20 69/4 69/10
 79/6 79/13 86/25 151/9
 163/25
mistakes [1]  10/20
misunderstood [1]  13/11
misuse [3]  56/18 165/11
 167/7
moment [2]  28/14 78/19
moment's [1]  141/4
Monday [2]  131/10 156/10
money [74]  6/2 51/25 52/13
 52/24 52/25 53/12 54/19
 57/17 58/1 59/3 59/18 59/20
 64/21 65/9 65/21 66/1 66/11
 66/14 68/11 70/25 74/6 74/9
 75/1 85/3 85/22 86/8 87/24
 89/15 91/16 91/25 93/9 93/11
 93/14 93/18 93/19 103/20
 104/25 105/6 105/10 106/18
 106/19 107/18 112/9 113/18
 117/1 123/7 123/15 125/4
 125/12 125/19 128/2 128/11
 129/6 129/17 135/13 135/19
 135/20 135/23 137/24 138/9
 158/1 158/18 158/19 161/12
 167/16 170/2 170/3 176/1
 178/11 182/17 182/19 182/21
 182/23 183/4
money-making [1]  135/20
monopoly [1]  61/17
more [49]  3/22 6/8 7/20 8/10
 10/8 16/14 33/25 34/1 35/5
 37/21 42/11 44/22 46/2 49/16
 51/11 57/12 68/5 71/14 73/15
 73/18 75/14 76/11 76/22 77/9
 80/17 81/5 95/11 95/18 96/25
 99/6 100/7 100/9 101/4 101/6
 101/12 121/4 123/20 124/19
 128/18 144/15 144/23 145/1
 145/1 145/1 145/8 149/11
 177/23 187/9 190/16
Moreover [3]  63/16 75/23
 79/19
morning [5]  24/1 24/14 25/1
 193/10 193/16
Moscow [3]  113/19 182/21
 182/23
most [14]  14/14 34/3 34/11
 116/1 143/3 153/3 157/11
 157/19 158/12 158/20 158/21
 165/14 167/8 171/6
motion [1]  96/22
motivated [1]  46/7
motivation [2]  46/8 46/10
motive [13]  43/10 47/19
 56/13 132/19 132/25 133/21
 145/6 147/20 155/13 155/14
 156/6 157/1 170/15
move [10]  9/19 9/22 9/24
 19/20 98/10 102/18 128/11
 161/7 164/18 171/23
moving [1]  112/22
Mr [265]

Mr. [42]  3/23 9/12 14/23
 16/4 73/22 97/19 133/6 133/7
 133/14 135/4 135/18 136/2
 136/4 136/12 136/18 137/18
 140/19 143/12 144/7 144/13
 149/25 151/21 153/23 153/25
 154/2 154/4 154/4 154/8
 156/5 156/6 157/25 159/8
 159/23 160/22 162/16 165/20
 167/5 181/22 183/25 184/4
 185/7 194/6
Mr. Bailiff [1]  194/6
Mr. Condrey [5]  136/12 144/7
 144/13 162/16 165/20
Mr. Fisk [17]  133/6 133/7
 133/14 135/4 135/18 136/2
 136/4 136/18 137/18 140/19
 153/23 153/25 154/2 154/4
 154/8 157/25 167/5
Mr. Fisk's [1]  9/12
Mr. Fomin [2]  149/25 183/25
Mr. Hill [1]  14/23
Mr. Lambert [1]  73/22
Mr. Mikerin [1]  154/4
Mr. Ravenscroft [1]  159/23
Mr. Rosso [4]  156/5 156/6
 159/8 160/22
Mr. Salem [6]  97/19 143/12
 151/21 181/22 184/4 185/7
Mr. Sullivan [2]  3/23 16/4
Mrs [2]  137/13 142/13
Ms [9]  2/4 95/6 102/6 103/2
 130/5 144/15 144/24 178/2
 182/24
Ms. [7]  108/9 108/15 143/16
 144/3 145/6 145/15 146/10
Ms. Harrington [3]  108/9
 108/15 143/16
Ms. Johnson [1]  146/10
Ms. Lichtenberg [3]  144/3
 145/6 145/15
much [12]  18/13 20/1 42/16
 43/2 45/22 95/2 151/22 162/1
 178/10 178/11 185/7 195/22
multiple [1]  16/9
must [100]  4/14 26/6 28/7
 28/20 29/2 29/5 29/21 29/23
 30/9 31/8 31/15 32/16 33/6
 33/19 33/20 34/4 34/5 39/25
 41/10 45/20 47/20 50/5 50/13
 50/15 50/19 54/6 55/13 56/9
 57/6 57/23 58/18 62/8 62/13
 63/2 65/6 65/19 66/12 67/5
 67/9 67/15 67/20 68/10 68/24
 71/4 71/10 71/13 71/15 71/18
 71/23 72/8 72/20 72/21 76/9
 76/21 77/7 77/24 78/3 78/12
 78/21 79/2 81/11 81/22 82/15
 82/19 82/23 84/15 85/23 86/4
 86/16 86/20 87/18 88/24 89/7
 89/10 89/16 89/20 89/23
 90/16 91/10 93/1 125/2 125/5
 125/8 164/23 165/7 167/14
 168/3 168/15 169/6 169/16
 170/4 187/8 187/15 187/25
 188/9 188/17 189/2 189/14
 189/16 191/12
mutual [1]  77/8
my [50]  15/21 22/17 25/21
 25/24 26/5 26/6 26/8 29/22
 33/13 49/20 91/11 95/10
 95/21 96/15 96/17 98/12
 98/15 99/9 99/10 101/1 103/7
 115/14 116/20 118/7 130/24
 136/6 139/21 139/22 143/15
 144/23 146/9 148/17 151/6
 151/6 155/7 155/8 155/11
 155/24 156/18 167/9 185/14
 185/16 185/21 191/13 192/21

**M**

my... [16]    196/11 196/12
196/13 196/14 196/15
**myself [1]**    130/11

**N**

**name [17]**    9/12 28/1 105/7
105/8 114/3 114/13 117/17
118/11 118/12 145/21 145/25
167/17 167/19 174/7 194/1
194/3 196/16
**named [3]**    50/3 50/6 144/11
**names [4]**    7/22 9/12 114/25
158/19
**narrative [3]**    133/4 170/21
173/7
**national [5]**    28/11 55/17
56/6 108/13 108/20
**nature [7]**    28/16 33/22 45/20
65/14 77/14 80/11 83/16
**near [1]**    166/1
**necessarily [4]**    44/21 80/24
155/25 192/18
**necessary [10]**    13/4 25/6
63/10 68/14 71/25 81/6 88/7
89/2 153/11 190/11
**need [63]**    3/8 5/14 5/18 8/20
9/14 15/17 23/24 25/17 40/7
41/17 57/1 62/2 62/5 66/25
68/18 71/22 76/25 77/2 79/16
79/17 79/19 79/22 82/4 82/11
86/12 99/3 102/7 119/25
121/13 121/22 121/24 122/2
123/24 124/14 124/15 124/16
126/20 127/20 127/23 128/10
128/20 136/8 138/8 141/1
150/23 150/23 151/10 151/12
156/22 156/23 162/21 165/13
166/22 173/4 175/14 175/17
175/21 176/6 176/12 185/12
187/7 191/9 195/4
**needed [17]**    12/16 114/21
123/1 123/1 124/22 131/16
132/18 136/18 136/19 139/12
139/13 139/21 139/22 144/23
155/20 156/16 184/20
**needing [1]**    153/19
**needs [6]**    9/18 123/24 133/25
139/23 142/16 170/16
**negligence [2]**    69/10 79/13
**neither [2]**    136/13 146/6
**nervous [1]**    176/17
**never [26]**    23/12 30/15 30/16
32/20 48/5 48/6 69/19 108/11
112/7 113/18 120/2 136/13
141/3 143/6 144/9 148/22
153/21 153/22 153/25 154/1
158/7 158/10 158/11 187/21
187/25 190/10
**nevertheless [1]**    71/6
**new [8]**    1/15 10/10 10/14
10/23 118/8 118/23 153/13
191/5
**News [1]**    115/6
**next [17]**    68/23 73/9 78/4
120/25 121/1 121/17 124/25
127/3 130/6 137/9 147/14
159/23 162/25 193/10 193/14
195/11 195/20
**nice [1]**    38/10
**night [7]**    3/6 3/10 3/11 3/16
9/25 13/9 14/13
**night's [1]**    95/22
**nine [8]**    51/21 52/9 64/12
91/16 91/25 106/12 124/25
135/15
**no [122]**    1/3 4/4 7/24 8/2
9/7 10/2 10/19 11/20 13/11
15/5 15/16 15/18 19/14 19/19

23/16 24/5 28/2 28/4 30/2
32/8 35/8 35/10 35/21 37/5
37/19 37/21 38/15 48/17 48/1
48/8 50/5 50/24 61/24 70/7
70/24 79/24 88/20 88/22
90/13 91/9 93/23 96/6 96/7
98/19 100/7 100/17 101/11
101/19 107/15 107/18 109/2
109/22 113/12 113/13 114/2
114/6 114/14 116/13 117/14
121/9 121/10 121/10 121/18
121/20 121/25 136/25 136/25
139/4 140/17 140/25 141/8
142/1 143/3 143/5 143/13
143/15 143/21 143/21 144/8
145/6 145/6 145/23 149/12
149/18 151/5 151/9 153/21
154/24 155/5 157/7 157/14
157/16 157/18 157/19 159/21
160/8 160/13 160/24 165/3
165/25 166/10 167/10 167/10
167/23 168/20 168/24 169/4
169/24 170/7 173/19 173/19
173/23 176/6 177/4 177/8
179/22 179/25 181/18 183/21
185/17 187/19 190/16
**nobody [1]**    178/13
**non [2]**    7/15 142/18
**non-anonymized [1]**    7/15
**non-proliferation [1]**    142/18
**none [3]**    41/19 112/16 112/22
**nonexistence [1]**    38/21
**normal [2]**    112/2 179/12
**Norman [1]**    170/24
**not [345]**
**note [28]**    6/10 6/15 38/22
79/1 97/23 117/21 117/22
117/24 118/6 118/10 118/11
157/13 157/17 157/21 157/22
157/22 157/23 157/23 162/24
187/9 187/11 188/1 188/4
190/2 193/1 193/3 193/16
193/17
**notebook [1]**    99/3
**notereading [1]**    1/24
**notes [7]**    25/18 113/2 123/9
163/19 187/13 191/18 196/13
**nothing [17]**    9/16 13/9 97/15
137/1 150/2 153/18 153/20
157/21 162/18 162/19 162/25
165/9 166/24 169/11 174/19
177/5 194/14
**noticed [2]**    20/5 97/17
**November [3]**    1/5 196/10
196/16
**now [72]**    11/19 14/7 15/7
15/15 15/19 16/20 21/3 22/19
25/3 25/8 25/12 25/23 27/17
30/5 31/11 34/18 35/5 41/20
43/21 48/14 49/4 49/11 51/8
52/3 73/25 83/10 98/21
101/10 102/18 106/1 106/22
107/4 109/10 110/3 122/15
125/16 127/23 130/1 133/5
134/12 137/3 137/11 138/9
138/22 140/22 143/11 143/16
144/3 144/5 145/17 146/19
152/9 152/20 152/25 153/15
156/11 157/2 158/15 161/18
163/21 171/14 172/3 172/11
175/6 178/9 180/5 185/15
187/2 191/2 191/6 192/11
193/20
**Nowhere [1]**    112/8
**NRC [1]**    152/4
**nuclear [14]**    104/14 108/18
129/13 138/20 142/18 142/19
142/21 142/24 143/6 152/4
165/16 180/14 180/15 181/2

**number [18]**    17/13 19/23 23/4
23/4 23/5 142/4 143/16
148/7 150/1 150/24 150/6 151/2
163/25 176/11 176/11 181/21
182/3 190/18 196/9
**numbers [8]**    14/16 18/24
112/18 120/4 120/5 120/10
179/20 179/21
**numerically [1]**    188/2
**numerous [2]**    138/18 157/14
**NW [2]**    1/15 1/19

**O**

**oath [47]**    30/3 94/5 131/4
131/19 131/24 131/25 132/3
134/6 138/14 139/25 140/2
140/6 140/8 140/23 147/6
147/6 147/19 147/19 147/23
148/8 150/17 150/19 150/20
150/21 150/24 150/25 151/17
155/10 156/9 156/10 156/11
156/19 157/3 157/4 162/4
166/16 168/12 169/23 169/24
170/17 172/5 172/5 172/7
172/10 172/16 188/4 193/21
**object [11]**    5/15 5/21 5/21
6/1 20/23 29/11 65/24 73/19
77/4 77/5 82/25
**objected [1]**    29/17
**objection [8]**    7/25 8/2 33/1
33/15 33/19 33/22 100/20
161/22
**objections [3]**    32/19 33/12
98/21
**objective [2]**    76/20 83/8
**objectives [5]**    73/12 78/10
79/23 81/3 81/7
**objects [5]**    6/16 6/19 6/24
73/23 75/22
**obligated [1]**    171/21
**obligation [1]**    48/1
**obligations [3]**    16/24 61/8
132/1
**observe [1]**    25/14
**observed [3]**    38/3 38/16 40/9
**obtain [7]**    47/17 65/9 66/1
104/16 138/2 148/24 159/18
**obtained [2]**    63/11 152/3
**obtaining [15]**    53/10 54/2
55/10 63/4 63/14 63/17 63/18
63/20 64/10 64/21 74/21 75/1
149/10 165/13 166/12
**obvious [1]**    22/3
**obviously [4]**    8/3 10/11
102/25 118/19
**occasion [4]**    42/3 42/8 80/12
179/21
**occasions [1]**    41/22
**occur [2]**    59/10 59/12
**occurred [6]**    51/1 51/3 73/8
82/13 89/8 137/25
**off [14]**    14/18 95/12 95/16
100/5 101/11 103/18 104/19
113/21 123/15 124/8 176/9
183/24 190/25 195/10
**offense [24]**    5/24 5/25 47/3
63/1 73/16 75/17 76/8 76/10
88/2 88/10 88/10 88/16 88/18
91/7 92/20 93/18 93/20
125/2 128/17 134/2 164/23
164/24 165/1
**offenses [7]**    49/5 50/25 74/1
87/5 88/13 92/19 164/18
**offer [15]**    34/16 52/23 52/25
56/17 58/4 58/19 63/12 63/25
64/2 64/7 74/5 74/6 90/23
100/21 142/16
**offered [11]**    34/20 35/20
53/13 54/19 54/23 57/25

**O**

**offered [5]** 74/10 167/15 174/3

**offering [2]** 34/2 60/3

**offers [2]** 29/12 90/20

**offhand [1]** 140/20

**office [11]** 1/11 73/5 110/22 111/1 111/21 115/21 142/14 155/21 155/24 157/13 157/24

**officer [6]** 44/20 52/19 54/10 55/14 59/22 187/12

**officers [3]** 44/19 61/2 61/4

**offices [2]** 132/12 154/16

**official [73]** 53/1 53/3 53/3 53/4 53/5 53/6 53/14 53/15 53/16 53/17 53/18 53/18 53/20 53/20 53/22 53/23 54/22 54/24 55/2 55/2 55/3 55/5 56/18 56/18 58/6 58/21 58/24 59/1 59/5 59/21 59/22 59/25 60/6 60/7 60/8 62/9 62/11 62/16 62/16 62/17 62/19 64/9 74/8 74/11 74/12 74/13 74/13 74/15 74/16 103/16 104/11 104/19 107/20 107/20 107/23 107/24 108/25 109/1 115/12 129/25 162/8 162/9 163/6 163/9 163/18 163/22 165/11 167/6 168/5 196/3 196/6 196/12 196/20

**official's [3]** 55/4 56/19 62/18

**officials [4]** 61/2 61/3 140/20 143/20

**offshore [12]** 103/20 105/3 105/7 107/19 117/6 118/1 122/22 128/15 129/11 129/20 149/21 182/16

**often [2]** 77/18 83/17

**okay [45]** 4/5 4/8 7/7 8/3 8/9 8/23 9/3 10/24 11/24 12/6 13/5 15/14 16/25 22/1 22/13 22/16 23/3 23/14 23/14 23/17 23/17 24/3 24/6 96/8 96/19 97/14 97/16 98/1 98/20 98/21 98/24 99/2 99/5 101/2 101/22 101/23 101/24 102/12 143/16 158/4 176/8 176/25 181/25 194/20 195/20

**old [1]** 146/15

**Ollins [7]** 7/22 8/5 85/11 105/9 113/12 159/20 159/22

**omissions [4]** 67/19 70/12 83/24 84/4

**omit [4]** 53/19 55/3 62/18 74/14

**omits [1]** 171/5

**omitted [1]** 159/3

**once [8]** 29/2 116/10 116/14 174/4 174/25 185/18 191/20 192/19

**one [123]** 3/6 4/8 5/2 5/4 6/4 6/12 6/19 6/23 7/21 8/9 8/18 8/18 9/5 9/6 10/23 19/1 20/2 20/16 23/5 24/21 24/24 33/8 33/25 35/5 39/20 46/8 46/9 47/3 49/16 51/11 51/13 52/10 54/25 62/14 62/25 67/10 67/16 68/1 68/4 70/24 72/9 73/10 73/11 73/14 73/18 73/21 75/21 76/12 76/15 76/16 78/3 80/12 80/17 81/23 81/24 82/6 82/24 82/25 87/5 87/5 88/20 90/12 91/8 91/21 95/25 99/6 99/16 99/19 99/21 100/1 100/15 100/19 101/23 106/3 106/9 106/10 106/14 107/4 110/4 115/5 120/17 121/10 123/20 124/12 126/4

**one's [1]** 69/17

**one-hour [1]** 24/21

**one-time [1]** 140/9

**ones [2]** 15/15 16/3

**ongoing [1]** 136/16

**online [2]** 124/7 124/10

**only [64]** 4/2 4/8 30/10 31/17 32/1 32/3 32/20 33/8 47/3 49/2 49/12 51/5 63/6 63/13 80/14 81/16 99/16 100/1 109/12 122/5 122/13 123/6 127/20 127/23 130/2 131/20 131/21 132/23 133/11 134/3 134/5 138/20 138/22 139/7 143/17 147/13 147/18 148/2 148/13 154/12 154/13 155/15 156/23 161/12 163/3 164/8 164/15 165/15 166/19 167/18 169/17 170/11 172/7 172/8 172/19 173/16 177/11 178/22 181/3 184/22 185/4 186/10 189/3 194/13

**open [2]** 166/23 187/24

**opened [1]** 155/18

**opening [4]** 20/3 32/11 102/20 136/6

**operating [2]** 169/14 172/17

**operation [2]** 135/20 155/12

**operations [4]** 63/21 143/6 144/13 169/10

**opinion [12]** 26/11 26/17 26/21 26/25 43/23 44/5 44/10 44/13 44/15 188/18 189/6 189/11

**opinions [3]** 43/22 44/6 181/6

**opportunity [6]** 13/24 24/18 30/2 40/21 99/17 102/22

**opposed [1]** 151/13

**opposite [1]** 133/23

**orally [1]** 187/23

**order [27]** 18/25 35/2 35/7 40/6 53/9 54/1 54/4 62/4 65/5 66/13 68/9 71/2 74/19 76/8 76/24 78/11 79/21 82/1 82/22 85/22 86/13 87/18 89/1 126/8 129/13 187/3 195/1

**ordered [1]** 186/13

**orderly [1]** 171/23

**ordinarily [1]** 44/8

**ordinary [5]** 44/23 47/16 72/10 72/17 86/11

**organization [2]** 55/20 143/25

**organized [1]** 55/22

**origin [1]** 28/11

**originally [2]** 4/13 163/5

**originated [1]** 68/13

**origins [1]** 157/10

**other [76]** 3/17 4/2 4/10 5/10 5/14 8/9 14/23 15/6 15/10 18/18 20/2 21/1 21/16 26/13 28/2 29/12 29/12 33/9 34/1 34/14 34/20 35/4 38/8 38/21 40/14 40/25 41/1 41/3 41/25 42/5 44/7 47/4 48/2 49/5 49/6 49/12 49/17 49/21 49/24 50/23 50/24 57/8 58/6 63/19 69/16 77/9 82/6 83/11

**others [19]** 4/15 45/13 72/7 72/8 74/1 74/20 74/22 80/4 89/9 90/11 127/6 127/8 175/1 177/13 183/5 183/15 183/18 189/10 192/1

**otherwise [6]** 21/14 41/7 64/10 159/4 179/12 188/2

**ought [1]** 26/12

**our [32]** 16/23 21/24 24/2 24/4 24/12 24/14 25/5 48/1 107/12 115/11 115/14 115/15 116/6 116/6 118/23 120/3 136/10 136/10 152/18 164/21 171/17 171/17 171/22 172/17 185/9 186/22 190/17 190/22 191/23 192/3 192/5 192/18

**ousted [1]** 138/1

**out [90]** 4/10 4/16 5/4 5/8 5/13 7/2 7/12 8/12 9/6 9/8 10/5 10/21 14/21 14/25 15/22 16/2 16/17 17/24 18/12 26/7 29/16 29/18 45/8 46/15 61/17 63/23 66/16 70/15 70/18 70/24 71/24 82/21 83/5 83/21 85/20 87/2 87/21 95/5 95/7 97/2 99/24 108/11 109/22 112/14 113/23 121/3 121/6 121/13 121/15 121/22 121/24 122/2 125/19 126/8 129/2 129/18 131/16 132/6 136/18 136/22 138/7 140/20 145/20 145/22 147/3 147/9 151/19 153/22 154/22 155/25 156/16 158/8 158/19 159/11 159/15 162/25 163/1 163/21 166/4 167/3 167/4 167/7 167/9 172/15 182/23 183/3 193/9 193/22 194/7 194/10

**outcome [9]** 6/21 41/8 43/8 43/9 43/13 43/17 45/2 78/13 78/14

**outlined [1]** 171/16

**outnumbered [1]** 189/12

**outset [1]** 25/19

**outside [21]** 25/7 32/16 33/23 38/5 38/13 57/14 85/18 85/19 85/25 86/7 86/18 94/25 128/5 128/12 139/15 147/24 150/18 170/5 186/18 186/23 187/12

**outstanding [1]** 19/17

**outward [1]** 69/25

**over [38]** 11/1 13/18 55/1 61/17 66/7 99/13 99/13 99/20 100/2 100/19 101/2 101/12 103/21 103/21 103/22 104/5 104/17 105/15 105/18 107/5 111/15 111/16 111/16 116/2 117/16 117/16 127/3 128/2 129/11 149/24 150/12 164/19 172/3 172/11 173/4 175/18 191/4 194/17

**overall [1]** 24/21

**overcharged [1]** 126/16

**Overruled [1]** 161/24

**overseas [3]** 106/11 106/20 107/7

**oversight [1]** 144/21

**overt [21]** 68/1 76/16 76/18 81/25 82/3 82/5 82/7 82/10 82/16 82/20 82/24 83/2 83/7 89/22 124/1 127/11 127/12

**127/11 127/20 127/24 129/9 130/19 131/12 132/23 139/18 140/9 144/13 147/13 149/16 150/9 156/14 156/19 158/20 162/17 165/12 169/1 169/1 170/23 171/25 173/25 174/7 174/13 176/11 179/20 181/21 182/12 182/13 185/11 187/3 187/9 188/24 189/18 190/10 190/16 194/17

83/18 83/21 88/22 91/8 92/25 97/1 100/13 104/24 106/15 109/22 113/4 121/22 141/7 145/7 148/3 155/2 158/4 162/5 173/11 173/12 178/15 178/22 183/1 187/20 187/23 188/5 191/14 193/7**

**O**

**overt [2]** 127/19 127/20

**overview [3]** 103/25 104/1 106/2

**own [41]** 21/7 31/16 34/6 36/12 39/9 41/15 43/1 43/11 44/15 46/21 47/17 60/14 61/14 79/3 84/24 111/15 112/14 114/20 114/22 115/15 116/16 119/19 120/2 120/5 120/7 121/14 122/11 125/20 129/18 141/24 143/8 144/1 144/2 148/8 155/19 160/24 168/8 171/3 173/13 173/20 189/6

**owned [5]** 60/5 60/14 60/21 152/10 152/21

**owner [4]** 115/25 158/9 180/10 180/11

**oxymoron [1]** 14/3

**P**

**package [12]** 12/24 13/1 13/2 13/6 13/10 13/12 13/25 14/3 14/6 16/14 16/21 17/6

**page [4]** 4/12 95/21 127/16 162/23

**pages [1]** 196/11

**paid [11]** 54/18 57/25 58/16 58/17 59/18 104/10 104/19 105/20 129/10 129/12 182/15

**painful [1]** 161/21

**papers [1]** 37/13

**paragraphs [1]** 67/25

**parallel [1]** 8/4

**paraphrase [1]** 97/5

**parent [2]** 62/6 167/3

**parking [1]** 193/9

**part [35]** 4/15 12/23 13/1 13/10 20/9 24/19 40/4 41/18 43/4 45/10 50/5 52/17 64/9 67/24 70/6 77/22 79/22 97/10 102/10 104/15 107/21 126/7 126/16 146/2 153/10 162/19 174/24 174/25 175/3 178/25 179/14 180/21 181/6 183/25 192/3

**participant [3]** 71/5 78/11 81/20

**participants [2]** 67/5 77/21

**participate [9]** 78/8 80/13 89/4 91/1 92/21 110/6 125/11 125/15 192/1

**participated [13]** 65/13 69/1 70/22 80/13 81/6 89/19 110/8 122/10 122/14 123/17 125/6 168/16 169/7

**participating [3]** 49/23 72/4 73/11

**participation [10]** 79/2 79/24 80/2 81/1 90/2 117/20 119/15 119/18 123/21 143/2

**particular [19]** 5/21 6/1 6/4 14/10 45/21 54/8 59/13 67/14 72/21 72/22 73/8 76/6 93/5 93/11 93/14 93/19 97/4 153/10 184/22

**particularity [1]** 148/23

**particularly [3]** 18/8 99/15 190/11

**parties [14]** 8/11 8/24 27/16 27/20 28/4 30/2 34/21 35/5 35/24 77/16 94/17 97/3 110/1 163/23

**Partis [1]** 145/18

**partly [1]** 13/19

**partner [5]** 110/16 116/1 116/15 120/2 121/22

**partners [7]** 104/10 104/22 115/17 116/17 117/3 118/13

**partnership [3]** 55/18 75/13 83/18

**partnerships [1]** 83/19

**parts [2]** 17/20 80/5

**party [14]** 27/11 28/3 34/11 41/9 53/16 53/18 53/18 53/20 53/20 53/22 53/22 59/2 59/18 133/22

**pass [5]** 27/2 33/11 33/17 71/13 71/15

**passed [2]** 59/20 175/25

**password [5]** 118/2 118/3 118/4 118/8 124/6

**past [6]** 69/21 101/12 104/5 137/9 166/2 192/17

**patience [1]** 25/6

**pattern [2]** 5/11 6/8

**pause [1]** 141/4

**pay [24]** 52/24 57/25 58/9 58/13 58/20 58/25 59/2 64/3 64/3 64/7 64/7 74/5 111/5 111/24 112/13 116/8 116/14 119/4 129/4 133/8 134/17 138/1 141/1 162/21

**payee [2]** 11/20 159/7

**paying [18]** 60/2 103/15 109/6 112/9 118/14 118/22 119/9 120/11 120/19 120/20 120/21 120/22 122/8 125/19 138/8 159/12 176/14 183/24

**payment [49]** 11/6 11/21 12/4 52/23 52/24 54/19 54/21 54/23 54/25 55/9 56/17 57/25 58/12 58/14 58/19 58/20 58/23 60/3 62/14 62/25 63/3 63/6 63/12 63/25 64/1 64/3 64/3 64/6 64/7 64/8 64/8 74/5 74/6 89/25 90/20 106/16 113/7 116/9 117/25 126/11 126/13 126/19 126/21 128/13 128/21 128/24 159/5 161/5 167/15

**payments [44]** 49/7 63/17 63/20 72/15 72/17 72/19 90/20 90/22 104/22 105/3 106/10 107/4 107/6 109/3 109/13 109/17 118/20 122/14 122/21 123/5 123/12 126/18 127/13 129/17 129/20 144/10 144/12 148/6 148/13 158/25 159/1 159/2 159/19 159/20 159/22 160/3 160/10 160/12 160/14 167/24 168/4 169/20 178/13 184/14

**Payne [3]** 135/16 161/7 161/17

**payor [1]** 63/8

**penalty [2]** 41/25 42/5

**people [17]** 9/13 18/7 45/10 49/24 77/9 83/19 122/5 135/1 137/12 137/12 155/20 171/20 178/22 179/12 181/16 183/17 192/6

**per [2]** 17/15 181/18

**perceive [1]** 61/22

**Perfect [1]** 19/4

**perform [5]** 27/10 80/2 80/3 108/22 144/23

**performance [1]** 63/22

**performed [1]** 56/11

**performing [4]** 56/3 61/23 108/16 182/20

**performs [4]** 60/13 61/13 72/9 108/2

**perhaps [3]** 18/2 19/12 192/25

**period [3]** 8/16 60/19 61/16

**perjury [2]** 41/25 42/5

**permitted [6]** 36/2 39/7 39/11 43/21 43/23 47/9

**perpetrated [1]** 135/4

**person [63]** 41/11 41/13 49/17 49/21 50/6 53/11 53/11 54/3 54/22 55/11 55/25 56/1 58/6 58/9 58/21 59/8 59/11 59/14 59/16 59/24 60/5 63/6 63/9 63/11 63/15 66/19 67/12 67/16 69/3 69/5 69/14 69/20 72/13 74/8 79/5 79/8 80/20 88/9 88/15 88/17 88/20 88/22 89/13 92/5 99/23 99/24 134/6 137/14 142/7 146/17 147/8 147/9 147/9 147/11 164/7 166/19 167/5 170/10 186/4 186/8 187/15 187/25 191/15

**person's [3]** 59/6 69/25 141/10

**personal [10]** 28/10 34/7 45/2 46/8 46/20 50/18 143/5 143/19 143/21 157/7

**personally [10]** 68/12 72/1 92/20 93/9 93/17 124/15 126/23 149/3 171/25 192/8

**personification [1]** 134/9

**personnel [1]** 135/11

**persons [16]** 28/12 37/9 50/3 50/4 66/3 73/15 73/19 75/14 76/11 76/23 77/22 83/11 83/13 84/8 92/5 188/5

**perspective [1]** 180/18

**persuaded [1]** 34/12

**PhD [1]** 161/18

**phone [2]** 186/4 186/7

**phony [1]** 135/22

**physically [3]** 86/13 88/8 101/11

**picture [1]** 171/5

**pictures [2]** 65/1 75/7

**piece [1]** 190/10

**Pillsbury [1]** 1/17

**Pittman [1]** 1/17

**place [22]** 35/1 37/9 55/21 57/14 82/14 85/17 85/18 85/18 85/19 85/25 86/1 86/6 86/7 86/18 86/18 88/23 132/19 133/10 137/17 138/19 155/6 169/15

**placed [2]** 42/10 145/25

**places [1]** 8/16

**plain [1]** 104/9

**plan [23]** 7/16 7/20 21/18 23/10 23/11 65/23 65/25 66/10 66/13 70/14 78/22 80/12 81/1 92/9 116/9 116/13 122/20 132/19 135/19 135/22 136/10 147/17 156/17

**planning [2]** 45/8 192/24

**play [4]** 50/5 80/4 80/4 151/8

**played [2]** 36/10 80/14

**plea [4]** 30/13 47/10 148/8 155/17

**plead [3]** 46/20 47/5 136/3

**pleaded [6]** 30/11 46/15 46/19 46/25 131/3 131/9

**pleasant [1]** 190/11

**please [14]** 23/20 38/22 95/4 102/17 103/4 115/10 179/4 189/24 191/7 193/1 193/23 193/25 194/3 194/9

**pled [5]** 107/16 132/21 138/5 155/9 177/6

**pocket [1]** 112/14

**pockets [4]** 125/20 129/18 152/13 152/23

**P**

**point [15]**   24/24 94/16 97/13 105/18 145/20 151/8 155/1 155/3 162/2 169/23 192/23 195/11
**pointed [2]**   10/20 163/21
**policy [1]**   118/23
**political [4]**   53/16 53/18 53/20 53/22
**portion [5]**   53/12 54/23 58/22 59/3 74/9
**poses [1]**   76/4
**position [4]**   56/18 132/25 165/11 167/7
**possession [1]**   55/23
**possibility [1]**   191/11
**possible [5]**   91/14 93/22 185/10 186/15 187/13
**potential [1]**   16/9
**potentially [1]**   146/1
**power [2]**   61/4 61/10
**practical [2]**   14/8 71/2
**practice [3]**   73/6 99/12 190/15
**Practices [7]**   51/14 52/17 85/13 106/4 165/6 176/1 177/7
**precise [1]**   77/4
**precisely [1]**   82/11
**prejudice [7]**   17/10 18/6 27/11 27/15 29/3 41/8 172/14
**preliminary [1]**   185/21
**premised [1]**   66/25
**preparation [1]**   99/9
**prepared [4]**   9/9 36/3 165/24 169/12
**presence [3]**   25/7 80/15 90/8
**present [7]**   23/19 35/15 37/9 48/2 102/16 188/21 193/12
**presented [13]**   24/7 25/4 29/22 32/3 32/5 34/24 35/5 44/1 108/3 130/25 131/15 133/3 186/25
**preserve [2]**   96/23 151/10
**president [4]**   110/15 110/16 115/25 133/6
**pressed [1]**   191/12
**presumably [1]**   16/3
**presumed [2]**   30/21 34/17
**presumes [1]**   30/19
**presumption [3]**   28/12 31/2 31/10
**pretenses [7]**   64/22 65/10 65/22 66/2 75/2 75/3 125/4
**pretty [3]**   15/10 149/1 158/19
**previous [1]**   191/13
**price [1]**   64/9
**primarily [1]**   23/1
**primary [1]**   171/19
**prime [1]**   27/23
**principal [5]**   55/21 56/2 56/3 56/4 88/5
**principals [2]**   119/10 179/16
**principle [2]**   26/5 67/18
**principles [2]**   119/13 171/17
**printed [1]**   186/21
**prior [7]**   24/2 42/6 42/10 43/2 91/11 154/17 155/5
**prison [5]**   139/24 148/19 148/19 148/21 151/13
**private [5]**   121/9 121/12 136/15 143/2 154/7
**privileges [1]**   61/9
**probability [2]**   59/15 59/19
**probably [4]**   14/3 15/12 24/12 101/13
**problem [5]**   10/3 144/13 163/15 182/6 184/1

**problems [2]**   14/23 100/15
**procedure [1]**   193/13
**procedures [1]**   192/16
**proceed [2]**   94/14 115/22
**proceeding [3]**   42/1 42/6 148/8
**proceedings [5]**   1/24 195/24 196/6 196/12 196/14
**process [21]**   14/6 17/2 17/11 19/23 28/17 94/13 115/11 115/14 115/14 115/14 115/15 119/11 119/14 135/6 146/7 146/24 152/6 168/24 171/17 171/19 172/18
**procures [1]**   88/4
**produce [3]**   37/12 63/7 164/25
**produced [2]**   1/24 36/1
**producing [1]**   30/18
**product [1]**   22/6
**professional [1]**   45/2
**Professor [3]**   135/16 161/7 161/17
**proffered [1]**   155/18
**profit [2]**   125/24 129/3
**profited [2]**   110/18 137/17
**profits [1]**   61/5
**program [10]**   133/19 135/12 137/20 143/1 152/7 155/5 155/6 159/25 160/3 169/15
**programs [1]**   133/9
**prohibited [1]**   58/14
**prohibition [2]**   63/16 63/19
**prohibits [1]**   64/1
**project [1]**   152/16
**proliferating [1]**   142/21
**proliferation [2]**   142/18 180/14
**promise [11]**   52/23 52/25 56/17 58/13 58/20 63/13 63/25 64/3 64/7 74/5 74/7
**promised [10]**   47/6 53/13 54/19 54/24 57/25 58/16 58/23 59/4 74/11 167/15
**promises [7]**   64/23 65/10 65/22 66/2 75/2 75/3 125/5
**promising [1]**   60/3
**promote [11]**   85/5 85/12 85/20 86/3 86/22 87/7 87/13 89/17 128/6 128/21 170/6
**promoted [3]**   128/22 143/4 143/23
**promoting [4]**   83/5 87/1 87/15 106/21
**promptly [1]**   187/13
**promptness [1]**   25/4
**proof [20]**   24/18 28/13 34/15 37/2 37/18 38/1 38/7 50/21 50/21 68/22 69/18 69/22 73/5 77/13 77/21 78/13 86/15 102/21 134/1 167/22
**proper [1]**   50/24
**properly [4]**   20/19 29/13 78/16 135/11
**property [6]**   64/22 66/1 66/11 68/11 69/13 75/1
**proprietorship [1]**   55/20
**prosecute [1]**   47/3
**prosecution [7]**   27/25 30/14 37/8 37/12 46/19 47/19 139/7
**prosecutors [1]**   139/9
**protect [3]**   139/6 157/2 170/16
**protecting [1]**   147/20
**proud [2]**   130/12 130/13
**prove [57]**   6/3 30/14 37/7 48/3 48/6 54/6 55/13 56/10 57/1 57/6 57/24 58/18 62/13 63/3 63/10 65/6 65/19 66/12

67/20 68/10 68/12 68/14 68/25 70/9 71/2 72/23 76/9 76/22 77/7 77/23 81/23 82/19 82/23 85/22 85/23 86/5 86/12 86/13 86/17 86/21 89/20 110/10 124/22 125/2 125/5 125/8 128/10 128/20 165/7 167/14 168/3 169/6 169/16 170/4 170/13 172/21 188/10
**proved [20]**   39/8 49/1 57/19 58/11 68/3 73/4 79/15 81/11 104/3 124/23 125/2 126/6 126/9 126/15 126/19 127/1 127/25 128/13 128/23 129/5
**proven [16]**   28/21 28/23 30/7 30/24 31/13 37/16 37/24 49/15 49/18 49/22 57/22 82/3 88/14 107/12 123/16 162/5
**proves [6]**   62/24 68/4 93/8 93/16 106/23 129/8
**provide [7]**   12/12 36/2 58/4 60/15 104/1 153/9 186/2
**provided [8]**   36/6 57/3 92/1 165/16 170/20 189/21 189/22 195/1
**provides [6]**   60/24 61/20 64/19 73/15 85/15 88/2
**providing [2]**   61/19 132/20
**proving [2]**   68/7 127/19
**provision [1]**   57/2
**provisionally [1]**   19/13
**prudence [1]**   66/4
**prudent [1]**   67/11
**pseudonyms [2]**   7/10 20/16
**public [4]**   60/15 61/20 61/21 76/4
**publicity [1]**   30/4
**punched [1]**   156/16
**punishable [1]**   88/4
**punishment [2]**   93/22 94/6
**purpose [40]**   21/2 21/6 21/20 33/8 33/9 42/11 48/18 49/9 49/12 56/13 56/25 64/6 69/8 69/12 71/7 73/18 75/7 75/15 77/4 77/5 77/23 78/9 79/11 81/14 82/20 83/1 84/1 87/1 87/15 89/22 90/6 106/21 109/2 109/8 109/13 109/17 157/9 180/7 188/19 189/12
**purposefully [1]**   86/25
**purposely [1]**   42/19
**purposes [19]**   21/21 53/2 53/14 55/1 59/6 60/8 62/15 62/25 65/4 74/11 78/24 81/3 81/7 132/20 146/12 147/11 149/7 152/16 175/16
**pursuant [2]**   92/9 92/24
**pursue [3]**   153/13 167/25 168/1
**pursuing [1]**   161/10
**push [4]**   120/25 121/16 167/7 167/9
**pushed [7]**   136/18 136/22 138/7 144/15 144/25 159/11 167/4
**put [13]**   4/6 4/17 8/20 11/8 15/15 22/7 22/10 32/20 132/18 137/17 179/3 180/17 183/7
**putting [1]**   145/21

**Q**

**Q-1 [1]**   117/2
**Q-3 [1]**   117/24
**Q-4 [1]**   117/23
**qualifications [3]**   44/6 165/18 165/24
**qualified [3]**   142/18 153/3 165/15

**Q**

qualified
quarterly [2]   119/11 184/14
quarters [1]   99/24
question [40]   5/4 6/14 8/10
 28/20 32/20 32/22 32/25 33/1
 33/3 33/18 33/21 69/14 69/16
 69/17 69/17 78/22 87/7 87/19
 89/24 93/22 99/6 100/1
 107/15 107/18 109/2 110/5
 110/7 121/18 121/20 143/12
 143/15 146/14 150/4 154/6
 156/13 156/18 179/25 189/22
 195/7 195/21
questioning [4]   142/4 146/9
 148/12 149/11
questions [19]   5/3 5/10 7/9
 7/10 8/4 27/13 32/19 33/12
 91/1 91/9 143/10 150/14
 150/14 150/16 158/17 164/9
 189/20 189/23 195/13
quick [3]   18/17 98/2 159/17
quickly [3]   160/22 164/18
 183/7
quite [3]   44/24 96/20 177/10
quote [6]   103/17 103/18
 111/18 112/5 112/8 121/2
quoted [1]   150/1
quotes [5]   125/21 168/19
 168/23 168/24 169/12
quoting [1]   97/1

**R**

R-O-B-I-N-S-O-N [1]   194/4
race [1]   28/11
radio [1]   64/24
rain [1]   38/18
raincoat [2]   38/13 38/17
raining [3]   38/5 38/6 38/14
raise [4]   6/14 111/6 111/23
 193/23
raised [2]   97/19 175/4
ran [4]   99/20 110/17 110/18
 152/6
rare [1]   69/19
rates [1]   150/1
rather [2]   18/18 58/5
rational [1]   70/2
Ravenscroft [17]   22/23
 131/17 133/6 133/7 133/11
 133/20 134/13 135/9 137/19
 148/7 148/10 154/14 154/21
 155/1 155/12 159/23 170/24
Ravenscroft's [1]   155/13
RDR [1]   1/21
re [3]   95/17 117/2 189/6
re-establish [1]   117/2
re-examine [1]   189/6
re-give [1]   95/17
reach [3]   185/19 190/2 191/9
reached [4]   98/9 185/15
 188/2 190/3
reaching [7]   28/9 44/3 48/25
 50/9 50/17 188/23 188/25
read [5]   29/24 139/17 174/6
 174/15 191/16
ready [4]   23/17 97/25 101/24
 102/23
real [3]   137/4 159/10 171/13
realize [1]   4/16
realized [1]   68/15
realizes [1]   47/17
really [23]   3/20 3/22 3/23
 4/2 4/9 5/1 5/9 10/17 18/11
 97/2 110/4 115/9 125/10
 133/5 134/24 135/3 136/5
 154/11 157/1 164/1 167/18
 178/14 183/12
reason [13]   15/18 17/2 33/21

33/21 38/19 44/16 92/23
 132/24 145/12 167/22 177/8
 190/14 192/12
reasonable [89]   27/7 28/22
 30/15 30/25 31/4 31/14 37/16
 38/17 39/8 39/25 40/2 45/18
 47/13 48/4 49/2 49/15 54/7
 55/13 56/10 57/7 57/19 57/24
 58/19 62/14 62/24 63/3 65/7
 65/20 67/11 67/16 68/4 68/25
 70/10 71/4 71/10 72/20 72/21
 73/1 76/10 76/22 77/25 79/4
 81/12 81/23 82/13 82/19
 82/23 84/5 85/23 86/5 86/21
 88/15 91/20 92/2 92/18 93/8
 93/16 94/3 96/14 96/18 96/21
 97/6 104/4 106/23 107/13
 123/17 124/24 127/1 127/25
 129/6 129/8 133/25 134/2
 134/7 134/7 134/8 134/9
 150/22 150/23 164/23 165/7
 166/17 167/23 168/3 169/17
 170/4 170/13 172/21 188/11
reasonableness [1]   154/20
reasonably [8]   66/3 67/10
 72/2 72/12 72/18 83/23 92/15
 126/25
reasoned [1]   39/16
reasoning [1]   83/14
reasons [2]   33/13 44/7
rebate [1]   169/15
rebuttal [9]   2/5 19/19 24/5
 24/19 100/22 102/4 102/22
 151/21 173/1
recall [3]   40/23 135/15
 169/22
recap [1]   23/22
receive [3]   25/16 46/4 47/18
received [5]   31/22 36/5
 83/15 129/14 157/12
Recess [1]   98/6
recipient [2]   64/1 64/4
recollection [3]   31/16 40/24
 41/14
reconsideration [1]   7/4
reconvenes [1]   193/11
record [9]   19/11 19/15 23/25
 33/5 96/15 97/13 126/14
 193/18 194/1
recorded [1]   1/24
recording [1]   194/13
recordings [9]   35/21 35/23
 36/5 36/7 36/10 36/11 36/13
 194/12 194/18
records [1]   182/22
recover [2]   17/17 161/14
redacted [1]   20/19
refer [5]   8/4 17/12 48/16
 51/5 51/17
reference [12]   19/22 21/20
 22/24 23/10 152/23 154/3
 155/16 162/12 163/3 163/13
 186/19 186/21
referenced [8]   5/12 6/5
 140/5 140/14 162/8 164/6
 165/25 166/15
referencing [4]   154/5 154/16
 163/10 165/12
referred [3]   31/17 31/20
 83/17
referring [2]   9/13 193/4
refers [3]   8/15 86/8 165/23
reflect [1]   138/11
reflecting [1]   189/17
refused [1]   144/22
regard [7]   34/22 49/20
 133/21 157/20 164/2 164/4
 166/10
regarding [4]   36/18 96/25

98/8 147/16
regardless [2]   26/11 64/2
registered [1]   182/25
regular [1]   191/7
regulatory [4]   138/20 144/6
 152/4 165/16
reject [1]   183/22
relate [2]   23/1 67/9
related [4]   7/14 27/13 63/22
 68/8
relates [2]   162/16 164/20
relating [8]   26/25 34/20
 41/20 49/6 143/20 145/8
 159/21 166/1
relationship [9]   41/5 143/17
 148/9 153/1 161/9 163/20
 167/8 180/19 181/14
release [2]   116/5 193/20
relevant [6]   25/22 52/17
 60/19 61/16 64/18 73/13
relied [4]   157/5 165/5
 168/23 173/16
relieved [1]   192/1
religion [1]   28/11
rely [9]   31/15 107/11 134/10
 140/2 146/3 147/5 162/3
 168/11 172/23
relying [1]   67/12
remain [1]   27/18
remaining [1]   110/3
remains [4]   31/11 48/4
 191/11 192/5
remarks [1]   171/15
remember [25]   12/16 30/9
 41/14 128/15 132/9 132/14
 132/14 136/6 139/12 139/14
 141/10 142/19 148/14 149/22
 150/13 150/15 152/2 154/3
 155/6 156/5 158/15 159/7
 176/18 176/25 177/2
remembered [1]   140/21
remind [6]   27/12 32/6 39/23
 101/13 102/24 178/9
reminder [2]   21/5 101/16
remove [1]   191/22
removed [2]   10/21 99/11
remuneration [46]   110/24
 111/20 111/25 112/8 112/17
 112/23 112/25 121/23 121/25
 122/1 133/9 133/19 135/6
 135/12 136/24 137/20 139/11
 144/10 148/6 149/21 154/16
 155/5 155/6 159/25 160/2
 160/5 160/8 160/9 160/12
 160/15 160/23 163/17 164/10
 164/12 168/19 178/18 178/19
 178/20 178/22 179/13 179/14
 179/22 181/25 182/10 182/13
 184/2
renders [1]   141/11
renewal [1]   63/18
repeat [2]   45/24 140/16
repeatedly [6]   131/2 133/18
 139/20 139/22 162/4 172/10
replies [4]   115/17 116/9
 116/19 163/11
report [4]   29/24 98/3 186/14
 188/16
reported [1]   196/5
Reporter [4]   1/21 196/1
 196/3 196/20
reports [1]   30/1
represent [6]   14/21 22/9
 35/2 56/2 130/13 189/14
representation [5]   66/17
 66/20 67/8 67/12 71/23
representations [16]   64/15
 64/23 65/10 65/22 66/2 66/8
 66/17 67/23 70/12 70/17 75/2

**R**

represents **[3]** 118/20 125/5 140/6 156/11 156/19
representative **[3]** 97/24 149/22 149/23
representatives **[1]** 145/17
represented **[3]** 131/4 139/25 157/3
represents **[2]** 134/3 134/4
request **[28]** 11/23 12/1 12/5 12/8 12/13 12/20 15/4 16/1 16/4 16/10 18/23 29/15 96/15 96/16 118/8 145/21 146/4 146/6 146/11 146/15 146/18 153/2 159/5 161/15 163/13 167/17 167/21 167/22
requested **[1]** 160/18
requester **[2]** 124/16 145/22
requesting **[1]** 146/12
require **[6]** 18/7 18/19 37/8 37/12 70/25 191/3
required **[16]** 26/3 34/16 39/11 45/11 45/12 48/6 58/4 58/12 68/2 68/12 69/22 81/5 82/2 86/14 91/23 153/10
requirement **[2]** 37/6 88/19
requires **[6]** 51/5 80/6 86/10 90/5 109/12 172/20
research **[5]** 95/1 185/24 186/17 191/17 193/6
resident **[3]** 55/17 56/6 109/25
resist **[1]** 149/25
resolve **[1]** 27/6
resorted **[1]** 66/7
respect **[6]** 59/7 84/25 91/18 174/13 174/16 175/12
respond **[3]** 163/12 186/13 187/13
responded **[3]** 14/24 16/19 116/12
responding **[1]** 187/16
responds **[4]** 115/19 116/4 116/23 120/1
response **[3]** 14/25 164/9 187/18
responsibility **[3]** 36/20 93/2 145/1
responsible **[6]** 84/3 86/14 144/6 144/7 145/8 160/14
rest **[4]** 19/18 24/2 110/22 111/21
rested **[2]** 9/17 19/16
restrictions **[1]** 191/22
rests **[2]** 44/17 93/25
result **[8]** 30/13 56/14 56/15 59/8 59/10 59/12 63/7 63/12
retained **[1]** 63/11
retaining **[7]** 53/10 54/2 55/10 63/5 63/14 63/17 74/21
retire **[3]** 24/25 26/9 187/2
return **[9]** 49/12 50/15 130/2 137/5 172/19 185/4 187/14 189/19 190/6
returned **[1]** 191/20
returning **[1]** 189/13
returns **[1]** 194/25
reveal **[1]** 187/25
revealed **[1]** 70/1
revenue **[1]** 60/25
review **[5]** 52/2 144/16 156/5 159/18 160/20
reviewed **[5]** 20/3 22/2 160/23 168/22 171/2
reviewing **[2]** 45/3 98/11
revised **[1]** 3/10
riddled **[1]** 133/24
right **[83]** 3/19 4/3 10/16 13/15 13/16 14/7 16/6 16/20

19/24 20/4 20/7 21/10 22/16 22/17 29/14 97/12 99/16 100/3 101/23 102/1 103/24 117/11 117/21 120/7 121/21 142/8 143/14 143/21 146/10 146/11 146/13 146/16 146/16 146/16 146/19 146/22 146/22 148/20 148/21 148/25 149/15 149/17 150/1 150/3 150/7 150/10 150/11 151/4 151/5 152/2 152/5 152/8 152/11 152/14 152/17 152/22 153/4 153/6 153/11 153/19 154/14 154/17 155/21 155/24 155/24 156/3 156/10 156/10 156/12 156/19 159/4 175/20 176/6 178/16 178/20 179/1 179/2 179/7 179/9 181/18 182/18 184/6 193/23
rigorously **[1]** 99/14
risk **[1]** 29/4
RMR **[1]** 1/21
road **[1]** 184/12
Robinson **[1]** 194/2
rock **[1]** 172/17
Rod **[29]** 20/12 73/25 103/15 104/10 104/18 110/21 111/3 111/9 118/15 119/5 127/8 131/15 135/18 135/21 137/14 138/7 138/7 138/24 140/15 140/25 141/2 153/7 154/13 167/3 171/7 175/24 176/14 180/3 182/7
Rodney **[1]** 159/9
role **[6]** 30/5 49/14 80/5 80/14 144/9 144/13
roles **[1]** 80/4
room **[11]** 18/10 25/17 26/9 48/12 98/2 127/16 186/6 186/10 187/2 187/13 193/8
ROSATOM **[4]** 143/7 143/13 180/8 180/10
ROSATOM's **[1]** 143/17
Rosso **[9]** 148/5 156/5 156/6 159/8 160/1 160/22 170/24 181/17 182/3
routine **[1]** 73/5
row **[1]** 190/18
rubric **[1]** 166/5
rule **[8]** 13/17 13/20 24/20 26/10 92/23 99/15 99/18 100/13
rules **[2]** 57/4 191/3
ruling **[3]** 20/11 29/19 33/12
rulings **[4]** 26/19 29/15 33/13 33/13
run **[5]** 17/18 138/16 141/13 148/11 192/12
running **[1]** 18/7
runs **[1]** 100/19
rush **[1]** 114/6
Russia **[11]** 60/18 71/17 104/15 105/10 105/13 113/14 113/16 113/19 129/14 152/8 181/3
Russia's **[3]** 108/13 108/17 108/19
Russian **[23]** 60/10 60/20 60/22 61/3 61/9 61/14 61/25 103/15 104/11 104/19 107/21 108/8 108/10 108/11 129/24 143/18 157/17 180/15 180/19 180/21 181/2 181/4 181/9

**S**

safe **[1]** 102/1
safety **[1]** 76/5
said **[69]** 3/23 4/21 5/14 6/24 7/19 10/15 10/21 11/11

11/12 12/15 12/16 13/20 14/9 15/25 22/20 24/6 26/18 32/9 32/12 33/15 37/1 46/17 79/8 84/20 94/15 97/7 102/2 108/10 110/22 114/16 117/22 117/24 118/6 119/12 131/12 132/22 133/20 135/25 137/5 137/19 138/5 140/10 141/5 141/8 141/9 151/13 155/10 155/17 156/8 156/21 159/12 162/4 168/12 169/22 169/23 169/24 171/13 172/4 173/9 175/10 175/10 180/6 180/23 185/11 193/5 195/5 196/9 196/12 196/14
sale **[3]** 108/19 180/16 181/1
SALEM **[11]** 1/11 2/5 10/6 11/11 97/19 143/12 151/21 173/3 181/22 184/4 185/7
sales **[1]** 144/7
same **[25]** 11/25 12/5 12/9 25/15 28/3 44/23 46/16 67/18 100/12 114/11 117/23 118/1 122/21 122/24 123/8 123/11 134/16 135/17 137/20 138/18 160/10 162/14 178/16 179/18 179/23
Sand **[2]** 5/7 6/7
Sandy **[6]** 107/7 126/14 128/14 145/18 145/19 158/10
sat **[2]** 105/17 131/1
satisfied **[11]** 30/23 40/1 59/21 63/1 72/5 78/2 87/17 87/18 91/18 93/4 93/12
satisfy **[4]** 76/24 82/2 82/22 86/16
save **[10]** 4/21 35/2 139/21 139/22 139/23 147/24 151/6 151/12 151/14 151/15
saw **[46]** 7/14 38/2 38/5 109/4 109/14 110/13 111/15 112/5 112/16 112/17 112/21 112/25 113/1 113/3 113/5 113/10 113/22 114/6 114/10 114/11 114/23 117/21 117/22 117/24 118/2 118/3 118/5 118/6 118/15 118/17 119/5 119/19 119/20 119/23 122/10 123/9 123/13 124/6 127/12 136/13 152/24 157/11 157/22 161/17 179/17 194/21
say **[44]** 10/14 18/25 19/18 32/10 56/24 69/7 79/11 97/10 100/13 101/10 116/12 118/10 119/2 119/12 121/9 130/12 130/13 139/13 141/12 144/5 150/5 155/22 156/2 156/14 156/21 157/11 158/4 159/14 166/18 168/6 168/6 169/4 171/24 175/8 175/11 175/13 176/7 181/21 182/18 184/8 190/22 191/23 193/14 195/17
saying **[15]** 16/4 16/8 102/7 120/8 121/12 121/24 122/1 135/18 136/9 146/2 147/5 150/19 150/20 154/12 168/10
says **[29]** 11/6 52/18 95/13 99/18 115/9 115/20 116/20 116/24 116/24 117/1 117/25 118/9 118/10 118/22 119/2 119/9 119/25 120/2 121/13 138/8 138/24 145/7 151/18 157/21 163/24 176/5 176/20 183/11 183/19
scenario **[1]** 150/6
scene **[1]** 80/15
schedule **[3]** 24/22 25/5 192/22
scheduling **[1]** 192/11

**S**

**scheme [128]**   19/24 20/5 20/25 21/1 21/24 21/25 22/19 64/14 64/16 64/21 65/8 65/13 65/16 65/20 65/23 65/25 66/10 66/15 67/5 67/24 68/6 68/9 68/10 68/13 68/15 68/18 68/18 68/22 69/1 70/22 71/5 71/7 71/12 71/24 72/3 74/25 75/8 77/4 77/5 78/14 80/5 82/1 83/6 84/17 104/2 104/5 104/7 104/8 104/9 106/1 106/7 106/21 107/16 107/17 110/6 110/9 110/18 110/20 110/22 110/25 111/9 113/8 115/3 115/16 115/24 116/17 117/10 117/18 117/20 118/16 119/16 119/18 120/6 120/8 122/11 122/17 123/18 123/25 124/2 125/3 125/6 125/10 125/11 125/13 125/15 125/17 125/18 126/3 126/7 126/9 126/15 126/25 128/22 128/22 131/9 131/10 131/14 133/5 135/3 135/4 136/16 137/16 153/15 153/16 153/18 154/8 154/9 159/10 162/20 162/22 164/3 164/4 166/5 166/25 167/25 168/16 169/7 171/8 171/14 178/9 178/10 178/11 179/11 179/15 179/23 182/14 182/15
**schlyapa [1]**   20/16
**scope [1]**   79/20
**scramble [1]**   97/17
**screen [3]**   11/8 22/7 22/10
**script [1]**   100/5
**scrutinize [1]**   40/12
**scrutinized [2]**   45/20 168/23
**scrutinizing [1]**   47/22
**scrutiny [1]**   142/7
**se [2]**   17/16 181/18
**search [6]**   36/19 36/21 132/14 141/17 141/18 141/24
**seated [5]**   23/21 95/4 102/18 171/16 194/10
**second [27]**   5/3 24/19 30/11 45/9 48/15 54/13 56/9 62/17 65/12 68/23 68/24 76/13 77/24 86/2 86/20 87/17 92/5 99/24 101/23 104/2 125/5 126/11 127/17 128/20 137/25 150/9 191/23
**seconds [3]**   100/19 100/21 101/12
**secrecy [1]**   77/14
**secret [8]**   106/16 122/4 126/12 129/20 163/15 183/9 183/9 183/13
**secretly [2]**   126/16 129/1
**section [13]**   7/5 51/16 51/18 51/22 52/1 64/18 73/13 73/15 74/23 75/9 85/7 85/14 88/1
**secure [5]**   55/8 62/23 109/8 109/13 142/5
**securing [3]**   53/5 53/21 74/15
**security [1]**   187/12
**see [34]**   3/12 4/20 5/3 7/9 18/12 22/3 38/14 39/6 40/22 95/1 96/1 97/20 107/3 111/2 112/3 124/12 126/3 126/11 145/15 159/9 159/9 159/21 161/3 179/9 182/10 182/12 183/8 183/11 184/13 184/13 184/13 184/14 184/15 195/20
**seeing [1]**   112/4
**seek [2]**   91/4 139/8
**seeking [2]**   151/4 161/14

**seem [1]**   26/25
**seemed [1]**   3/22
**seen [22]**   10/10 10/23 29/24 32/15 103/10 103/11 107/4 129/10 129/16 129/18 130/1 133/12 162/14 164/19 165/12 165/14 173/12 173/12 176/21 181/13 184/24 185/3
**seized [2]**   36/16 36/23
**select [1]**   187/3
**selected [3]**   143/20 171/25 172/4
**selection [1]**   144/19
**send [22]**   4/15 72/8 105/6 113/23 114/7 116/25 117/1 118/7 123/5 124/8 124/14 126/7 126/18 126/20 126/21 190/2 190/4 191/1 193/1 193/3 193/16 193/17
**sending [7]**   17/6 104/24 113/20 122/21 123/6 123/15 125/21
**sends [4]**   118/4 118/20 123/12 126/4
**sense [26]**   17/2 34/6 38/25 39/14 40/3 41/15 42/24 44/16 93/24 94/8 108/16 115/25 121/25 122/3 138/25 139/1 139/4 145/16 154/23 158/5 167/10 167/11 173/23 180/25 181/3 183/2
**sent [27]**   3/9 8/14 9/11 10/9 11/1 11/17 14/20 15/1 15/11 15/13 103/18 105/23 106/14 107/6 107/18 112/6 112/21 113/18 116/2 123/9 123/11 126/10 126/19 135/11 160/18 163/5 174/17
**sentence [4]**   47/18 93/25 95/13 95/20
**sentencing [1]**   47/8
**separate [5]**   5/22 50/15 75/17 76/2 80/2
**separately [1]**   50/15
**sequence [1]**   24/8
**serious [1]**   27/24
**seriously [1]**   172/5
**serve [3]**   27/13 148/18 187/4
**served [2]**   46/6 159/19
**service [9]**   56/3 60/15 186/12 190/23 191/12 191/20 191/25 192/2 192/8
**services [5]**   61/19 61/20 113/5 152/17 182/20
**set [11]**   3/15 14/9 23/16 39/21 67/24 87/23 87/25 94/17 100/13 170/21 185/12
**setting [2]**   130/9 173/1
**settled [1]**   115/19
**seven [4]**   101/5 101/7 107/9 124/6
**seventh [2]**   55/9 63/2
**sex [1]**   28/11
**Seychelles [2]**   105/11 113/15
**shall [2]**   52/18 65/1
**share [1]**   147/4
**sharing [1]**   183/13
**Shaw [1]**   1/17
**she [32]**   38/2 38/4 40/22 41/3 41/6 43/24 59/8 102/7 102/9 108/5 108/10 142/17 142/24 143/3 143/4 144/4 144/5 144/10 144/18 145/22 145/24 145/25 145/25 146/23 160/18 161/18 161/20 161/20 180/7 181/25 182/1 194/11
**She's [2]**   144/4 182/1
**sheds [1]**   83/4
**Shell [1]**   7/11

**shifts [2]**   30/15 48/5
**shine [1]**   166/20
**shining [1]**   38/16
**ship [3]**   129/13 152/7 152/13
**shipment [1]**   149/14
**shipping [1]**   182/1
**short [4]**   18/16 48/15 51/17 101/2
**shorthand [4]**   51/18 97/6 196/6 196/13
**should [66]**   5/5 13/17 13/24 15/19 24/19 24/23 25/10 26/7 26/8 26/10 26/17 26/20 26/24 33/12 33/16 33/22 34/2 34/14 34/22 35/3 36/12 37/3 38/25 39/14 40/3 40/11 40/18 40/21 41/14 43/7 43/14 44/13 44/15 46/1 46/11 47/14 49/18 50/6 50/22 68/23 78/6 86/10 93/23 94/16 95/16 115/11 165/19 175/2 179/25 182/22 183/22 186/2 186/12 186/14 186/16 187/11 187/17 187/19 188/15 188/16 188/18 189/15 189/25 190/5 190/9 191/18
**shouldn't [2]**   18/9 173/20
**show [18]**   5/20 23/6 45/12 82/6 88/7 89/10 89/23 115/4 124/22 127/21 136/21 158/14 166/10 166/12 168/15 169/9 174/3 178/8
**showed [6]**   122/18 122/20 128/25 137/2 165/9 166/7
**showing [2]**   21/7 113/22
**shown [13]**   35/6 68/18 69/20 131/14 134/17 137/4 137/11 137/13 139/5 160/24 167/16 168/17 168/18
**shows [8]**   51/4 122/9 122/11 140/8 140/25 171/5 175/23 177/9
**side [7]**   24/21 29/11 29/12 33/25 34/2 34/14 100/16
**sides [4]**   12/7 13/24 19/16 22/16
**sift [1]**   28/20
**sight [1]**   33/24
**sign [3]**   26/19 187/4 190/1
**signals [1]**   75/7
**signature [2]**   11/21 15/16
**signatures [1]**   14/19
**signed [5]**   112/16 148/18 158/13 187/9 187/20
**significance [2]**   36/22 48/7
**signing [3]**   136/8 136/20 136/23
**signs [3]**   65/1 75/6 184/14
**silly [1]**   183/22
**similar [4]**   6/2 46/19 73/2 133/9
**similarity [2]**   51/5 80/21
**Similarly [3]**   77/2 80/17 82/4
**simple [1]**   104/9
**simply [10]**   33/2 117/15 133/3 140/18 146/3 146/5 146/10 164/25 166/6 170/8
**since [16]**   18/16 26/15 30/1 34/16 70/4 77/13 82/8 100/1 108/21 108/24 111/24 116/21 134/17 152/18 169/15 181/1
**single [5]**   26/7 61/24 80/6 129/2 170/25
**sir [5]**   150/15 151/4 151/6 152/2 194/5
**SISTI [8]**   1/14 2/4 95/6 102/6 103/2 130/5 178/2 182/24
**sit [2]**   160/18 190/16

S

**sitting [1]**   187/12
**situation [4]**   99/19 118/24 120/4 140/12
**sixth [5]**   5/11 5/15 6/7 54/25 62/13
**size [1]**   41/11
**skewed [1]**   170/21
**skill [1]**   43/25
**skip [1]**   104/19
**slate [1]**   31/2
**slide [29]**   107/3 142/3 143/11 143/16 144/19 146/9 147/15 148/22 149/11 149/20 149/24 150/5 150/12 152/1 152/9 152/15 152/20 152/24 152/25 154/1 154/13 155/20 156/9 159/17 160/1 160/7 160/9 161/4 161/8
**slides [2]**   22/2 148/11
**slight [1]**   98/25
**small [1]**   42/21
**so [186]**   3/2 3/19 4/17 5/5 5/25 6/6 6/24 6/25 7/7 7/12 7/24 8/3 8/19 8/19 9/3 9/13 9/25 10/2 10/5 10/7 10/11 10/22 10/24 11/5 11/19 11/24 12/12 13/3 13/18 13/23 14/4 14/6 14/9 14/20 15/5 15/7 15/24 16/13 16/22 16/25 17/22 17/24 18/10 19/24 20/2 20/12 21/2 21/3 21/14 23/4 23/7 23/12 24/6 24/12 24/21 24/22 25/1 25/2 25/17 27/18 29/23 35/23 43/2 46/1 59/18 67/4 67/14 70/24 84/10 86/2 87/17 87/20 94/15 94/24 95/8 96/8 97/5 97/8 97/16 97/17 98/20 98/24 98/25 99/2 100/6 100/19 101/14 102/3 102/10 103/1 104/5 104/7 108/21 109/3 109/21 110/7 111/4 111/24 112/11 112/14 116/25 118/20 120/22 120/25 121/5 121/16 123/2 123/5 123/19 124/21 124/25 125/10 125/14 126/1 128/5 128/9 129/2 129/17 130/6 132/22 133/13 137/21 137/21 137/21 138/24 139/22 140/4 146/23 147/8 148/25 149/12 150/20 151/22 151/25 152/11 154/12 156/18 159/17 164/15 164/15 170/6 170/19 171/18 171/19 171/22 172/3 172/11 173/15 174/19 176/3 176/22 176/24 177/10 178/9 178/9 178/13 178/14 179/9 179/12 179/13 179/20 179/21 184/8 185/2 185/8 187/15 188/25 189/3 190/5 190/8 190/17 190/19 191/1 191/4 191/6 191/8 191/19 192/6 192/14 192/25 193/5 193/12 193/14 193/18 193/19 195/10
**so-called [1]**   46/1
**society [1]**   171/22
**sold [1]**   156/17
**sole [8]**   26/15 27/4 40/9 50/7 55/20 109/20 147/16 149/14
**solely [13]**   20/11 28/7 28/19 28/24 29/21 44/17 49/8 49/18 50/19 94/3 186/24 188/13 189/11
**solid [1]**   172/17
**some [66]**   3/11 3/17 4/13 4/16 4/22 5/8 5/8 5/16 6/5 6/13 6/20 10/16 10/17 11/3 14/14 14/16 14/18 14/18 15/25 16/16 18/17 18/20 20/23 20/25 34/18 34/19 37/10 38/21 41/20 43/8 45/23 56/3 56/15 59/20 63/9 69/13 71/8 75/15 76/19 78/24 80/4 81/7 82/25 86/18 89/3 89/4 89/21 99/11 124/1 124/1 136/7 139/17 141/13 142/3 142/24 148/11 151/21 152/9 152/10 152/20 152/21 159/17 169/23 170/12 187/17 191/25
**somebody [1]**   174/10
**somehow [5]**   18/19 46/4 147/2 177/3 180/11
**someone [18]**   18/22 19/6 38/11 44/1 84/19 98/2 107/24 121/1 145/12 145/14 157/3 162/12 162/14 163/25 166/24 172/6 172/7 194/21
**something [34]**   4/10 10/5 18/5 20/14 20/25 36/14 56/24 69/7 79/10 90/4 90/5 90/14 91/2 100/25 103/12 114/19 114/22 114/22 130/17 130/20 133/17 133/22 138/6 138/9 138/10 140/1 141/22 142/16 145/13 146/22 164/10 174/23 175/13 183/14
**Sometimes [2]**   7/3 100/4
**son [2]**   139/7 139/24
**soon [6]**   132/17 132/25 185/10 186/15 192/15 193/7
**sophisticated [1]**   158/19
**sorry [5]**   11/10 93/12 95/19 154/1 174/15
**sort [6]**   3/21 12/7 95/5 97/5 138/15 163/25
**sought [1]**   144/18
**sound [1]**   154/20
**sounds [5]**   11/2 65/1 75/7 153/11 158/4
**source [3]**   109/20 149/14 186/18
**sources [1]**   141/19
**SOUTHERN [1]**   1/2
**Soviet [1]**   180/9
**space [1]**   189/21
**speak [3]**   77/18 187/15 191/1
**speakers [1]**   35/23
**special [4]**   6/15 6/22 43/24 60/25
**specific [23]**   15/11 34/18 36/25 37/6 41/20 48/19 51/2 57/2 65/15 69/2 69/12 75/18 78/9 89/22 90/3 90/4 96/21 110/11 125/7 149/12 157/15 166/11 169/13
**specifically [13]**   4/14 64/13 72/8 73/21 74/2 85/3 143/1 143/15 145/24 149/18 163/19 186/1 192/20
**specificity [1]**   148/23
**specifics [2]**   138/17 169/22
**specified [10]**   6/3 65/18 85/5 85/21 86/3 86/22 87/4 87/11 128/6 128/7
**speculate [3]**   32/4 33/20 33/22
**speculation [1]**   38/23
**spell [1]**   194/3
**spend [2]**   123/20 171/22
**spending [2]**   125/24 151/22
**spent [1]**   147/14
**split [1]**   164/14
**spoken [3]**   7/5 66/25 77/8
**spokesperson [1]**   187/6
**spreadsheet [1]**   118/8

**spreadsheets [6]**   111/17 113/1 113/4 160/6 160/23 178/20
**Spring [5]**   107/7 126/14 128/14 145/18 158/11
**Spring's [1]**   145/20
**stack [2]**   18/18 18/23
**stake [1]**   78/12
**stand [20]**   19/2 20/22 28/5 40/17 48/10 130/8 131/1 131/5 131/6 131/19 132/3 132/4 132/6 139/23 139/25 140/5 158/18 173/2 176/16 177/18
**standing [3]**   76/2 83/2 193/16
**standpoint [1]**   173/24
**stands [8]**   40/25 50/21 156/18 172/8 172/8 173/15 176/9 188/1
**star [1]**   134/21
**start [12]**   103/7 104/5 106/24 115/11 127/16 136/20 138/8 141/14 159/12 191/4 192/19 193/7
**started [11]**   25/2 111/25 131/2 131/10 131/11 131/17 151/17 159/10 171/8 175/15 175/15
**starting [4]**   117/23 135/9 155/7 155/8
**starts [1]**   136/23
**state [20]**   20/11 26/5 26/11 44/20 55/22 57/13 57/13 57/14 59/6 60/14 60/14 69/17 142/1 147/7 156/24 165/2 165/3 166/13 166/14 193/25
**state-controlled [1]**   60/14
**State-owned [1]**   60/14
**stated [7]**   26/4 42/8 69/20 77/3 82/14 96/25 102/18
**statement [24]**   3/25 20/3 32/22 32/24 32/25 41/24 42/2 42/4 42/7 42/10 42/15 42/19 43/2 43/3 66/17 66/20 67/12 67/14 67/15 68/7 84/24 132/3 136/6 140/19
**statements [29]**   32/11 32/18 39/4 41/3 41/22 66/16 66/22 66/24 67/6 67/20 70/12 70/18 77/20 79/3 83/11 83/12 83/24 84/3 84/7 84/11 84/13 84/16 84/18 102/20 131/24 140/8 147/23 147/24 150/21
**states [56]**   1/1 1/3 1/9 1/11 1/21 5/23 5/24 5/25 26/4 27/20 28/1 50/8 51/16 55/18 55/21 55/23 55/24 56/7 56/7 57/12 57/12 57/17 57/18 64/19 71/14 71/16 71/20 71/21 73/13 73/14 73/17 73/17 74/2 74/23 75/9 85/4 85/6 85/14 85/17 85/18 85/19 85/20 85/25 86/1 86/7 86/7 86/18 86/19 88/1 88/3 104/16 129/14 170/5 180/16 196/4 196/8
**stating [4]**   26/7 190/3 190/4 193/1
**statute [17]**   64/18 66/24 70/11 73/13 85/13 86/24 87/3 87/6 87/8 87/10 87/17 87/21 88/1 88/6 93/21 110/11 168/7
**stay [1]**   195/12
**steal [3]**   135/23 137/24 157/25
**stealing [2]**   136/8 159/14
**stemming [1]**   142/20
**stenography [1]**   1/24

Case 8:18-cr-00012-JVS Document 251 Filed 07/16/21 Page 225 of 232

**S**

step [1]   138/23
steps [1]   145/3
stick [1]   192/22
still [3]   127/11 185/24 195/4
stipulated [1]   110/1
stipulation [3]   31/24 34/21 35/22
stock [1]   55/19
stockholder [3]   52/20 54/11 55/15
stole [1]   104/25
stolen [1]   158/5
stood [5]   132/8 137/5 158/15 158/16 173/15
stop [3]   118/20 158/2 158/12
stopped [1]   153/22
story [3]   170/20 171/13 176/17
straightforward [1]   41/13
strange [4]   5/13 120/3 120/8 120/11
strategic [2]   108/13 108/20
stream [4]   131/16 131/16 156/16 159/14
Street [1]   1/19
stretch [2]   130/8 173/2
stroke [1]   136/25
stronger [1]   7/17
strongest [1]   167/8
struck [1]   33/5
stuff [1]   10/18
sub [1]   6/5
sub-element [1]   6/5
subject [18]   19/13 24/2 24/4 28/25 45/25 64/18 114/7 115/6 116/5 132/16 141/16 142/9 142/11 142/12 142/15 164/13 187/22 188/7
subjected [1]   173/7
subjective [1]   69/24
subjects [1]   116/6
submission [1]   13/8
submit [7]   107/14 134/2 174/9 174/12 176/16 177/20 177/20
submits [3]   140/24 143/24 156/15
subscribed [1]   196/15
subsidiary [1]   60/5
subsidies [1]   60/25
subsidizes [1]   61/18
substantial [1]   51/5
substantially [3]   59/10 59/12 73/2
substantiated [1]   160/21
substantive [9]   4/3 4/9 52/8 52/9 92/3 92/8 92/12 92/15 92/18
substitute [2]   44/15 191/1
succeed [2]   89/5 91/5
succeeded [1]   68/17
succeeds [1]   188/14
success [2]   76/6 90/18
successful [2]   76/3 127/10
such [78]   18/16 27/6 30/1 30/4 30/22 31/12 33/11 33/17 34/22 37/23 38/1 39/8 39/25 43/9 43/25 45/20 47/11 47/15 50/4 52/20 52/21 53/2 53/3 53/5 53/6 53/8 53/9 53/12 53/15 53/17 53/20 53/22 53/25 54/1 54/12 55/7 55/16 57/15 57/20 59/3 59/8 59/9 59/9 59/10 59/10 59/11 59/12 59/15 59/16 59/25 60/7 60/25 62/22 69/22 70/23 71/16

72/11 72/16 72/19 73/19 74/9 74/12 74/13 74/15 74/16 74/16 75/8 78/15 82/8 84/3 84/10 86/19 94/3 141/11 164/24 175/7 187/8 188/14
suffered [1]   68/16
suffice [1]   175/11
sufficiency [1]   6/18
sufficient [14]   31/2 58/10 58/15 68/3 72/25 73/7 80/6 81/1 82/5 82/12 90/12 94/15 164/25 174/24
suggest [4]   21/22 43/16 142/6 165/10
suggested [4]   63/24 64/2 64/4 121/5
suggesting [1]   165/19
suggestion [1]   192/21
suggestions [3]   66/8 116/20 116/21
suggests [2]   169/12 177/1
suit [3]   130/25 134/8 150/22
Suite [1]   1/12
SULLIVAN [20]   1/17 3/23 16/4 21/15 23/25 96/5 96/11 130/6 142/4 167/12 171/10 172/25 173/9 175/7 175/9 176/20 180/6 180/23 181/11 194/20
Sullivan's [2]   20/3 22/2
Sullivan.............130 [1]   2/5
sum [4]   46/10 81/10 171/11 184/4
summaries [7]   34/25 35/1 35/4 35/6 35/11 35/15 35/17
summarize [1]   104/2
summary [1]   41/10
sun [1]   38/10
super [1]   163/15
superseding [4]   30/11 45/9 48/15 127/17
support [2]   60/24 73/7
supported [1]   21/21
supporting [1]   159/18
supports [1]   21/24
suppose [1]   38/9
supposed [3]   14/21 18/3 114/19
suppression [1]   66/9
Supreme [1]   5/17
sure [9]   99/1 100/13 120/19 146/13 148/17 151/11 151/22 182/15 192/13
surprise [1]   20/6
surprised [1]   141/23
surprising [2]   14/2 140/11
surrender [1]   189/10
surrounding [1]   70/1
suspenders [1]   6/12
suspicion [3]   39/15 111/6 111/24
suspicious [1]   182/5
sustain [2]   31/7 133/25
sustained [3]   33/1 33/19 68/21
swapped [2]   7/12 8/12
sway [1]   43/10
swayed [1]   28/18
swindle [1]   66/12
Switzerland [9]   8/6 85/11 86/19 105/14 106/20 107/8 113/17 128/15 182/25
swore [1]   151/17
sworn [5]   26/13 27/12 31/21 186/24 193/24
sympathy [3]   28/18 29/3 172/14
system [4]   171/18 171/20 186/22 192/5

**T**

table [4]   2/1 98/2 137/10 152/16
take [26]   5/4 11/9 14/25 24/11 24/12 24/23 25/17 25/17 43/7 45/10 48/10 58/1 94/16 98/2 109/9 138/4 139/7 164/15 166/17 171/21 172/5 179/5 187/17 192/7 193/21 194/7
taken [5]   15/22 18/11 160/24 188/4 196/13
taking [5]   9/8 24/13 125/19 151/11 166/4
talk [27]   115/18 116/21 117/7 118/16 118/20 119/7 119/25 122/15 125/1 125/14 126/1 132/8 142/17 151/20 154/8 158/7 159/1 161/25 165/6 173/25 175/6 178/5 178/24 180/5 181/16 186/7 192/10
talked [11]   5/1 20/6 22/19 119/8 119/12 152/1 158/23 159/7 159/23 178/15 182/24
talking [19]   108/17 115/7 115/12 115/13 117/3 117/6 117/10 122/4 138/11 138/12 163/1 163/15 178/3 183/14 183/17 183/23 184/25 184/25 192/16
tape [1]   196/14
task [1]   37/13
tax [1]   60/25
TDC [2]   1/3 196/9
TDC-18-00012 [2]   1/3 196/9
team [3]   17/5 17/11 18/8
technical [5]   3/11 3/15 4/18 10/17 95/5
technically [1]   158/6
techniques [2]   37/1 37/7
Techsnabexport [1]   60/4
telephone [4]   35/21 57/16 71/14 71/16
television [2]   29/25 64/24
tell [34]   4/19 8/25 15/6 15/20 19/2 46/9 101/9 109/5 110/19 111/11 112/9 112/11 114/15 115/10 123/22 131/12 135/18 136/7 141/15 145/7 155/14 155/15 164/22 172/23 173/14 173/17 176/3 180/18 181/5 181/10 181/10 181/19 190/17 195/11
telling [10]   46/2 115/15 115/22 120/7 121/21 135/25 140/25 153/23 154/22 180/8
tells [8]   114/9 116/13 116/16 116/17 117/7 119/7 139/19 184/16
ten [8]   18/2 51/21 52/9 64/12 91/16 91/25 106/12 124/25
TENAM [38]   60/5 60/7 60/8 60/17 60/24 61/10 61/13 61/16 61/25 62/3 62/4 62/8 62/9 62/10 62/11 107/21 108/4 108/5 108/8 108/9 108/15 108/19 108/21 108/23 108/25 142/25 143/5 143/20 143/23 163/7 169/2 169/2 169/2 169/4 170/25 180/11 180/20 184/11
TENAM's [2]   61/8 143/18
tender [1]   165/14
TENEX [159]   8/18 15/11 15/13 60/4 60/6 60/8 60/17 60/23 61/8 61/9 61/13 61/16 61/25

**T**

62/7 62/9 62/10 62/11 64/15
65/21 66/13 67/6 67/21
103/17 103/18 104/23 104/24
104/25 105/22 105/23 106/8
106/14 106/16 107/20 108/4
108/5 108/8 108/9 108/15
108/19 108/21 108/23 108/24
109/1 109/4 109/7 109/7
111/4 111/4 111/18 112/6
112/9 112/11 112/15 112/16
112/20 112/21 113/5 113/13
116/1 116/2 117/25 119/24
120/9 120/23 121/5 121/16
125/3 125/11 125/15 125/21
125/22 126/12 126/16 126/17
129/1 129/3 129/12 129/15
129/17 133/8 136/25 137/1
137/1 137/20 138/2 142/25
143/4 143/5 143/7 143/18
143/20 143/23 144/10 144/14
144/16 144/17 144/21 144/22
145/2 145/9 145/10 145/10
148/4 148/6 148/9 148/24
148/25 149/6 149/7 149/9
149/22 149/23 152/11 152/12
152/22 153/1 153/2 153/3
153/4 153/9 154/16 155/5
155/6 159/7 159/21 159/25
160/3 160/8 160/14 160/23
162/9 162/13 162/19 162/25
163/1 163/14 163/16 163/20
164/9 164/12 164/14 165/13
165/15 168/17 168/18 168/21
168/22 169/1 169/14 170/25
180/10 180/20 182/16 182/19
182/21 183/4 183/4
**TENEX's [2]** 113/18 168/24
**term [16]** 8/11 8/13 21/22
56/16 56/21 57/10 59/22 66/5
86/7 87/4 111/22 111/25
117/14 120/5 121/15 149/1
**terms [18]** 6/21 7/12 8/13
13/22 14/4 19/11 21/16 96/24
99/6 99/9 131/21 154/22
178/16 180/2 180/2 182/2
182/4 182/5
**territory [1]** 55/23
**testified [30]** 25/14 38/4
40/13 40/23 41/6 42/3 43/8
45/7 131/25 132/16 136/12
138/18 140/1 140/15 142/24
144/3 144/18 145/5 146/19
147/12 147/14 149/24 155/4
159/6 159/24 160/1 165/19
166/23 170/18 177/19
**testifies [2]** 141/4 145/4
**testify [20]** 39/6 40/16
43/10 43/11 43/18 43/23
44/14 47/1 47/5 47/19 47/25
48/2 48/8 131/10 133/11
134/13 157/10 158/3 158/22
161/21
**testifying [5]** 41/4 44/7
46/5 46/6 176/24
**testimonial [1]** 156/24
**testimony [76]** 22/11 22/23
23/11 25/21 27/7 29/12 31/22
34/8 35/8 35/16 35/25 36/17
38/2 40/6 40/8 40/11 40/12
40/15 41/2 41/3 41/18 41/19
41/21 41/24 42/12 42/16
42/17 43/5 43/12 43/15 43/20
43/25 44/5 44/9 44/10 44/14
44/18 44/21 45/1 45/4 45/5
45/14 45/15 45/17 45/20
45/22 46/3 46/10 46/14 46/24
47/11 47/12 47/18 47/20

47/22 51/7 131/21 132/20
134/14 138/13 138/15 141/14
142/3 144/15 145/3 150/17
150/18 155/9 155/17 156/6
159/17 162/5 165/20 180/11
181/14 196/7
**tests [1]** 40/18
**text [5]** 57/16 121/7 162/17
164/6 186/5
**than [31]** 10/8 17/7 18/18
24/13 26/14 28/2 34/1 35/8
35/11 37/21 44/23 47/16 49/5
51/11 76/5 77/18 97/1 100/7
100/9 100/13 101/5 101/6
101/12 124/19 128/18 140/1
145/7 148/19 158/4 187/20
187/23
**thank [32]** 4/6 7/3 18/13
19/7 20/1 23/20 24/6 25/4
95/1 95/4 96/10 97/13 97/22
98/5 102/13 102/15 102/17
103/3 130/5 172/23 172/25
181/24 185/6 185/7 185/13
191/24 192/8 194/5 194/6
194/9 195/21 195/23
**thanked [1]** 142/20
**thanks [2]** 114/1 116/19
**that [1138]**
**that's [112]** 6/9 6/11 7/1
7/25 8/19 8/20 8/25 9/9 9/20
10/22 11/21 11/22 12/8 12/15
13/24 15/12 15/15 15/21 17/7
19/5 19/17 21/10 22/1 24/22
25/1 96/4 98/12 101/6 102/10
102/11 106/5 108/12 108/20
109/15 109/16 112/20 113/23
118/3 118/11 122/3 122/17
122/20 124/3 124/18 128/17
129/5 131/15 132/22 135/23
136/5 136/9 137/2 140/21
142/15 146/2 146/2 146/24
148/5 148/7 148/20 150/10
150/11 150/17 150/22 150/23
152/11 152/22 155/10 155/10
155/11 156/7 156/22 156/22
156/23 158/24 159/10 159/11
159/13 161/19 162/2 162/11
164/16 166/14 166/20 173/10
173/17 173/23 174/24 175/2
175/11 175/19 176/5 176/10
176/20 176/23 177/4 177/9
178/14 180/12 181/17 182/1
183/16 183/21 184/12 184/21
184/23 185/1 194/19 194/22
195/7 195/18 195/18
**theater [1]** 161/18
**theft [13]** 21/24 135/3 136/1
136/15 153/16 153/18 153/19
154/8 162/20 162/22 164/4
167/1 171/13
**their [36]** 20/10 21/7 25/8
31/18 32/11 32/11 32/18
32/19 41/23 61/11 79/18
100/11 104/12 104/23 109/10
116/2 120/17 121/2 121/9
121/11 123/1 123/1 127/10
139/7 143/6 151/19 152/14
154/8 154/9 168/19 170/21
171/21 171/22 172/7 181/3
183/23
**them [73]** 3/16 5/8 5/9 6/23
7/17 10/10 10/21 13/13 13/17
14/14 14/15 14/15 14/16
14/17 15/19 15/25 18/7 18/24
18/25 19/2 26/1 26/2 27/9
30/2 33/14 37/23 45/24 70/3
79/4 80/3 86/14 90/23 99/22
100/12 105/16 109/9 109/10
109/11 109/15 112/15 112/17

112/22 113/2 113/3 114/13
115/20 118/24 118/25 119/8
120/9 121/2 121/17 121/17
124/20 127/22 145/15 148/14
151/5 154/22 155/24 158/17
162/7 162/10 173/20 174/7
178/1 178/3 182/11 183/15
184/16 195/9 195/15 195/16
**themselves [7]** 35/9 36/8
36/12 45/10 135/14 135/14
137/23
**then [72]** 6/2 7/7 8/3 8/9
11/2 13/7 14/15 14/23 15/14
17/16 17/20 18/1 18/19 19/14
19/19 24/10 24/13 24/14
24/17 24/17 24/23 24/25
27/18 33/1 36/15 38/11 43/14
55/9 62/8 66/18 70/22 71/2
72/13 81/18 84/7 87/17 88/24
91/5 91/9 91/22 92/19 93/6
93/14 94/21 100/22 102/15
102/21 110/15 111/25 114/10
115/20 116/8 116/19 116/23
118/9 119/5 124/9 131/13
142/15 146/16 153/24 155/7
155/22 160/24 174/10 174/17
175/1 179/1 186/10 190/5
191/22 194/20
**THEODORE [1]** 1/8
**theory [4]** 21/20 22/3 44/1
165/21
**there [104]** 4/13 5/12 6/3
8/16 10/16 10/17 10/20 10/24
11/2 14/19 15/11 15/16 15/19
17/16 17/16 17/18 17/22
18/17 19/2 19/14 20/23 21/13
22/4 22/21 23/5 23/11 23/23
24/11 24/20 27/6 32/7 35/21
37/5 38/18 39/19 46/24 47/1
65/8 65/20 66/12 67/3 77/7
95/5 95/6 98/8 99/21 100/4
101/20 105/24 107/9 107/15
114/2 117/13 121/18 125/3
127/11 128/7 131/1 134/24
136/19 145/19 145/22 145/23
149/8 152/25 153/4 153/14
156/1 156/1 156/21 157/17
158/19 163/12 165/25 166/20
168/9 169/17 170/7 173/15
173/15 175/17 175/18 176/9
176/12 176/13 176/22 177/4
178/22 178/23 179/8 179/25
180/18 182/9 182/13 182/18
182/21 183/3 183/8 184/1
184/15 185/10 190/10 190/13
191/11
**there'd [1]** 182/6
**there's [32]** 3/9 7/24 16/12
24/11 24/21 29/4 91/13 100/1
107/15 107/18 109/2 121/10
121/20 148/9 154/24 157/14
157/16 157/21 167/23 173/19
173/19 174/8 174/12 176/6
178/11 182/12 183/21 184/17
193/3 194/11 194/14 195/6
**therefore [17]** 12/9 30/20
35/10 36/10 43/12 47/20 50/8
56/4 65/2 77/18 78/22 83/6
87/11 90/19 91/6 93/1 169/25
**thereof [11]** 52/20 53/7
53/24 54/11 55/6 55/15 59/24
62/21 73/18 74/18 80/11
**these [80]** 3/6 6/13 9/5
12/12 15/15 18/23 20/21
25/16 26/1 27/1 32/10 34/25
35/3 40/11 48/13 51/17 52/2
52/7 61/11 61/23 62/25 83/12
91/1 91/9 92/17 92/18 93/5
93/13 104/23 105/8 105/9

# T

**these [41]**   105/25 106/5
106/9 106/14 109/3 109/6
109/7 109/15 109/19 112/3
112/10 112/14 112/22 113/4
113/6 113/8 113/13 113/16
115/2 118/14 119/16 120/15
120/24 121/4 121/16 122/13
122/22 122/22 123/4 124/14
124/19 125/19 127/19 129/9
129/20 137/15 147/2 159/19
160/10 167/24 170/9 178/13
178/24 179/11 182/16 182/20
182/23 184/1 194/17

**they [174]**   3/25 4/24 5/9
6/15 7/2 10/2 10/21 10/21
10/21 11/12 11/25 13/16
13/17 13/20 14/15 14/24
15/13 16/3 16/8 18/9 18/24
19/19 21/11 23/1 23/6 24/18
27/17 30/1 35/2 35/7 35/9
35/13 35/16 35/18 36/7 60/19
61/15 64/13 67/2 67/6 67/7
80/22 84/20 84/21 99/25
102/20 102/21 102/21 104/7
104/19 104/24 104/25 105/10
105/10 105/13 105/13 109/6
110/17 110/18 110/21 110/23
110/24 111/4 111/6 111/22
111/23 111/25 112/2 113/7
113/14 113/14 113/17 117/10
117/12 118/13 118/16 118/22
119/8 119/9 119/13 119/21
119/24 120/8 120/11 120/18
120/19 120/21 120/22 120/22
120/24 120/25 121/5 121/9
121/16 122/2 122/3 122/8
123/14 123/14 127/16 130/21
130/22 130/25 132/5 132/6
132/18 135/12 135/13 135/14
136/17 138/21 138/22 146/18
149/18 149/19 151/4 154/9
154/10 155/21 155/22 155/24
156/1 156/1 156/2 156/3
157/4 157/5 157/5 160/24
162/3 162/9 162/9 162/17
164/15 165/3 168/23 168/25
169/4 170/10 170/20 170/22
170/22 171/1 175/12 175/13
175/13 177/4 177/11 178/7
178/16 178/24 179/10 179/13
179/23 180/20 181/17 181/18
181/18 181/19 181/20 182/17
183/13 183/14 183/14 183/19
183/23 183/24 183/25 191/19
192/1 195/12 195/17 195/17
195/18

**they'd [1]**   121/4
**they're [11]**   12/14 13/12
120/18 121/12 162/18 173/21
175/20 180/2 183/14 183/22
194/13
**they've [1]**   15/7
**thing [24]**   53/12 58/1 58/4
59/3 74/10 122/24 123/8
138/15 145/12 149/16 158/20
158/21 167/18 170/11 172/8
175/8 175/12 175/13 182/8
183/6 184/8 184/22 191/23
192/10
**things [13]**   3/7 3/20 15/10
17/8 18/10 20/21 22/5 37/13
99/11 137/8 178/7 181/15
190/22
**think [97]**   3/16 3/21 4/1 4/2
4/9 4/11 4/18 5/11 5/20 6/6
6/9 6/11 6/13 6/24 6/25 7/5
7/10 7/11 7/14 7/20 8/19
8/19 9/3 10/8 10/14 12/6

12/8 13/3 13/21 15/15 15/18
15/18 16/7 16/13 16/25 17/1
17/16 18/8 18/21 19/4 19/12
20/8 21/5 21/15 22/1 22/4
22/17 23/4 23/16 23/17 23/23
36/14 94/15 95/6 95/11 95/15
95/16 96/4 96/12 96/24 97/7
97/8 99/1 99/19 100/5 100/17
100/18 100/20 101/1 101/24
102/23 115/3 130/17 138/10
140/10 141/9 141/20 142/19
145/3 151/7 151/14 151/23
154/23 158/2 158/12 163/14
177/15 177/17 177/23 177/25
178/9 182/11 184/5 184/8
184/17 194/18 194/21
**thinking [2]**   29/4 135/24
**thinks [1]**   136/24
**third [15]**   54/15 57/6 59/2
59/18 62/19 65/16 71/9 76/15
81/22 92/8 104/3 125/8 126/1
139/5 140/4
**this [280]**
**THOMAS [1]**   1/18
**those [96]**   3/20 6/6 6/16
7/12 14/11 15/5 23/1 23/8
27/15 27/17 32/1 32/13 33/13
35/11 36/5 36/21 43/23 52/2
77/20 81/9 81/19 89/10 89/14
90/22 91/19 97/18 97/20
104/4 105/3 105/19 105/22
106/23 107/5 107/10 110/4
111/2 111/17 112/12 112/25
113/20 113/22 113/23 114/20
115/5 118/19 118/22 119/6
119/9 124/5 124/6 124/7
124/8 124/12 124/17 124/23
125/20 125/21 125/22 125/24
126/4 127/14 129/12 129/17
129/19 135/20 137/8 137/12
137/14 139/19 140/24 141/21
141/23 141/25 145/14 149/15
155/20 155/23 158/20 158/22
160/23 162/7 168/23 171/2
172/13 176/3 178/6 178/24
180/1 180/2 182/2 182/4
182/5 191/22 194/14 194/18
195/1
**though [16]**   6/10 19/16 41/17
68/16 69/23 72/12 75/21
80/12 94/22 102/23 124/18
128/18 137/22 138/5 171/11
173/1
**thought [7]**   8/10 8/24 111/23
120/3 149/20 168/6 179/13
**threat [1]**   76/4
**three [17]**   7/8 17/20 99/23
104/6 104/17 105/18 119/1
130/15 137/7 137/9 139/3
150/12 154/2 173/6 173/6
177/18 194/18
**through [48]**   3/11 3/16 24/8
28/20 51/19 52/8 52/15 54/5
58/6 67/25 67/25 68/1 73/4
85/18 85/19 86/1 86/6 86/17
87/24 88/13 89/7 91/15 91/24
94/14 105/3 106/8 107/3
110/4 111/13 119/16 124/2
124/11 124/21 124/25 125/16
127/4 129/20 136/3 141/13
148/11 152/4 152/6 155/23
167/19 169/21 178/2 190/3
194/18
**throughout [4]**   25/5 30/22
48/5 192/2
**throwing [1]**   18/4
**thus [7]**   47/3 58/8 58/25
66/10 80/8 83/18 91/21
**tide [1]**   142/21

**tie [2]**   130/25 134/8
**time [72]**   8/16 16/17 17/25
18/7 26/23 31/12 33/10
33/10 35/2 37/9 41/4 44/23
51/3 51/5 60/19 61/11 61/16
67/7 69/21 82/11 82/14 92/12
101/2 101/8 101/10 101/12
101/13 102/10 102/23 103/16
103/18 103/19 103/22 111/18
120/25 121/1 121/2 121/17
122/21 132/11 136/21 136/22
140/9 140/14 147/14 148/18
148/19 148/21 149/5 149/24
150/8 151/6 151/13 151/22
152/25 164/16 165/18 165/18
171/10 171/21 171/22 173/3
177/19 179/24 184/5 185/15
185/19 187/17 190/17 192/20
193/1 195/20
**timed [1]**   99/10
**times [9]**   32/21 39/19 51/1
80/3 139/21 139/21 140/23
150/13 150/20
**tinkering [1]**   4/10
**tiptoeing [1]**   117/9
**Title [9]**   51/16 64/19 73/12
73/14 74/22 75/8 85/6 85/14
88/1
**TLI [93]**   11/20 56/7 56/8
67/22 72/16 74/20 74/22
104/13 104/14 104/16 105/21
105/23 106/15 106/16 106/19
107/4 109/4 109/15 109/20
109/21 110/25 111/24 112/21
113/8 113/12 116/2 118/18
118/19 119/10 119/12 120/16
121/10 123/7 126/12 126/18
129/14 133/8 133/19 134/17
135/10 135/23 137/24 138/1
138/1 138/19 138/19 138/20
139/16 141/2 141/17 141/18
144/4 144/4 144/10 146/8
148/9 148/24 149/17 152/15
153/2 153/3 153/3 153/5
153/6 153/12 153/19 154/17
158/12 158/13 159/2 159/8
160/2 160/4 161/5 162/8
162/15 162/16 162/18 163/6
163/9 163/18 164/14 165/12
165/14 166/4 166/12 168/18
170/23 171/6 178/22 179/16
181/19 182/20
**TLI's [12]**   8/5 85/10 106/10
107/6 116/1 128/14 133/6
149/25 163/20 167/3 168/22
171/4
**today [13]**   23/22 24/8 38/10
99/2 104/1 114/8 116/20
148/15 149/25 151/21 185/14
192/17 192/17
**together [16]**   13/7 75/15
77/1 77/22 80/22 97/20 105/2
110/17 110/18 110/18 135/19
136/10 153/8 161/12 192/12
196/13
**token [3]**   28/3 113/23 124/8
**told [42]**   11/16 17/22 37/3
103/7 105/16 105/18 105/19
107/17 108/5 108/9 109/16
110/20 110/23 111/3 111/6
111/7 111/8 113/21 120/6
122/6 122/18 122/25 131/2
132/3 133/7 133/22 137/6
137/14 137/16 138/1 139/8
149/20 151/2 157/3 157/4
161/13 173/16 177/3 177/21
181/1 181/15 195/16
**too [5]**   150/22 151/4 158/6
159/16 188/5

**T**

took [13] 132/2 132/4 132/5 139/23 139/24 140/5 141/4 158/18 166/11 184/20
top [1] 117/21
topic [1] 23/6
total [2] 50/11 100/2
totally [2] 102/6 179/18
touch [1] 195/12
touched [1] 3/22
touching [2] 187/22 188/7
towards [1] 50/2
town [3] 138/22 138/22 149/19
traced [2] 158/7 158/18
track [1] 9/8
tracked [1] 160/13
trade [1] 57/10
traffic [1] 17/23
training [1] 43/25
transaction [3] 89/17 113/22 124/7
transcribed [1] 22/12
transcript [7] 1/8 1/24 22/15 36/15 139/17 139/19 196/12
transcripts [2] 36/6 36/9
transfer [16] 57/16 58/2 71/19 71/19 85/9 85/10 85/17 86/9 87/19 89/24 106/19 125/12 126/2 129/4 146/5 160/18
transferred [2] 87/13 161/16
transferring [1] 85/9
transfers [2] 72/16 85/16
translation [1] 157/17
transmissions [3] 65/3 65/3 73/6
transmit [2] 75/5 85/16
transmits [2] 64/23 85/15
transmitted [2] 64/24 75/5
transparency [2] 144/18 145/8
transport [4] 85/16 142/24 152/10 152/21
transportation [5] 7/11 57/11 86/9 104/12 142/19
transported [6] 85/25 86/6 86/16 86/17 128/4 170/5
transporting [3] 85/4 86/14 104/14
transports [1] 85/15
treasury [1] 61/6
treat [2] 19/24 130/7
treated [1] 160/10
treatment [2] 46/5 60/25
treats [2] 60/14 61/14
trial [43] 1/8 2/1 18/8 25/19 25/21 25/24 26/18 26/19 28/3 28/8 31/1 31/11 32/9 36/1 37/11 41/23 41/25 42/5 42/12 42/15 42/17 43/14 46/18 46/23 47/5 48/5 50/3 50/5 50/10 83/14 85/1 103/7 103/9 107/5 137/6 137/10 140/5 172/1 186/18 190/16 192/3 192/4 196/7
trick [1] 66/11
tried [3] 14/9 100/11 115/19
trouble [1] 120/9
true [24] 29/5 32/23 32/24 33/2 34/5 34/22 34/23 122/9 124/3 131/9 131/11 144/24 146/6 152/3 152/9 152/11 152/20 152/22 155/4 156/12 156/19 164/4 173/17 180/12
trust [4] 55/19 131/22 167/5 168/11

trusted [2] 157/4 165/4
truth [23] 21/12 23/7 32/24 40/19 46/2 46/10 66/9 66/10 70/16 125/22 131/12 135/25 136/1 145/7 151/3 151/3 151/4 154/22 155/14 155/15 172/23 181/12 181/13
truthful [4] 41/13 156/13 161/20 161/20
truthfully [1] 46/6
truthfulness [3] 40/19 154/25 155/1
truths [2] 66/22 67/19
try [14] 13/19 14/12 16/17 41/10 44/24 93/12 97/3 97/9 97/16 97/18 98/17 155/16 186/16 192/22
trying [6] 14/5 41/12 112/11 135/18 145/8 151/6
turn [7] 47/10 48/14 52/10 70/18 73/9 172/3 172/11
turned [1] 16/2
twice [1] 168/12
Twitter [1] 186/6
two [54] 6/16 6/19 7/8 10/22 13/18 15/18 15/22 17/22 24/20 37/25 51/19 52/8 52/15 54/5 57/12 71/13 73/12 73/15 75/14 76/11 76/22 77/9 87/24 88/13 89/7 91/15 91/24 99/21 99/21 100/24 101/17 102/2 106/8 107/2 110/3 114/13 121/11 124/4 125/14 128/5 128/7 137/7 137/11 137/14 145/17 150/12 173/3 176/11 181/22 182/3 183/15 183/17 190/17 190/22
two-minute [2] 100/24 102/2
type [4] 6/4 22/3 137/20 145/12
types [2] 83/18 157/14
typos [1] 97/17

**U**

U.K [1] 144/11
U.S [10] 1/13 109/25 109/25 110/1 128/4 128/5 128/11 128/12 150/7 152/8
ultimate [1] 69/23
ultimately [4] 70/23 149/25 156/14 182/21
umbrella [2] 38/12 38/16
unanimity [4] 5/4 5/7 5/15 5/18
unanimous [5] 188/3 188/17 188/23 189/17 190/2
unanimously [1] 31/4
unaware [2] 168/13 168/13
unbelievable [1] 138/13
uncertain [1] 140/19
uncontradicted [1] 41/18
undefined [1] 140/20
under [69] 13/7 13/20 25/22 40/13 41/24 42/4 48/1 54/8 55/22 57/4 57/9 57/21 58/7 60/21 61/9 62/11 66/24 70/11 81/5 84/1 88/6 93/20 94/5 96/13 98/21 131/4 131/19 131/24 131/25 132/3 134/6 135/12 138/14 139/25 140/2 140/6 140/8 140/23 141/17 142/7 147/5 147/6 147/19 147/19 147/23 148/8 150/17 150/19 150/20 150/21 150/24 150/25 151/17 155/9 156/7 156/9 156/10 156/11 156/19 157/3 157/4 162/4 166/5 166/16 168/12 169/14 169/23 169/24 170/17

under the [1] 66/24
underlining [2] 23/7 75/21
underlying [5] 5/15 8/24 35/1 75/25 169/13
understand [22] 9/13 11/5 12/25 13/7 16/18 96/13 96/19 96/23 99/10 99/11 99/14 102/8 133/2 140/11 146/13 172/15 175/3 178/15 183/24 183/25 185/9 194/10
understandable [1] 161/20
understanding [20] 15/21 22/17 35/19 44/3 52/4 52/6 77/8 80/11 81/12 92/9 98/12 118/24 118/25 135/8 147/17 156/25 166/13 169/14 170/9 194/22
understood [5] 81/16 132/18 157/22 161/9 164/9
undertaken [3] 153/12 170/10 171/14
undertakes [1] 56/2
undertakings [1] 149/13
undoubtedly [1] 130/22
unequivocally [1] 182/4
unfair [1] 29/25
unfavorable [2] 46/22 50/2
unfolds [1] 151/23
unimportant [1] 176/11
unincorporated [1] 55/20
Union [1] 180/9
unique [1] 180/17
UNITED [52] 1/1 1/3 1/9 1/11 1/21 5/23 5/24 5/25 27/20 28/1 50/8 51/16 55/18 55/21 55/23 55/24 56/6 56/7 57/12 57/17 64/19 71/16 71/21 73/12 73/14 73/16 73/17 74/2 74/23 75/8 85/4 85/6 85/14 85/17 85/18 85/19 85/20 85/25 86/1 86/6 86/7 86/18 86/19 88/1 88/3 104/16 105/11 129/14 170/5 180/16 196/4 196/8
unknown [2] 74/1 158/1
unlawful [43] 6/3 52/18 56/14 56/15 56/23 57/9 57/21 63/12 69/6 75/15 76/12 76/23 77/10 77/23 78/8 78/21 78/25 79/9 79/23 80/11 81/1 81/9 81/13 81/18 81/19 81/20 82/1 82/21 83/20 84/17 85/6 85/21 86/3 86/23 87/4 87/11 87/13 89/13 110/10 110/12 112/20 128/6 128/8
unlawfully [1] 85/4
unless [7] 31/3 59/15 70/13 91/10 93/7 93/15 120/11
unnecessary [1] 35/2
unorthodox [1] 19/11
unreliable [1] 141/12
unspoken [1] 77/8
unsure [1] 164/11
until [9] 4/21 19/23 27/18 30/22 31/12 175/25 188/2 193/11 194/24
untrue [2] 66/18 66/18
untruthful [2] 131/24 159/13
untruths [2] 157/3 157/4
unwind [1] 130/15
up [58] 6/8 13/25 14/9 18/20 20/22 22/7 24/23 25/12 32/13 36/21 40/25 41/11 46/3 94/17 96/20 99/12 99/23 99/25 100/10 101/3 101/7 101/10 101/10 101/13 102/9 105/17 111/17 120/16 123/8 130/8 130/9 132/8 135/22 136/17 141/8 145/3 151/18 155/18

**U**

**up...** [20]   171/10 171/11 172/1 173/1
173/2 175/11 178/1 179/3
179/11 179/24 183/7 184/1
184/4 184/5 185/12 190/9
192/23 194/21

**upon** [29]   11/3 26/13 27/3
28/7 29/6 30/16 31/15 33/10
33/11 34/6 35/8 35/13 39/24
42/25 49/18 50/19 50/21
66/25 67/12 69/25 93/25 94/3
94/6 94/21 135/5 146/4 157/5
165/5 196/7

**uranium** [7]   108/11 108/12
108/20 112/22 152/7 152/14
181/2

**us** [7]   14/16 16/16 18/19
24/23 94/16 149/5 170/19

**USA** [1]   163/7

**USC** [4]   51/18 51/20 51/22
52/1

**use** [59]   3/8 4/12 7/20 7/21
7/25 9/10 13/5 17/11 19/9
21/2 21/18 23/13 37/6 39/14
40/3 40/18 40/19 41/14 45/14
52/21 53/6 53/23 54/15 55/5
57/7 57/20 62/19 65/2 65/17
71/11 71/22 72/10 72/11
72/15 72/22 73/4 74/3 74/16
102/9 109/3 109/6 124/3
125/8 138/25 139/1 139/2
140/16 147/6 154/19 163/16
163/24 164/7 166/9 168/5
168/8 178/16 179/18 180/24
183/2

**used** [40]   5/13 8/11 13/3
20/11 21/22 46/21 57/17
64/17 65/17 67/2 72/7 72/13
72/16 72/18 72/24 73/1 87/7
87/13 99/23 105/9 110/24
111/4 111/22 112/1 113/6
113/7 113/10 114/3 114/18
114/21 114/24 124/8 141/6
142/5 154/7 157/6 178/16
180/1 180/8 183/20

**uses** [7]   8/13 120/5 121/15
162/19 163/9 164/8 179/21

**using** [10]   19/25 21/16 38/19
38/22 73/6 111/25 113/23
144/1 162/12 179/11

**usual** [2]   24/13 195/14

**usually** [1]   187/15

**utilize** [1]   36/25

**V**

**Vadim** [40]   103/16 103/20
104/11 111/5 111/8 113/21
114/3 115/8 115/9 117/22
119/25 120/4 120/19 120/20
120/21 122/22 122/25 135/17
135/22 136/24 141/1 141/2
143/22 144/8 149/13 149/16
149/21 150/2 159/12 163/5
171/8 176/2 176/14 180/4
181/7 182/7 182/15 183/1
183/5 184/11

**vague** [1]   140/18

**validity** [1]   36/21

**value** [11]   37/21 53/1 53/13
54/20 58/1 58/1 58/5 59/3
74/8 74/10 172/4

**values** [2]   163/20 172/7

**VANESSA** [1]   1/14

**variety** [2]   87/5 87/5

**various** [1]   66/6

**venture** [5]   76/7 78/12 90/18
91/4 91/5

**ventures** [1]   161/10

**verdict** [48]   4/25 6/15 6/20
6/22 7/8 8/4 9/4 9/5 26/13
26/17 28/7 28/9 29/5 29/5
29/21 49/13 49/18 50/10
50/15 50/17 50/18 50/22 94/7
130/2 172/19 185/5 185/5
185/20 187/5 188/3 188/15
188/16 188/23 189/13 189/16
189/19 189/20 189/24 190/1
190/2 190/4 190/4 190/5
190/7 191/20 191/22 195/3
195/21

**verifiable** [1]   15/12

**verification** [7]   12/2 12/3
15/3 16/10 18/16 19/14 19/14

**verifications** [1]   18/19

**verifier** [1]   124/16

**verify** [4]   146/5 146/17
167/20 167/20

**verifying** [2]   18/10 170/8

**version** [17]   3/10 7/15 7/25
8/10 9/5 9/7 9/10 10/24
12/17 16/11 16/12 22/20
25/16 95/21 96/9 97/18
146/15

**versus** [1]   196/8

**very** [26]   16/23 17/7 18/5
18/13 20/1 22/11 22/11 77/14
95/1 95/20 100/3 100/5 101/3
122/21 130/19 140/17 155/3
156/7 158/19 158/19 158/24
163/4 185/7 188/19 192/15
195/21

**via** [1]   85/10

**vice** [1]   110/14

**victim** [3]   68/16 169/5 169/5

**view** [5]   26/13 26/20 160/13
188/25 189/9

**viewed** [2]   45/21 142/25

**views** [4]   29/8 188/18 188/22
189/6

**violate** [11]   26/12 51/14
52/11 74/2 75/11 75/16 75/20
95/14 106/3 106/25 177/7

**violated** [5]   90/21 107/1
124/23 127/4 172/9

**violates** [2]   54/17 63/6

**violating** [6]   51/20 52/4
54/6 57/3 90/23 110/11

**violation** [27]   30/3 51/16
51/20 51/22 51/25 53/4 53/19
55/4 62/18 73/12 74/14 74/22
75/8 75/18 81/15 85/6 86/23
87/2 87/8 87/9 87/16 87/21
89/18 90/1 128/8 170/7
175/25

**violations** [15]   52/9 52/10
52/16 85/12 87/23 89/6 89/8
89/12 89/14 91/15 91/23
106/9 106/13 106/24 177/14

**violence** [1]   189/1

**Virgin** [2]   105/11 113/15

**virginia** [1]   71/15

**voice** [3]   113/20 124/5
144/20

**voiced** [1]   144/9

**voided** [2]   11/20 12/19

**voluntarily** [6]   56/12 56/22
69/4 78/1 79/6 90/3

**voluntary** [1]   81/20

**vote** [1]   189/14

**vouch** [1]   17/24

**W**

**wait** [1]   194/24

**waiting** [2]   130/20 192/7

**walk** [1]   111/12

**walked** [6]   38/11 124/2
125/16 127/4 141/8 147/22

**walking** [1]   193/9

**walks** [1]   142/14

**want** [61]   4/19 4/25 17/9
17/11 18/6 20/22 25/18 46/12
49/10 96/1 96/23 97/23 98/3
100/23 100/24 101/14 106/1
111/6 112/13 115/22 118/19
122/15 123/20 130/8 130/17
134/10 136/9 137/19 138/9
138/11 141/9 141/13 141/20
142/3 151/9 154/9 154/10
154/21 156/5 156/9 159/8
159/15 160/7 160/22 161/7
162/6 164/5 164/18 171/24
173/17 173/25 175/8 177/4
183/11 183/12 183/19 183/19
184/8 191/23 192/10 195/17

**wanted** [23]   3/7 3/12 5/3
10/15 13/10 21/3 97/12 101/8
110/23 112/2 120/22 120/23
120/24 125/23 130/23 135/24
141/4 145/9 151/3 164/11
166/19 167/3 194/12

**wants** [4]   18/9 121/15 141/24
178/19

**warheads** [1]   142/21

**warn** [1]   24/11

**warning** [5]   100/25 101/8
101/9 102/3 167/13

**warnings** [1]   185/17

**warrant** [3]   132/15 141/18
141/24

**warranted** [1]   37/23

**warrants** [2]   36/19 36/21

**was** [333]

**Washington** [2]   1/15 1/20

**wasn't** [20]   3/24 14/22 14/22
16/21 120/1 132/15 132/15
133/1 136/19 142/7 142/7
145/11 148/16 155/18 158/21
164/2 164/3 164/11 183/3
183/4

**watch** [1]   101/1

**watched** [2]   3/5 40/16

**way** [38]   5/5 5/14 7/6 9/1
16/25 17/9 18/17 18/21 19/12
43/8 43/11 46/3 46/22 48/11
48/23 50/9 84/25 89/3 90/17
94/8 97/9 98/21 100/12
135/21 135/23 136/17 138/8
140/20 157/23 160/11 171/23
177/21 179/15 179/16 179/17
180/8 186/11 188/6

**ways** [1]   180/22

**we** [164]   3/4 3/8 3/9 3/17
4/4 4/23 5/1 5/3 5/20 7/5
8/20 9/4 9/6 9/14 9/20 9/24
10/5 10/6 10/9 10/10 10/12
10/15 10/15 10/19 10/20
10/22 10/22 10/25 11/6 11/17
11/19 11/20 12/6 12/14 13/1
13/9 13/23 14/2 14/13 14/15
14/16 14/20 15/8 16/19 16/22
16/22 16/25 18/16 19/10
20/20 21/3 22/5 22/11 22/18
22/20 23/4 23/15 23/22 23/23
23/24 24/6 51/8 94/16 94/16
96/13 97/18 97/24 98/3 98/7
98/9 98/21 98/24 99/20 99/20
99/22 100/22 100/23 101/22
102/14 102/18 102/19 103/11
108/3 110/10 114/2 115/10
115/18 115/21 116/9 116/10
116/13 116/13 116/14 116/15
117/2 119/25 121/13 121/22
121/24 122/13 122/18 122/20
123/16 124/22 124/23 125/2
125/5 125/8 126/6 126/9
126/18 127/25 128/10 128/13

Case 8:18-cr-00008-2-TDC    Document 251    Filed 07/16/21    Page 230 of 232

we... [50]   128/22-23
128/25 129/5 130/2 133/4
134/16 135/18 135/19 136/10
137/19 138/8 142/8 142/9
144/22 145/17 145/19 147/14
148/25 149/12 149/15 150/18
152/1 152/17 152/24 155/12
158/14 162/24 162/25 163/18
173/9 173/10 179/9 184/16
185/2 185/9 190/9 190/25
191/9 191/9 192/12 193/2
193/18 193/19 194/16 194/17
195/4 195/5 195/9 195/11
we'll [19]   7/25 9/4 9/10
13/7 15/17 16/20 18/12 19/14
19/19 24/8 24/10 24/12 95/1
96/8 97/20 102/14 130/6
135/19 195/20
we're [18]   9/13 10/11 13/6
16/23 19/15 23/16 23/17
97/16 97/19 100/10 101/24
102/23 108/17 138/11 138/12
154/24 173/1 185/8
we've [14]   6/17 7/12 9/3 9/8
96/12 100/18 107/12 124/21
125/16 126/14 127/1 185/15
190/14 192/22
weapons [3]   108/18 142/21
181/2
website [1]   186/7
week [1]   119/10
weeks [10]   13/18 104/6
104/18 130/15 135/15 137/9
172/1 172/1 173/6 173/6
weigh [5]   27/5 47/21 62/3
94/1 188/12
weighing [1]   44/5
weight [8]   33/16 37/23 43/3
44/10 44/23 45/6 46/12 47/23
welcome [2]   23/21 193/15
welfare [1]   76/5
well [32]   7/8 12/6 12/15
13/2 13/5 15/10 18/4 18/21
21/5 44/7 67/25 95/21 98/1
98/17 99/18 110/12 114/2
119/11 135/13 146/14 155/12
159/16 164/6 176/2 176/20
178/4 181/5 183/13 188/5
190/9 195/16 195/20
well-intentioned [1]   135/13
Wendy [3]   166/18 181/16
181/20
Wendy's [1]   145/10
went [10]   3/10 3/16 5/6
132/1 156/17 159/11 173/4
178/2 183/3 194/17
were [125]   3/24 3/25 10/16
10/16 10/17 10/20 11/2 11/4
11/16 14/15 14/18 15/6 15/13
15/22 17/10 21/11 21/13 22/5
22/6 22/7 23/5 23/5 23/6
27/12 27/13 27/16 27/18
31/25 35/6 36/6 36/10 38/11
50/3 61/2 67/6 67/7 67/24
68/5 75/4 78/4 81/17 83/13
83/13 84/10 84/11 84/16
84/18 84/20 86/17 87/7 87/13
90/22 92/6 105/10 105/13
105/19 107/6 109/6 110/21
113/14 118/13 118/16 119/3
120/18 122/4 122/8 127/9
130/20 132/17 134/24 134/25
135/1 135/11 136/14 137/12
137/15 138/19 138/21 138/22
139/11 140/12 142/9 148/1
148/17 148/25 149/8 149/18
150/6 151/4 151/17 152/10
152/21 156/2 156/3 158/16

160/9 160/12 160/15 160/24
161/11 162/8 162/9 162/9
162/10 166/4 166/8
167/24 168/4 169/4 170/10
171/15 176/12 177/20 177/24
178/16 179/10 179/23 180/20
181/15 181/17 181/18 181/19
182/17 195/17
weren't [7]   14/19 105/10
105/13 113/14 122/13 156/1
173/22
Westerman [6]   49/7 122/15
122/17 122/24 123/2 123/5
wet [2]   38/12 38/12
what [161]   4/20 6/21 7/19
8/14 8/19 8/20 9/4 9/9 9/13
10/5 10/12 11/10 11/14 12/15
14/21 15/2 16/17 17/18 19/5
20/21 21/12 22/5 22/19 22/25
24/9 24/13 25/21 26/12 26/17
26/20 26/22 26/23 32/6 32/9
32/9 32/10 32/14 33/16 33/19
36/4 36/13 36/14 36/15 36/22
38/2 39/6 39/22 41/10 43/18
46/11 46/12 51/10 52/6 77/3
77/7 80/5 81/5 89/12 96/17
97/4 98/25 100/13 101/17
102/7 102/8 103/25 104/7
105/19 109/16 110/9 110/11
112/19 114/15 115/10 116/7
116/12 118/6 120/22 121/9
121/12 121/18 121/22 122/3
123/3 131/8 132/1 132/10
132/10 133/2 133/20 136/5
136/7 136/9 136/15 137/2
137/3 137/5 139/13 139/13
140/1 141/12 141/15 142/5
144/5 145/18 148/20 148/23
150/3 150/10 150/11 151/12
153/22 153/24 154/10 155/10
156/2 156/6 156/7 156/25
157/18 157/20 163/1 164/1
164/16 165/8 166/4 166/9
166/12 167/22 168/5 168/6
168/17 168/25 172/15 173/14
174/3 174/5 175/2 175/10
175/22 176/7 176/12 177/4
177/9 177/21 177/24 179/6
179/20 179/21 180/14 180/22
181/20 181/20 182/17 183/8
183/17 183/18 185/1 192/20
193/1 195/18
what's [10]   95/23 115/11
117/13 118/18 141/25 155/13
155/14 175/19 192/14 195/14
whatever [9]   3/5 3/6 27/7
44/10 45/5 47/23 99/22
176/17 190/24
whathaveyou [1]   15/4
when [88]   4/10 5/18 5/19
10/14 12/3 19/17 25/6 26/9
29/11 31/10 36/10 38/9 39/19
41/12 43/14 44/8 45/21 66/18
72/9 75/4 83/19 94/19 101/9
101/20 103/14 107/11 114/16
114/18 114/21 115/10 115/18
117/24 118/18 121/9 130/21
131/5 131/6 131/15 132/4
132/5 132/12 133/5 135/21
135/25 136/18 137/5 137/18
137/25 138/7 139/6 139/24
140/7 140/8 140/12 142/15
148/16 149/4 151/15 151/23
155/20 156/15 159/10 159/11
165/20 171/15 173/21 175/19
176/4 176/25 177/15 177/25
178/15 178/23 181/7 182/8
183/3 183/19 184/9 184/10
184/13 184/13 187/2 190/2

190/5 193/11 193/17 193/17
195/11
whenever [1]   166/17
where [33]   5/18 8/12 10/22
15/16 23/22 69/19 72/11 90/8
94/16 99/20 99/21 105/14
111/16 112/6 113/21 114/11
118/3 118/5 118/17 119/5
119/21 121/10 123/12 123/14
124/7 146/24 149/12 153/25
154/2 155/17 169/2 170/19
183/11
whereas [1]   6/22
whereof [1]   196/15
whether [70]   14/11 15/3
16/10 16/11 21/13 28/4 28/23
30/6 35/14 37/2 37/4 37/14
37/17 38/14 39/23 40/24 41/1
41/2 42/12 42/18 42/19 42/20
42/21 42/22 42/23 43/1 43/4
44/9 45/4 46/1 48/25 49/14
49/17 49/21 50/6 58/2 60/22
60/24 61/1 61/3 61/9 61/15
61/16 61/18 61/19 61/21
61/24 67/15 68/17 68/17
69/14 70/20 77/19 78/6 78/16
78/23 87/12 88/24 90/24 94/2
98/20 107/12 133/18 141/21
143/7 164/10 181/7 188/13
189/16 195/21
which [111]   4/9 5/12 5/18
6/14 8/9 11/4 12/5 13/10
17/23 20/13 21/25 22/11 24/9
26/14 26/22 29/12 30/8 31/19
31/23 31/24 32/14 32/21
32/22 33/15 33/18 34/4 34/5
35/6 35/9 35/13 35/16 36/3
36/5 38/8 39/7 39/10 39/12
39/18 40/13 40/14 40/22 42/2
43/24 48/15 50/16 51/8 51/15
51/17 55/20 55/22 60/22 61/5
61/7 64/6 66/5 66/6 66/6
67/2 67/4 67/10 67/23 72/3
75/21 76/18 76/21 77/5 78/15
79/4 81/22 82/18 83/7 83/25
86/4 86/8 86/10 86/20 88/8
88/16 90/4 90/17 90/25 91/13
94/6 94/12 100/8 107/21
114/7 120/3 120/15 127/17
134/16 137/8 146/17 152/18
162/17 166/16 167/20 167/20
171/5 172/18 180/8 180/10
180/11 182/20 182/22 182/25
184/10 189/20 190/10 192/23
194/17
while [15]   5/1 13/6 39/21
53/11 54/22 58/21 59/2 74/9
78/13 80/4 94/17 130/8 131/3
141/2 186/10
who [106]   4/23 25/14 27/24
34/8 37/9 37/10 42/13 43/8
43/17 44/1 45/7 45/10 46/15
46/25 47/15 47/17 49/24
55/17 55/25 58/5 63/24 64/2
78/4 83/13 88/9 90/11 90/12
92/24 104/7 107/16 112/2
113/3 113/9 114/1 115/7
115/9 115/15 116/17 120/14
120/23 121/4 121/5 121/16
131/1 131/19 131/23 132/2
132/17 134/3 134/4 134/6
135/5 135/9 137/14 138/18
141/23 144/25 145/6 145/12
147/8 147/9 147/9 147/11
147/14 148/2 148/12 148/16
149/2 150/24 151/3 154/22
154/22 155/17 157/2 158/1
158/5 158/13 158/24 158/25
159/2 159/7 160/13 161/4

## W

**who..** 133 164/2 164/4
164/9 164/11 166/6 166/19
166/24 167/3 168/22 170/15
170/17 170/25 171/6 171/8
171/20 171/21 172/6 172/7
172/8 172/8 178/13 187/11
187/12
**who's [4]**   138/14 157/1 157/4
164/15
**whoever [3]**   64/20 85/15 88/2
**whole [4]**   26/9 138/15 164/13
164/13
**wholly [2]**   60/5 186/24
**wholly-owned [1]**   60/5
**whom [4]**   73/25 84/19 137/7
162/6
**whose [7]**   43/12 116/6 118/11
145/25 157/16 160/25 166/7
**why [30]**   6/7 6/9 13/24 23/23
104/7 108/3 112/20 118/12
122/17 122/20 134/19 134/23
135/23 136/3 139/21 147/2
153/3 153/6 153/10 163/16
164/12 165/3 166/23 167/5
171/18 175/10 178/14 180/24
183/25 192/11
**widow [2]**   135/17 161/8
**wife [13]**   137/7 139/6 139/10
139/23 140/12 147/21 150/6
151/11 151/15 151/16 157/2
161/13 170/16
**wife's [3]**   132/13 147/21
148/1
**will [108]**   4/19 8/4 9/4 9/7
9/9 17/9 17/16 17/18 17/20
19/12 19/13 19/15 21/20
22/10 22/10 23/8 24/8 24/9
24/14 24/16 24/25 25/8 25/11
25/16 27/18 28/13 29/4 31/11
34/18 35/23 36/8 39/23 40/7
41/20 43/18 45/24 48/13
48/16 48/17 51/8 51/15 52/2
52/12 53/13 59/3 61/24 72/10
73/9 94/11 94/12 94/16 94/19
94/21 96/22 97/18 98/24 99/3
100/12 102/22 102/22 102/24
114/6 115/10 117/2 130/12
130/12 136/21 148/18 151/21
158/14 164/20 164/22 164/22
172/5 172/12 172/14 172/19
174/13 181/10 181/10 182/19
183/8 184/6 185/9 185/17
185/19 187/3 187/4 187/12
187/13 187/21 188/4 189/19
189/20 190/20 190/25 191/2
191/19 191/21 192/14 193/2
193/14 193/20 193/20 193/21
195/1 195/9 195/17
**willful [4]**   69/9 79/12 90/2
110/14
**willfully [24]**   54/14 56/11
56/21 65/13 69/2 69/5 69/15
73/22 74/3 76/14 78/1 78/7
79/8 82/24 89/9 110/5 110/8
114/1 123/18 123/25 125/7
138/23 165/8 169/7
**WILLIAM [1]**   1/17
**willingly [1]**   172/3
**win [5]**   105/20 109/4 120/20
129/12 152/16
**winding [2]**   101/3 101/3
**Winthrop [1]**   1/17
**wire [119]**   4/15 11/17 11/23
12/1 12/4 12/8 12/12 12/20
15/1 16/1 16/3 16/10 18/23
51/15 51/22 52/5 52/10 52/12
57/17 58/2 64/13 64/24 65/3
65/6 68/25 70/7 70/11 71/3

71/10 71/12 71/13 71/18
71/18 71/19 72/1 72/9 72/16
72/21 72/22 72/24 75/1 73/16
74/23 75/5 75/12 75/20 81/15
85/10 85/13 86/9 86/24 87/2
87/8 87/10 87/16 87/19 87/21
89/18 89/24 90/1 91/15 91/24
93/6 93/9 93/11 93/14 93/17
93/20 95/15 106/4 106/12
106/13 106/15 124/10 125/1
125/9 125/12 126/2 126/3
126/11 126/21 126/24 126/24
127/2 127/5 127/25 128/8
128/16 128/19 129/4 145/21
146/3 146/11 146/12 146/13
146/14 146/16 146/17 146/18
147/8 147/9 147/10 147/11
158/25 159/1 159/2 159/5
160/17 160/19 167/17 167/24
168/14 168/14 174/13 174/16
174/16 176/1 177/8 178/11
**wired [2]**   103/20 105/15
**wires [28]**   4/12 4/17 11/14
11/22 64/16 65/17 71/22 72/6
72/10 72/11 72/13 72/15
72/18 73/4 106/14 113/21
113/23 124/5 124/8 124/12
124/14 124/18 124/19 146/20
147/2 147/13 170/9 182/19
**wiring [2]**   73/7 113/11
**wisdom [1]**   26/10
**wiser [5]**   7/23 105/8 113/11
159/20 159/22
**wished [1]**   91/2
**wishes [1]**   166/25
**wit [1]**   174/7
**within [7]**   50/7 80/7 87/10
99/25 101/17 136/25 137/1
**without [29]**   17/19 21/8
21/12 24/15 27/11 49/20 80/9
80/21 80/25 81/2 84/12 94/20
109/21 111/5 111/9 125/19
125/24 133/21 133/21 143/8
146/1 155/23 165/13 172/13
172/13 172/13 172/14 189/1
190/4
**witness [65]**   25/14 30/18
32/20 32/23 32/24 34/8 34/9
38/3 40/6 40/10 40/12 40/13
40/16 40/17 40/17 41/5 41/7
41/9 41/17 41/19 41/21 42/2
42/13 42/14 42/19 42/22 43/7
43/12 43/17 43/21 43/23
44/14 44/19 44/23 44/25 45/5
45/7 46/7 46/13 46/15 46/19
46/25 47/2 47/11 47/14 47/16
47/16 48/10 105/17 130/7
131/1 131/19 134/21 141/14
147/16 147/18 148/2 158/18
159/23 169/1 169/1 169/4
170/23 170/25 196/15
**witness' [16]**   40/15 40/21
40/23 40/24 41/2 41/4 42/15
42/17 43/4 43/19 44/6 44/9
46/3 46/20 47/4 47/7
**witnesses [20]**   26/22 27/6
31/22 33/25 34/3 34/4 34/11
34/12 34/13 34/16 37/8 39/5
39/6 40/8 41/22 43/6 43/10
45/25 148/3 162/6
**won [1]**   109/15
**won't [1]**   19/22
**wonderful [1]**   172/17
**word [14]**   22/15 22/15 86/10
109/24 111/25 117/15 130/19
154/3 154/7 164/8 178/18
179/23 182/13 183/20
**words [34]**   7/18 39/5 67/1
67/1 69/25 77/3 77/18 104/25

109/22 110/24 114/20 114/22
114/24 114/25 114/25 115/15
116/2 120/2 120/6 120/7
121/14 121/19 122/11 151/21
163/24 166/8 168/9 173/13
173/20 178/24 178/24 179/11
179/19 183/17
**work [17]**   4/1 4/6 10/5 14/5
14/10 18/22 22/6 70/24
114/19 136/9 142/20 142/22
144/22 153/12 153/14 153/15
153/17
**worked [5]**   18/12 95/7 108/25
153/8 159/15
**worker [1]**   78/10
**workers [1]**   185/23
**working [4]**   16/23 17/4 95/21
130/14
**works [2]**   100/4 171/18
**world [2]**   144/2 151/7
**worried [1]**   141/22
**worthington [1]**   49/7
**worthy [1]**   26/22
**would [120]**   4/11 6/10 8/24
9/18 9/22 9/23 13/4 14/2
14/9 14/24 16/16 17/18 18/19
18/21 18/22 19/5 19/6 19/12
21/13 24/2 26/12 28/9 28/15
29/25 30/3 35/4 35/11 35/12
38/5 38/17 40/19 41/11 46/2
46/4 46/6 46/8 46/9 54/23
58/16 58/23 59/20 60/7 67/10
67/21 69/19 70/24 70/24
72/18 74/10 95/11 95/18
96/15 96/16 97/7 97/10 98/10
98/25 99/14 99/25 100/6
101/3 101/8 101/9 101/13
108/11 109/3 109/21 111/8
112/9 122/1 123/11 129/2
133/8 133/15 134/13 134/17
145/14 146/17 147/1 148/12
148/13 150/8 151/14 151/14
152/5 152/14 153/2 153/5
153/7 153/15 153/15 153/17
153/18 155/22 156/1 160/16
160/18 161/14 162/12 163/14
163/16 163/25 165/9 166/23
167/5 168/25 173/2 178/13
179/12 179/13 179/15 181/3
181/4 183/12 184/1 192/22
193/2 193/12 194/24 195/5
**wouldn't [8]**   17/12 101/15
102/2 153/17 155/22 159/15
162/13 169/3
**wrap [1]**   12/18
**wrapped [3]**   12/16 16/21 18/4
**wrapping [1]**   101/7
**writing [9]**   77/3 153/9 178/6
184/24 186/4 187/8 187/14
187/21 187/23
**writings [2]**   65/1 75/6
**written [9]**   25/16 67/1 95/17
96/9 97/18 167/17 167/19
180/2 189/20
**wrong [4]**   5/2 112/19 135/10
173/10
**wrongdoing [1]**   49/25
**wrongful [1]**   56/13
**wrongfully [1]**   130/16
**wrote [5]**   69/20 118/5 157/15
184/17 184/19

## Y

**yeah [7]**   13/2 15/13 23/12
98/13 101/21 138/17 149/4
**year [4]**   116/5 116/10 116/14
144/16
**year-end [1]**   144/16
**years [7]**   98/15 133/16

**Y**

years [5] 135/5 150/12
151/10 155/8 180/13
yells [2] 181/11 181/12
yes [35] 10/2 11/1 15/23
19/8 96/3 96/12 98/9 98/23
99/8 102/5 103/5 146/19
148/20 149/2 150/1 150/10
151/4 152/2 152/5 152/11
152/17 152/22 153/4 153/5
153/7 153/7 153/11 155/21
156/10 156/11 156/20 160/11
161/2 161/3 194/16
yesterday [10] 6/5 7/15 7/16
7/19 9/11 10/25 12/16 20/3
24/7 194/17
yesterday's [1] 20/20
yet [1] 190/23
York [1] 1/15
you [989]
you'd [2] 179/3 179/5
you'll [8] 4/11 24/10 124/11
126/3 126/11 127/17 127/18
183/11
you're [15] 13/16 14/1 16/8
82/10 96/20 101/7 101/11
102/4 139/1 146/11 148/20
154/12 167/13 177/25 186/10
you've [36] 4/6 6/23 6/23
9/2 17/5 25/23 36/17 41/21
44/18 45/7 46/14 49/6 94/22
94/23 100/17 103/9 104/6
104/13 104/17 107/4 129/10
129/16 129/18 130/1 133/12
143/12 165/12 173/6 173/11
173/12 173/12 176/21 184/23
185/3 185/3 193/17
your [202]
yourself [7] 30/4 78/4 91/1
151/12 166/22 178/1 189/2
yourselves [6] 28/20 35/24
46/1 94/25 185/17 193/10